UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
In re REFCO INC. SECURITIES LITIGATION        :        Case No. 07-md-1902 (GEL)
                                                             :
-------------------------------------------------------------X

This Document Relates to:

-------------------------------------------------------------X
KENNETH M. KRYS and CHRISTOPHER        :
STRIDE, as JOINT OFFICIAL LIQUIDATORS    :
of SPHINX LTD., SPHINX STRATEGY FUND    :        Case No. 08-cv-3065 (GEL)
LTD.;                                                          :
SPHINX PLUS SPC LTD., SPHINX                  :        Case No. 08-cv-3086 (GEL)
DISTRESSED LTD., SPHINX MERGER             :
ARBITRAGE LTD.; SPHINX SPECIAL               :
SITUATIONS LTD., SPHINX MACRO LTD.;       :
SPHINX LONG/SHORT EQUITY LTD.;             :
SPHINX MANAGED FUTURES LTD.; SPHINX   :        **DECLARATION OF**
EQUITY MARKET NEUTRAL LTD.; SPHINX     :        **STEPHEN G. CRANE**
CONVERTIBLE ARBITRAGE LTD.; SPHINX      :
FIXED INCOME ARBITRAGE LTD.; SPHINX    :
DISTRESSED FUND SPC; SPHINX MERGER      :
ARBITRAGE FUND SPC; SPHINX SPECIAL       :
SITUATIONS FUND SPC; SPHINX MACRO        :
FUND SPC; SPHINX LONG/SHORT EQUITY     :
FUND SPC; SPHINX MANAGED FUTURES        :
FUND SPC; SPHINX EQUITY MARKET           :
NEUTRAL FUND SPC; SPHINX                         :
CONVERTIBLE ARBITRAGE FUND SPC;          :
SPHINX FIXED INCOME ARBITRAGE FUND    :
SPC; PLUSFUNDS MANAGED ACCESS FUND   :
SPC LTD.; KENNETH M. KRYS and                 :
CHRISTOPHER STRIDE as assignees of claims   :
assigned by MIAMI CHILDREN'S HOSPITAL    :
FOUNDATION, OFI, GREEN & SMITH             :
INVESTMENT MANAGEMENT LLC, THALES     :
FUND MANAGEMENT LLC, KELLNER              :
DILEO & CO., LLC, MARTINGALE ASSET        :
MANAGEMENT LP, LONGACRE FUND             :
MANAGEMENT LLC, ARNHOLD & S.              :
BLEICHROEDER ADVISERS LLC, PICTET &      :
CIE, RGA AMERICA REINSURANCE               :
COMPANY, DEUTSCHE BANK (SUISSE) SA,     :

1

ARAB MONETARY FUND, HANSARD                    :
INTERNATIONAL LTD., CONCORDIA                   :
ADVISORS LLC, GABELLI SECURITIES, INC.,         :
CITCO GLOBAL CUSTODY; and JAMES                 :
P. SINCLAIR as Trustee of the SPHINX TRUST,     :

                Plaintiffs,                    :

   -against-                                    :

CHRISTOPHER SUGRUE; MARK                        :
KAVANAGH; BRIAN OWENS;                          :
PRICEWATERHOUSECOOPERS L.L.P.; MARI             :
FERRIS; PRICEWATERHOUSECOOPERS                  :
CAYMAN ISLANDS; GIBSON, DUNN &                  :
CRUTCHER LLP; REFCO ALTERNATIVE                 :
INVESTMENTS LLC; GRANT THORNTON                 :
LLP; MARK RAMLER; ERNST & YOUNG U.S.            :
LLP; MAYER BROWN LLP f/k/a MAYER                :
BROWN ROWE & MAW LLP; JOSEPH                    :
COLLINS; EDWARD S. BEST; PAUL KOURY;            :
PHILLIP R. BENNETT; ROBERT C. TROSTEN;          :
TONE GRANT; SANTO MAGGIO; THOMAS                :
HACKL; DENNIS KLEJNA; BAWAG P.S.K.              :
BANK FUR ARBEIT UND WIRTSCHAFT UND              :
OSTERREICHISCHE POSTPARKASSE                    :
AKTIENGESELLSCHAFT; JP MORGAN                   :
CHASE & CO.; CREDIT SUISSE SECURITIES           :
(USA) LLC f/k/a CREDIT SUISSE FIRST             :
BOSTON LLC; BANC OF AMERICA                     :
SECURITIES LLC; THOMAS H. LEE                   :
PARTNERS, L.P.; THOMAS H. LEE                   :
ADVISORS, LLC; THL MANAGERS V, LLC;             :
THL EQUITY ADVISORS V, L.P.; THOMAS H.          :
LEE EQUITY FUND V, L.P.; THOMAS H. LEE          :
PARALLEL FUND V, L.P.; THOMAS H. LEE            :
EQUITY (CAYMAN) FUND V, L.P.; THOMAS            :
H. LEE INVESTORS LIMITED PARTNERSHIP;           :
1997 THOMAS H. LEE NOMINEE TRUST;               :
THOMAS H. LEE; DAVID V. HARKINS;                :
SCOTT L. JAECKEL; SCOTT A. SCHOEN;              :
WILLIAM T. PIGOTT; LIBERTY CORNER               :
CAPITAL STRATEGIES, LLC; EMF                    :
FINANCIAL PRODUCTS LLC; EMF CORE                :
FUND LTD.; DELTA FLYER FUND LLC; ERIC           :
M. FLANAGAN; INGRAM MICRO, INC.; CIM            :

VENTURES, INC.; BECKENHAM TRADING   :
CO., INC.; ANDREW KRIEGER; COAST   :
ASSET MANAGEMENT, LLC, f/k/a COAST   :
ASSET MANAGEMENT LP; CS LAND   :
MANAGEMENT LLC; CHRISTOPHER   :
PETTIT; and REFCO GROUP HOLDINGS,   :
INC.; and REFCO ASSOCIATES, INC.,   :
  :
      Defendants   :
  :
------------------------------------------------------------------X

    Stephen G. Crane declares as follows:

    1.   I am a retired Senior Associate Justice of the Appellate Division of the Second Department.

    2.   Plaintiffs' counsel has requested that I provide this Court with information concerning the Commercial Division of the Supreme Court, New York County (the "Commercial Division"). I am not involved economically or otherwise, and have no interest, in the subject matter of this litigation. In connection with this action, I have personal knowledge only of the facts and circumstances set forth herein.

    3.   I served as a Justice of the Supreme Court, New York County, from 1984 to 2008, and as Justice in the Commercial Division from 1995 to 2001. My complete *curriculum vitae* is annexed hereto as Exhibit A.

    4.   The Commercial Division of the Supreme Court was established in 1995 to encourage resort to the New York State courts as a forum for resolving business disputes. I was one of the first six judges appointed to the Commercial Division upon its creation.

    5.   The goal of the Commercial Division is to promote efficient, cost-effective and expeditious processing of business cases, complex and otherwise, by assigning cases to judges with expertise in business and commercial litigation.

6.    From its inception, the Commercial Division has succeeded in achieving these goals. Since 1995, the Commercial Division, New York County, has experienced a continued decline in the time between filing and disposition of business cases. Justices in the Commercial Division manage cases to maximize efficiency, with rapid disposition of motions and early trial dates.

7.    A party requests assignment to the Commercial Division, pursuant to the Rules of the Commercial Division of the Supreme Court, by indicating on the request for judicial intervention ("RJI") that the case is commercial and by submitting, along with the RJI, a brief statement justifying Commercial Division designation. The statement must indicate that the case meets the monetary threshold for assignment to the Commercial Division of the Supreme Court, New York County, which is currently $100,000, and that the case is one in which the principal claims involve, as examples, breach of fiduciary duty, fraud, misrepresentation, or other common law violations where the breach or violation is alleged to arise out of business dealings. See 22 NYCRR 202.70(d).

8.    The 29th Annual Report of the Chief Administrator of the Courts (the "Annual Report") reflects, among other information, the performance standard adopted for processing complex civil cases in New York State Supreme Court. A copy of the Annual Report is annexed hereto as Exhibit B. As stated on page eight of the 2006 Annual Report, the average time for disposition of complex cases was 30 months from the filing of the RJI to the final disposition of the case.

9.    Contract cases heard in the Commercial Division in 2006 (see Exhibit C annexed hereto, which contains data provided by the New York State Office of Court

Adminstration) consumed an average of 500 days from RJI to note of issue, i.e., the close of the disclosure stage and declaration of readiness for trial.    The average time from RJI to final disposition was 760 days, or approximately 25 months.

10.    Additional statistics provided by the Office of Court Administration indicate that for a control group of commercial cases examined for the year 2006, the average time from RJI to final disposition was 390 days, or approximately 13 months. For the control group of cases examined for the year 2007, the average time from RJI to final disposition was 277 days, or approximately 9 months.    A copy of these statistics is annexed hereto as Exhibit D.

11.    The statistical evidence demonstrates that, on average, for cases heard in the Commercial Division, a disposition is statistically likely to be obtained within 9 to 13 months of the RJI.

I declare the foregoing to be true pursuant to 28 U.S.C. § 1746.

Dated April 23, 2008.

Stephen G. Crane

5



THE RESOLUTION EXPERTS



**Hon. Stephen G. Crane (Ret.)** was the Senior Associate Justice of the Appellate Division, Second Department and has served as a Justice of the Supreme Court, New York County since 1984. Justice Crane presided as one of the New York County Justices in the Commercial Division handling complex commercial cases from 1995 to 2001, and Administrative Judge, Civil Branch, Supreme Court, New York County from 1996 to 2001. Widely respected for being knowledgeable, thoughtful, and fair, Justice Crane is most comfortable in the middle of conflict, helping parties sort out their problems and reach an amicable resolution.

### ADR Experience and Qualifications

- Supported and encouraged use of methods of alternative dispute resolution in the Commercial Division of the Supreme Court and established a court-annexed mediation program for tort cases as Administrative Judge of Supreme Court, New York County; sponsored training courses for mediators with faculty including neutrals from JAMS

- As a trial judge,

  - maintained a Commercial Division Part and assisted in the settlement of the national tobacco litigation

  - administered an Individual Assignment Part, deciding motions and conducting trials (jury and non-jury); managed all repetitive stress injury cases filed in New York County, conferencing cases for settlement; and handled all aspects of civil cases: personal injury actions, medical malpractice, landlord-tenant, breach of contract, civil forfeiture, injunctions, corporate dissolutions, and all other categories of civil actions

- As an appellate judge, participated in adjudicating appeals in civil, criminal, family and Surrogate's Court cases from originating courts in ten counties in the New York Metropolitan area

### Representative Matters

Significant trials presided over by Justice Crane include the following:

- *Maryland Johnson Bush v. International Business Machines Corporation and N.C.R. Corp.* Four week jury trial: First trial in New York State of claims against computer keyboard manufacturers that their products caused plaintiff's carpal tunnel syndrome

- *Edith Abrams, et al. v. Nathan Rogers, et al.* Six week jury trial of complex commercial case involving limited partners' derivative claims against general partners of real estate partnership

- *Collochio, Gloria v. City of New York and Tom Town Cab Co.* After liability tried before another justice establishing minimal liability against New York City, twelve week trial of damages for brain injury to composer-musician sustained in head-on collision between taxi and bus

- *Grutman Katz Greene & Humphrey v. Lillian Goldman.* Bench trial of claim to $5 million bonus to attorney against former client with counterclaim to recover fees previously paid for malpractice resulting in 80-page decision, affirmed 251 AD2d 7

Other recent significant cases on which Justice Crane has written include the following:

- *Nastasi v. Nastasi*, 26 AD3d 32, (November 14, 2005). (Affirming the denial of vacatur of a notice of pendency in an action seeking to impose a constructive trust over property conveyed, not by the plaintiff in her personal capacity, but by her husband's estate, as alleged security for payment of her annuity.)

- *Sweeney, Cohn, Stahl & Vaccaro v. Kane*, 6 AD3d 72 (March 8, 2004). (Applying the doctrine of reverse piercing the corporate veil under Florida law to permit two New York judgment creditors of the co-shareholder wife of a Florida corporation, the sole asset of which was real property in New York and which was treated as the alter ego of the co-shareholders, to execute their judgments on the corporate real property even though the shares were held as tenants by the entirety under Florida law and thereby immune from the claims of all but joint creditors.)

- *Gomez v. Bicknell*, 302 AD2d 107 (December 23, 2002). (Discussing the measure of damages for breach of an employee's duty of loyalty in contrast to the measure for breach of his covenant not to compete after termination of employment and reversing a verdict in favor of the employee that was legally unsupported based on a theory that the employment agreement had been orally modified to provide for the payment of a profit participation on a transaction-by-transaction basis, the employee having quit before the end of the year and having admitted that the employer did not agree to this amendment.)

- *Bindit Corp. v. Inflight Advertising, Inc.*, 285 AD2d 309 (October 1, 2001). (Declaring that prior litigation, during the life of a patent, over alleged antitrust violations of an exclusive licensing agreement did not bar similar claims by the licensor after the patent for the licensed technology expired.)

- *State of New York v. Philip Morris*, 179 Misc 2d 435, 686 NYS2d 564, (December 23, 1998) (Approving tobacco industry master settlement agreements as fair, reasonable, and adequate and approving the Attorney General's allocation of the proceeds of approximately $25 billion over 25 years among the members of the class of Counties, the City of New York, and the State of New York also as fair, reasonable, and adequate.)

## Honors, Memberships, and Professional Activities

- Robert L. Haig Award for Distinguished Public Service, New York State Bar Association
- Louis J. Capozzoli Gavel Award, New York County Lawyers' Association
- Distinguished Service Award, Law Secretaries & Law Assistants Collegium
- Harold A. Stevens Jewel Award, New York County Lawyers' Association–Tort Section
- Past President, Cornell Law Association and Past Chair, Cornell Law School Advisory Council
- New York County Lawyers Association
  - Co-Chair, Institute on Continuing Legal Education; Chair, Judicial Section, History Committee, Cromwell Awards Committee
  - Member: Public Service Awards Committee, Nominations Committee, Centennial Committee
  - Past Member: Board of Directors, Executive Committee, Criminal Justice Section (founding co-chair)
- New York State Bar Association
  - Member of former Commission on Legal Services for the Middle Income;
  - Commercial and Federal Litigation Section Executive Committee
  - Former Member, House of Delegates
  - Member, New York State Bar Foundation
- Association of Trial Lawyers of America and New York State Trial Lawyers Association
- New York Regional Board and Executive Committee, Anti-Defamation League
- National Center for State Courts: Project Advisory Committee for *A Manual for Managing Notorious Cases*, 1990-1992
- Association of Justices of the Supreme Court of the City of New York
- Executive Committee, Board of Justices, First Judicial District
- Chair, Board of Trustees, New York County Public Access Law Library

## Background and Education

- Justice, Supreme Court, New York County, 1984-2007 (Supreme Court Justice, 1990-2007; Acting Supreme Court Justice, 1984-1989)
  - Senior Associate Justice, Appellate Division-Second Department, 2008
  - Associate Justice, Appellate Division-Second Department, designated 2005
  - Additional Justice, Appellate Division-Second Department, designated 2001
  - Administrative Judge of Supreme Court, Civil Branch, New York County, 1996-2001
- Judge, Criminal Court, City of New York, 1981-1984
- Partner, Glass Howard and Crane, New York, 1980-1981
- Counsel to the Office of Court Administration, New York, 1979-1980
- Chief Law Assistant, Supreme Court, Appellate Division, First Department, New York, 1976-1979 (Senior Law Assistant, 1966-1976)
- Associate, Poletti Freidin Prashker Feldman & Gartner, New York, 1963-1966
- J.D., *with distinction*, Cornell Law School, 1963
- B.S., Cornell University, 1960

# STATE OF NEW YORK



# TWENTY-NINTH ANNUAL REPORT

OF

# THE CHIEF ADMINISTRATOR OF THE COURTS

FOR CALENDAR YEAR 2006

# STATE OF NEW YORK

### Report of

# The Chief Administrator of the Courts

### For the Calendar Year

# January 1, 2006 - December 31, 2006

## COURT OF APPEALS

Judith S. Kaye, *CHIEF JUDGE*

George Bundy Smith                          Victoria A. Graffeo
*Through September 23, 2006*

Carmen Beauchamp Ciparick                   Susan Phillips Read

Albert M. Rosenblatt                        Robert S. Smith

Eugene F. Pigott, Jr.
*Since September 24, 2006*

## CHIEF ADMINISTRATIVE JUDGE OF THE COURTS

Jonathan Lippman

## ADMINISTRATIVE BOARD OF THE COURTS

Judith S. Kaye, *CHAIR*

John T. Buckley                             Anthony V. Cardona

A. Gail Prudenti                            Eugene F. Pigott, Jr.
                                            *Through September 23, 2006*

Henry J. Scudder
*Since November 17, 2006*

# UNIFIED COURT SYSTEM 2006

**JONATHAN LIPPMAN**
Chief Administrative Judge

**ANN T. PFAU**
First Deputy Chief Administrative Judge

**JOAN B. CAREY**
Deputy Chief Administrative Judge
New York City Courts

**JUDY HARRIS KLUGER**
Deputy Chief Administrative Judge
for Court Operations and Planning

**LAWRENCE K. MARKS**
Administrative Director of OCA

**JAN H. PLUMADORE**
Deputy Chief Administrative Judge
Courts Outside New York City

**JUANITA BING NEWTON**
Deputy Chief Administrative Judge
for Justice Initiatives

**RONALD P. YOUNKINS**
Chief of Operations of OCA

**JACQUELINE W. SILBERMANN**
Deputy Chief Administrative Judge
for Matrimonial Matters

## ADMINISTRATIVE JUDGES

**JOSEPH LAURIA**
Administrative Judge
New York City Family Court

**FERN FISHER**
Administrative Judge
New York City Civil Court

**JUANITA BING NEWTON**
Administrative Judge
New York City Criminal Court

**JACQUELINE W. SILBERMANN**
Administrative Judge
First Judicial District
Supreme Court, Civil Branch

**MICKI SCHERER**
Administrative Judge
First Judicial District
Supreme Court, Criminal Branch

**NEIL J. FIRETOG**
Administrative Judge
Second Judicial District, Kings County
Supreme Court

**PHILIP G. MINARDO**
Administrative Judge
Second Judicial District, Richmond County
Supreme Court

**LESLIE G. LEACH**
Administrative Judge
Eleventh Judicial District
Supreme Court

**BARRY SALMAN**
Administrative Judge
Twelfth Judicial District
Supreme Court, Civil Division

**JOHN COLLINS**
Administrative Judge
Twelfth Judicial District
Supreme Court, Criminal Division

**RICHARD E. SISE**
Presiding Judge
Court of Claims

**GEORGE B. CERESIA, JR.**
Administrative Judge
Third Judicial District

**VITO C. CARUSO**
Administrative Judge
Fourth Judicial District

**JAMES C. TORMEY**
Administrative Judge
Fifth Judicial District

**JUDITH F. O'SHEA**
Administrative Judge
Sixth Judicial District

**THOMAS VAN STRYDONCK**
Administrative Judge
Seventh Judicial District

**SHARON S. TOWNSEND**
Administrative Judge
Eighth Judicial District

**FRANCIS A. NICOLAI**
Administrative Judge
Ninth Judicial District

**ANTHONY F. MARANO**
Administrative Judge
Tenth Judicial District
Nassau County

**H. PATRICK LEIS, III**
Administrative Judge
Tenth Judicial District
Suffolk County

• • •

**MICHAEL COLODNER**
Counsel

## MESSAGE FROM THE CHIEF ADMINISTRATIVE JUDGE

I am pleased to present the 29th annual report of the Chief Administrator of the New York State Unified Court System (UCS), reflecting the activities of the court system in 2006. Submitted to the Governor and Legislature in accordance with Section 212 of the Judiciary Law, this report includes significant data on caseload activity, information about the structure of our court system, a summary of 2006 court system initiatives and a review of our legislative agenda.



_Faye Ellman_

The UCS strives to better serve the public through the many operational enhancements and innovative programs outlined in the pages that follow. Among this year's highlights are the ten-year anniversary of New York's Domestic Violence Courts, which emphasize victim safety and offender accountability, and the continued expansion statewide of other "problem-solving" court models including community, drug, mental health and sex offense courts; the unveiling of a comprehensive program to enhance the operation of New York's town and village justice courts, which function in areas outside New York City and hear a range of civil and criminal matters; the establishment of a task force charged with looking at ways to strengthen New York's probation system in reducing recidivism statewide; and the launching of a court interpreting services initiative designed to better meet the language needs of non-English-speaking litigants.

In keeping our focus on children and families, I am also pleased to report the continued expansion of Court-Appointed Special Advocate (CASA) programs via the support of our newly established CASA Assistance Program; the initial success of new court models operating in Erie and Nassau counties that seek to resolve child custody disputes more durably and amicably; and the implementation of a new pro bono program in Kings County Family Court that provides self-represented litigants free legal advice on custody, paternity, guardianship and other family law matters. We have also created a new post—Deputy Chief Administrative Judge for Matrimonial Matters—as part of our ongoing effort to improve the divorce litigation process.

As always, I am proud of the accomplishments of our judges and nonjudicial employees and thankful for their dedication and commitment. I also want to extend my gratitude to the Governor and his staff and to the leaders and members of the Legislature for their assistance and cooperation this year.

_Jonathan Lippman_

**Please Do Not Destroy or Discard This Report.**

When this report is of no further value to the holder, please return it to the Office of Court Administration, 25 Beaver Street, New York, N.Y. 10004, so that copies will be available for replacement in our sets and for distribution to those who may request them in the future.

# Contents

Chapter 1   Court Structure and Statistics ................................................................................. 1
    Appellate Courts (Court of Appeals, Appellate Divisions, Appellate Terms) ........................... 1
    Trial Courts (Caseload Overview) ............................................................................ 6
    Trial Courts of Superior Jurisdiction ......................................................................... 8
        Supreme Court ............................................................................................. 8
        County Court ............................................................................................... 11
        Court of Claims ............................................................................................ 11
        Surrogate's Court .......................................................................................... 11
        Family Court ................................................................................................ 13
    Trial Courts of Limited Jurisdiction in New York City .................................................... 14
        NYC Civil Court ............................................................................................ 14
        NYC Criminal Court ....................................................................................... 15
    Trial Courts of Limited Jurisdiction Outside New York City ............................................. 16
        City and District Courts ................................................................................... 16
        Town and Village Justice Courts ......................................................................... 16
    Problem-Solving Courts ...................................................................................... 18
    Community Dispute Resolution Centers Program ......................................................... 20

Chapter 2   Administration Highlights ....................................................................................... 21
    Overview ....................................................................................................... 21
    Office of the Chief of Operations and the Administrative Director of OCA ............................. 21
        Division of Administrative Services ....................................................................... 21
        Division of Court Operations ............................................................................. 21
        Division of Financial Management - 2006-2007 Budget ............................................... 23
        Division of Human Resources ............................................................................ 23
        Division of Technology .................................................................................... 23
        Department of Public Safety .............................................................................. 24
        Office of Court Facilities  Management .................................................................. 24
        Office of Court Research ................................................................................... 25
        Office of Justice Court Support ........................................................................... 25
        Office of Public Affairs .................................................................................... 25
    Office of the Deputy Chief Administrative Judge for Justice Initiatives ................................. 26
    Office of the Deputy Chief Administrative Judge for Court Operations and Planning ................. 26
    Office of the Deputy Chief Administrative Judge for Matrimonial Matters .............................. 27

Chapter 3   Program Highlights ................................................................................................ 29
    Part I:   Center for Court Innovation ....................................................................... 29
        Office of Court Drug Treatment Programs (OCDTP) ................................................... 30
        New York State Judicial Institute ......................................................................... 30
        Office of Guardian & Fiduciary Services ................................................................ 31
        Parent Education Advisory Board ........................................................................ 31
        Advisory Committee on Judicial Ethics .................................................................. 31
        Judicial Campaign Ethics Center ......................................................................... 31
        Franklin H. Williams Judicial Commission on Minorities .............................................. 32
        New York State Judicial Committee on Women in the Courts .......................................... 32
        Permanent Judicial Commission on Justice for Children ............................................... 32
        Lawyer Assistance Trust ................................................................................... 33
        Ethics Commission for the Unified Court System ...................................................... 33

# Contents (cont'd)

Chapter 3    Program Highlights (cont'd)
    Part II:    Commission to Promote Public Confidence in Judicial Elections .................................................. 34
                 Commission on Fiduciary Appointments ................................................ 34
                 Matrimonial Commission ................................................................ 35
                 Task Force on the Future of Probation in NYS ................................... 35
                 Special Commission on the Future of the New York State Courts .................................. 35

Chapter 4    Legislation and Rules ........................................................................................ 36
                 Legislation.......................................................................... 36
                 Work of the Advisory Committees .............................................. 36
                 Judiciary Measures Enacted into Law in 2006 ............................ 39
                 Rules of the Chief Judge ......................................................... 41
                 Rules of the Chief Administrative Judge ................................... 41

Appendices
                 Appendix A:  Intake, Dispositions and Trials *De Novo* in Mandatory Arbitration Programs ...................... 43
                 Appendix B: Small Claims Assessment Review Program: Filings and Dispositions ..................................... 44
                 Appendix C: Community Dispute Resolution Centers' Workload ...................................... 45
                 Appendix D:  Attorney Registration by Location (and Fees Collected) ............................................. 46
                 Appendix E:  Retainers & Closing Statements; Adoption Affidavits; Criminal History Search Unit;
                      Secure Pass ID Cards; Fiduciary Appointment Reporting Process .................................... 47
                 Appendix F: Measures Newly Introduced in the 2006 Legislative Session and Not Enacted Into Law ......... 48

# Figures

                 Figure 1a: New York State Judicial System, Criminal Appeals Structure .......................................... 3
                 Figure 1b: New York State Judicial System, Civil Appeals Structure ............................................ 3
                 Figure 2: Trial Court Filings by Case Type ........................................................... 7
                 Figure 3: Supreme Civil New Case Filings by Case Type ....................................... 10
                 Figure 4: Supreme Civil: Dispositions by Type of Disposition .................................. 10
                 Figure 5: Felony Dispositions by Type of Disposition ........................................... 10
                 Figure 6: New York City Civil Court: Filings by Case Type ..................................... 14
                 Figure 7: New York City Criminal Court: Filings by Case Type ............................... 15
                 Figure 8: City and District Courts: Filings by Case Type ........................................ 16
                 Figure 9: Integrated Domestic Violence Courts: Filings by Case Type .......................... 18

# Contents (cont'd)

## Tables

Table 1: New York State Judicial System, Authorized Number of Judges ............................................... 2

Table 2: Caseload Activity in the Court of Appeals ................................................ 4

Table 3: Caseload Activity in the Appellate Divisions ................................................ 5

Table 4: Caseload Activity in the Appellate Terms ................................................ 5

Table 5: Filings in the Trial Courts – Five-Year Comparison ................................................ 6

Table 6: Filings and Dispositions in the Trial Courts ................................................ 7

Table 7: Supreme Court Civil: Filings and Dispositions ................................................ 9

Table 8: Surrogate's Court: Filings and Dispositions ................................................ 11

Table 9: Supreme Criminal and County Courts: Felony Filings and Dispositions ............................................... 12

Table 10: Family Court and Supreme IDV: Filings and Dispositions by Type of Petition .................................... 13

Table 11: New York City Civil Court: Filings and Dispositions by Case Type and County .................................... 14

Table 12: New York City Criminal Court: Filings and Dispositions by Case Type and County ........................... 15

Table 13: City and District Courts: Filings by Case Type ................................................ 17

Table 14: Integrated Domestic Violence Courts: Caseload Activity ................................................ 19

# Court Structure and Statistics

The powers and structure of the New York State Judiciary are embodied in Article VI of the state constitution, which provides for a unified court system, specifies the organization and the jurisdiction of the courts, establishes the methods of selection and removal of judges and provides for administrative supervision of the courts. The responsibility and authority for supervising the courts is vested in the Chief Judge of the state, who is the Chief Judge of the Court of Appeals.

There are 1,210 judges and approximately 15,000 nonjudicial personnel throughout the court system. There are also over 2,200 town and village justices who are elected and paid by their localities. Table 1 reflects the number of judges authorized to sit in the different courts.

This chapter identifies the different courts, defines their jurisdiction and reflects their caseload activity for the year 2006. It also describes the specialized or problem-solving courts established over the past decade to help reduce recidivism.

## APPELLATE COURTS

The appellate courts are the Court of Appeals and the Appellate Divisions and Appellate Terms of the Supreme Court. The County Courts act as appellate courts in the Third and Fourth Judicial Departments. The appellate court structure is shown in Figures 1a and 1b (page 3).

## Court of Appeals

The Court of Appeals is the highest-level court, located in Albany. The court consists of the Chief Judge and six associate judges, each appointed by the Governor, with the advice and consent of the Senate, for 14-year terms, from among persons found to be well qualified by the State Commission on Judicial Nomination.

The Court of Appeals hears civil and criminal appeals. Its jurisdiction is, with certain exceptions, limited to the review of questions of law. Depending on the issue, some matters may be appealed as of right and some only by leave or permission from the court or the Appellate Division. The court also presides over appeals from determinations by the State Commission on Judicial

Conduct and is responsible for establishing rules governing the admission of attorneys to the bar.

The Court of Appeals maintains a current docket. In 2006, the average length of time from the filing of a notice of appeal or order granting leave to appeal to the public release of a decision was 225 days. The court's caseload activity is reported in Table 2 (page 4).

## Appellate Divisions

The Appellate Divisions of the Supreme Court are established in each of the state's four judicial departments (see map inside front cover). Their primary responsibilities are: resolving appeals from judgments or orders of the superior courts of original jurisdiction in civil and criminal cases; reviewing civil appeals taken from the Appellate Terms and the County Courts acting as appellate tribunals; establishing rules governing attorney conduct; and conducting proceedings to admit, suspend or disbar attorneys.

Each Appellate Division has jurisdiction over appeals from final orders and judgments, as well as from some intermediate orders rendered in county-level courts, and original jurisdiction over selected proceedings.

The Governor designates the presiding and associate justices of each Appellate Division from among the justices of the Supreme Court. Presiding justices serve for the remainder of their term; associate justices are designated for five-year terms or for the remainder of their unexpired term if less than five years.

The Appellate Divisions' 2006 caseload activity is listed in Table 3 (page 5).

## Appellate Terms

Appellate Terms have been established in the First and Second Departments. They exercise jurisdiction over civil and criminal appeals taken from local courts and, in the Second Department, over nonfelony appeals from County Courts. The chief administrator designates the Appellate Term justices from among the justices of the Supreme Court, with the approval of the presiding justice of the appropriate Appellate Division. The Appellate Terms' 2006 caseload activity is listed in Table 4 (page 5).

**Table 1**
**NEW YORK STATE JUDICIAL SYSTEM**: Authorized Number of Judges
*December 31, 2006*

| Number of Judges | | Court |
|---|---|---|
| 7 | .......... | Court of Appeals |
| 60[a] | .......... | Supreme Court, Appellate Divisions |
| 14[b] | .......... | Appellate Terms |
| 272[c] | .......... | Supreme Court, Trial Parts |
| 49 | .......... | Supreme Court, Certificated Retired Justices |
| 27 | .......... | Court of Claims |
| 59 | .......... | Court of Claims (15 judges appointed pursuant to Chapter 603, Laws of 1973, Emergency Dangerous Drug Control Program, as amended by Chapters 500, 501, Laws of 1982; 23 appointed pursuant to Chapter 906, Laws of 1986; 8 appointed pursuant to Chapter 209, Laws of 1990; 4 appointed pursuant to Chapter 731, Laws of 1996; and 9 appointed pursuant to Chapter 240, Laws of 2005) |
| 31 | .......... | Surrogate's Courts (including 2 Surrogates in New York County and 2 Surrogates in Kings County) |
| 72 | .......... | County Courts* (county judges outside the City of New York in counties that have separate Surrogate's  Court and Family Court judges) |
| 13 | .......... | County Courts* (county judges who are also Surrogate's Court judges) |
| 6 | .......... | County Courts* (county judges who are also Family Court judges) |
| 38 | .......... | County Courts* (county judges who are also Surrogate's and Family Court judges) |
| 127 | .......... | Family Courts (including 47 Family Court judges in the City of New York) |
| 107 | .......... | Criminal Court of the City of New York |
| 120[d] | .......... | Civil Court of the City of New York |
| 50 | .......... | District Courts (in Nassau and Suffolk counties) |
| 158 | .......... | City Courts (in the 61 cities outside New York City including acting and part-time judges) |
| 1,210 | | Total |
| [2,250 | | Town and Village Justice Courts] |

\*    In smaller counties, judges may sit in two or three of the county-level courts simultaneously (County, Surrogate's or Family Courts).
a    In addition to the 24 Supreme Court justices permanently authorized, 25 justices and 11 certificated retired justices are temporarily designated to the Appellate Divisions.
b    Includes 5 certificated justices.
c    Judiciary Law §140-a authorizes 328 elected Supreme Court justices in the 12 judicial districts. This number includes the 24 permanently authorized justices who are assigned to the Appellate Divisions, as well as all noncertificated justices who are temporarily designated to the Appellate Divisions. This number does not include judges of other courts, including the Civil and Criminal Courts of the City of New York, who sat as acting Supreme Court justices during the year. It also does not include any certificated justices.
d    Does not include the additional 11 Civil Court judgeships authorized by the 1982 Session Laws, chapter 500, but still not filled.

**Figure 1a**
**NEW YORK STATE JUDICIAL SYSTEM**
**Criminal Appeals Structure**



*Appeals involving death sentences must be taken directly to the Court of Appeals.

**Figure 1b**
**NEW YORK STATE JUDICIAL SYSTEM**
**Civil Appeals Structure**



*Appeals from judgments of courts of record of original instance that finally determine actions where the only question involved is the validity of a statutory provision under the New York State or United States Constitution may be taken directly to the Court of Appeals.

**Table 2**
**CASELOAD ACTIVITY IN THE COURT OF APPEALS - 2006**

| | |
|---|---:|
| Applications Decided [CPL 460.20(3(b))] | 2,436 |
| Records on Appeal Filed | 195 |
| Oral Arguments (Includes Submissions) | 181 |
| Appeals Decided | 189 |
| Motions Decided | 1,397 |
| Judicial Conduct Determinations Reviewed | 2 |

**DISPOSITIONS OF APPEALS DECIDED IN THE COURT OF APPEALS**
**by Basis of Jurisdiction**

| BASIS OF JURISDICTION | AFFIRMED | REVERSED | MODIFIED | DISMISSED | OTHER* | TOTAL |
|---|---:|---:|---:|---:|---:|---:|
| **All Cases:** | | | | | | |
| Reversal, Modification, Dissent in Appellate Division | 14 | 4 | 1 | 0 | 0 | 19 |
| Permission of Court of Appeals or Judge Thereof | 74 | 20 | 11 | 2 | 0 | 107 |
| Permission of Appellate Division or Justice Thereof | 20 | 12 | 3 | 1 | 0 | 36 |
| Constitutional Question | 8 | 1 | 2 | 0 | 0 | 11 |
| Stipulation for Judgment Absolute | 0 | 0 | 0 | 0 | 0 | 0 |
| Other | 0 | 0 | 0 | 0 | 16 | 16 |
| Total | 116 | 37 | 17 | 3 | 16 | 189 |
| **Civil Cases:** | | | | | | |
| Reversal, Modification, Dissent in Appellate Division | 14 | 4 | 1 | 0 | 0 | 19 |
| Permission of Court of Appeals or Judge Thereof | 38 | 12 | 4 | 0 | 0 | 54 |
| Permission of Appellate Division or Justice Thereof | 13 | 10 | 3 | 1 | 0 | 27 |
| Constitutional Question | 8 | 1 | 2 | 0 | 0 | 11 |
| Stipulation for Judgment Absolute | 0 | 0 | 0 | 0 | 0 | 0 |
| Other | 0 | 0 | 0 | 0 | 16 | 16 |
| Total | 73 | 27 | 10 | 1 | 16 | 127 |
| **Criminal Cases:** | | | | | | |
| Permission of Court of Appeals or Judge Thereof | 36 | 8 | 7 | 2 | 0 | 53 |
| Permission of Appellate Division or Justice Thereof | 7 | 2 | 0 | 0 | 0 | 9 |
| Other | 0 | 0 | 0 | 0 | 0 | 0 |
| Total | 43 | 10 | 7 | 2 | 0 | 62 |

*Includes anomalies which did not result in an affirmance, reversal, modification or dismissal (e.g., judicial suspensions, acceptance of a case for review pursuant to Court Rule 500.27)

**Table 3**
**CASELOAD ACTIVITY IN THE APPELLATE DIVISIONS - 2006**

| | FIRST DEPT | | SECOND DEPT | | THIRD DEPT | | FOURTH DEPT | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | Civil | Criminal | Civil | Criminal | Civil | Criminal | Civil | Criminal | |
| **Records on Appeal Filed** | **1,764** | **858** | **3,233** | **784** | **1,422** | **415** | **903** | **602** | **9,981** |
| Disposed of before argument or submission (e.g., dismissed, withdrawn, settled) | 135 | 165 | 6,038 | 761 | 0 | 0 | 0 | 0 | 7,099 |
| Disposed of after argument or submission: | | | | | | | | | |
| Affirmed | 925 | 775 | 1,758 | 732 | 1,004 | 343 | 690 | 663 | 6,890 |
| Reversed | 333 | 28 | 851 | 45 | 126 | 25 | 134 | 38 | 1,580 |
| Modified | 197 | 69 | 362 | 58 | 129 | 38 | 163 | 64 | 1,080 |
| Dismissed | 136 | 7 | 458 | 6 | 93 | 6 | 270 | 19 | 995 |
| Other | 97 | 11 | 87 | 145 | 0 | 0 | 4 | 4 | 348 |
| **Total Dispositions** | **1,823** | **1,055** | **9,554** | **1,747** | **1,352** | **412** | **1,261** | **788** | **17,992** |

| | FIRST DEPT | SECOND DEPT | THIRD DEPT | FOURTH DEPT | TOTAL |
|---|---|---|---|---|---|
| Oral Arguments* | 1,175 | 2,212 | 727 | 904 | **5,018** |
| Motions Decided* | 5,698 | 10,722 | 6,117 | 4,483 | **27,020** |
| Admissions to the Bar | 3,061 | 2,271 | 2,956 | 355 | **8,643** |
| Atty. Disciplinary Proceedings Decided | 886 | 186 | 31 | 32 | **1,135** |

**\*Not broken down by civil or criminal**

**Table 4**
**CASELOAD ACTIVITY IN THE APPELLATE TERMS - 2006**

| | FIRST DEPT | | | SECOND DEPT | | | TOTAL |
|---|---|---|---|---|---|---|---|
| | Civil | Criminal | Total | Civil | Criminal | Total | |
| **Records on Appeal Filed** | **391** | **75** | **466** | **1,413** | **482** | **1,895** | **2,361** |
| Disposed of before argument or submission (e.g. dismissed, withdrawn, settled) | 19 | 3 | 22 | 506 | 290 | 796 | 818 |
| Disposed of after argument or submission: | | | | | | | |
| Affirmed | 285 | 38 | 323 | 300 | 81 | 381 | 704 |
| Reversed | 103 | 16 | 119 | 131 | 41 | 172 | 291 |
| Modified | 51 | 1 | 52 | 61 | 5 | 66 | 118 |
| Dismissed | 21 | - | 21 | 26 | 2 | 28 | 49 |
| Other | 10 | - | 10 | 26 | 3 | 29 | 39 |
| **Total Dispositions** | **489** | **58** | **547** | **1,050** | **422** | **1,472** | **2,019** |
| Oral Arguments* | | | 350 | | | 345 | 695 |
| Motions Decided* | | | 1,352 | | | 3,294 | 4,646 |

**\*Not broken down by civil or criminal**

## TRIAL COURTS

### Caseload Overview [1]

The statewide trial courts of superior jurisdiction are the Supreme Court, the Court of Claims, the Family Court, the Surrogate's Court and outside New York City, the County Court. In New York City, the Supreme Court exercises both civil and criminal jurisdiction. Outside New York City, Supreme Court exercises civil jurisdiction, while County Court generally handles criminal matters. The trial courts of limited jurisdiction in New York City are the Civil Court and the Criminal Court. Outside New York City, these courts include City Courts, District Courts and Town and Village Courts and have both civil and criminal jurisdiction.

In 2006, 4,546,080 cases were filed in the trial courts.[2] Excluding parking tickets, filings totaled 4,391,941 (see Table 5); 39% of these were criminal filings, another 42% were civil filings. About two-thirds were in courts of limited jurisdiction (see Figure 2).

As Table 5 shows, total filings are at an all-time high.

Civil filings increased 19%, and criminal filings 3%, over the five-year period. Of the nonparking dispositions, 39% were in criminal courts, 40% in civil courts, 18% in family courts and 3% in surrogate's courts. Table 6 contains a breakdown of filings and dispositions by type of court and filing.

### Standards and Goals

The chief administrator has established standards and goals for the work of certain trial courts—Supreme and County Court felony cases, Supreme Court civil cases and Family Court proceedings—to provide performance measures reflecting the time from case filing to disposition. The standards and goals for each of these courts is noted in their descriptions below.

### Arbitration

Part 28 of the Rules of the Chief Judge (22 NYCRR) authorizes the chief administrator to establish mandatory arbitration programs in the trial courts. These programs operate in 31 counties. Outside New York City, the programs involve damages of $6,000 or less; in New York City, cases are limited to $10,000 or less. (Appendix A shows the programs' 2006 activities by judicial district.)

---

[1] Most of the data in this chapter are from the Caseload Activity Reporting System of the UCS and are current as of October 2007. Courts report data to the Office of Court Administration pursuant to the Rules of the Chief Administrator of the Courts (22 NYCRR, Part 115).

[2] Does not include locally funded Town and Village Courts.

---

**Table 5**
**FILINGS IN THE TRIAL COURTS - FIVE-YEAR COMPARISON**

| COURT | 2002 | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|---|
| *CRIMINAL* | | | | | |
| Supreme and County Courts Criminal | 53,284 | 54,549 [a] | 63,217 [a] | 74,412 [a] | 80,210 [a] |
| Criminal Court of the City of NY[b] | 798,427 | 856,825 | 786,540 | 872,927 | 854,918 |
| City & District Courts Outside NYC[b] | 713,595 | 717,004 | 702,079 | 769,870 | 784,518 |
| Parking Tickets | 252,126 | 197,848 | 153,533 | 147,870 | 154,139 |
| Criminal Total | 1,817,432 | 1,826,226 | 1,705,369 | 1,865,079 | 1,873,785 |
| *CIVIL* | | | | | |
| Supreme Court Civil[c] | 422,362 | 430,007 | 415,132 | 402,318 | 408,756 |
| Civil Court of the City of NY[d] | 770,677 | 840,902 | 756,852 | 820,355 | 969,654 |
| City & District Courts Outside NYC[d] | 283,424 | 308,392 | 292,925 | 325,149 | 361,475 |
| County Courts Civil[e] | 25,979 | 27,833 | 30,333 | 30,812 | 27,532 |
| Court of Claims | 1,826 | 1,683 | 1,694 | 1,591 | 1,482 |
| Small Claims Assessment Review Program[f] | 51,218 | 18,255 [f] | 85,324 [f] | 51,527 | 78,057 |
| Civil Total | 1,555,486 | 1,627,072 | 1,582,260 | 1,631,752 | 1,846,956 |
| *FAMILY* | 712,726 | 689,281 | 695,842 | 665,970 | 680,791 |
| *SURROGATE'S* | 158,520 | 151,239 | 145,749 | 145,492 | 144,548 |
| **Total** | **4,244,164** | **4,293,818** | **4,129,220** | **4,308,293** | **4,546,080** |

[a] Includes felonies and misdemeanors, of which 25,009 were misdemeanor filings in 2006.
[b] NYC includes arrest and summons cases; outside NYC includes arrest cases and uniform traffic tickets.
[c] Includes new cases, ex parte applications and uncontested matrimonial cases.
[d] Includes civil, housing, small claims and commercial claims.
[e] Includes new cases and ex parte applications.
[f] See Appendix B. 2003 decrease/2004 increase due to 2003 Nassau County program that resulted in many 2003 SCAR-eligible petitions being filed in 2004.



Figure 2

**Trial Court Filings by Case Type - 2006**

- Surrogate's 3%
- Limited Jurisdiction Criminal* 37%
- Family 16%
- Supreme & County Civil 10%
- Superior Criminal 2%
- Limited Jurisdiction Civil 32%

*Excludes parking tickets

Table 6
**FILINGS & DISPOSITIONS IN THE TRIAL COURTS - 2006**

| COURT | FILINGS | DISPOSITIONS |
|---|---|---|
| *CRIMINAL* | | |
| Supreme and County Courts | | |
|     Felony Cases | 55,201 | 55,166 |
|     Misdemeanor Cases | 25,009 | 29,357 |
| Criminal Court of the City of New York: | | |
|     Arrest Cases | 331,339 | 333,486 |
|     Summons Cases[a] | 523,579 | 380,278 |
| City & District Courts (outside New York City): | | |
|     Arrest Cases | 314,644 | 290,369 |
|     Uniform Traffic Tickets[a] | 469,874 | 408,168 |
| Parking Tickets[a] | 154,139 | 131,581 |
| **Criminal Total** | **1,873,785** | **1,628,405** |
| *CIVIL* | | |
| Supreme Court: | | |
|     New Cases | 170,892 | 193,464 |
|     Ex Parte Applications | 188,976 | 188,976 |
|     Uncontested Matrimonial Cases | 48,888 | 50,192 |
| Civil Court of the City of New York: | | |
|     Civil Actions | 619,934 | 359,188 [b] |
|     Landlord/Tenant Actions & Special Proceedings | 311,580 | 266,285 |
|     Small Claims | 29,434 | 33,869 |
|     Commercial Claims | 8,706 | 10,277 |
| City & District Courts (outside New York City): | | |
|     Civil Actions | 229,434 | 182,765 [b] |
|     Landlord/Tenant Actions & Special Proceedings | 87,907 | 87,643 |
|     Small Claims | 32,729 | 33,195 |
|     Commercial Claims | 11,405 | 11,516 |
| County Courts[c] | 27,532 | 27,881 |
| Court of Claims | 1,482 | 1,811 |
| Arbitration Program | 25,785 [d] | 23,437 |
| Small Claims Assessment Review Program[e] | 78,057 | 65,344 |
| **Civil Total** | **1,846,956** | **1,535,843** |
| *FAMILY* | 680,791 | 681,181 |
| *SURROGATE'S* | 144,548 | 116,231 [f] |
| **Total** | **4,546,080** | **3,961,660** |

[a]Includes both answered and unanswered cases.
[b]Does not include dispositions in the Arbitration Program (see Appendix A).
[c]Filings include new cases and ex parte applications.
[d]Shown here for reference only and not included in totals.  Included as intake in the civil courts listed above (see Appendix A).
[e]See Appendix B.
[f]Surrogate's Court dispositions include orders and decrees signed.

## TRIAL COURTS OF SUPERIOR JURISDICTION
## Supreme Court

The Supreme Court has unlimited original jurisdiction, but generally hears cases outside the jurisdiction of other courts,[1] such as:

— civil matters beyond the monetary limits of the lower courts' jurisdiction

— divorce, separation and annulment proceedings

— equity suits, such as mortgage foreclosures and injunctions

— criminal prosecutions of felonies.[2]

Supreme Court justices are elected by judicial district to 14-year terms.

### Civil Cases

During 2006, there were 408,756 total civil filings in Supreme Court, including 170,892 new cases, also known as requests for judicial intervention (RJIs), 188,976 *ex parte* applications and 48,888 uncontested matrimonial cases. A total of 432,632 matters reached disposition, including 193,464 RJIs, 188,976 *ex parte* applications and 50,192 uncontested matrimonial cases. Table 7 (page 9) lists the number of RJIs and trial notes of issue filed and disposed of in each county. Figure 3 (page 10) displays a breakdown of these filings by case type; Figure 4 (page 10) shows the breakdown of cases by manner of disposition. Two-thirds of the cases were disposed of before the trial note of issue was filed—either by settlement or on some other basis, *e.g.*, dismissal, default or consolidation.

### Commercial Division

Established to facilitate the resolution of complicated commercial disputes, the Commercial Division of the Supreme Court began 2006—its eleventh year in operation—with the adoption of statewide uniform rules

(part of the Uniform Civil Rules of the Supreme and County Courts, section 202.70) outlining definitive requirements for cases heard in the division and setting forth specific monetary thresholds for Commercial Division courts around the state.

In recognition of its outstanding contributions to commercial law and litigation, the Commercial Division was honored in January 2006 with the prestigious Stanley H. Fuld Award, named for the late Court of Appeals Chief Judge and presented by the Commercial and Federal Litigation Section of the New York State Bar Association. A July 2006 report summarizing the findings of a series of Commercial Division focus groups conducted in 2005 urged the exportation of successful features of the division—including the use of innovative case-management techniques and advanced technology—to other state courts. The report also contained suggestions to further enhance the Commercial Division's efficacy.

For more information, visit www.nycourts.gov/comdiv.

### Standards and Goals

Three standard-and-goal periods for Supreme Court civil cases measure the length of time from filing an action to disposition. The first or "pre-note" standard measures the time from filing the RJI (when parties first seek some form of judicial relief) to filing the trial note of issue (indicating readiness for trial). The second or "note" standard measures the time from filing the note of issue to disposition. The third or "overall" standard covers the entire period from RJI-filing to disposition.

The respective time frames are: 8-15-23 months for expedited cases; 12-15-27 months for standard cases; and 15-15-30 months for complex cases. In matrimonial cases the standards are 6-6-12 months; in tax certiorari cases, 48-15-63 months.

---

[1]  Supreme Court also hears appeals from administrative proceedings brought under the Small Claims Assessment Review Program (SCAR).  See Appendix B for program description and filings and dispositions by judicial district.

[2]  In some parts of the state outside New York City, felonies are handled in County Court. See p. 11, Criminal Cases and County Court.

Table 7
**SUPREME COURT CIVIL: FILINGS AND DISPOSITIONS - 2006** (Excludes Ex Parte Applications & Uncontested Matrimonials)

| | Filings | | Dispositions | | | | | |
|---|---|---|---|---|---|---|---|---|
| Location | New Cases | Note of Issue | Total | Pre-Note Settlements | Other Pre-note | Post-Note Settlements | Jury Verdicts/ Decisions | Other Note |
| **TOTAL STATE** | **170,892** | **57,750** | **193,464** | **29,139** | **103,957** | **37,367** | **5,872** | **17,129** |
| NYC | 76,759 | 29,464 | 93,718 | 10,105 | 49,897 | 22,066 | 3,224 | 8,426 |
| New York | 19,927 | 6,869 | 28,402 | 5,684 | 15,051 | 5,111 | 619 | 1,937 |
| Bronx | 13,055 | 4,530 | 13,254 | 1,101 | 7,305 | 3,533 | 318 | 997 |
| Kings | 21,881 | 9,831 | 28,021 | 1,673 | 15,276 | 6,870 | 1,227 | 2,975 |
| Queens | 18,010 | 6,937 | 20,514 | 1,210 | 10,407 | 5,877 | 797 | 2,223 |
| Richmond | 3,886 | 1,297 | 3,527 | 437 | 1,858 | 675 | 263 | 294 |
| Outside NYC | 94,133 | 28,286 | 99,746 | 19,034 | 54,060 | 15,301 | 2,648 | 8,703 |
| Albany | 3,503 | 568 | 4,130 | 317 | 3,169 | 362 | 19 | 263 |
| Allegany | 255 | 33 | 306 | 127 | 134 | 26 | 8 | 11 |
| Broome | 905 | 243 | 1,197 | 51 | 933 | 41 | 13 | 159 |
| Cattaraugus | 340 | 116 | 366 | 248 | 4 | 107 | 1 | 6 |
| Cayuga | 606 | 67 | 667 | 27 | 511 | 34 | 2 | 93 |
| Chautauqua | 459 | 151 | 560 | 160 | 268 | 49 | 6 | 77 |
| Chemung | 452 | 98 | 474 | 11 | 368 | 22 | 12 | 61 |
| Chenango | 181 | 73 | 155 | 7 | 81 | 29 | 32 | 6 |
| Clinton | 313 | 105 | 387 | 2 | 271 | 8 | 4 | 102 |
| Columbia | 492 | 141 | 461 | 26 | 316 | 37 | 2 | 80 |
| Cortland | 150 | 57 | 121 | 1 | 67 | 6 | 1 | 46 |
| Delaware | 195 | 67 | 224 | 8 | 121 | 5 | 2 | 88 |
| Dutchess | 3,142 | 680 | 3,075 | 1,891 | 602 | 458 | 52 | 72 |
| Erie | 7,432 | 1,440 | 7,459 | 2,208 | 3,921 | 858 | 152 | 320 |
| Essex | 205 | 44 | 242 | 68 | 135 | 27 | 6 | 6 |
| Franklin | 286 | 69 | 299 | 21 | 203 | 21 | 2 | 52 |
| Fulton | 545 | 135 | 557 | 88 | 317 | 55 | 5 | 92 |
| Genesee | 213 | 107 | 253 | 68 | 117 | 49 | 3 | 16 |
| Greene | 334 | 90 | 332 | 42 | 186 | 62 | 5 | 37 |
| Hamilton | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Herkimer | 510 | 137 | 473 | 48 | 278 | 40 | 2 | 105 |
| Jefferson | 408 | 149 | 566 | 15 | 348 | 41 | 8 | 154 |
| Lewis | 182 | 14 | 220 | 7 | 185 | 25 | 0 | 3 |
| Livingston | 445 | 58 | 431 | 19 | 377 | 7 | 0 | 28 |
| Madison | 185 | 65 | 181 | 11 | 121 | 7 | 0 | 42 |
| Monroe | 6,161 | 1,079 | 6,547 | 436 | 5,044 | 357 | 51 | 659 |
| Montgomery | 321 | 95 | 356 | 47 | 223 | 48 | 4 | 34 |
| Nassau | 15,713 | 7,048 | 16,355 | 3,694 | 5,884 | 4,414 | 501 | 1,862 |
| Niagara | 1,904 | 197 | 1,871 | 528 | 1,121 | 160 | 22 | 40 |
| Oneida | 3,524 | 533 | 3,418 | 192 | 2,677 | 213 | 256 | 80 |
| Onondaga | 2,687 | 967 | 3,122 | 130 | 2,014 | 318 | 41 | 619 |
| Ontario | 733 | 161 | 988 | 41 | 781 | 109 | 3 | 54 |
| Orange | 3,171 | 1,060 | 4,052 | 526 | 2,362 | 632 | 116 | 416 |
| Orleans | 210 | 15 | 237 | 58 | 162 | 11 | 2 | 4 |
| Oswego | 725 | 201 | 880 | 82 | 575 | 79 | 127 | 17 |
| Otsego | 243 | 72 | 175 | 6 | 122 | 31 | 3 | 13 |
| Putnam | 672 | 227 | 634 | 104 | 305 | 132 | 19 | 74 |
| Rensselaer | 1,071 | 149 | 1,120 | 87 | 854 | 110 | 15 | 54 |
| Rockland | 3,089 | 1,136 | 3,262 | 114 | 2,202 | 698 | 69 | 179 |
| St. Lawrence | 466 | 141 | 1,028 | 580 | 296 | 41 | 7 | 104 |
| Saratoga | 1,219 | 296 | 1,168 | 273 | 642 | 139 | 29 | 85 |
| Schenectady | 1,242 | 207 | 1,191 | 259 | 700 | 126 | 19 | 87 |
| Schoharie | 125 | 38 | 79 | 12 | 41 | 5 | 0 | 21 |
| Schuyler | 52 | 23 | 63 | 6 | 31 | 8 | 3 | 15 |
| Seneca | 814 | 34 | 913 | 2 | 847 | 5 | 1 | 58 |
| Steuben | 597 | 129 | 487 | 17 | 347 | 22 | 5 | 96 |
| Suffolk | 12,869 | 4,469 | 13,866 | 5,797 | 4,170 | 2,260 | 415 | 1,224 |
| Sullivan | 875 | 139 | 1,089 | 93 | 904 | 62 | 4 | 26 |
| Tioga | 132 | 37 | 126 | 10 | 86 | 13 | 2 | 15 |
| Tompkins | 300 | 80 | 278 | 22 | 179 | 24 | 12 | 41 |
| Ulster | 1,636 | 506 | 1,580 | 205 | 859 | 342 | 20 | 154 |
| Warren | 493 | 90 | 497 | 68 | 316 | 52 | 2 | 59 |
| Washington | 444 | 64 | 430 | 23 | 328 | 8 | 5 | 66 |
| Wayne | 741 | 114 | 881 | 13 | 742 | 7 | 0 | 119 |
| Westchester | 9,704 | 4,181 | 9,407 | 108 | 5,813 | 2,477 | 557 | 452 |
| Wyoming | 317 | 55 | 315 | 24 | 255 | 9 | 1 | 26 |
| Yates | 145 | 36 | 195 | 6 | 145 | 13 | 0 | 31 |



Figure 3
**Supreme Civil New Case Filings by Case Type - 2006**



Figure 4
**Supreme Civil Dispositions by Type of Disposition - 2006**



Figure 5
**Supreme Criminal and County Court
Felony Dispositions by Type of Disposition - 2006**

## Supreme Court (cont'd)

### Criminal Cases

Felony cases (criminal cases for which a sentence in excess of one year may be imposed) are heard in the Supreme Court in New York City and predominantly in the County Courts outside New York City. During the year, there were a total of 80,210 criminal filings in the Supreme and County Courts, of which 55,201 were felony cases.[1] Table 9 (page 12) shows filings and dispositions by county. Figure 5 (page 10) shows the breakdown of cases by type of disposition.

### Standards and Goals

The court system's performance standard for felony cases is disposition within six months from filing of the indictment, excluding periods when a case is not within the active management of the court, *e.g.*, where a warrant is outstanding. In 2006, 86% of felony case dispositions statewide were achieved within the six-month standard.

## County Court

There is a County Court in each county outside New York City. It is authorized to handle criminal prosecutions of both felonies and lesser offenses committed within the county, although in practice most minor offenses are handled by lower courts. County Court also has limited jurisdiction in civil cases, generally involving amounts up to $25,000. The statistical data for County Court's

[1]There were 22,768 misdemeanor cases heard in Supreme Court in 2005 in various specialized parts (e.g., integrated domestic violence courts).

criminal felony caseload is reported in Table 9 (page 12), in combination with the data for Supreme Court. County Court judges are elected to terms of 10 years.

## Court of Claims

The Court of Claims is a statewide trial court with exclusive jurisdiction over claims for monetary damages against the State of New York. The court's jurisdiction includes claims for the torts of the state's officers and employees, damages for unjust convictions and imprisonment and contracts with the state. It also has jurisdiction over all claims against certain state-related agencies such as the New York State Thruway Authority and the senior colleges of the City University of New York, as well as claims for the appropriation of real property against the New York State Power Authority. Court of Claims judges are appointed by the Governor, with the advice and consent of the Senate, to nine-year terms. The court hears cases—without juries—at nine locations around the state. During 2006, 1,482 claims were filed and 1,811 cases were decided.

## Surrogate's Court

The Surrogate's Court is established in every county and hears cases involving the affairs of decedents, including the probate of wills and the administration of estates as well as adoptions. Surrogates are elected to 10-year terms in each county outside New York City and to 14-year terms in each county in New York City. See Table 8 for 2006 filings and dispositions by case type.

**Table 8**
**SURROGATE'S COURT FILINGS AND DISPOSITIONS: PROCEEDINGS BY CASE TYPE - 2006**

| Case Type | TOTAL STATE | | NYC | | OUTSIDE NYC | |
|---|---|---|---|---|---|---|
| | Filings | Dispositions* | Filings | Dispositions* | Filings | Dispositions* |
| **Total** | **144,548** | **116,231** | **37,644** | **33,346** | **106,904** | **82,885** |
| Probate | 42,586 | 44,649 | 12,918 | 11,637 | 29,668 | 33,012 |
| Administration | 14,542 | 14,416 | 7,142 | 5,816 | 7,400 | 8,600 |
| Voluntary Admin. | 17,743 | 17,743 | 5,827 | 5,827 | 11,916 | 11,916 |
| Accounting | 28,505 | 7,379 | 2,412 | 1,513 | 26,093 | 5,866 |
| Inter *Vivos* Trust | 384 | 161 | 22 | 8 | 362 | 153 |
| Miscellaneous | 13,943 | 11,700 | 4,427 | 4,424 | 9,516 | 7,276 |
| Guardianship | 19,986 | 12,002 | 4,365 | 3,337 | 15,621 | 8,665 |
| Adoption | 2,197 | 3,513 | 518 | 771 | 1,679 | 2,742 |
| Estate Tax | 4,662 | 4,668 | 13 | 13 | 4,649 | 4,655 |

*Includes orders and decrees signed.

Table 9
**SUPREME CRIMINAL AND COUNTY COURT: FELONY CASES - 2006**

| County | Filings | | | Dispositions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total | Indictments | SCI's* | Total | Guily Pleas | Jury Convictions | Jury Acquittals | Non-Jury Verdicts | Dismissals | Other |
| **TOTAL STATE** | **55,201** | **34,519** | **20,682** | **55,166** | **48,046** | **1,393** | **596** | **398** | **3,730** | **1,003** |
| NYC | 25,930 | 20,063 | 5,867 | 25,702 | 21,087 | 782 | 400 | 135 | 2,674 | 624 |
| New York | 8,318 | 7,290 | 1,028 | 8,183 | 6,501 | 316 | 103 | 42 | 1,067 | 154 |
| Bronx | 5,866 | 4,863 | 1,003 | 5,498 | 4,402 | 97 | 111 | 22 | 681 | 185 |
| Kings | 6,516 | 5,415 | 1,101 | 6,809 | 5,644 | 219 | 94 | 26 | 599 | 227 |
| Queens | 4,490 | 2,026 | 2,464 | 4,416 | 3,834 | 136 | 87 | 45 | 268 | 46 |
| Richmond | 740 | 469 | 271 | 796 | 706 | 14 | 5 | 0 | 59 | 12 |
| Outside NYC | 29,271 | 14,456 | 14,815 | 29,464 | 26,959 | 611 | 196 | 263 | 1,056 | 379 |
| Albany | 1,112 | 724 | 388 | 1,106 | 984 | 36 | 14 | 0 | 70 | 2 |
| Allegany | 125 | 74 | 51 | 144 | 120 | 5 | 1 | 0 | 9 | 9 |
| Broome | 860 | 471 | 389 | 871 | 782 | 26 | 6 | 7 | 48 | 2 |
| Cattaraugus | 244 | 118 | 126 | 245 | 238 | 3 | 1 | 1 | 2 | 0 |
| Cayuga | 157 | 108 | 49 | 141 | 128 | 5 | 2 | 2 | 2 | 2 |
| Chautauqua | 611 | 147 | 464 | 624 | 602 | 3 | 2 | 2 | 11 | 4 |
| Chemung | 380 | 336 | 44 | 386 | 306 | 12 | 2 | 36 | 24 | 6 |
| Chenango | 108 | 48 | 60 | 135 | 130 | 4 | 0 | 0 | 1 | 0 |
| Clinton | 172 | 97 | 75 | 152 | 143 | 7 | 1 | 0 | 0 | 1 |
| Columbia | 112 | 31 | 81 | 110 | 107 | 2 | 1 | 0 | 0 | 0 |
| Cortland | 177 | 94 | 83 | 182 | 166 | 7 | 5 | 1 | 3 | 0 |
| Delaware | 74 | 26 | 48 | 78 | 75 | 2 | 0 | 0 | 1 | 0 |
| Dutchess | 515 | 146 | 369 | 510 | 439 | 7 | 2 | 0 | 16 | 46 |
| Erie | 2,269 | 999 | 1,270 | 2,377 | 2,072 | 54 | 13 | 79 | 106 | 53 |
| Essex | 112 | 85 | 27 | 82 | 73 | 2 | 0 | 0 | 6 | 1 |
| Franklin | 152 | 87 | 65 | 133 | 122 | 2 | 3 | 0 | 5 | 1 |
| Fulton | 150 | 73 | 77 | 140 | 135 | 2 | 0 | 0 | 0 | 3 |
| Genesee | 250 | 124 | 126 | 244 | 229 | 10 | 2 | 0 | 2 | 1 |
| Greene | 95 | 44 | 51 | 93 | 86 | 1 | 1 | 0 | 5 | 0 |
| Hamilton | 13 | 6 | 7 | 12 | 11 | 0 | 0 | 0 | 1 | 0 |
| Herkimer | 241 | 80 | 161 | 233 | 225 | 3 | 0 | 0 | 4 | 1 |
| Jefferson | 603 | 156 | 447 | 590 | 573 | 3 | 2 | 1 | 8 | 3 |
| Lewis | 227 | 36 | 191 | 194 | 187 | 0 | 0 | 2 | 1 | 4 |
| Livingston | 238 | 152 | 86 | 263 | 236 | 8 | 0 | 4 | 9 | 6 |
| Madison | 100 | 79 | 21 | 83 | 64 | 4 | 3 | 5 | 5 | 2 |
| Monroe | 2,426 | 1,158 | 1,268 | 2,421 | 2,082 | 85 | 36 | 55 | 127 | 36 |
| Montgomery | 120 | 40 | 80 | 116 | 111 | 3 | 2 | 0 | 0 | 0 |
| Nassau | 2,747 | 787 | 1,960 | 2,782 | 2,546 | 59 | 14 | 16 | 129 | 18 |
| Niagara | 417 | 273 | 144 | 447 | 377 | 15 | 3 | 1 | 29 | 22 |
| Oneida | 707 | 492 | 215 | 716 | 673 | 7 | 2 | 3 | 20 | 11 |
| Onondaga | 1,489 | 778 | 711 | 1,549 | 1,384 | 37 | 12 | 2 | 102 | 12 |
| Ontario | 435 | 161 | 274 | 411 | 389 | 14 | 3 | 1 | 1 | 3 |
| Orange | 880 | 522 | 358 | 997 | 928 | 20 | 5 | 7 | 27 | 10 |
| Orleans | 123 | 96 | 27 | 126 | 112 | 5 | 2 | 0 | 5 | 2 |
| Oswego | 266 | 130 | 136 | 263 | 245 | 4 | 4 | 2 | 7 | 1 |
| Otsego | 86 | 57 | 29 | 89 | 72 | 5 | 1 | 0 | 5 | 6 |
| Putnam | 107 | 47 | 60 | 101 | 95 | 2 | 1 | 0 | 3 | 0 |
| Rensselaer | 431 | 171 | 260 | 444 | 419 | 6 | 5 | 0 | 13 | 1 |
| Rockland | 586 | 482 | 104 | 690 | 642 | 11 | 4 | 6 | 24 | 3 |
| St. Lawrence | 303 | 191 | 112 | 289 | 256 | 6 | 7 | 1 | 19 | 0 |
| Saratoga | 286 | 104 | 182 | 291 | 286 | 3 | 0 | 0 | 1 | 1 |
| Schenectady | 532 | 330 | 202 | 607 | 561 | 11 | 2 | 0 | 21 | 12 |
| Schoharie | 67 | 31 | 36 | 64 | 58 | 5 | 1 | 0 | 0 | 0 |
| Schuyler | 57 | 19 | 38 | 52 | 49 | 1 | 0 | 0 | 2 | 0 |
| Seneca | 95 | 46 | 49 | 76 | 67 | 2 | 1 | 1 | 2 | 3 |
| Steuben | 390 | 179 | 211 | 404 | 370 | 7 | 3 | 3 | 15 | 6 |
| Suffolk | 3,793 | 2,354 | 1,439 | 3,641 | 3,454 | 26 | 13 | 11 | 103 | 34 |
| Sullivan | 366 | 93 | 273 | 347 | 338 | 3 | 1 | 0 | 0 | 5 |
| Tioga | 133 | 108 | 25 | 136 | 125 | 3 | 0 | 6 | 2 | 0 |
| Tompkins | 170 | 129 | 41 | 176 | 159 | 4 | 1 | 0 | 10 | 2 |
| Ulster | 504 | 291 | 213 | 446 | 425 | 8 | 3 | 0 | 8 | 2 |
| Warren | 240 | 89 | 151 | 245 | 234 | 3 | 0 | 0 | 6 | 2 |
| Washington | 279 | 221 | 58 | 243 | 230 | 3 | 0 | 0 | 10 | 0 |
| Wayne | 247 | 166 | 81 | 270 | 223 | 7 | 3 | 0 | 5 | 32 |
| Westchester | 1,667 | 494 | 1,173 | 1,652 | 1,583 | 35 | 5 | 8 | 15 | 6 |
| Wyoming | 146 | 52 | 94 | 168 | 158 | 2 | 0 | 0 | 6 | 2 |
| Yates | 79 | 24 | 55 | 77 | 75 | 1 | 1 | 0 | 0 | 0 |

*Superior Court Information

## Family Court

The Family Court is established in each county and the City of New York to hear matters involving children and families. Its jurisdiction includes:

— adoption
— guardianship
— foster care approval and review
— delinquency
— persons in need of supervision
— family offense (domestic violence)
— child protective proceedings (abuse and neglect)
— termination of parental rights
— custody and visitation
— support.

Family Court judges are elected to 10-year terms in each county outside New York City and are appointed to 10-year terms by the mayor in New York City.

A breakdown of 2006 filings and dispositions is contained in Table 10.[1] Cases involving paternity, support, custody/visitation and family offenses comprised 86% of the caseload. The remaining cases involved child protective proceedings (7%), juvenile delinquency or designated felonies (3%), persons in need of supervision (1%), adoption (1%) and termination of parental rights (1%). All other case types comprised 1% of the caseload.

### Standards and Goals

The performance standard for Family Court cases is disposition within 180 days of the commencement of the proceeding, excluding periods when a case is not within the active management control of the court. During the year, 94% of dispositions statewide were reached within the standard.

_____

[1] Statistical data reported pursuant to sections 213 and 385 of the Family Court Act is published separately as Volume II of the annual report.

**Table 10**
**FAMILY COURT AND SUPREME IDV[a] - FILINGS AND DISPOSITIONS[b] BY TYPE OF PETITION - 2006**

| Type of Petition | TOTAL STATE | | NYC | | OUTSIDE NYC | |
|---|---|---|---|---|---|---|
| | Filings | Dispositions | Filings | Dispositions | Filings | Dispositions |
| **Total** | **680,791** | **681,181** | **213,857** | **216,393** | **466,934** | **464,788** |
| Termination of Parental Rights | 3,906 | 5,198 | 1,659 | 2,978 | 2,247 | 2,220 |
| Surrender of Child | 2,302 | 2,457 | 622 | 859 | 1,680 | 1,598 |
| Child Protective (Neglect and Abuse) | 44,394 | 41,241 | 13,896 | 10,099 | 30,498 | 31,142 |
| Juvenile Delinquency | 22,099 | 22,705 | 8,722 | 9,544 | 13,377 | 13,161 |
| Designated Felony | 671 | 534 | 316 | 236 | 355 | 298 |
| Persons in Need of Supervision | 9,146 | 9,702 | 1,421 | 1,437 | 7,725 | 8,265 |
| Adoption | 4,151 | 4,331 | 1,869 | 1,971 | 2,282 | 2,360 |
| Adoption Certification | 475 | 473 | 130 | 139 | 345 | 334 |
| Guardianship | 4,223 | 4,212 | 2,283 | 2,239 | 1,940 | 1,973 |
| Custody/Visitation | 180,313 | 177,686 | 45,462 | 43,409 | 134,851 | 134,277 |
| Foster Care Review | 159 | 648 | 7 | 185 | 152 | 463 |
| Foster Care Placement | 1,064 | 1,036 | 438 | 440 | 626 | 596 |
| Physically Handicapped | 0 | 0 | 0 | 0 | 0 | 0 |
| Family Offense | 51,065 | 50,735 | 21,932 | 21,778 | 29,133 | 28,957 |
| Paternity | 39,605 | 42,035 | 20,725 | 22,672 | 18,880 | 19,363 |
| Support | 304,293 | 304,958 | 88,233 | 91,868 | 216,060 | 213,090 |
| Uniform Interstate Family Support Act | 12,206 | 12,592 | 6,058 | 6,453 | 6,148 | 6,139 |
| Consent to Marry | 8 | 10 | 4 | 4 | 4 | 6 |
| Other | 711 | 628 | 80 | 82 | 631 | 546 |

[a]See Figure 9 for nonfamily case types in the IDV courts.
[b]Petition type may change between filing and disposition.

## TRIAL COURTS OF LIMITED JURISDICTION IN NEW YORK CITY
## New York City Civil Court

The New York City Civil Court has jurisdiction over civil cases involving amounts up to $25,000. It includes a small claims part and a commercial claims part for the informal disposition of matters not exceeding $5,000. It also has a housing part for landlord-tenant proceedings. Civil Court judges are elected to 10-year terms. Housing judges are appointed by the chief administrator to five-year terms.

Table 11 shows the breakdown of filings and dispositions by case type and county. Figure 6 shows 2006 filings by case type.

**Table 11**

**NEW YORK CITY CIVIL COURT: Filings & Dispositions by Case Type and County - 2006**

| Total[a] | |
|---|---|
| Filings: | 969,654 |
| Dispositions: | 669,619 |

| | CIVIL ACTIONS | | HOUSING | | SMALL CLAIMS | | COMMERCIAL CLAIMS | |
|---|---|---|---|---|---|---|---|---|
| | Filings[b] | Dispositions[c] | Filings[b] | Dispositions[c] | Filings | Dispositions | Filings | Dispositions |
| **New York City** | **619,934** | **359,188** | **311,580** | **266,285** | **29,434** | **33,869** | **8,706** | **10,277** |
| New York | 81,932 | 43,952 | 82,105 | 64,109 | 6,536 | 7,113 | 2,462 | 2,836 |
| Bronx | 115,619 | 76,230 | 92,193 | 97,946 | 4,118 | 4,697 | 980 | 1,083 |
| Kings | 214,861 | 115,849 | 84,555 | 69,063 | 9,297 | 9,080 | 1,963 | 1,952 |
| Queens | 181,706 | 107,733 | 46,935 | 31,226 | 7,652 | 10,985 | 2,446 | 3,491 |
| Richmond | 25,816 | 15,424 | 5,792 | 3,941 | 1,831 | 1,994 | 855 | 915 |

[a]The large difference between the number of filings and dispositions is due to the number of cases filed but never pursued by the filing party.
[b]Includes both answered and unanswered cases.
[c]Includes courtroom dispositions and default judgments.



**Figure 6**

**NYC Civil Court Filings by Case Type - 2006**

Commercial Claims 1%
Small Claims 3%
Housing 32%
Civil Actions 64%

## New York City Criminal Court

The New York City Criminal Court handles misdemeanors and violations. Criminal Court judges, appointed by the mayor to 10-year terms, also arraign felonies and may handle other preliminary (pre-indictment) felony proceedings.

During 2006, close to three-quarters of the arrest cases filed were misdemeanors, with 48% of all cases reaching disposition by plea. Another 32% were dismissed; 4% were sent to the grand jury; 15% were disposed of by other means; and 1% pled to a superior court information. Only 0.2% of the dispositions in Criminal Court were by verdict after trial. Table 12 shows filings and dispositions by county for both arrest cases and summons cases (cases in which an appearance ticket, returnable in court, is issued to the defendant). Figure 7 shows filings by case type.

**Table 12**
**NEW YORK CITY CRIMINAL COURT: Filings and Dispositions by Case Type and County - 2006**

|  | ARREST CASES | | SUMMONS CASES | |
| --- | --- | --- | --- | --- |
|  | Filings | Dispositions | Filings* | Dispositions |
| **New York City** | **331,339** | **333,486** | **523,579** | **380,278** |
| New York | 96,386 | 96,900 | 123,981 | 85,874 |
| Bronx | 67,523 | 69,191 | 120,182 | 76,181 |
| Kings | 89,735 | 90,918 | 162,225 | 133,380 |
| Queens | 66,906 | 66,218 | 100,503 | 72,004 |
| Richmond | 10,789 | 10,259 | 16,688 | 12,839 |

*Includes both answered and unanswered cases.



**Figure 7**
**NYC Criminal Court Filings by Case Type - 2006**

Other 4%
Felony 18%
Violation/Infraction 7%
Misdemeanor 71%

**TRIAL COURTS OF LIMITED JURISDICTION OUTSIDE NEW YORK CITY**

## City and District Courts

City Courts and District Courts have essentially the same jurisdiction, both civil and criminal. District Courts exist only in Nassau County and the five western towns of Suffolk County. Both types of courts have civil jurisdiction up to $15,000. Some have a small claims part for the informal disposition of matters not exceeding $5,000 as well as a housing part for landlord-tenant disputes and housing violations. Their criminal jurisdiction extends to misdemeanors, violations and petty offenses (although some locations have administrative bureaus that handle traffic and/or parking violations). They may also handle preliminary (pre-indictment) felony proceedings.

The term of office for full-time City Court judges is 10 years; for part-time judges it is six years. District Court judges are elected to six-year terms.

In 2006, there were a total of 1,300,132 filings and 1,145,237 dispositions in the City and District Courts.

Table 13 (page 17) contains a breakdown of the filings by location and case type. Figure 8 shows filings by case type.

## Town and Village Justice Courts

Town and Village Courts have criminal jurisdiction over violations and misdemeanors and civil jurisdiction over claims of up to $3,000 (including small claims cases not exceeding $3,000). The majority of cases handled by the justice courts are criminal matters such as minor traffic offenses, drunk-driving cases and zoning violations. They may also handle preliminary proceedings in felony cases.

There are approximately 1,277 justice courts presided over by 2,200 town and village justices, who are elected to four-year terms. There are 2,182 justice positions, and some individuals serve in more than one position. Although all positions are part-time, justices may be called at any time for an arraignment. Close to 72% of these justices are not attorneys and must complete a special training course. All must attend annual continuing judicial education programs.



Figure 8

**City & District Court Filings by Case Type - 2006**

Small Claims 3%
Civil 18%
Criminal 24%
Commercial Claims 1%
Parking 12%
Housing 7%
Motor Vehicle 35%

Table 13

**CITY AND DISTRICT COURTS: FILINGS BY CASE TYPE - 2006**

| Total Filings | 1,300,132 |
|---|---|

| Location | Criminal | MV | Parking | Civil | Small Claims | Housing | Commercial |
|---|---|---|---|---|---|---|---|
| **TOTAL** | **314,644** | **469,874** | **154,139** | **229,434** | **32,729** | **87,907** | **11,405** |
| Albany | 9,712 | 23,851 | 0 | 5,039 | 963 | 4,022 | 254 |
| Amsterdam | 1,006 | 2,580 | 0 | 1,155 | 161 | 247 | 42 |
| Auburn | 1,532 | 3,100 | 919 | 1,261 | 322 | 710 | 51 |
| Batavia | 1,015 | 1,857 | 154 | 610 | 141 | 99 | 83 |
| Beacon | 923 | 5,532 | 0 | 490 | 99 | 128 | 17 |
| Binghamton | 4,550 | 5,802 | 4,480 | 3,958 | 517 | 1,411 | 314 |
| Buffalo | 23,678 | 3,657 | 0 | 21,658 | 3,101 | 8,702 | 1,005 |
| Canandaigua | 888 | 3,927 | 49 | 1,255 | 128 | 96 | 51 |
| Cohoes | 1,554 | 2,453 | 0 | 502 | 72 | 308 | 7 |
| Corning | 933 | 2,852 | 69 | 1,007 | 127 | 103 | 44 |
| Cortland | 1,943 | 2,797 | 1,022 | 917 | 162 | 206 | 32 |
| Dunkirk | 1,090 | 760 | 236 | 674 | 137 | 50 | 45 |
| Elmira | 3,481 | 3,649 | 449 | 1,972 | 332 | 799 | 85 |
| Fulton | 843 | 2,465 | 21 | 1,361 | 132 | 167 | 16 |
| Geneva | 1,153 | 3,129 | 0 | 467 | 75 | 233 | 24 |
| Glen Cove | 865 | 4,305 | 3,566 | 22 | 90 | 212 | 49 |
| Glens Falls | 1,679 | 3,271 | 196 | 1,241 | 136 | 220 | 32 |
| Gloversville | 1,205 | 2,070 | 75 | 679 | 155 | 330 | 23 |
| Hornell | 717 | 1,178 | 0 | 616 | 86 | 279 | 24 |
| Hudson | 869 | 1,137 | 0 | 549 | 136 | 116 | 125 |
| Ithaca | 2,087 | 6,141 | 753 | 1,211 | 252 | 6,583 | 88 |
| Jamestown | 2,915 | 2,567 | 1,512 | 2,106 | 347 | 225 | 120 |
| Johnstown | 502 | 1,476 | 1 | 401 | 67 | 62 | 37 |
| Kingston | 2,209 | 5,653 | 100 | 1,682 | 245 | 676 | 182 |
| Lackawanna | 1,493 | 4,624 | 103 | 510 | 318 | 800 | 85 |
| Little Falls | 358 | 771 | 0 | 299 | 158 | 21 | 27 |
| Lockport | 1,941 | 6,825 | 0 | 2,090 | 252 | 168 | 81 |
| Long Beach | 3,294 | 4,183 | 17,047 | 11 | 93 | 188 | 11 |
| Mechanicville | 377 | 1,306 | 0 | 429 | 107 | 93 | 59 |
| Middletown | 2,169 | 6,046 | 118 | 1,832 | 309 | 757 | 148 |
| Mount Vernon | 6,338 | 14,097 | 0 | 3,296 | 414 | 2,421 | 118 |
| Newburgh | 4,885 | 7,021 | 1,434 | 2,046 | 217 | 1,266 | 83 |
| New Rochelle | 4,991 | 17,796 | 77,882 | 2,983 | 388 | 1,027 | 213 |
| Niagara Falls | 6,093 | 13,433 | 19,131 | 3,214 | 1,004 | 1,621 | 156 |
| North Tonawanda | 1,634 | 4,985 | 2 | 1,029 | 337 | 319 | 71 |
| Norwich | 704 | 671 | 44 | 823 | 109 | 39 | 93 |
| Ogdensburg | 975 | 997 | 0 | 1,390 | 145 | 69 | 153 |
| Olean | 864 | 2,250 | 82 | 739 | 110 | 115 | 21 |
| Oneida | 1,014 | 2,870 | 32 | 1,190 | 99 | 80 | 40 |
| Oneonta | 1,066 | 1,103 | 787 | 350 | 227 | 59 | 81 |
| Oswego | 1,613 | 3,582 | 10 | 1,377 | 237 | 71 | 37 |
| Peekskill | 3,573 | 5,264 | 0 | 699 | 157 | 486 | 38 |
| Plattsburgh | 1,639 | 5,414 | 0 | 1,256 | 273 | 193 | 65 |
| Port Jervis | 1,196 | 2,742 | 71 | 371 | 85 | 178 | 16 |
| Poughkeepsie | 3,367 | 7,569 | 1,239 | 2,027 | 424 | 1,528 | 176 |
| Rensselaer | 827 | 2,076 | 0 | 658 | 46 | 89 | 64 |
| Rochester | 17,775 | 6,142 | 0 | 15,862 | 2,665 | 7,348 | 629 |
| Rome | 2,084 | 7,287 | 1,245 | 2,036 | 248 | 508 | 47 |
| Rye | 366 | 4,455 | 0 | 121 | 72 | 19 | 107 |
| Salamanca | 962 | 1,897 | 0 | 302 | 114 | 42 | 10 |
| Saratoga Springs | 1,921 | 5,327 | 465 | 2,394 | 317 | 173 | 173 |
| Schenectady | 5,271 | 7,884 | 638 | 3,068 | 678 | 2,276 | 126 |
| Sherrill | 157 | 818 | 0 | 371 | 34 | 0 | 11 |
| Syracuse | 19,097 | 35,662 | 0 | 11,405 | 1,182 | 6,484 | 344 |
| Tonawanda | 1,180 | 4,786 | 120 | 550 | 191 | 95 | 99 |
| Troy | 3,179 | 11,396 | 0 | 1,913 | 315 | 5,615 | 69 |
| Utica | 6,440 | 9,592 | 22 | 2,886 | 490 | 812 | 178 |
| Watertown | 1,949 | 2,852 | 0 | 1,484 | 235 | 246 | 69 |
| Watervliet | 1,060 | 2,815 | 0 | 453 | 62 | 342 | 7 |
| White Plains | 4,386 | 26,017 | 1,905 | 1,621 | 584 | 954 | 282 |
| Yonkers | 15,615 | 31,707 | 0 | 5,854 | 637 | 8,255 | 218 |
| Nassau District | 35,878 | 36,374 | 0 | 49,483 | 5,233 | 7,232 | 1,820 |
| Suffolk District | 79,564 | 63,029 | 18,160 | 50,179 | 6,180 | 9,934 | 2,630 |

## PROBLEM-SOLVING COURTS

Problem-solving courts, located throughout the state, offer new solutions to problems such as addiction, domestic violence, child neglect and quality-of-life crimes in an effort to end the revolving door of justice and improve the outcomes for victims, communities and defendants. See Office of the Deputy Chief Administrative Judge for Court Operations and Planning (p. 26 ) for more about these courts.

### Drug Treatment Courts

Drug treatment courts provide court-mandated substance abuse treatment to nonviolent addicted adult and juvenile offenders, as well as to parents charged in Family Court child neglect cases, in an effort to break the cycle of addiction and recidivism. Participants are subject to rigorous judicial monitoring. As of the end of 2006, there were 170 drug courts and 26 in the planning stage.  For more information, see the Office of Court Drug Treatment Programs (page 30).

### Domestic Violence Courts

Domestic violence (DV) courts were introduced in 1996 to handle cases of violence between intimate partners in an effort to enhance offender accountability, increase victim safety and facilitate access to specialized services. These courts handle both felony and misdemeanor cases, bringing together a range of criminal justice and social service partners to provide a coordinated response to domestic violence. In 2006, there were 26 DV courts around the state.

### Integrated Domestic Violence Courts

In 2001, the DV court concept was taken a step further with the development of integrated domestic violence (IDV) courts, in which one judge is assigned to handle a victim's related cases where domestic violence is involved. In approximately 20% of criminal domestic violence

cases, there is a related matter in another court. Under this "one-family/one-judge" model, both criminal and civil matters (such as custody, visitation, civil protection orders and matrimonial actions) are handled by one judge rather than various judges in different courts. This approach promotes better and more consistent judicial decision-making and requires fewer court appearances by the victim. Like DV courts, IDV courts ensure intensive offender monitoring and accountability and enhanced access to services for victims and their families. At the end of 2006, there were 36 IDV courts in operation. Table 14 (page 19)  shows caseload activity for IDV courts in 2006: 15,265 new cases were assigned, and 2,875 new families were added to their dockets. Figure 9 breaks down the filings by case type.



**Figure 9**

**Integrated Domestic Violence Courts: Filings by Case Type - 2006**

- Other/Unknown 2%
- Criminal 28%
- Custody, Visitation, Support & Paternity 44%
- Family Offense 19%
- Neglect/Abuse 4%
- Matrimonial 3%

### Mental Heath Courts

Mental health courts aim to better assess and evaluate offenders with mental illness and, where appropriate, link these offenders with court-monitored mental health treatment in an effort to provide them with structure and assistance in leading normal lives. In 2006, there were ten mental health courts in operation and two in the planning stages.

**Table 14**

**CASELOAD ACTIVITY IN INTEGRATED DOMESTIC VIOLENCE COURTS - 2006**

| Location | Cases | | | New Families |
|---|---|---|---|---|
| | Filings | Dispositions | Pending | |
| **Total State** | **15,094** | **13,839** | **5,422** | **2,681** |
| Allegany | 60 | 13 | 47 | 14 |
| Broome | 123 | 83 | 42 | 22 |
| Bronx | 1,281 | 1,361 | 544 | 265 |
| Cayuga | 137 | 139 | 33 | 24 |
| Chautauqua | 117 | 112 | 24 | 30 |
| Clinton | 368 | 345 | 74 | 43 |
| Dutchess | 2 | 0 | 2 | 1 |
| Erie | 1,321 | 1,323 | 437 | 246 |
| Essex | 118 | 89 | 55 | 15 |
| Franklin | 185 | 203 | 41 | 17 |
| Fulton | 110 | 103 | 11 | 18 |
| Hamilton | 13 | 11 | 2 | 3 |
| Kings | 2,438 | 1,655 | 1,101 | 567 |
| Monroe | 941 | 935 | 210 | 160 |
| Montgomery | 25 | 13 | 12 | 4 |
| Nassau | 653 | 516 | 277 | 150 |
| New York | 2 | 0 | 2 | 1 |
| Niagara | 132 | 97 | 40 | 38 |
| Onondaga | 624 | 614 | 255 | 136 |
| Orange | 407 | 273 | 175 | 73 |
| Oswego | 127 | 103 | 34 | 26 |
| Queens | 1,339 | 1,321 | 407 | 254 |
| Rensselaer | 2,009 | 1,957 | 610 | 161 |
| Richmond | 411 | 504 | 125 | 85 |
| Rockland | 69 | 33 | 36 | 11 |
| Schenectady | 195 | 203 | 32 | 36 |
| St. Lawrence | 100 | 71 | 29 | 24 |
| Suffolk | 423 | 464 | 244 | 52 |
| Tompkins | 351 | 329 | 96 | 49 |
| White Plains | 404 | 378 | 205 | 72 |
| Wyoming | 287 | 241 | 76 | 27 |
| Yonkers | 322 | 350 | 144 | 57 |

*The Oneida, Ontario, Steuben, Genesee and Orleans IDV Courts opened in 2006 but did not yet have data to report.

**Sex Offense Courts**

Sex offense courts incorporate consistent judicial monitoring of offender compliance with court orders, coordination with supervisory agencies, and links to victim services to better tailor the court's response in sex offense cases. As of 2006, there were four sex offense courts in operation and one in the planning stage.

**Community Courts**

New York's community courts—piloted by the Center for Court Innovation (see page 29)—bring together government agencies, local civic organizations, businesses, social service providers and community residents to solve neighborhood problems and spur local revitalization. New York is an international leader in the development of community courts, with courts being piloted or planned in nearly three dozen U.S. cities and

several countries, including South Africa, Canada, Australia and the United Kingdom.

The Midtown Community Court in Manhattan, the first in the country, has been addressing quality-of-life issues since 1993, dealing with nonviolent crimes such as prostitution, graffiti and illegal vending through community restitution and social service sentences. Midtown handles an average of 22,000 cases a year. On-site services include an adult job-placement program and a job-readiness program for young adults. Community courts in Hempstead and Syracuse also focus on low-level crime and community service.

The Red Hook Community Justice Center in Brooklyn is the nation's first multi-jurisdictional community court, with a single judge hearing criminal, housing and family court cases. The Harlem Community

Justice Center focuses on youth crime, housing and the impact of offenders released from confinement, while the Bronx Community Solutions program expands the traditional community court model, bringing the community court approach to all misdemeanor cases in the Bronx criminal courthouse. Through the program, over 18,000 days of community and social service were completed in 2006.

### COMMUNITY DISPUTE RESOLUTION CENTERS PROGRAM

The Unified Court System provides funding to a network of not-for-profit community dispute resolution centers (CDRCs). The grant program is administered, monitored and evaluated by the OCA Division of Court Operations' Office of Alternative Dispute Resolution and Court Improvement Programs. CDRCs provide a range of dispute resolution services including mediation, conciliation and arbitration. Matters are referred by the courts and local government and community-based agencies including police, social services and probation departments. Parties can also contact CDRCs directly.

The majority of matters are mediated. CDRCs provide mediation in minor criminal, small claims, housing and family matters such as PINS (persons in need of supervision), custody, visitation and divorce. Matters referred to arbitration include consumer-merchant disputes, matrimonial property division issues and automobile Lemon Law cases.

During 2006, CDRCs served 92,078[1] people and managed 35,983 matters, resolving 77% (16,244 cases) in which dispute resolution services were provided (21,055 cases). Family cases accounted for 12,284 or 34% of cases, including 9,650 child custody, visitation or support cases; 720 divorce or separation cases; and 1,914 PINS cases. On average, a single-hearing mediation or arbitration took 19 days from intake to final disposition; complex cases, requiring multiple sessions, took 67 days. Appendix C (page 45) shows the CDRCs' 2006 workload by county.

---

[1] "Persons served" was set to "1" for each case in which the number of persons served was not reported.

CHAPTER 2

# Administration Highlights

*Overview*

Under the New York State Constitution, the Chief Judge of the Court of Appeals is the Chief Judge of the State and its chief judicial officer. The Chief Judge appoints a Chief Administrative Judge of the Courts (or Chief Administrator) with the advice and consent of the Administrative Board of the Courts, which consists of the Chief Judge and the Presiding Justices of the four Appellate Divisions of the Supreme Court. The Chief Judge establishes statewide administrative standards and policies after consultation with the Administrative Board and approval by the Court of Appeals.

The Chief Administrative Judge supervises the administration and operation of the trial courts, assisted by the First Deputy Chief Administrative Judge and two Deputy Chief Administrative Judges responsible for day-to-day court operations (one for New York City courts and one for courts outside New York City). Other deputies are responsible for problem-solving courts, access to justice initiatives and matrimonial matters (pages 26-28). On-site management of the trial courts, including personnel and budget matters, is vested in local judicial district administrative judges.

The Chief Administrative Judge also directs the Office of Court Administration (OCA), assisted by the First Deputy Chief Administrative Judge and OCA's Chief of Operations and Administrative Director. Counsel to the Chief Administrative Judge directs the legal and legislative work of the Counsel's Office (see Chapter 4).

For additional information, go to www.nycourts.gov.

## Offices of the Chief of Operations and the Administrative Director of OCA

The Office of the Administrative Director is responsible for the day-to-day operations of the Office of Court Administration while the Office of the Chief of Operations manages long-term projects and initiatives. Together the Administrative Director and Chief of Operations oversee OCA's divisions and offices, including the Divisions of Administrative Services, Court Operations, Financial Management, Human Resources and Technology, the Department of Public Safety and the Offices of Court Facilities Management, Court Research, Justice Court Support and Public Affairs.

### Division of Administrative Services

The Division of Administrative Services provides support services to the trial courts and OCA, including key office management functions relating to the day-to-day operation of central and local administration; major purchasing and revenue-processing responsibilities; high-volume data-entry services and management of criminal history searches for private businesses and government agencies; management of various registration, certification and applications processes; and oversight of the Continuing Legal Education (CLE) Department. (See Appendix D on page 46 for statistics relating to attorney registration and Appendix E on page 47 for statistics relating to the Secure Pass unit, the criminal history search unit, fiduciary appointment reporting, retainer and closing statements, and adoption affidavits.) For CLE information, visit www.nycourts.gov/attorneys/cle or email cle@courts.state.ny.us.

### Division of Court Operations

The Division of Court Operations provides technical and other support to the trial courts in a variety of areas including court interpreting services, legal information, records management, alternative dispute

resolution, child welfare-related court improvements and parent education.

In 2006, the division began implementation of the recommendations outlined in the court system's *Action Plan on Court Interpreting,* which calls for expanded recruitment and improved retention, testing, certification and training of interpreters, among other measures, in most effectively meeting the language needs of litigants with limited English proficiency or a hearing impairment. The division's Office of Court Interpreting Services worked with the UCS Exam Unit to enhance testing and certification procedures for prospective interpreters, also developing and presenting relevant training programs for interpreters, judges and court personnel, devising a quality control program to identify and address interpreting services-related issues, expanding the use of video and other technologies in providing real-time interpreting services to remote court sites with limited interpreter resources, creating and disseminating materials to inform the public about available resources—including foreign-language versions of court forms, documents and guides—and meeting with local community leaders, bar members and others to publicize these resources.

The Parent Education and Awareness Program, which certifies and maintains standards for New York State parent education providers that accept court-referred clients, was integrated into the division in 2006. Parent education offers divorcing or separating parents (whether married or unmarried) information and strategies for dealing with their new family situation and protecting their children from unnecessary emotional distress during this difficult transition. In July 2006, Part 144 of the Rules of the Chief Administrator (22 NYCRR Part 144) was adopted to provide that a court may, in its discretion, order parents to attend a certified parent education program. In 2006, 3,623 parents attended certified parent education programs, with the division working to expand the network of certified providers statewide and raise awareness about local programs.

The division's Office of Alternative Dispute Resolution (ADR) was expanded in late 2005 to

include oversight of the courts' statewide network of Children's Centers and the Child Welfare Court Improvement Project and has been renamed the Office of Alternative Dispute Resolution and Court Improvement Programs (CIP). Several ADR initiatives were launched in 2006, including a comprehensive ADR program for civil, commercial and matrimonial matters in the Eighth Judicial District. Plans were also set in motion for new ADR programs in the Commercial Division, and mediators trained to handle matrimonial and guardianship matters in Suffolk County Supreme Court. The office also continued to oversee the UCS grant program for the court system's statewide network of Community Dispute Resolution Centers (see page 20).

During 2006, 56,000 youngsters visited Children's Centers—located in courts around the state to provide a safe place where children can wait while their parents attend to court business—with Children's Center employees making nearly 5,900 referrals to health and other vital services for children and families; a new Children's Center opened in Family Court in Rome, New York.

The Child Welfare Court Improvement Project was formerly under the domain of the Permanent Judicial Commission on Justice for Children, which will continue to partner with the division in administering this federally funded initiative to enhance court operations and practices relating to proceedings involving abuse and neglect, voluntary placement, termination of parental rights and adoption. During 2006, the CIP collaborated with the New York State Office of Children and Family Services on permanency mediation pilot projects in Albany, Bronx, Chemung, Erie, Kings, Monroe, New York, Niagara, Oneida, Queens, Rockland and Westchester counties. As of December 2006, 879 cases were referred statewide. The CIP also worked with the Division of Technology and Office of Trial Court Operations on efforts to enhance the courts' collection, analysis and dissemination of child welfare-related data to ensure better-informed judicial decision-making. Also falling under the auspices of the CIP is the Court Appointed Special Advocates

(CASA) Assistance Program, which provides fiscal and other support to New York State programs that recruit and train volunteers to advocate for the best interest of the child in alleged cases of abuse and neglect.

## Division of Financial Management— 2006-2007 Budget

The UCS budget is based upon a fiscal year that runs from April 1 through March 31 of the following year. The budget is presented by the Chief Administrative Judge to the Court of Appeals for approval and certification by the Chief Judge, after which it is transmitted to the Governor for inclusion in the state budget. The budget is submitted to the Legislature by the Governor without revision, although recommendations may be included.

The court operations budget request includes personal services (salaries for judges and nonjudicial personnel) and nonpersonal services (all other expenses, including equipment and supplies). Over 80 percent of the budget is allocated to the payment of personal services.

The budget request of $1.63 billion for court and agency operations submitted for the 2006-2007 fiscal year was approved by the Legislature. This appropriation included funding for 21 new judgeships created pursuant to the provisions of chapter 240 of the Laws of 2005; 100 new court security positions and other public safety enhancements; Family Court Permanency Planning initiatives; employment target relief for upstate City Courts; and additional resources for the court system's Offices for the Self-Represented. While the 2006-2007 budget also included funding for a long-overdue judicial salary increase retroactive to April of 2005, the statutory changes required to implement the pay raise were not adopted by the Legislature.

## Division of Human Resources

The administrative and operational offices of the Division of Human Resources provide personnel and employment-related support to the courts, overseeing time and leave management, employee training and career development, labor relations, workforce diversity, benefits administration and other functions. During 2006, the division continued implementation of an ambitious statewide automated time and leave system and completed development of an automated system that will serve as the single system of record for all human resources information.

Building upon title-specific educational programs offered in previous years, the division's Court Officers Academy conducted training programs for court security supervisors focusing on recruitment and performance management strategies as well as precepts relating to search and seizure. The academy also provided training and related support to four graduating classes of court officers and increased the number of training programs offered court security personnel statewide. The division's Career Services Office continued to provide a range of programs to court employees, including statewide training seminars for court interpreters conducted in conjunction with the Division of Court Operations. During 2006, the division's Workforce Diversity Office provided programs supporting diversity and professionalism in the courts, including mandatory sexual harassment training for judges and nonjudicial employees. The Workforce Diversity Office also welcomed another group of Legal Fellows. Law school graduates with an interest in public service, Legal Fellows complete a one-year fellowship, gaining hands-on experience in court system operations and attending monthly seminars led by professionals devoted to public service. This successful outreach program is in its fifth year.

## Division of Technology

The Division of Technology (DoT) provides automation services to the Unified Court System, including software applications support, wide and local area network support, and telephone, email and Internet services. In addition, DoT operates the statewide

Domestic Violence Registry and a 24/7 technical support center.

DoT staff have written and maintain over 30 software applications that support statewide case-processing systems and administrative operations. Implementation of the court system's centralized, automated case-processing system—the Universal Case Management System (UCMS)—continued in 2006, with work begun on the system's criminal and local civil components and installation of the Surrogate's Court component in 23 more counties, among other UCMS accomplishments. Also in 2006, a Web-based program for the entry and preparation of orders of protection—WebDVS—was installed in 64 courts, and automated systems for tracking the assignment of court interpreters and processing eviction warrants in the New York City Housing Court were implemented.

In 2006, the division worked to further expand CourtNet—the court system's high-speed network which now reaches some 15,000 employees at over 250 locations statewide—to connect to an additional 20 court facilities in Albany, Rensselaer, Schenectady and Saratoga counties. DoT also operates a CourtNet-based videoconferencing system, used for inmate video appearances, court administration and training statewide. In 2006, the division expanded this system to include at least one court location in each of New York's 62 counties, with the number of video-conferences conducted between courthouses and jail facilities now at 12,000, up from 10,000 the previous year.

A pilot wireless public access project (WiFi) begun in 2005 in Erie, Broome and Bronx counties was expanded to high-traffic courthouse areas such as juror assembly rooms, attorney lounges and law libraries. Free Internet access is now available within some 30 courthouses in New York City and other parts of the state. Additionally, CourtNet TV, introduced in 2005 to provide cable television news to juror assembly rooms and courthouse waiting areas via the courts' high-speed network, is now being used to provide live and on-demand broadcasts of training programs and public events to court employees statewide. Also in 2006, the division upgraded courtroom audio recording systems,

installing PC-based digital recording systems with a central archiving function in approximately 300 courtrooms, and added security cameras to the court system's digital video surveillance system, bringing the number of cameras to 500. The surveillance system, which operates via CourtNet, enables authorized security personnel stationed at command centers to provide 24/7 monitoring of courthouses statewide. DoT also added 1,400 phones to the court system's voice-over IP network.

## Department of Public Safety

The Department of Public Safety is responsible for developing and implementing uniform policies and procedures to ensure the safety and accessibility of our state courthouses. In 2006, the department continued its collaboration with city, county, state and federal law enforcement and emergency response agencies on the development, implementation and evaluation of coordinated emergency response plans that address the challenges of our post-9/11 environment. The department also continued to oversee security plans for new and existing court facilities in ensuring their physical security and to develop standards and curriculums for the Court Officers Academy. Additionally, the department conducted security assessments for the state's justice courts, which operate in towns and villages outside New York City and are locally funded and administered. The department provided other support to these courts, including assistance in training local police on justice court-related security issues.

## Office of Court Facilities Management

New York court facilities are provided and operated by the cities and counties they serve. Since 1987, when the Court Facilities Act was passed—and the Court Facilities Incentive Aid Fund established—in response to a pervasive sense that facilities were increasingly inadequate, the UCS has provided financial assistance and guidance to local governments to help them meet this responsibility. Amendments to the act have enhanced the state's role and increased financial assistance to localities. The result is many new and substantially renovated facilities throughout the state.

With the 47-courtroom Bronx Hall of Justice nearing completion and renovation of the Manhattan Family Court continuing, other New York City projects include renovation of Kings County's Supreme Civil Court and Criminal Court facilities and Bronx County's Criminal-Family Court and County Court buildings. Construction has also been scheduled for a new Supreme Court facility in Richmond County. Outside New York City, the 93,000 square-foot addition to the Suffolk County Courthouse was completed in December, construction continued on the new Putnam County Courthouse and various other projects continued to advance.

## Office of Court Research

The Office of Court Research provides caseload activity statistics, jury system support and operations research services to all UCS courts. The office also maintains data relating to capital cases and provides caseload activity information to the public. In addition, it provides support to the Chief Judge's Jury System Improvement Project and maintains the statewide jury Web site, www.nyjuror.gov. In 2006, the office issued the *Grand Juror's Handbook*, provided training to judicial hearing officers on the civil voir dire, and continued to update attorneys and judges about jury trial innovations studied by the Jury Trial Project. The office also provided Interpretype machines—keyboard devices enabling hearing- and speech-impaired individuals to more easily communicate with court personnel—to jury offices and other court sites, implemented real-time automated postponement of jury service by telephone, improved practices for the reporting of data summarizing jury utilization in both the civil and criminal voir dire, and began development of a best practices guide for jury operations.

## Office of Justice Court Support

The Office of Justice Court Support provides assistance and guidance to New York's 1,277 justice courts operating in most towns and villages in the 57 counties outside New York City. Though constitutionally a part of the UCS, these courts are locally funded and administered. A vital part of the state's justice system,

justice courts hear approximately two million cases a year, handling civil matters, adjudicating misdemeanors, minor offenses and traffic violations and conducting felony arraignments; they also are authorized to collect statutory fines, fees and surcharges that help fund essential services, collecting $210 million over the last fiscal year.

The Office of Justice Court Support was created in November 2006 to help implement a broad-based UCS initiative to increase the efficiency and accessibility of New York's justice court system via technological and other improvements. The plan was devised following a thorough assessment of the state's justice court system, with the Office of Justice Court Support established to coordinate the provision of computer hardware and software and other resources needed to carry out enhancements in four key areas: court operations and administration; auditing and financial management; education and training; and court security. The 2007-2008 judiciary budget will include a $10 million appropriation request to fund computer, security, facility and other upgrades for justice courts statewide. The comprehensive action plan for New York's justice court system is available online at www.nycourts.gov/publications/pdfs/ActionPlan-JusticeCourts.pdf.

## Office of Public Affairs

In 2006, the Office of Public Affairs launched statewide campaigns to educate the public about the court system's online judicial voter guide, interpreter services, parent education and awareness programs and other resources. The office also introduced two youth-focused initiatives: a contest inviting high school students in pilot counties of the state to submit creative works highlighting the importance of jury service; and a leadership forum that gives high school students an opportunity to meet with court administrators and learn about court system structure, operations and career paths.

## Office of the Deputy Chief Administrative Judge for Justice Initiatives

The Office of the Deputy Chief Administrative Judge for Justice Initiatives, under the leadership of Hon. Juanita Bing Newton, provides statewide oversight in developing and implementing programs to assure meaningful access to justice for all New Yorkers. The office seeks to eliminate disparities and barriers that directly impact the public's ability to access the justice system, focusing on four areas: strengthening delivery of legal services for poor and moderate-income New Yorkers; increasing pro bono services for those unable to retain counsel; addressing needs of self-represented litigants; and expanding community education and outreach to inform the public about the courts.

During 2006, the office's major statewide pro bono initiative, "ProBonoNY," continued to grow. Dedicated to increasing voluntary pro bono services for poor people, local action committees began implementing their approved plans in the Fifth, Eighth and Ninth Judicial Districts; other committees in the Sixth and Seventh Districts and Suffolk County were involved in organization and planning for the development of their local plans. ProBonoNY was able to provide limited but vital funding for a full-time pro bono coordinator to assist the Fifth District Committee with all aspects of its work, including case intake and assignment, and training of volunteer attorneys. Similar positions were planned in other districts. The office also worked with the New York City Family Court to develop a pro bono project that brings law firm associates and in-house counsel into the Kings County courthouse to provide brief advice services to self-represented litigants involved in paternity and support matters.

In May, the office co-sponsored a multi-state conference at the Judicial Institute, "Access to Justice for the Self-Represented: Court and Community-Based Strategies and Solutions." Working in collaboration with the national Self-Represented Litigation Network and other court systems, the conference provided an opportunity for participants from 21 states to share models, solutions, visions and long-term strategies for ensuring access to justice for the self-represented. The office also served on the planning committee for the New York State Bar Partnership Conference, a biennial legal training event for civil legal service providers, and helped develop three conference workshops, including one on the ethical obligations of attorneys when dealing with self-represented litigants. Further, the office served on an advisory committee of New York City Mayor Michael Bloomberg that developed a code of conduct for New York City administrative judges and hearing officers.

The office continued its partnership with the Interfaith Center of New York, a nonprofit secular organization, to develop educational programs about the courts and the justice system for religious leaders. In June, a full-day program was held in Bronx County Supreme Court, with approximately 75 leaders from diverse backgrounds and traditions in attendance. A religious diversity program also was held in Queens County Supreme Court. In the fall, the office again offered a conflict resolution workshop for religious leaders, providing an opportunity for these leaders to enhance their mediation skills in order to better serve their communities. The office further expanded its education and outreach efforts to students, collaborating with OCA's Office of Alternative Dispute Resolution Programs to provide a half-day conflict resolution training program at the Eagle Academy, an all-male public high school in Bronx County.

## Office of the Deputy Chief Administrative Judge for Court Operations and Planning

The Office of the Deputy Chief Administrative Judge for Court Operations and Planning, under the leadership of Hon. Judy Harris Kluger, is responsible for long-range planning for court reform and oversight of court restructuring projects and specialized courts, including the development of policy and provision of training and technical assistance for problem-solving

courts. Established in 2002, the office oversees the state's integrated domestic violence (IDV) courts, drug courts, Office of Court Drug Treatment Programs, domestic violence (DV) courts, youthful offender domestic violence courts, mental health courts, sex offense courts, community courts, and with the OCA Chief of Operations, initiatives involving public access to court records on the Internet and other special projects. Highlights of 2006 include the opening of nine IDV Courts, five DV Courts, six drug courts, two sex offense courts and four mental health courts.

This year, the office conducted training programs at the Judicial Institute for judges and staff members of the nine newly opened IDV courts as well as training sessions for judges and staff working in drug treatment courts and judges, staff and stakeholders of the domestic violence, mental health and sex offense courts launched this year. In addition, the office has developed comprehensive tool kits to provide guidance on court planning processes, operational requirements, legal issues and internal administrative needs. The office's technical assistance teams also met frequently with court judges and staff to assist in the ongoing planning and operations of these courts and ensure statewide uniformity. Acting as an ambassador for the UCS, the deputy chief administrative judge visited other states and countries to communicate the experiences of New York's innovative, specialized courts, with the office also hosting visitors from other states and beyond with an interest in implementing similar innovations in their own court systems.

In the area of public access to court records, the office and OCA's Chief of Operations continued to enhance public access to court records via the Internet, significantly expanding electronic access to case information for criminal, civil, family and housing courts. In 2006, New York County Supreme Court Civil Term instituted the Scroll system, making non-confidential case file documents available online.

## Office of the Deputy Chief Administrative Judge for Matrimonial Matters

The Office of the Deputy Chief Administrative Judge for Matrimonial Matters, under the Hon. Jacqueline W. Silbermann, is responsible for the effective delivery of information and services relating to matrimonial matters—a significant portion of the civil trial calendar—to judges, nonjudicial employees, attorneys and litigants. The office is committed to improving the court process for all involved, focusing much of its resources on programs designed to minimize the trauma of divorce litigation in cases involving children. Early in the year, the Matrimonial Commission (see page 35) issued its report, endorsing many of the templates and models of legislation, court rules and forms created by this office.

This year, a plan adopted in 2004 requiring each parent in a contested custody matter to complete a detailed decision-making and scheduling plan for their children, was expanded to many parts of the state. An in-depth review of pilot court parts that utilize social workers to assist families in custody, visitation and relocation disputes revealed a success rate of some 75 percent, with a request made to extend this "Children Come First" custody model to other parts of the state as funds permit. Mediation projects for high-conflict custody cases were also expanded and refined, and a preliminary inquiry into the use of collaborative law, which seeks to eliminate the adversarial aspects of litigation, was undertaken to determine whether this process would be a viable option for New York's divorce courts.

The office also continued to provide extensive training for judges and nonjudicial personnel, conducting a comprehensive three-day matrimonial seminar in March 2006 for judges and their court

attorneys, offering training to aid judicial hearing officers—typically, retired judges—in handling matrimonial matters, and assisting in the training of Integrated Domestic Violence Court judges and staff. This year marked the start of mandatory training sessions for judges newly assigned to matrimonial cases, with a manual distributed to attendees for use as a reference in resolving these cases.

Throughout the year, the office responded to inquiries from attorneys and the public relating to changes in New York's divorce laws and rules, also enhancing its Web site (www.nycourts.gov/ip/matrimonial-matters/) to include a second glossary and the new, user-friendly form for filing an uncontested divorce that does not involve children, available cost-free to both attorneys and the general public. The office also continued publication of the *Matrimonial Decisions Newsletter*, a collaboration of Hofstra University Law School's Family Court Review and OCA's Committee on Matrimonial Practice that provides easy access to recent decisions that are not an official record.

CHAPTER 3
# Program Highlights

Part I of this chapter lists 2006 highlights of the permanent entities[1] established by the Unified Court System under the leadership of the Chief Judge and Chief Administrative Judge; highlights of the court system's ad hoc committees and commissions are listed in Part II (pages 34-35).

## Part I

### Center for Court Innovation

The center (www.courtinnovation.org) is a nonprofit think tank that serves as the independent research and development arm of the UCS, promoting ongoing innovation and improving the judicial response to problems such as addiction, mental illness, domestic violence and juvenile delinquency. The center helps to create demonstration projects that test new strategies and technologies, evaluate the efficacy of reforms and disseminate best practices within New York State and beyond. These projects include the Midtown Community Court, Red Hook Community Justice Center and Brooklyn Mental Health Court.

*Highlights for 2006:*
This marked the first full year of operation for Bronx Community Solutions, an ambitious problem-solving initiative that brings the community court approach to all misdemeanor cases in the busy Bronx criminal courthouse, providing judges with increased sentencing options for nonviolent offenses such as drug possession, prostitution and shoplifting. The program seeks to reduce reliance on short-term jail sentences and build public confidence that the system is holding offenders accountable while linking them to services aimed at reducing recidivism. In 2006, program participants completed 70,000 hours of community service, the equivalent of $450,000 of local services that

included removal of graffiti, street cleaning and park maintenance; compliance with mandated community and social services is up 40 percent—to 70 percent—since the project's inception. This year, the Midtown Community Court inaugurated an expansive network to link victims of human trafficking to appropriate services, and the Red Hook Community Justice Center launched a photography project designed to build self-esteem, encourage artistic expression and strengthen critical thinking, communication and other skills among local youngsters. In 2006, the Center for Court Innovation also released findings of several studies including an evaluation of the Brooklyn Mental Health Court, showing reductions in arrest and hospitalization rates among participants, and an examination of Red Hook Community Justice Center defendants' perceptions of fairness indicating high levels of perceived fairness across all categories of defendants. Additionally, the center revamped its Web site in 2006, with monthly online visits during the first half of the year averaging 33,376, compared to 11,158 for the last half of 2005.

The center exports the New York model of problem-solving justice to other states as well as internationally, and this year received nearly 600 visitors—including the mayors of Los Angeles, San Francisco and Vancouver and New Zealand's secretary of justice for New Zealand—who came to observe New York's innovative court models at work. Center representatives spoke at a judicial reform conference held in China, also assisting court officials in England, Scotland, New Zealand, South Africa and Canada in developing suitable problem-solving court models. The center contributed a cover story on community justice initiatives worldwide to the July/August issue of *Crime & Justice International* and also helped promote problem-solving justice nationwide as the sole technical assistance provider under a U.S. Bureau of Justice Assistance grant designed specifically for that purpose.

---

[1] The work of the standing advisory committees to the Chief Administrative Judge, established pursuant to Judiciary Law Sec. 212(1)(q), is covered in Chapter Four.

## Office of Court Drug Treatment Programs (OCDTP)

Established in 2000, the OCDTP is responsible for developing and overseeing a statewide initiative to provide court-mandated substance abuse treatment to nonviolent, addicted offenders as well as addicted parents charged in Family Court child neglect cases; the mandate of the office, which is directed by Deputy Chief Administrative Judge for Court Operations and Planning Judy Harris Kluger (page 26), is to ensure that nonviolent, addicted offenders are offered an opportunity for drug treatment in an effort to end the cycle of addiction and recidivism. At the close of 2006, there were 170 drug courts in operation, with an additional 26 in the planning phase, and 7,430 active participants in the program. Each drug court is locally based, reflecting the legal culture of the community, with financial support coming from the Unified Court System, local community and federal government.

In 2006, the OCDTP worked with drug court practitioners and the Center for Court Innovation (page 29) to continue the development of a best practices manual for the criminal drug treatment courts and began an intensive project to identify the elements of effective practice in the family drug treatment courts. The office also provided initial training for 260 new drug court judges and team members as well as training for 120 judges and team members of 13 drug courts that had experienced significant turnover.

In a major advance for the integration of the drug court program into the normal operational activities of the court system, the OCDTP worked with the Unified Court System's personnel office to develop and release the first series of job title standards for "problem-solving court" positions. Also in 2006, the OCDTP successfully collaborated with the Office of Children and Family Services and the Office of Alcohol and Substance Abuse Services, obtaining a grant from the National Center on Substance Abuse and Child Welfare for in-depth technical assistance to improve outcomes for families involved with the Family Court and child welfare systems who have substance abuse issues.

## New York State Judicial Institute

Established in 2003, the New York State Judicial Institute is the first judicial research and training facility built by and for a state court system, drawing judges and other professionals from around the state and beyond.

In 2006, the institute hosted 116 programs for judges, court attorneys and staff, covering every major area of the law as well as cutting-edge issues in judicial administration and public policy, with cumulative attendance records totaling over 10,000. Judicial summer seminars were held at five sites, with over 1,000 judges in attendance. Fifty-five newly appointed or elected judges attended a five-day training program in December. Court-specific training was conducted for judges who preside over specialized parts, such as treatment courts, integrated domestic violence courts, mental health courts and the Commercial Division of Supreme Court. The institute also provided legal update programs attended by 1,500 court attorneys around the state. Highlights of the issue-specific programming in 2006 include: the second annual "Partners in Justice" colloquium, a gathering of judges, practitioners and law school clinical faculty examining the collateral consequences of criminal convictions; The New York Listening Conference, the first conference bringing together New York state and federal judges and tribal judges and justice representatives; and Science for Judges, an in-depth program focusing on the intersection of science, genetics and law. In 2006, the institute began planning for the first New York Legal Education Opportunity Program (NY LEO), scheduled for Summer 2007 and designed to prepare minority, educationally and economically disadvantaged students for their first year of law school. Additionally, the institute's role in providing training for New York's town and village courts has been expanded significantly in carrying out the objectives outlined in OCA's Action Plan for the Justice Courts, which calls for more rigorous, consistent training of New York's town and village court justices and clerks.

## Office of Guardian and Fiduciary Services

In 2006, the Office of Guardian and Fiduciary Services (GFS) continued to serve as an educational and informational resource to judges, attorneys, other professionals and lay people in the areas of guardianship practice under Article 81 of the Mental Hygiene Law and court fiduciary appointments under Part 36 of the Rules of the Chief Judge. The office worked with numerous bar associations and law schools to develop and generate training to fill the compelling need for responsible and knowledgeable fiduciaries in all fields of law. Continuing education for fiduciaries, training for lay guardians and standardization of forms and procedures for guardianship practices are ongoing efforts, with the Guardianship Assistance Network initiated in Kings County Supreme Court in October 2006 to provide training and support to lay guardians. The GFS Web site, www.nycourts.gov/ip/gfs, features news of these programs as well as other valuable information.

The position of court examiner specialist was created last year in the First and Second Departments to strengthen the oversight of court examiners appointed to review guardians' reports. In 2006, these specialists scrutinized court examiners' activities, monitoring the quality and timeliness of their reports and level of responsiveness to guardians in providing adequate safeguards for the elderly and disabled. Also this year, a model guardianship part was initiated in Suffolk County Supreme Court, bringing all cases involving an incapacitated person before one judge. The model provides enhanced scrutiny in cases of family discord and elder abuse, also offering incapacitated individuals alternate dispute resolution, volunteer monitoring and social services.

## Parent Education Advisory Board

Established in 2001, the Parent Education and Awareness Program informs judges and others about the benefits of parent education for separating or divorcing couples. Parent education programs are child-centered and intended to help parents understand the effect of their breakup on their children and how they can help their children during this difficult transition. The Parent Advisory Board, chaired by Supreme Court Justice Evelyn Frazee, was created simultaneously to develop uniform parent education program standards.

As of 2006, there are 49 certified parent education providers in all 62 counties of New York State, with multiple programs in certain counties. Over the year, multiple site reviews were conducted to ensure the quality of these programs and outreach efforts made to promote increased awareness and use of this resource by the courts and parents. In 2006, 3,623 parents attended parent education programs compared to 575 parents the previous year.

## Advisory Committee on Judicial Ethics

Established in 1987, the Advisory Committee on Judicial Ethics issues advisory opinions to judges and justices, upon request, concerning issues of "ethical conduct or proper execution of judicial duties" as well as "possible conflicts between private interests and official duties" (Judiciary Law Sec. 212[2][1]). To date, the committee has issued over 3,000 opinions and answered thousands of informal inquiries by telephone. (To view the committee's opinions, visit www.nycourts.gov/judges and click on the Judicial Ethics Opinions link.) In 2006, the committee issued a new edition of the *Judicial Campaign Ethics Handbook*.

## Judicial Campaign Ethics Center

Since 2004, the Judicial Campaign Ethics Center has served as a central resource on campaign ethics for judicial candidates, also informing the public about judicial elections. In 2006, the center responded to nearly 200 ethics inquiries and provided campaign ethics training programs to some 160 judicial candidates statewide in accordance with 22 NYCRR 100.5(A)(4)(f). In the fall, the center expanded its online Judicial Candidate Voter Guide to include all state-paid elective judgeships in New York, with the guide receiving over 39,000 "hits" on Election Day.

## Franklin H. Williams Judicial Commission on Minorities

The Franklin H. Williams Judicial Commission on Minorities focuses on increasing diversity within the UCS workforce, making recommendations on ways to achieve fair and equal treatment of minorities within the court system. The commission works to achieve these goals through conferences and dialogue with UCS judges, the OCA leadership, the bar and fraternal associations statewide.

On September 18, 2006, the commission and New York State Family Court Judges Association hosted a conference to discuss strategies to reduce the overwhelming proportion of young people of color in both our foster care and criminal justice systems. There were over 300 participants, with keynote speaker Marian Wright Edelman, founder and president of the Children's Defense Fund, outlining her organization's efforts toward protecting children. Conference workshops explored pathways to reform, including an examination of the best practices of the Vera Institute Detention Assistance Project, which for the past two years has been working on juvenile detention reform-related issues in New York. The meeting led to an in-depth law review article, "The Disproportionate Number of Minority Youth in the Family and Criminal Court System," which appeared in the *Brooklyn Law School Journal of Law and Policy*, Volume XV, 2007, No.3.

## New York State Judicial Committee on Women in the Courts

The New York State Judicial Committee on Women in the Courts serves as an advocate for women litigants, attorneys and court employees as well as a focal point within the courts for concern about the status of women and their access to justice. Comprising judges, court officials, bar association representatives and practicing attorneys, the committee works with court administrators and outside organizations to address an array of concerns. In 2006, the committee collaborated with the Center for Court Innovation (page 29) to expand a training program for judges and court

employees on issues relating to human trafficking, prostitution and domestic violence. With the Lawyers Committee on Domestic Violence and sponsorship from the Appellate Division, First Department, the committee planned a two-day continuing education program at Fordham Law School entitled "Exploring Cross-Border Dilemmas of Domestic Violence Survivors with Children." The committee, through its counsel, organized a panel of experts on The Hague Convention to discuss civil aspects of child abduction.

Through its work with the Lawyers Committee Against Domestic Violence, the committee provided assistance in drafting matrimonial reform legislation—which among other changes, includes a measure rethinking the concept of maintenance—and also took a lead role in developing materials to support the legislation. Additionally, the committee continued publication of its newsletter, featuring news of work trends, legislation and court initiatives affecting women; the publication is distributed to UCS judges and other employees. The committee also continued to provide support to the court system's statewide network of local gender bias and gender fairness committees, helping to organize programs for Domestic Violence Awareness Month and Women's History Month. The committee marked its 20th anniversary in April 2006 with an Albany meeting exploring the economic status of women in the courts, with keynote speaker Heidi Hartmann, a noted economist and founder and executive director of the Institute for Women Policy Research, addressing the courts' gender fairness committee chairpersons and other guests.

## Permanent Judicial Commission on Justice for Children

The commission continued its oversight of the federal Court Improvement Project (CIP), which is aimed at improving the handling of child abuse and neglect cases, with this role transferred in late 2006 to the court system's new Office of Alternative Dispute Resolution and Court Improvement and the commission

expanding the CIP focus to include older children in our foster care and juvenile justice systems.

Working with the New York State Office of Children and Family Services, the commission held a seminar in September 2006 on adolescents in foster care with some 250 judges, court personnel and local social services officials convening to learn about state and national efforts in the field. Among the publications released by the commission in 2006 was *The CHILD in Child Welfare and the Courts*, the first county-by-county collection of data compiled by the UCS and New York State Office on Children and Family Services (OCFS). The commission also partnered with OCFS, the New York State Council on Children and Families and the Office of Court Administration to devise a mechanism for disseminating child-focused data gathered from the courts and other child welfare agencies in order to provide a broader context for developing and implementing policies that improve outcomes for at-risk children.

## Lawyer Assistance Trust

The Lawyer Assistance Trust celebrated its fifth anniversary in 2006. Originally created to bring statewide resources and awareness to the prevention and treatment of alcohol and substance abuse among attorneys, judges, law faculty and students, the trust now also addresses the prevention and treatment of mental health concerns among members of the profession.

In 2006, the trust worked with the lawyer assistance programs of the New York State Bar Association and the New York City Bar Association to develop the widely distributed "Understanding Depression: Help and Hope for Lawyers" brochure. The attorney registration insert—sent to each attorney upon license renewal—was also updated to include questions pertaining to mental health conditions. Additionally, the trust developed a new brochure clarifying how the bar admission process addresses the issues of alcohol abuse, drug addiction and depression. The latest in a series of law school-related initiatives,

the brochure was distributed to law schools statewide. The trust's quarterly newsletter reached 4,000 members of the profession statewide, while its grant program continued to support a variety of lawyer assistance programs and services around the state.

This year, the trust worked with representatives of lawyer assistance programs and committees statewide to develop a set of uniform guidelines for court-approved monitoring programs for eligible attorneys involved in disciplinary proceedings who are disabled by alcohol or substance dependency; participants who successfully complete such a program may have the charges against them dismissed. Trust Director Barbara Smith also served on the American Bar Association's Commission on Lawyer Assistance Programs, participating in the evaluation of programs in other states.

## Ethics Commission for the Unified Court System

New York State requires that all public employees disclose potential areas of conflict or interest resulting from private activities. All judges, justices, officers and employees of the courts who receive annual compensation at a specified statutory rate or hold policy-making positions must file financial disclosure statements setting forth detailed personal and financial information. The UCS Ethics Commission is responsible for administering the distribution, collection, review and maintenance of these statements.

In filing year 2006 (reporting year 2005) the filing rate was $77,666 and approximately 5,260 individuals were required to file financial disclosure statements. In 2006, for the first time, candidates for public election to judicial office were required to file annual statements of financial disclosure; approximately 46 judicial candidates submitted statements for filing year 2006.

Information contained in the statements is available for public inspection except for categories of value and amount, the names of unemancipated children and any information deleted by the commission at the

request of the filer. In 2006, 218 requests for public inspection were made, by 24 persons, for statements filed for one or more years by 203 employees. A total of 299 statements were prepared for public inspection. The commission also considered requests for exemptions from filing, reporting certain information and deletion of some information from public inspection, granting 40 such requests.

## Part II

### Commission to Promote Public Confidence in Judicial Elections (Feerick Commission)

In February 2006, the Commission to Promote Public Confidence in Judicial Elections issued its third and final report addressing the judicial nominating convention system by which political parties select candidates for the office of justice of the Supreme Court. The report contained a series of recommendations for statutory change intended to overhaul this process and make it more open and effective, including: smaller conventions with a reduced number of delegates; longer terms for delegates to promote independence; more time and candidate information for delegates to promote more informed decision-making; reduced petitioning requirements for nomination as a delegate; and a statutory right of candidates to address the delegates at their conventions. Also in February 2006, the Administrative Board of the Courts and the Court of Appeals formally adopted Part 150 of the Rules of the Chief Administrator, which establishes a system of independent qualifications commissions to screen candidates for judicial elective office in every judicial district of the state. At the same time, New York's rules governing judicial conduct were amended to: require candidates for judicial office to attend a special educational course on judicial campaign ethics; limit the price that judicial candidates can pay to attend political functions; require that the purchases of campaign-related goods and services by judicial candidates represent fair-market value; conform with restrictions

on judicial candidate speech stated in the United States Supreme Court's decision in *Minnesota v White*. In May 2006, a statewide symposium on voter education in judicial elections was held, with a working group formed to pursue its recommendations and agenda.

### Commission on Fiduciary Appointments

In 2006, the Administrative Board of the Courts and Office of Court Administration began implementing the recommendations of the commission, which was chaired by New York City attorney Sheila Birnbaum and issued its second report last year. The 2005 report included recommendations for reform in two main areas: New York's system for administering intestate estates, particularly the role of counsel to the public administrator; and the work of court examiners, the fiduciaries responsible for overseeing court-appointed guardians.

In response to the commission's recommendations, the Administrative Board amended Part 36 of the Rules of the Chief Judge to prohibit surrogates from appointing as counsel to the public administrator any persons having political, personal or business connections to the surrogate or other employees of the Unified Court System. Part 36 was also amended to provide for public reporting of awards of counsel fees by the Surrogate's Court. The Uniform Rules of Surrogate's Court were amended to require the public administrators to provide regular reports to the Surrogate's Court and Office of Court Administration concerning the performance of the public administrator and its counsel. With regard to the work of court examiners, the Office of Court Administration implemented new evaluation processes to better identify poor-performing examiners and encourage retained examiners to address performance deficiencies, also standardizing forms and procedures to improve the speed and thoroughness with which the accounting records of guardians are reviewed.

## Matrimonial Commission

Chaired by Associate Justice Sondra Miller of the Appellate Division, Second Department, the commission was charged in 2004 with examining every facet of the divorce litigation process in New York and recommending reforms to reduce undue trauma, cost and delay to the parties and, most importantly, the children. The commission submitted its report to Chief Judge Judith S. Kaye in February 2006, calling for early case screening, expanded judicial training, and regulation of neutral experts and law guardians, among other changes. The full report is available online at http://www.nycourts.gov/ip/matrimonial-commission/.

## Task Force on the Future of Probation in NYS

The Task Force on the Future of Probation was established in February 2006 and charged with examining ways to strengthen New York State's probation services, which are provided by county agencies. In appointing the task force, Chief Judge Judith Kaye noted that many local probation departments are "[c]ritically overburdened and underfinanced," with "too few officers, too few caseworkers and little modern technology to enforce probation conditions" [imposed by sentencing courts]. The funding crisis is the result of a reduction in state aid to local probation departments from 47 percent reimbursement in 1986 to the current level of 17 percent.

Chaired by former state Senator John R. Dunne, the task force comprises 23 members, including judges, court administrators, prosecutors, defense attorneys and probation officials. In 2006, the group met with state and national probation officials and other experts, forming four subcommittees to explore how New York State might properly and consistently fund a state-financed probation system; whether probation should be housed in the executive or judicial branch (probation was housed in the latter before being moved to the former some 30 years ago); how to integrate cutting edge and more traditional practices in making the best use of limited probation resources; and whether New York State should follow the federal system and integrate probation, prison and parole. The task force also held public hearings in October in New York City, Buffalo and Syracuse, and will release its findings and recommendations in the coming months.

## Special Commission on the Future of the New York State Courts

The commission was appointed by Chief Judge Judith S. Kaye in July 2006 to assess the effectiveness of the state's current court structure and propose reforms that will enable the courts to better meet the needs and expectations of New Yorkers in the years and decades to come. The panel's members, which include prominent attorneys, civic leaders and sitting and former trial and appellate judges, examined the effects of the current constitutional court system structure—an archaic maze comprising 11 separate trial courts—on productivity, efficiency and public access. The commission will release a detailed report of its findings and recommendations for achieving a cohesive, modernized judicial structure for New York.

CHAPTER 4

# Legislation and Rules

This chapter provides a summary of the Judiciary's 2006 legislative agenda and the work of the five standing advisory committees to the Chief Administrative Judge.

## Legislation

The Office of Counsel is the principal representative of the Unified Court System in the legislative process, with responsibility for developing the Judiciary's legislative program and providing the legislative and executive branches with analyses and recommendations concerning legislative measures that may have an impact on the courts and their administrative operations. The office also works with bar association committees, judicial associations and public and private groups regarding changes in court-related statutory law.

The office drafts legislative measures to implement recommendations made by the Chief Judge in the State of the Judiciary message, as well as required UCS measures including budget requests, adjustments in judicial compensation and implementation of collective bargaining agreements negotiated with court employee unions pursuant to the Taylor Law. Counsel's Office consults frequently with legislators, legislative committee staff and the Governor's counsel to generate support for the Judiciary's legislative program and provide technical assistance on court-related proposals initiated by the executive and legislative branches. The office also staffs the Chief Administrative Judge's advisory committees on civil practice, criminal law and procedure, family law, estates and trusts, and the local courts.

During the 2006 legislative session and with the assistance of the advisory committees, counsel's office prepared and submitted 39 measures for legislative consideration, with 20 measures written or endorsed by the office enacted into law. The office also furnished the Governor's counsel with analyses and recommendations on 59 measures awaiting executive action.

## Work of the Advisory Committees

The five advisory committees annually submit legislative proposals to the Chief Administrative Judge. When approved by the latter, they are transmitted to the Legislature in bill form, for sponsors and legislative consideration. These committees also submit recommendations to the Chief Administrative Judge on other legislative proposals. These recommendations may then be relayed through counsel to the Legislature and the executive branch.

Proposals enacted during the 2006 legislative session and 2007 agenda highlights are listed by committee on pages 36-39.

### Advisory Committee on Civil Practice

*Three proposals enacted*: improving the conduct of depositions (22 NYCRR 221.1); notice of application for a temporary restraining order (22 NYCRR 202.7(f)); and ensuring that judge has the authority to compel an insurance company representative or lienholder to attend a pre-trial settlement conference either in person or by telephone (22 NYCRR 202.26).

*Highlights for 2007:* clarification of the law governing collateral source payments in the settlement of certain tort actions governed by CPLR 4545; amendment of G.O.L. §15-108 to exclude from its scope releases under circumstances where the plaintiff voluntarily discontinues the lawsuit against a particular defendant without monetary consideration for that release; improving the practice in relation to the timing and service of cross-motions; modifying the contents of a bill of particulars to expand the categories of information that may be required; allowing service of a trial subpoena by delivery to an attorney; clarification of when a claim against a public authority accrues in certain contract claims; and giving the court discretion to correct or ignore harmless errors in the commencement of an action under CPLR 2001.

## Advisory Committee on Criminal Law and Procedure

*Proposal enacted*:  In order to close a gap in the statutory scheme for issuing temporary orders of protection, the Legislature amended the Criminal Procedure Law to provide a court with the authority to issue a temporary order of protection when the defendant is remanded to the custody of the sheriff.  This legislation recognizes that defendants, even when remanded awaiting trial, may still have opportunities, by mail, telephone or otherwise, to harass, intimidate, threaten or interfere with the victim of the alleged offense. (L 2007, c.137).

*Highlights for 2007*: Amending CPL 530.12 and 530.13 to provide that where the defendant is sentenced to probation on a "sexual assault" conviction, any final order of protection will not expire before the defendant's period of probation; amending several sections of the CPL and Penal Law to provide a mechanism for the prosecutor to file a special information in cases where the defendant is alleged to be a second child sexual assault felony offender. This legislation is needed to ensure the constitutionality of recently enacted laws that provide for enhanced sentencing of defendants in this category.

*Other highlights are*: amending CPL 195.10 to permit a defendant charged with a class A drug felony to waive indictment and consent to prosecution by a superior court information; repealing Judiciary Law §776 and Penal Law §215.54 as they are now unconstitutional in light of controlling appellate law; amending the Corrections Law regarding applications for a certificate of relief from disabilities to allow the State Board of Parole to use recommendations made by the federal probation office; amending CPL 410.91 in order to close an oversight in the legislative scheme regarding parole supervision by allowing an "eligible defendant" serving a determinate sentence to qualify; and amending the CPL to provide that an accusatory instrument is automatically filed as a sealed instru-ment if the defendant is eligible for youthful offender treatment.

## Family Court Advisory and Rules Committee

*Legislation enacted*: amendments to child welfare permanency legislation (Laws of 2006, ch. 437) including: clarification of the right to appointed counsel at the trial level and to a law guardian on appeal; use of the prior-scheduled permanency hearing date in certain cases in which suspended judgments in permanent neglect cases have been extended or deemed satisfied; amplification of the requirements for dispositional placement orders under Family Court Act §1055; simplification of the procedures for violations of orders of suspended judgments and supervision in child protective proceedings to permit motions or orders to show cause in lieu of petitions; repeal of the anachronistic provisions regarding petitions by agencies to be relieved of responsibility for children in their care; clarification that permanency hearing dates must be set upon the approval of voluntary placement instruments under Social Services Law §358-a; clarification of Family Court Act §1089 to specify that the permanency hearing report must be submitted to the Family Court but should not be sent to a birth parent if the child had been freed for adoption and to provide that the Family Court may dispense with notice to former foster parents, either *sua sponte* or upon motion, restoration of the automatic stay provision (Family Court Act §1112) for children in abuse or neglect proceedings who are returned home as a result of permanency hearings under Article 10-A of the Family Court Act; and clarification of the post-adoption contact provisions to provide that a judge in an adoption case would not be permitted to incorporate a post-adoption contact agreement into an adoption unless the judge who approved the surrender had approved the agreement as being in the child's best interests. *Other highlights include:* enactment of a measure designed to

reduce a significant source of delay in children's achievement of a permanent home by promoting continuity of the court and the judge; legislation expanding the parental rights termination ground of "severe abuse" contained in Social Services Law §384-b(8) to include a criminal conviction for homicide or attempted homicide in the home for whom the offender is or was legally responsible, including cases in which the murdered child is not a birth sibling of the surviving child; legislation amending sections 5241 and 5252 of the Civil Practice Law and Rules to require that a civil financial penalty imposed by a Family Court against an employer or income payor for noncompliance with an income deduction order or for discrimination against an employee subject to such an order is payable to the creditor, i.e., to the custodial parent or in the case of a public assistance recipient whose rights have been assigned to the local social services commissioner, to the commissioner; a statute amending the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to permit service of process outside New York State by means of mail that includes a return receipt or by other means specified in CPLR 313 or directed by the court, among other provisions; a measure amending Social Services Law §378-a to authorize the NYS Division of Criminal Justice Services, when screening prospective foster and adoptive parents and persons over 18 in their homes, to submit fingerprints to the Federal Bureau of Investigation in order to obtain nationwide criminal histories. (Such national screening is also a requirement of the new federal law, the *Adam Walsh Child Protection and Safety Act of 2006* [Public Law 109-248].)

In 2007, the Committee submitted a comprehensive legislative agenda comprising 18 new and modified proposals, along with 15 previously recommended proposals. Among the committee's new proposals is a provision to be added to the statutes regarding termination of parental rights, allowing the Family Court, in narrowly defined circumstances, to vacate orders committing guardianship and custody of children and to reinstate parental rights. A petition to vacate an order terminating parental rights would be permitted to be filed upon the consent of the petitioner and respondent, as well as the child, in the original termination of parental rights proceeding. The termination of parental rights would have to have occurred more than two years prior and the child would be required to be 14 years of age or older, remain under the jurisdiction of the Family Court and have a permanency goal other than adoption. The Family Court would be authorized to grant the vacatur petition where clear and convincing proof established it to be in the child's best interests.

## Surrogate's Court Advisory Committee

*One proposal enacted:* Amended EPTL §5-3.2 to clarify that children born after the execution of a last will who are not provided for or mentioned in the will cannot claim a share of a parental estate under this statute unless they were born during the testator's lifetime or were in gestation at the time of the testator's death and born thereafter (L.2006, c.249).

*Highlights for 2007:* clarifying the court's discretionary power to hold a hearing upon an application for appointment of a standby guardian; providing that the disclosure requirements for an attorney who prepares a will naming the attorney as executor will also apply where the will designates as executor an employee of the attorney or an affiliated attorney; creating a procedure for settling a final guardianship report upon the death of an incapacitated person; establishing that the revocatory effect that a divorce or annulment has on a disposition made to a former spouse in a will shall also extend to a disposition made to a former spouse in a non-testamentary substitute such as a lifetime revocable trust, a life insurance policy or a joint tenancy.

**Local Courts Advisory Committee**
*Two proposals enacted*: Uniform District Court Act amended to clarify the territory where a defendant can be found in order for a District Court to have subject matter jurisdiction over a commercial claim against that defendant (L.2006, c.41); and Civil Rights Law amended to authorize an increase in the time allowed for publishing the notice of an order granting a petition for a name change (L.2006, c.258).

*Highlights for 2007*: authorizing the automatic dismissal of a case in all courts one year after the case is struck from a court's calendar due to plaintiff's calendar default; authorizing the New York City Civil Court to deny an application for a default judgment where the court lacks personal jurisdiction over defendant; punishing as a contempt of court the conduct of a public protest or demonstration within 200 feet of a courthouse where the subject matter of the demonstration concerns the conduct of an adjudicative proceeding occurring within the courthouse; increasing the number of commercial claims that the New York City Civil Court may accept from an applicant in a calendar month; authorizing a corporation with an office anywhere in the state to file a commercial claim in New York City Civil Court.

## Judiciary Measures Enacted into Law in 2006*

**Chapter 34** (Senate bill 7072/Assembly bill 10339)
Amends chapter 689 of the Laws of 1993 to extend the expiration of provisions authorizing electronic appearance of defendants in certain criminal proceedings in certain counties until September 1, 2009.  Effective 5/16/06

---

*Measures newly introduced in the 2006 legislative session and not enacted into law are listed in Appendix F.*

**Chapter 41** (Senate bill 6843/Assembly bill 10717)
Amends section 1801-A of the Uniform District Court Act to clarify the territory where a defendant can be found for a District Court to have subject matter jurisdiction over a commercial claim against that defendant.  Effective 5/31/06

**Chapter 104** (Senate bill 7867/Assembly bill 11223)
Amends chapter 203 of the Laws of 2004 to implement a collective bargaining agreement between the state and the New York State Supreme Court Officers Association. Effective 6/19/07 and deemed to have been in full force and effect on and after 4/1/03.

**Chapter 155** (Senate bill 8296/Assembly bill 11897)
Ends impasses in collective negotiations between the Unified Court System and employee organizations representing the following nonjudicial units: New York City court clerks, New York City court officers, New York City senior court officers, Nassau County and Suffolk County.  Effective 7/7/06 and deemed to have been in full force and effect on and after 4/1/06.

**Chapter 184** (Senate bill 5754-B/Assembly bill 8652-A)
Amends the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to: (i) permit service of process out of state by mail that includes a return receipt, by means specified in CPLR 313 or by means directed by the court; (ii) require telephone testimony or depositions to be recorded and preserved for transcription; and (iii) mandate communications between courts in certain instances.  Effective 7/26/06

**Chapter 185** (Senate bill 7888/Assembly bill 8655-A)
Ensures "one family, one judge" in adoption, surrender and termination of parental rights proceedings, and provides a preference for filing an adoption proceeding in the same court and a procedure for insuring that the case is heard, to the extent practicable, before the same

judge presiding over the pending proceeding.  Effective 10/24/06

**Chapter 215** (Senate bill 6871-A/Assembly bill 9907-A)  Amends sections 530.12 and 530.13 of the Criminal Procedure Law to extend the maximum permissible duration of final orders of protection in cases involving family offenses issued by a criminal court at sentencing.  Effective 8/25/06

**Chapter 249** (Senate bill 8287/Assembly bill 10721)  Adds a new paragraph to section 5-3.2 of the Estates, Powers and Trust Law to clarify that where a testator has a child born after execution of his or her will, such child may claim a portion of the testator's estate only if he or she was born during the life of the testator or, if born after the testator's death, he or she was in gestation at the time of such death.  Effective 7/26/06

**Chapter 258** (Senate bill 6754/Assembly bill 10913)  Amends sections 63 and 64 of the Civil Rights Law to authorize an increase in the time allowed for publishing notice of an order granting a petition for a name change from 20 days to 60 days.  Effective 8/25/06

**Chapter 335** (Senate bill 6753-A/Assembly bill 10716-A)  Amends sections 5241 and 5252 of the CPLR to provide that a child who is the beneficiary of a support order should be the recipient of any monetary penalty ordered against an employer who discriminates against an employee subject to income execution.  Effective 10/24/06

**Chapter 395** (Senate bill 7892-A/Assembly bill 11667-A)  Amends section 1-c of the Legislative Law and sections 139-j and 139-k of the State Finance Law to exclude not-for-profit contracts with the Judiciary from the definition of procurement contract for purposes of the Lobbying Act.  Effective 7/26/06 and deemed to have been in full force and effect on and after 8/23/05.

**Chapter 437** (Senate bill 8435/Assembly bill 11792-A)  Makes technical amendments to the comprehensive permanency law reform legislation enacted in 2005.  Effective 7/26/06

**Chapter 460** (Senate bill 5392-B/Assembly bill 11582-B)  Amends section 384-b of the Social Services Law to provide that homicide or attempted homicide of a child in a home, and homicide or attempted homicide of a child's other parent (except where committed by a victim of domestic violence where that violence was a contributing factor), will be grounds for termination of parental rights.  Effective 11/14/06

**Chapter 470** (Senate bill 6385/Assembly bill 9615)  Amends section 182.20 of the Criminal Procedure Law to add Essex County to the list of venues in which electronic appearance is authorized in criminal cases.  Effective 8/16/06

**Chapter 493** (Senate bill7035-C/Assembly bill 11779-C)  Implements the recommendations of an *ad hoc* panel of City Court judges established under the aegis of the Deputy Chief Administrative Judge for the Courts Outside NYC for the modification of many City Court judgeships including, in some instances, conversion of part-time positions to full-time status.  Effective 4/1/07

**Chapter 532** (Senate bill 7987/Assembly bill 11467).  Amends section 182.20 of the Criminal Procedure law to add Orange County to the list of venues in which electronic appearance is authorized in criminal cases.  Effective 8/16/06

**Chapter 538** (Senate bill 8096/Assembly bill 10447)  Amends section 35 of the Judiciary Law to require Supreme Court to assign counsel to an indigent person pursuant to the Family Court Act when the proceeding is one over which Family Court has jurisdiction and

would have been required to assign counsel were the proceeding before it. Effective 8/16/06

**Chapter 548** (Senate bill 8397-C/Assembly bill 12040-A)  Amends the Judiciary Law to provide authorization for the Dormitory Authority to acquire property in Kings and Saratoga counties and to construct on such properties one or more branches of a residential court officer training academy.  Effective 8/16/06 and deemed to have been in full force and effect on and after 4/1/06.

**Chapter 555** (Senate bill 567-A/Assembly bill 315-B) Amends section 3-301 of the village law to provide that a village court clerk who works solely for his or her court may be employed or discharged only upon the advice and consent of the justices of his or her court. Effective 8/16/06

**Chapter 695** (Senate bill 7408/Assembly bill 11355) Amends section 36.25 of the Criminal Procedure Law to clarify that a juror may be challenged for cause if he or she served on a jury involving the same incident charged rather than the same conduct. Effective 11/1/07

## Rules of  the Chief Judge

The following Rules of the Chief Judge were added or amended during 2006:

Section 8.1 of the Rules of the Chief Judge was amended, effective February 16, 2006, to alter the degrees of relationship foreclosed when relatives of judges seek to be appointed to court positions.

Section 30.1 of the Rules of the Chief Judge was added, effective November 14, 2006, to authorize mechanical recording in town and village courts.

Sections 36.1(a)(11) and 36.4 of the Rules of the Chief Judge were amended, effective February 16, 2006, to apply to public administrators and their counsel the rules governing fiduciary appointments by the courts.

Section 41.1(a) of the Rules of the Chief Judge was amended, effective October 18, 2006, to authorize additional types of cases to be transferred to domestic violence court parts.

Part 44 of the Rules of the Chief Judge was added, effective February 16, 2006, to define the role of court-appointed special advocates programs in the courts.

## Rules of  the Chief Administrative Judge

The following Rules of the Chief Administrative Judge were added or amended during 2006:

Sections 100.0(R)-(V); 100.3(B)(9), (E)(1)(f); 100.5(A)(2)(v), 4(a), 4(d), 4(f), 6, 7; and 100.6(E) of the Rules of the Chief Administrator Governing Judicial Conduct were amended, effective February 14, 2007, to implement certain recommendations made in the Report of the Committee to Promote Public Confidence in Judicial Elections.

Sections 100.3(C)(3) and 100.3(E)(1)(d) and (e) of the Rules of the Chief Administrator Governing Judicial Conduct were amended, effective February 16, 2006, to alter degrees of relationship relative to judicial appointments and disqualification of judges.

Section 100.5(A)(4) of the Rules of the Chief Administrator Governing Judicial Conduct was amended, effective June 26, 2006, and October 11, 2006, to require candidates for judicial office, except for town or village justices, to file financial disclosure statements with the court system.

Part 117 of the Rules of the Chief Administrator was added, effective February 28, 2006, to set forth eligibility requirements for court-appointed special advocates programs to work in the courts and to receive grants of state assistance.

Section 123.2 of the Rules of the Chief Administrator was amended, effective February 14, 2006, to authorize materials submitted to the Supreme Court law libraries to be filed in electronic form.

Section 141.1(b) of the Rules of the Chief Administrator was amended, effective October 18, 2006, to authorize additional types of cases to be transferred to domestic violence court parts.

Part 150 of the Rules of the Chief Administrator was added, effective February 14, 2006, to establish Judicial Election Qualification Commissions, and was further amended, effective June 23, 2006, to make certain adjustments to the rules governing those commissions.

Section 202.7(f) of the Uniform Civil Rules for the Supreme and County Courts was added, effective October 1, 2006, to require the giving of notice in certain circumstances when applications are made for temporary restraining orders.

Section 202.8(h) of the Uniform Civil Rules for the Supreme and County Courts was amended, effective March 22, 2006, and July 13, 2006, to modify the requirements for judges to be provided notice for matters undecided for more than 60 days.

Section 202.26(a) of the Uniform Civil Rules for the Supreme and County Courts was amended, effective October 1, 2006, to require the appearance of certain non-parties at pre-trial conferences.

Sections 205.7, 205.15, 205.16, 205.17, 205.28, 205.50, 205.62, 205.67, 205.81 and 205.83 of the Uniform Rules for the Family Court were amended, effective January 3, 2006, to implement amendments to legislation concerning permanency planning and persons in need of supervision.

Sections 206.10 and 206.23 of the Uniform Rules of the Court of Claims were amended, effective March 24, 2006, to implement changes in the rules governing pre-trial conferences.

Section 207.63 of the Uniform Rules for the Surrogate's Court was added, effective February 28, 2006, to require annual reports from public administrators.

Part 221 of the Rules of the Chief Administrator was added, effective October 1, 2006, to adopt uniform rules for the conduct of depositions.

# APPENDIX A

**INTAKE, DISPOSITIONS & TRIALS *DE NOVO***
**IN MANDATORY ARBITRATION PROGRAM BY JUDICIAL DISTRICT\* - 2006**

| District | Intake | Dispositions | Demands for Trial *De Novo* | *De Novo* Rate |
|---|---|---|---|---|
| **Total State** | **25,785** | **23,437** | **3,490** | **15%** |
| New York City | 3,320 | 3,489 | 2,200 | 63% |
| 1st | 3,320 | 3,489 | 2,200 | 63% |
| 2nd | 0 | 0 | 0 | 0% |
| 11th | 0 | 0 | 0 | 0% |
| 12th | 0 | 0 | 0 | 0% |
| Outside New York City | 22,465 | 19,948 | 1,290 | 6% |
| 3rd | 21 | 16 | 0 | 0% |
| 4th | 5 | 6 | 0 | 0% |
| 5th | 53 | 40 | 0 | 0% |
| 6th | 23 | 27 | 0 | 0% |
| 7th | 2,710 | 2,719 | 240 | 9% |
| 8th | 115 | 134 | 6 | 4% |
| 9th | 36 | 44 | 0 | 0% |
| 10th - Nassau | 4,024 | 3,972 | 0 | 0% |
| 10th - Suffolk | 15,478 | 12,990 | 1,044 | 8% |

\*See map inside front cover for counties in each judicial district.

# APPENDIX B

| SMALL CLAIMS ASSESSMENT REVIEW PROGRAM: FILINGS & DISPOSITIONS BY JUDICIAL DISTRICT* - 2006 | | | |
|---|---|---|---|
| District | Filings | Dispositions | Pending |
| **Total State** | **78,057** | **65,344** | **52,214** |
| New York City | 21 | 19 | 15 |
| 1st | 3 | 2 | 2 |
| 2nd | 10 | 6 | 5 |
| 11th | 8 | 9 | 8 |
| 12th | 0 | 2 | 0 |
| Outside New York City | 78,036 | 65,325 | 52,199 |
| 3rd | 562 | 490 | 96 |
| 4th | 303 | 303 | 0 |
| 5th | 395 | 394 | 1 |
| 6th | 87 | 85 | 4 |
| 7th | 331 | 331 | 0 |
| 8th | 329 | 329 | 0 |
| 9th | 1,413 | 1,112 | 1,053 |
| 10th - Nassau | 64,120 | 56,349 | 42,592 |
| 10th - Suffolk | 10,496 | 5,932 | 8,453 |

*See map inside front cover for counties in each judicial district.

# APPENDIX C

Appendix C
**COMMUNITY DISPUTE RESOLUTION CENTER'S WORKLOAD: NEW YORK STATE BY COUNTY – 2006**

| County | DR Services Provided: Resolved | DR Services Provided: Not Resolved | Outreach Attempted, No Contact | Matter Screened Inappropriate | Party(ies) Declined / Withdrew | Party(ies) Failed to Show | Unable to Contact Party(ies) | Other | Total |
|---|---|---|---|---|---|---|---|---|---|
| **TOTAL** | **16,238** | **4,810** | **1,952** | **1,468** | **5,701** | **2,221** | **1,768** | **1,812** | **35,970** |
| **NYC** | **1,484** | **333** | **58** | **372** | **481** | **154** | **203** | **176** | **3,261** |
| New York | 614 | 237 | 17 | 87 | 217 | 121 | 86 | 46 | 1,425 |
| Bronx | 874 | 256 | 72 | 75 | 396 | 341 | 15 | 96 | 2,125 |
| Kings | 757 | 300 | 25 | 119 | 342 | 316 | 41 | 370 | 2,270 |
| Queens | 859 | 202 | 5 | 170 | 242 | 220 | 59 | 31 | 1,788 |
| Richmond | 870 | 96 | 41 | 285 | 264 | 33 | 117 | 130 | 1,836 |
| **Outside NYC** | **12,264** | **3,719** | **1,792** | **732** | **4,240** | **1,190** | **1,450** | **1,139** | **26,526** |
| Albany | 342 | 116 | 38 | 35 | 136 | 36 | 12 | 48 | 763 |
| Allegany | 72 | 2 | 1 | 6 | 18 | 0 | 2 | 0 | 101 |
| Broome | 469 | 136 | 56 | 45 | 306 | 136 | 150 | 61 | 1,359 |
| Cattaraugus | 145 | 1 | 0 | 11 | 57 | 2 | 1 | 12 | 229 |
| Cayuga | 24 | 8 | 1 | 1 | 15 | 1 | 7 | 4 | 61 |
| Chautauqua | 366 | 103 | 6 | 55 | 121 | 47 | 46 | 16 | 760 |
| Chemung | 171 | 8 | 12 | 20 | 100 | 4 | 70 | 0 | 385 |
| Chenango | 88 | 11 | 108 | 4 | 35 | 3 | 58 | 6 | 313 |
| Clinton | 206 | 52 | 1 | 8 | 36 | 111 | 7 | 2 | 423 |
| Columbia | 80 | 16 | 58 | 8 | 17 | 7 | 25 | 2 | 213 |
| Cortland | 89 | 8 | 0 | 6 | 21 | 5 | 9 | 0 | 138 |
| Delaware | 70 | 17 | 108 | 14 | 55 | 4 | 3 | 6 | 277 |
| Dutchess | 255 | 160 | 147 | 20 | 205 | 8 | 85 | 23 | 903 |
| Erie | 474 | 86 | 121 | 44 | 151 | 117 | 45 | 26 | 1,064 |
| Essex | 38 | 8 | 5 | 1 | 17 | 3 | 44 | 8 | 124 |
| Franklin | 318 | 44 | 0 | 0 | 3 | 0 | 0 | 0 | 365 |
| Fulton | 27 | 6 | 1 | 7 | 31 | 15 | 17 | 0 | 104 |
| Genesee | 142 | 11 | 33 | 14 | 30 | 12 | 9 | 0 | 251 |
| Greene | 196 | 97 | 6 | 14 | 19 | 2 | 94 | 7 | 435 |
| Hamilton | 14 | 0 | 0 | 0 | 1 | 0 | 2 | 0 | 17 |
| Herkimer | 388 | 13 | 31 | 31 | 178 | 4 | 20 | 37 | 702 |
| Jefferson | 213 | 21 | 19 | 5 | 111 | 32 | 19 | 10 | 430 |
| Lewis | 18 | 0 | 3 | 0 | 23 | 7 | 0 | 1 | 52 |
| Livingston | 281 | 49 | 0 | 25 | 63 | 14 | 21 | 0 | 453 |
| Madison | 28 | 6 | 9 | 22 | 30 | 1 | 2 | 29 | 127 |
| Monroe | 372 | 103 | 45 | 6 | 181 | 76 | 26 | 38 | 847 |
| Montgomery | 76 | 18 | 8 | 7 | 45 | 14 | 12 | 23 | 203 |
| Nassau | 1,956 | 1,255 | 22 | 10 | 125 | 244 | 11 | 272 | 3,895 |
| Niagara | 204 | 27 | 65 | 69 | 154 | 18 | 40 | 20 | 597 |
| Oneida | 260 | 49 | 11 | 23 | 46 | 23 | 17 | 14 | 443 |
| Onondaga | 398 | 46 | 40 | 17 | 277 | 45 | 93 | 12 | 928 |
| Ontario | 78 | 20 | 4 | 1 | 32 | 1 | 9 | 0 | 145 |
| Orange | 340 | 211 | 32 | 11 | 112 | 16 | 9 | 9 | 740 |
| Orleans | 5 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| Oswego | 176 | 11 | 0 | 19 | 128 | 20 | 5 | 12 | 371 |
| Otsego | 77 | 7 | 2 | 8 | 32 | 2 | 19 | 2 | 149 |
| Putnam | 95 | 68 | 6 | 4 | 54 | 4 | 1 | 42 | 274 |
| Rensselaer | 67 | 17 | 0 | 19 | 21 | 2 | 7 | 16 | 149 |
| Rockland | 95 | 40 | 0 | 3 | 18 | 0 | 10 | 4 | 170 |
| Saratoga | 103 | 34 | 428 | 2 | 57 | 2 | 39 | 6 | 671 |
| Schenectady | 70 | 114 | 10 | 17 | 150 | 14 | 9 | 38 | 422 |
| Schoharie | 9 | 5 | 1 | 2 | 9 | 1 | 5 | 1 | 33 |
| Schuyler | 73 | 15 | 4 | 7 | 33 | 4 | 27 | 0 | 163 |
| Seneca | 38 | 15 | 6 | 2 | 2 | 6 | 2 | 3 | 74 |
| St. Lawrence | 597 | 29 | 9 | 0 | 35 | 10 | 2 | 24 | 706 |
| Steuben | 280 | 38 | 85 | 11 | 85 | 34 | 81 | 211 | 825 |
| Suffolk | 433 | 179 | 37 | 1 | 123 | 23 | 31 | 6 | 833 |

# APPENDIX D

**Attorney Registration**

Under Section 468-a of the Judiciary Law and the Rules of the Chief Administrator (22 NYCRR §118), every attorney admitted to practice in New York must file a biennial registration form. Attorneys engaged in the active practice of law in this state or elsewhere pay a fee of $350 with the registration (now payable by credit card). Attorneys certifying that they are "retired" from the practice of law as defined in the rules are exempt from the fee.

The fee is allocated as follows: $60 to the Lawyers' Fund for Client Protection to support its programs providing restitution to clients of dishonest attorneys; $50 to the Indigent Legal Services Fund to cover fees to attorneys on the 18-b panels who represent indigent defendants; $240 to the Attorney Licensing Fund to cover the cost of the Appellate Divisions' attorney admission and disciplinary programs.

In 2006, 136,403 registrations were processed and $40,059,800 collected in fees.

## Attorney Registration by Location – Calendar Year 2006
### COUNTY OF BUSINESS*

| Location | Total | Location | Total |
|---|---|---|---|
| Albany | 4,227 | Otsego | 130 |
| Allegany | 46 | Putnam | 332 |
| Bronx | 2,410 | Queens | 5,405 |
| Broome | 602 | Rensselaer | 449 |
| Cattaraugus | 110 | Richmond | 1,242 |
| Cayuga | 112 | Rockland | 1,489 |
| Chautauqua | 235 | St. Lawrence | 125 |
| Chemung | 178 | Saratoga | 568 |
| Chenango | 66 | Schenectady | 443 |
| Clinton | 125 | Schoharie | 60 |
| Columbia | 195 | Schuyler | 24 |
| Cortland | 73 | Seneca | 47 |
| Delaware | 79 | Steuben | 165 |
| Dutchess | 936 | Suffolk | 6,588 |
| Erie | 4,718 | Sullivan | 208 |
| Essex | 96 | Tioga | 55 |
| Franklin | 78 | Tompkins | 373 |
| Fulton | 78 | Ulster | 482 |
| Genesee | 90 | Warren | 242 |
| Greene | 107 | Washington | 64 |
| Hamilton | 12 | Wayne | 102 |
| Herkimer | 72 | Westchester | 9,712 |
| Jefferson | 166 | Wyoming | 52 |
| Kings | 6,868 | Yates | 29 |
| Lewis | 24 | | |
| Livingston | 89 | Total In-State | 147,096 |
| Madison | 98 | | |
| Monroe | 3,255 | Outside N.Y. State | 69,158 |
| Montgomery | 84 | | |
| Nassau | 13,053 | Out of USA | 12,806 |
| New York | 75,828 | | |
| Niagara | 349 | Total | 229,060 |
| Oneida | 579 | | |
| Onondaga | 2,339 | | |
| Ontario | 204 | | |
| Orange | 968 | | |
| Orleans | 29 | | |
| Oswego | 132 | | |

**Number of Attorneys by** *Judicial Department of Business\**

| | |
|---|---|
| First Department | 78,238 |
| Second Department | 46,593 |
| Third Department | 9,321 |
| Fourth Department | 12,944 |
| **Total by Department** | **147,096** |

*If no business address, by county of residence

## APPENDIX E

• **Retainer and Closing Statements**

In accordance with the Rules of the Appellate Division, First Department (22 NYCRR §603.7) and the Appellate Division, Second Department (22 NYCRR §691.20), every attorney who enters into a contingent-fee agreement in specified categories of cases must file a retainer statement with OCA within 30 days. These statements include the date of agreement, plaintiff's name and terms of compensation.

A closing statement must also be filed in such cases within 15 days after the attorney receives or shares in any sum received in connection with the claim. A closing statement must be filed even if an action is abandoned or the agreement is terminated without recovery.

During 2006, a total of 243,251 retainer and closing statements were processed: 104,257 in the First Department and 138,994 in the Second Department.

• **Adoption Affidavits**

In accordance with the rules of the respective Appellate Divisions, 22 NYCRR §603.23 (First Dept.), §691.23 (Second Dept.), §806.14 (Third Dept.), and §1022.33 (Fourth Dept.), attorneys handling adoption proceedings must file an affidavit with OCA for the purpose of maintaining a record of attorneys and agencies involved in adoptions and recording the fees, if any, charged for their services. In order to expedite finalization of adoptions, court rules no longer require a receipt of this filing prior to entry of the decree. During 2006, 5,059 adoption affidavits were filed.

• **Criminal History Search Unit**

Since July 2003, this unit has sold statewide criminal history public records that include felony and misdemeanor convictions from all 62 counties. By law, OCA is now solely responsible for the sale of such records produced by a search of its electronic database and charges $52 per name searched. County courts are precluded from selling their electronically stored county criminal history records.

The revenue generated from each search request is allocated as follows: $16 to OCA's Judiciary Data Processing Offset Fund, $27 to the Indigent Legal Services Fund and $9 to the Legal Services Assistance Fund. For calendar year 2006, the unit received $58,750,848 for criminal history record searches.

• **Secure Pass Identification Cards**

Since 2002, attorneys can obtain a "Secure Pass" identification card valid for a two-year period. The card, designed with enhanced security features, provides access to state courthouses without being subjected to magnetometer screening, while maintaining the highest level of courthouse security. There is a $25 processing fee, and the application process includes an electronic criminal history search. Similar cards are available, free of charge, to tenants of court facilities and government agencies for employees who regularly work in court facilities. In 2006, 13,408 ID cards were issued and $281,875 collected in processing fees.

• **Fiduciary Appointment Reporting Process**

A new Part 36 of the Rules of the Chief Judge (22 NYCRR), adopted in 2003, regulates fiduciary appointments by the courts. Among other things, it requires the Chief Administrator to establish lists of persons eligible to serve; sets forth compensation limits; and adds qualifications for appointment and categories of appointment covered.

In 2006, over 6,900 applicants met Part 36 eligibility requirements and were placed on approved lists in all appointment categories; 12,560 notices of appointment were filed by fiduciaries with the Chief Administrator. Under Judiciary Law Section 35-a, judges who approve a fee in excess of $500 for anyone appointed pursuant to Part 36 must file a statement of approval of compensation with OCA. In 2006, 6,729 such statements were filed. A database on the UCS website allows the public to search and retrieve information relating to appointments and compensation contained in records filed with OCA.

# APPENDIX F

Measures newly introduced in the 2006 legislative session and not enacted into law:

**Senate 7297/Assembly 10718**. This measure would amend section 3001 of the CPLR to allow an injured party to bring a declaratory judgment action directly against an insurance company before the injured party secures a judgment against the tortfeasor-insured.

**Senate 6752-A**. This measure would amend subdivision (e) of rule 3211 of the CPLR to provide that motions to dismiss for failure to state a cause of action must be made no later than 120 days after filing the note of issue.

**Senate 6751**. This measure would amend rule 2106 of the CPLR to replace the use of an affidavit for all purposes in a civil action by the use of an affirmation — a procedure modeled upon the federal declaration procedure (*See* 28 USCA §1746; unsworn declarations under penalty of perjury).

**Senate 7182/Assembly 11758**. This measure would amend the Public Authorities Law by adding a new section 2881 to provide that certain actions or special proceedings against a public authority for monies due or arising out of a contract shall accrue at the time payment for the amount claimed was denied.

**Senate 7254/Assembly 4615**. This measure would amend section 306-b of the CPLR to correct a time of service problem that can occur when a court order extending time for filing is granted pursuant to section 304 of the CPLR.

**Senate 7253/Assembly 11706**. This measure would amend section 3217(a)(1) of the CPLR to extend the time period in which a voluntary discontinuance may be obtained without the need for a court order or a stipulation of settlement; and would repeal section 3217(d) of the CPLR which requires the defendant to file the stipulation of discontinuance.

**Senate 7846/Assembly 11222**. This measure would amend section 2001 of the CPLR to give the court discretion to correct or ignore mistakes or omissions occurring at the commencement of an action that do not prejudice the opposing party, in the same manner and under the same standards that it already does with regard to all other non-prejudicial procedural events.

**Senate 6958-A/Assembly 11306-A**. This measure would amend section 506 of the CPLR to provide the venue in which an Article 78 proceeding brought against judges of the Court of Claims, the Family Court and the Surrogate's Court shall be commenced.

**Senate 7036**. This measure would amend section 620.30 of the Criminal Procedure Law and add a new section 620.90 to the Criminal Procedure Law to make provision for oral application for material witness orders.

**Senate 7038/Assembly 11703**. This measure would amend section 310.70 of the Criminal Procedure Law to add a new subdivision for expressly authorizing a trial court to issue a securing order where, following dismissal of an indictment after trial, the court authorizes submission of lesser included charges, with respect to which the jury was unable to agree, to a new grand jury.

**Senate 7082**. This measure would amend sections 145.05(2) (criminal mischief in the third degree) and 145.10 (criminal mischief in the second degree) of the Penal Law, and section 352-c(6) (securities fraud) of the General Business Law to raise the existing monetary thresholds for commission of these felony offenses.

**Senate 7037/Assembly 11704**. This measure would amend section 190.25(6) of the Criminal Procedure Law to clarify that the court or district attorney may, when providing to a grand jury any oral instructions "concerning the law with respect to its duties or any matter before it" under that subdivision, also provide written instructions thereon.

**Assembly 11705**. This measure would amend subdivision one of section 30.00 of the Penal Law to provide that a person less than eighteen years old is not criminally responsible for the crime of criminal contempt in

the second degree as defined in section 215.50(3) when the "lawful process or other mandate of the court" violated by the defendant was issued in a Family Court Act Article 7 "PINS" (Person in Need of Supervision) proceeding.

**Senate 7039/Assembly 10715**. This measure would amend paragraph (j) of subdivision two of section 212 of the Judiciary Law and sections 420.05 and 420.10 of the Criminal Procedure Law to authorize payment by credit card of restitution or reparation imposed as part of a sentence in a criminal case.

**Assembly 11698**. This measure would amend sections 735 and 742 of the Family Court Act to authorize the issuance of warrants and orders of protection in PINS cases.

**Senate 6844/Assembly 10723**. This measure would amend section 516-a of the Family Court Act to provide a two-step threshold test that must be met before a genetic marker or DNA test would be ordered in a proceeding to vacate a paternity acknowledgment initiated more than 60 days after its execution.

**Senate 7866/Assembly 11708**. This measure would amend sections 232 and 245 of the Domestic Relations Law in relation to the enforcement of certain orders in matrimonial proceedings, and would eliminate the present requirement that other enforcement remedies be exhausted before contempt can be sought against a person who fails to pay child support, spousal support or combined child and spousal support in accordance with a court's order in a matrimonial proceeding.

**Senate 6930**. This measure would amend section 1(c) of Article VI of the Constitution to permit service of a criminal summons issued by a Town, Village or City Court outside New York City anywhere in the state.

**Senate 6931/Assembly 11702**. This measure would amend section 130.40 of the Criminal Procedure Law, section 2005 of the Uniform Justice Court Act and section 2005 of the Uniform City Court Act to permit service of a criminal summons issued by a Town, Village or City Court outside New York City any where in the state.

**Senate 6755/Assembly 10545**. This measure would amend section 5106 of the Insurance Law to require mandatory arbitration of no-fault vehicle insurance claims and to lower the interest rate on overdue insurance claims from two percent to one percent per month.

**Senate 7891/Assembly 11221**. This measure would amend section 5221 of the CPLR to limit the venue of a proceeding to enforce a judgment when that proceeding is based on an underlying consumer credit transaction.

**Senate 7252**. This measure would amend the Mental Hygiene Law by adding a new section 81.44 to create a procedure for settling final guardianship reports upon the death of an incapacitated person.

**Assembly 10719**. This measure would amend section 3-3.7 of the Estates, Powers and Trusts Law to permit a testator to incorporate in a will, as a testamentary trust, the provisions of a pre-existing *inter vivos* trust that has been revoked or terminated prior to the testator's death.

**Assembly 11707**. This measure would amend section 117 of the Domestic Relations Law and section 2-1.3 of the Estates, Powers and Trusts Law to ensure that a child adopted by an unrelated person but continuing to reside with a birth parent is not penalized by losing inheritance rights or the right to receive a lifetime or testamentary disposition from his or her birth family.

Measures vetoed in the 2006 legislative session:

**Senate 5530/Assembly 8109**. This measure would have amended section 15-108 of the General Obligations Law to exclude certain releases from its scope, most importantly including those instances in which the plaintiff voluntarily discontinues his or her suit against a particular defendant without receiving any monetary consideration for that release; and would also have made many summary judgment motions unnecessary [Veto #259].

**Senate 8282/Assembly 11919**. This measure would have amended section 50-e of the General Municipal Law to authorize the electronic filing of notices of tort claims against municipalities [Veto #317].

### New York County – Commercial Cases
### Average Days RJI to NOI, NOI to Disposition

| Filing Year | Number of Cases | RJI to NOI | NOI to Disposition |
|:---:|:---:|:---:|:---:|
| 2001 | 369 | 388.63 | 210.06 |
| 2002 | 358 | 400.42 | 201.87 |
| 2003 | 275 | 437.51 | 206.50 |
| 2004 | 344 | 361.95 | 165.18 |
| 2005 | 221 | 321.19 | 161.32 |
| 2006 | 135 | 282.09 | 107.70 |
| 2007 | 52 | 135.53 | 41.77 |

Assumptions:

Selected cases with valid RJI filed dates, NOI filed dates and Disposition dates in the Commercial IAS categories.

# NEW YORK COUNTY COMMERCIAL DIVISION AND CONTRACT CASE ANALYSIS
## 2006*

I. AVERAGE AGE (IN DAYS) TO DISPOSITION - CONTRACT CASES

A. Commercial and Non-Commercial Division/Parts Comparison

| Year | NOTES | | | | | | | | PRE-NOTES | | | | OVERALL AVG | |
| | RJI to Disposition | | RJI to Note | | Note to Disposition | | Number of Cases | | RJI to Disposition | | Number of Cases | | RJI to Disposition | |
| | Comm. | Non-Comm. | Comm. | Non-Comm. | Comm. | Non-Comm. | Comm. | Non-Comm. | Comm. | Non-Comm. | Comm. | Non-Comm. | Comm. | Non-Comm. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1997 | 564 | 886 | 352 | 553 | 193 | 334 | 447 | 264 | 396 | 779 | 2190 | 1985 | 412 | 799 |
| 1998 | 654 | 1006 | 378 | 551 | 276 | 454 | 487 | 349 | 512 | 665 | 1963 | 1808 | 533 | 737 |
| 1999 | 639 | 915 | 393 | 541 | 246 | 374 | 653 | 338 | 327 | 345 | 1672 | 1659 | 379 | 506 |
| 2000 | 660 | 817 | 390 | 466 | 270 | 351 | 627 | 336 | 343 | 363 | 1598 | 1869 | 398 | 477 |
| 2001 | 615 | 747 | 385 | 494 | 230 | 254 | 542 | 311 | 315 | 280 | 1532 | 1784 | 366 | 389 |
| 2002 | 632 | 633 | 418 | 396 | 214 | 236 | 575 | 322 | 361 | 249 | 1441 | 1841 | 364 | 341 |
| 2003 | 651 | 656 | 457 | 410 | 195 | 246 | 555 | 292 | 337 | 251 | 1268 | 1394 | 396 | 366 |
| 2004 | 703 | 713 | 479 | 444 | 224 | 269 | 297 | 469 | 311 | 289 | 1458 | 1278 | 378 | 403 |
| 2005 | 677 | 678 | 439 | 427 | 238 | 251 | 299 | 399 | 309 | 245 | 1302 | 1190 | 378 | 354 |
| 2006 | 760 | 815 | 500 | 494 | 261 | 321 | 291 | 280 | 340 | 358 | 1150 | 794 | 425 | 477 |

* Calendar year