David Molton (DM 1106)
Andrew Dash (AD 7913)
**BROWN RUDNICK BERLACK ISRAELS LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800

Leo R. Beus
Dennis K. Blackhurst
**BEUS GILBERT PLLC**
4800 North Scottsdale Road, Suite 6000
Scottsdale, Arizona 85251
Telephone: (480) 429-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                                                :
In re REFCO INC. SECURITIES LITIGATION          :          Case No. 07-md-1902 (GEL)
                                                                :
----------------------------------------------------------------X

This Document Relates to:


----------------------------------------------------------------X
KENNETH M. KRYS and CHRISTOPHER          :
STRIDE, as JOINT OFFICIAL LIQUIDATORS       :
of SPHINX LTD., SPHINX STRATEGY FUND        :          Case No. 08-cv-3065 (GEL)
LTD.;                                                           :
SPHINX PLUS SPC LTD., SPHINX                        :          Case No. 08-cv-3086 (GEL)
DISTRESSED LTD., SPHINX MERGER               :
ARBITRAGE LTD.; SPHINX SPECIAL                  :
SITUATIONS LTD., SPHINX MACRO LTD.;          :
SPHINX LONG/SHORT EQUITY LTD.;                 :
SPHINX MANAGED FUTURES LTD.; SPHINX       :          **MEMORANDUM OF LAW**
EQUITY MARKET NEUTRAL LTD.; SPHINX         :          **IN SUPPORT OF**
CONVERTIBLE ARBITRAGE LTD.; SPHINX        :          **PLAINTIFFS' MOTION**
FIXED INCOME ARBITRAGE LTD.; SPHINX       :          **FOR REMAND AND/OR**
DISTRESSED FUND SPC; SPHINX MERGER        :          **ABSTENTION**
ARBITRAGE FUND SPC; SPHINX SPECIAL         :
SITUATIONS FUND SPC; SPHINX MACRO          :
FUND SPC; SPHINX LONG/SHORT EQUITY         :
FUND SPC; SPHINX MANAGED FUTURES           :
FUND SPC; SPHINX EQUITY MARKET               :
NEUTRAL FUND SPC; SPHINX                           :
CONVERTIBLE ARBITRAGE FUND SPC;          :
SPHINX FIXED INCOME ARBITRAGE FUND      :
SPC; PLUSFUNDS MANAGED ACCESS FUND     :
SPC LTD.; KENNETH M. KRYS and                    :

CHRISTOPHER STRIDE as assignees of claims        :
assigned by MIAMI CHILDREN'S HOSPITAL            :
FOUNDATION, OFI, GREEN & SMITH                   :
INVESTMENT MANAGEMENT LLC, THALES                :
FUND MANAGEMENT LLC, KELLNER                     :
DILEO & CO., LLC, MARTINGALE ASSET               :
MANAGEMENT LP, LONGACRE FUND                     :
MANAGEMENT LLC, ARNHOLD & S.                     :
BLEICHROEDER ADVISERS LLC, PICTET &              :
CIE, RGA AMERICA REINSURANCE                     :
COMPANY, DEUTSCHE BANK (SUISSE) SA,              :
ARAB MONETARY FUND, HANSARD                      :
INTERNATIONAL LTD., CONCORDIA                    :
ADVISORS LLC, GABELLI SECURITIES, INC.,          :
CITCO GLOBAL CUSTODY; and JAMES                  :
P. SINCLAIR as Trustee of the SPHINX TRUST,      :
                                                 :
                    Plaintiffs,                  :
                                                 :
                  -against-                      :
                                                 :
CHRISTOPHER SUGRUE; MARK                         :
KAVANAGH; BRIAN OWENS;                           :
PRICEWATERHOUSECOOPERS L.L.P.; MARI              :
FERRIS; PRICEWATERHOUSECOOPERS                   :
CAYMAN ISLANDS; GIBSON, DUNN &                   :
CRUTCHER LLP; REFCO ALTERNATIVE                  :
INVESTMENTS LLC; GRANT THORNTON                  :
LLP; MARK RAMLER; ERNST & YOUNG U.S.             :
LLP; MAYER BROWN LLP f/k/a MAYER                 :
BROWN ROWE & MAW LLP; JOSEPH                     :
COLLINS; EDWARD S. BEST; PAUL KOURY;             :
PHILLIP R. BENNETT; ROBERT C. TROSTEN;           :
TONE GRANT; SANTO MAGGIO; THOMAS                 :
HACKL; DENNIS KLEJNA; BAWAG P.S.K.               :
BANK FUR ARBEIT UND WIRTSCHAFT UND               :
OSTERREICHISCHE POSTPARKASSE                     :
AKTIENGESELLSCHAFT; JP MORGAN                    :
CHASE & CO.; CREDIT SUISSE SECURITIES            :
(USA) LLC f/k/a CREDIT SUISSE FIRST              :
BOSTON LLC; BANC OF AMERICA                      :
SECURITIES LLC; THOMAS H. LEE                    :
PARTNERS, L.P.; THOMAS H. LEE                    :
ADVISORS, LLC; THL MANAGERS V, LLC;              :
THL EQUITY ADVISORS V, L.P.; THOMAS H.           :
LEE EQUITY FUND V, L.P.; THOMAS H. LEE           :
PARALLEL FUND V, L.P.; THOMAS H. LEE             :
EQUITY (CAYMAN) FUND V, L.P.; THOMAS             :
H. LEE INVESTORS LIMITED PARTNERSHIP;            :

1997 THOMAS H. LEE NOMINEE TRUST;           :
THOMAS H. LEE; DAVID V. HARKINS;            :
SCOTT L. JAECKEL; SCOTT A. SCHOEN;          :
WILLIAM T. PIGOTT; LIBERTY CORNER           :
CAPITAL STRATEGIES, LLC; EMF                :
FINANCIAL PRODUCTS LLC; EMF CORE            :
FUND LTD.; DELTA FLYER FUND LLC; ERIC       :
M. FLANAGAN; INGRAM MICRO, INC.; CIM        :
VENTURES, INC.; BECKENHAM TRADING           :
CO., INC.; ANDREW KRIEGER; COAST            :
ASSET MANAGEMENT, LLC, f/k/a COAST          :
ASSET MANAGEMENT LP; CS LAND                :
MANAGEMENT LLC; CHRISTOPHER                 :
PETTIT; and REFCO GROUP HOLDINGS,           :
INC.; and REFCO ASSOCIATES, INC.,           :
                                            :
                  Defendants                :
------------------------------------------------------------------X

## TABLE OF CONTENTS

<u>Page</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................ii, iii

I.  INTRODUCTION. ........................................................................................... 1

    A.  Summary Of Argument.......................................................................... 1

    B.  Background Of The Case......................................................................... 2

II.  THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION
    OVER PLAINTIFFS' COMPLAINT.............................................................. 3

    A.  Plaintiffs' Complaint Does Not Provide Any Basis for Removal to
        This Court. ........................................................................................... 4

    B.  Plaintiffs' Complaint Is Not Related To The PlusFunds
        Bankruptcy.......................................................................................... 5

    C.  Plaintiffs' Complaint Is Not Related to the SPhinX Liquidation. .............. 10

    D.  Plaintiffs' Case Is Not Related To The Refco Bankruptcy.......................... 11

III.  EVEN IF THIS COURT CONCLUDES THAT IT HAS "RELATED TO"
     JURISDICTION, THE CASE SHOULD BE REMANDED TO THE
     STATE COURT ON THE BASES OF ABSTENTION OR EQUITABLE
     REMAND. ...................................................................................................... 15

    A.  The Case Should Be Remanded Under Mandatory Abstention
        Principles............................................................................................ 15

    B.  This Case Is Equally Appropriate for Remand on the Basis of
        Permissive Abstention. ....................................................................... 20

    C.  This Case Is Also Suitable for Equitable Remand..................................... 22

IV.  CONCLUSION ……………………………………………………….............25

# TABLE OF AUTHORITIES

**Pages**

## Cases

*176-60 Union Turnpike, Inc. v. Howard Beach Fitness Ctr.*, 209 B.R. 307
(S.D.N.Y. 1997)............................................................................................... 14

*Abbatiello v. Monsanto Co.*, 2007 WL 747804  (S.D.N.Y. March 8, 2007) ................................ 24

*Austro v. Niagara Mohawk Power Corp.*, 66 N.Y.2d 674, 496 N.Y.S.2d 410 (N.Y. 1985) ........ 12

*Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006)................................................................. 3

*Bondi v. Grant Thornton Int'l*, 322 B.R. 44 (S.D.N.Y. 2005) ........................................................ 11

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ...................................................................... 5, 13

*Certain Underwriters at Lloyd's London v. ABB Lummus Global, Inc.*, 337 B.R.
22 (S.D.N.Y. 2005)........................................................................................... 17

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405
(S.D.N.Y. 1991)............................................................................................... 23

*Gen. Elec. Capital Corp. v. Pro-Fac Coop*, 2002 WL 1300054 (S.D.N.Y. June 11,
2002)................................................................................................................ 14

*Gibbs-Alfano v. Burton*, 281 F.3d 12 (2d Cir. 2002) ................................................................... 13

*In re Adelphia Commc'ns Corp.*, 285 B.R. 127 (Bankr. S.D.N.Y. 2002) ...................................... 16

*In re Amanat*, 338 B.R. 574 (S.D.N.Y. 2005)..................................................................... 5, 16, 17

*In re Ames Department Stores, Inc.*, 2006 WL 1288586 (Bankr. S.D.N.Y. April
19, 2006).......................................................................................................... 17

*In re Enron Corp.*, 353 B.R. 51 (Bankr. S.D.N.Y 2006) .............................................................. 14

*In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002) .................................................. 14

*In re General Media, Inc.*, 335 B.R. 66 (Bankr. S.D.N.Y. 2005)......................................... 7, 8, 13

*In re Ha-Lo Indus., Inc.*, 330 B.R. 663 (Bankr. N.D. Ill. 2005) .................................................. 14

*In re Kassover*, 336 B.R. 74 (Bankr. S.D.N.Y. 2006) ........................................................ 8, 16, 17

*In re Koreag Controle*, 961 F.2d 341 (2d Cir. 1992)..................................................................... 10

*In re Marconi PLC*, 363 B.R. 361 (S.D.N.Y. 2007)............................................................... 10, 11

*In re Resorts Int'l*, 372 F.3d 154 (3d Cir. 2004) ............................................................................ 8

*In re SPhinX, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006) ........................................... 10

*In re WorldCom Inc. Sec. Litig.*, 293 B.R. 308 (S.D.N.Y. 2003) ........................................ 4, 12, 20

*Int'l. Primate Prot. League v. Tulane Educ. Fund*, 500 U.S. 72 (1991).......................................... 4

*New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143 (4th Cir. 2000), *cert. denied*,
    532 U.S. 1052 .......................................................................................................... 15

*Norkin v. DLA Piper Rudnick Gray and Cary LLP*, 2006 WL 839079 (S.D.N.Y.
    March 31, 2006) ...................................................................................................... 20

*Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984), *overruled on other grounds by
    Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995)................................................ 14, 15

*Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004) ............................................................... 24

*Retirement Sys. v. JP Morgan Chase & Co.*, 285 B.R. 519 (M.D. Ala. 2002)............................. 13

*Steel Co. v. Citizens For a Better Env't*, 523 U.S. 83 (1998) ........................................... 3

*Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir. 1988)................................................ 4

## Statutes

28 U.S.C. § 1334............................................................................................. passim

28 U.S.C. § 1447(c) ......................................................................................... 4

28 U.S.C. § 1452(b) ......................................................................................... 22

## Other Authority

2 *Collier on Bankruptcy* 304.17 (15th ed. 2007)................................................................10

Plaintiffs, by and through their undersigned counsel, respectfully submit this memorandum of law in support of their Motion for Remand and/or Abstention. This case should be remanded back to state court for lack of subject matter jurisdiction. In the alternative, if this Court finds that subject matter jurisdiction exists, the Court should order remand on the basis of mandatory or permissive abstention or equitable remand.

## I.   INTRODUCTION.

### A.   Summary Of Argument.

Remand of this action to New York state court is appropriate for a number of reasons. First, the Court has no subject matter jurisdiction over Plaintiffs' claims. The only basis asserted by the Bank Defendants[1] for federal subject matter jurisdiction in their Notice of Removal ("Bank Defendants' Notice of Removal") is that Plaintiffs' claims allegedly are "'related to' each of the PlusFunds, SPhinX, and Refco bankruptcy cases," purportedly creating jurisdiction under 28 U.S.C. § 1334(b). This argument fails because Plaintiffs' claims can have no conceivable effect on (i) the PlusFunds bankruptcy, in which PlusFunds' former claims have been assigned -- pursuant to a confirmed Plan of Liquidation -- to the SPhinX Trust solely to benefit the JOLs; (ii) the SPhinX liquidation proceedings centered in the Cayman Islands; or (iii)

---

[1] In this Motion, the term "Removing Defendants" refers to the following defendants: (i) JP Morgan Chase & Co., Credit Suisse Securities (USA) LLC, Banc of America Securities LLC, Grant Thornton LLP, Mark Ramler, Mayer Brown LLP, Mayer Brown International LLP, Thomas H. Lee Partners LP, Thomas H. Lee Advisors LLC, THL Managers V LLC, THL Equity Advisors V LP, Thomas H. Lee Equity Fund V LP, Thomas H. Lee Parallel Fund V LP, Thomas H. Lee (Cayman) Fund V LP, Thomas H. Lee Investors Limited Partnership, 1997 Thomas H. Lee Nominee Trust, Thomas H. Lee, David V. Harkins, Scott L. Jaeckel, Scott A Schoen, PricewaterhouseCoopers LLP and Mari Ferris (collectively, the "Bank Defendants"), who filed a Notice of Removal on March 26, 2008; (ii) BAWAG P.S.K. Bank für Arbeit und Wirtschaft und Österreichische Postparkasse Aktiengesellschaft ("BAWAG"), which filed a Notice of Removal on March 26, 2008 (the "BAWAG Notice of Removal"); (iii) Dennis Klejna, who filed a Joinder to the Bank Defendants' Notice of Removal on April 4, 2008; and (iv) Ingram Micro, Inc. and CIM Ventures, Inc., which filed a Notice of Consent to Removal on April 9, 2008. In addition to claiming "related to" jurisdiction, BAWAG argues that Plaintiffs' claims against BAWAG (the "BAWAG Claims") are core claims "arising under" or "arising in" the Refco Chapter 11 case. Contemporaneous with the filing of this Motion, Plaintiffs are also filing papers in opposition to BAWAG's Motion to Refer the BAWAG Claims to the Bankruptcy Court (the "BAWAG Motion to Refer"). Plaintiffs' Memorandum of Law in Opposition to the BAWAG Motion to Refer ("Plaintiffs' Opposition Memorandum") addresses in detail the reasons why the BAWAG Claims do not "arise under" or "arise in" and are not "related to" the Refco bankruptcy, and we respectfully incorporate by reference Plaintiffs' Opposition Memorandum herein with respect to these issues and arguments.

the Refco bankruptcy, none of whose debtors or estates can be affected by any recovery by Plaintiffs. *See also* Plaintiffs' Opposition Memorandum to the BAWAG Motion to Refer, at 19-21.

In the alternative, even if the Court concludes that subject matter jurisdiction exists, remand is appropriate under the doctrines of mandatory or permissive abstention or equitable remand. Because the Commercial Division of the Supreme Court for the State of New York, New York County (the "Commercial Division") is perfectly capable of handling Plaintiffs' cases in a timely manner, remand is mandatory under 28 U.S.C. § 1334(c) in connection with the Removing Defendants' assertion of "related to" jurisdiction. In light of the unavoidable prejudice to Plaintiffs if they are forced to litigate in consolidated federal proceedings that include cases that have been pending for over two years, it is also equitable and fair for the Court to abstain from exercising jurisdiction and remand these proceedings to the Commercial Division under 28 U.S.C. §§ 1334(c)(1) and 1452(b) in connection with any and all bases of removal asserted by the Removing Defendants, including BAWAG's meritless assertion of "arising under" and "arising in" jurisdiction. *See note 1, supra.*

### B.    Background Of The Case.

Plaintiffs filed suit in the Supreme Court of the State of New York, New York County on March 5, 2008. Plaintiffs are comprised of three distinct groups: (1) Kenneth Krys and Christopher Stride, the Joint Official Liquidators ("JOLs") of the SPhinX Funds, a family of hedge funds organized under Cayman Islands law; (2) Messrs. Krys and Stride, as assignees of claims from a number of investors in the SPhinX Funds; and (3) James Sinclair, the Trustee of the SPhinX Trust, which was assigned claims formerly belonging to the estate of PlusFunds Group, Inc. ("PlusFunds"), the SPhinX Funds' former investment manager. The causes of action alleged in the Complaint are all common law causes of action under the laws of New York; no federal causes of action are asserted.

Plaintiffs seek damages arising from the loss of the SPhinX Funds' assets improperly placed in unprotected, non-regulated accounts at Refco Capital Markets Ltd. ("RCM"), an unregulated Bermuda entity utilized by Refco in a massive fraud scheme designed to conceal hundreds of millions of dollars in uncollectible receivables and enrich Refco insiders. As alleged in the Complaint, culpable agents of SPhinX and PlusFunds caused excess cash of one of the SPhinX Funds, SPhinX Managed Futures Fund SPC ("SMFF"), to be moved from protected, customer segregated accounts at Refco LLC, Refco's regulated affiliate, to non-regulated, commingled accounts at RCM. Culpable Refco-related parties and agents then used RCM customer assets (including SMFF cash) to facilitate Refco's fraudulent business operations.

Refco's fraud was disclosed to the public in October 2005, when Refco issued press releases regarding an undisclosed $430 million receivable owed Refco by an entity controlled by Refco's CEO, Phillip Bennett, and which had been fraudulently concealed by Bennett and conspirators. As of the date of the disclosure of the Refco fraud, SMFF had approximately $312 million in cash deposited with RCM, approximately $263 million of which was ultimately lost in the Refco scandal. The JOLs seek to recover those amounts and amounts lost by SPhinX investors from (i) parties responsible for placing SMFF's excess cash at RCM, and (ii) parties responsible or involved in the Refco fraud. The SPhinX Trustee seeks to recover damages suffered by PlusFunds, SPhinX's investment manager, whose business collapsed following discovery of the Refco fraud.

## II.    THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' COMPLAINT.

Subject matter jurisdiction is a threshold question because without it, the "Court cannot proceed at all." *Steel Co. v. Citizens For a Better Env't*, 523 U.S. 83, 94 (1998). The party seeking removal has the burden to establish the factual and legal basis for removal, including jurisdiction. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006). Moreover, courts

strictly construe removal statutes in favor of remand and against removal. *See In re WorldCom Inc. Sec. Litig.*, 293 B.R. 308, 316-17 (S.D.N.Y. 2003). It is the Complaint, not the removal notice, that must provide the factual and procedural basis for removal. *See Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir. 1988). If there is no subject matter jurisdiction, remand is mandatory. *See Int'l. Primate Prot. League v. Tulane Educ. Fund*, 500 U.S. 72, 89 (1991); 28 U.S.C. § 1447(c).

### A.    <u>Plaintiffs' Complaint Does Not Provide Any Basis for Removal to This Court.</u>

Plaintiffs' Complaint alleges state law causes of action for breach of fiduciary duty, conversion, aiding and abetting, officer/director liability, malpractice, negligent misrepresentation, conspiracy, fraud and interference with contract/prospective contract. As Defendants implicitly admit, the Complaint raises no federal questions, and the parties are not diverse.

The only basis for federal jurisdiction asserted by the Removing Defendants (other than BAWAG) is that Plaintiffs' claims are "'related to' each of the PlusFunds, SPhinX, and Refco bankruptcy cases." Where bankruptcy matters are concerned, 28 U.S.C. § 1334(b) provides federal subject matter jurisdiction over claims that either "arise under" Title 11 of the United States Code or that "arise in" or are "related to" a case under Title 11. The Removing Defendants (other than BAWAG, *see* note 1 *supra*) concede that none of Plaintiffs' causes of action "arise under" or "arise in" cases under Title 11. *See* Bank Defendants' Notice of Removal at 13. No proposition of bankruptcy law is implicated and no provision of the Bankruptcy Code is referenced in the Complaint. Plaintiffs' claims are in no sense "created by" Title 11, and (i) all defendants but BAWAG concede they are not "core" proceedings, *see id.*, and (ii) BAWAG's arguments as to the "core" nature of Plaintiffs' claims are without merit. *See* Plaintiff's Opposition Memorandum to the BAWAG Motion to Refer. Indeed, recoveries in this case will

not benefit any U.S. debtor; the only beneficiary will be the SPhinX Trust and the JOLs, liquidators of a non-U.S. bankruptcy estate.

"Related to" actions "involve claims whose outcomes could conceivably have any effect on the estate being administered in bankruptcy." *In re Amanat*, 338 B.R. 574, 579 (S.D.N.Y. 2005). "Related to" jurisdiction is broad but is not limitless. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 398 (1995).

### B.   Plaintiffs' Complaint Is Not Related To The PlusFunds Bankruptcy.

Resolution of Plaintiffs' claims can have no conceivable effect on the resolution of the PlusFunds bankruptcy; therefore, Plaintiffs' claims are not "related to" PlusFunds' bankruptcy.

PlusFunds' bankruptcy is effectively complete. PlusFunds' Fifth Amended Plan of Liquidation was confirmed by Judge Peck on August 7, 2007. Attached as Exhibits A and B to the accompanying Declaration of David J. Molton ("Molton Decl.") are the Fifth Amended Plan of Liquidation of PlusFunds Group, Inc. (the "Plan") and the Bankruptcy Court's August 7, 2007 Confirmation Order. Under the Plan, PlusFunds' estate assets were assigned to one of two trusts, the SPhinX Trust or the PlusFunds General Trust. *See* Plan Article VI(C) ("On the Effective Date, the Debtor shall be deemed to have relinquished any and all rights in and to the Assets that shall be vested, respectively, in the SPhinX Trust and the General Trust"). The SPhinX Trust was assigned PlusFunds' "Causes of Action" in exchange for consideration. Recovery on these claims will accrue solely to the benefit of the JOLs and will have no impact on the PlusFunds estate. The remaining Assets of the PlusFunds estate, none of which can be affected in this litigation, were transferred to the PlusFunds General Trust, which is not a party to this action.

Article VI(F) of the PlusFunds Plan demonstrates that the SPhinX Trust was created to benefit the JOLs, not the PlusFunds estate. *See* Article VI(F)(1) ("The SPhinX Trust shall be established for the primary purpose of liquidating the Causes of Action for or on behalf of the JOLs"); VI(F)(2) ("The vesting of the Causes of Action in the SPhinX Trust will be for the

exclusive benefit of the JOLs on behalf of the SPhinX Funds (and ultimately the creditors and interest holders of the SPhinX Funds)"). The PlusFunds Plan provides that neither the debtor nor the General Trust created by the Plan will have any interest in assets of the SPhinX Trust, except to the extent that the General Trust "may, but shall not be required to," use the transferred Causes of Action for the sole purpose of defending, setting off, offsetting or otherwise objecting to certain identified claims. *See* Article VI(F)(2); VIII(F).

Like other plans of liquidation, the PlusFunds Plan provides for the retention of Bankruptcy Court jurisdiction in specific, limited instances. *See* Article XI. Generally, the Bankruptcy Court retains jurisdiction over the usual matters incident to a bankruptcy, such as jurisdiction to determine the status of a claim, applications for compensation or reimbursement, resolution of issues treating executory contracts or unexpired leases, distributions to holders of allowed claims, resolution of any controversies regarding the interpretation or enforcement of the Plan, actions to interpret or enforce injunctions authorized by the Plan, etc. *See id.*

This retention of jurisdiction is defined and limited, however. With respect to the SPhinX Trust, the Bankruptcy Court retains specific jurisdiction to hear Avoidance Actions and Preference Claims on behalf of the SPhinX Trust (*see* Article XI(F)), none of which is alleged in the Complaint. The court also retains jurisdiction to hear and determine requests by the Trustee of the PlusFunds General Trust or the SPhinX Trustee to compel production or examination pursuant to Bankruptcy Rule 2004. *See* Article VI(F)(5), XI(H). The court retains jurisdiction to interpret or enforce the General Trust Agreement and the SPhinX Trust Agreement and to determine any matters that arise in connection with the Trust Agreements. *See* Article XI(I), (M). The Plan leaves to the SPhinX Trustee's discretion whether to seek Bankruptcy Court involvement. *See* Article VI(F)(5) ("The SPhinX Trustee may, but shall not be required, to seek the Bankruptcy Court's adjudication of any matter that is within the Bankruptcy Court's

jurisdiction"). Significantly, there is no retention of jurisdiction over claims brought by the Trustee against third parties, and the Trustee does not seek the Court's determination of any issues for which the Bankruptcy Court retained jurisdiction.

Under the PlusFunds Plan, the Bankruptcy Court is to have no ongoing role in connection with litigation initiated by the SPhinX Trust. The Plan grants the SPhinX Trustee absolute discretion to pursue or not to pursue the causes of action, which are vested in the Trust for the exclusive benefit of the SPhinX Funds. *See* Article VI(F)(5) ("The SPhinX Trustee, on behalf of the SPhinX Trust, shall have the absolute discretion to investigate, pursue or not to pursue, or to settle, consistent with the SPhinX Trust Agreement, any and all causes of action vested in the SPhinX Trust as the SPhinX Trustee determines is in the best interest of the SPhinX Funds"). No Bankruptcy Court approval is required in order for the SPhinX Trustee to prosecute, compromise or settle objections to causes of action in the name of the SPhinX Trust. Further, Article VI(C) of the Plan provides that "[n]either the General Trust [nor] the SPhinX Trust shall be deemed a successor-in-interest of the debtor for any purpose other than as specifically set forth" in the plan. In sum, the Plan goes to great lengths to describe the Trustee's absolute discretion to pursue or not to pursue the claims in any appropriate court or venue and to separate those claims from the remainder of the PlusFunds estate.

In light of the Plan's express purpose to transfer Causes of Action out of the PlusFunds estate, there can be no jurisdiction over the Plaintiffs' claims here. Once confirmation of a bankruptcy plan occurs, "the Bankruptcy Court's jurisdiction shrinks." *See, e.g., In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) (declining jurisdiction over action brought

by successor-in-interest to Chapter 11 debtor who had brought adversary proceeding to recover from debtor's principal for breach of fiduciary duty and conversion).[2]

A party invoking a Bankruptcy Court's post-confirmation jurisdiction must satisfy two requirements. First, "the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement." *Id.* (citing to *In re Resorts Int'l*, 372 F.3d 154, 168-69 (3d Cir. 2004)). Second, the plan must provide for the retention of jurisdiction over the dispute. *See General Media*, 335 B.R. at 73-74; *see also In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006).

Defendants cannot meet this test. First, the Removing Defendants (BAWAG raises the "arising under" and "arising in" issue only in connection with the Refco bankruptcy) implicitly admit by seeking removal based solely on "related to" jurisdiction that a close nexus to the bankruptcy plan or proceeding does not exist – otherwise, they would assert that Plaintiffs' causes of action "arise under" or "arise in" this bankruptcy case. A simple review of Plaintiffs' state law causes of action against the non-debtor Defendants confirms that the matter does not affect the interpretation or administration of the confirmed PlusFunds Plan, especially where any recovery will inure solely to benefit the SPhinX Funds, not the PlusFunds bankruptcy estate. Second, as discussed above, the Plan did not provide for the retention of jurisdiction over this dispute, but, to the contrary, contemplated that the Bankruptcy Court would have no involvement in the litigation at all.

The Removing Defendants argue that the Plan "provided for the PlusFunds bankruptcy estate to continue post-confirmation" and that the SPhinX Trustee invoked that jurisdiction in

---

[2] This same analysis should apply with respect to the Refco bankruptcy because the Refco Plan has also been confirmed. Although the SPhinX liquidation in the Cayman Islands has not concluded, the Chapter 15 proceedings in the U.S. are essentially over. To append this state law case to a moribund Chapter 15 case would not be appropriate.

"seeking pre-litigation discovery." *See* Bank Defendants' Notice of Removal, at 7-8; BAWAG Notice of Removal, at 13, n. 4 (adopting and incorporating bases for removal asserted by other removing defendants). It is true that the Trustee sought examinations under Rule 2004 relating to the Causes of Action, as specifically contemplated in the Plan, but that is the extent of the Bankruptcy Court's retention of jurisdiction. *See* Article VI(5). The Trustee no longer seeks Rule 2004 examinations, so the issue is moot.

The Removing Defendants also argue that this litigation may "impact distribution to, and relative compensation for, creditors of the PlusFunds bankruptcy estate—notably the SPhinX Funds." This is incorrect. Per the Plan, the SPhinX Funds are no longer creditors of the PlusFunds estate. *See* Article V(H) ("As of the Effective Date, the Debtor and the SPhinX Funds shall be deemed to have generally released each other from any and all claims"). Defendants also argue that the Bankruptcy Court retained subject matter jurisdiction over whether PlusFunds' estate "owns" particular claims, but there is no such dispute over ownership of any claims, beyond Defendants' speculation.[3]

Finally, Defendants argue that former PlusFunds directors' claims against the PlusFunds estate could be affected by the litigation, or that former directors may seek to recover under directors and officers liability insurance. Again, Defendants only speculate as to an actual issue here, but the fact remains that there can be no impact on the PlusFunds estate. The "Causes of Action" transferred to the SPhinX Trust include any claims in respect of "D&O Coverage." *See* Article I(B)(18). Thus, director claims on insurance coverage will have no effect on the PlusFunds estate. Moreover, PlusFunds' former directors are barred from bringing suit against PlusFunds (Article V(I)), and any indemnity or contribution claims they may have against the PlusFunds estate were eliminated in the Plan. *See* Article VIII(E) ("Contingent Claims against

the Debtor for indemnity, reimbursement or contribution shall be disallowed"). Nothing in the Plan suggests that recovery by the Plaintiffs from former PlusFunds directors will impact the PlusFunds estate.

### C.    Plaintiffs' Complaint Is Not Related to the SPhinX Liquidation.

The Removing Defendants also argue that Plaintiffs' Complaint is sufficiently "related to" the SPhinX Chapter 15 case to give rise to jurisdiction in this Court. However, the Removing Defendants have misread the applicable authority, in particular this Court's decision *In re Marconi PLC*, 363 B.R. 361 (S.D.N.Y. 2007) (Lynch, J.), and have provided an insufficient basis to justify jurisdiction here.

SPhinX initiated a Chapter 15 proceeding in the Southern District of New York for the purpose of protecting its interests in the United States during the pendency of its Cayman Islands liquidation. The Chapter 15 is still pending, although essentially complete. *See In re SPhinX, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006). The Bankruptcy Court has jurisdiction over the SPhinX Chapter 15 because the proceeding "preserves, protects, or recovers property of the foreign debtor." *See Marconi*, 363 B.R. at 365.

However, the "filing of a Section 304 Petition [now Chapter 15] does not create a bankruptcy estate that must be administered by the Court." *Id.*; 2 *Collier on Bankruptcy* 304.17 (15th ed. 2007) ("Unlike a plenary case under the Bankruptcy Code, a Section 304 ancillary case does not create an estate under § 541(a) of the Code"). An ancillary proceeding under Section 304 (now a Chapter 15 case) "is not a bankruptcy that implicates the full range of procedural and substantive provisions applicable to domestic bankruptcies." *Marconi*, 363 B.R. at 365; *see also In re Koreag Controle*, 961 F.2d 341, 357 (2d Cir. 1992). Nor does a Section 304 petition support "related to" jurisdiction under § 1334(b):

---

[3] SPhinX paid valuable consideration -- in excess of $5 million -- for the PlusFunds claims. No one contested that purchase in the PlusFunds bankruptcy.

> In a Section 304 proceeding … there is no "estate being administered in bankruptcy" in the United States. Accordingly, even under this quite expansive test, there is no basis for contending that [Plaintiff's] common-law tort and contract claims are related to any bankruptcy case.

*Marconi*, 363 B.R. at 366.[4]  Plaintiffs' common law tort claims against non-debtor defendants might ultimately benefit the SPhinX estate in the Cayman Islands.  However, it is not "related to" a case under United States Bankruptcy law because, under *Marconi*, the Title 15 action does not create the type of bankruptcy estate that gives rise to "related to" jurisdiction under these circumstances.

### D.    Plaintiffs' Case Is Not Related To The Refco Bankruptcy.

The Removing Defendants also argue that Plaintiffs' claims could have a "conceivable affect" and a "substantial nexus" to the Refco Chapter 11 case.  Again, Defendants overstate their position and misapprehend the applicable law and facts.

Initially, the Removing Defendants assert that the "outcome of this lawsuit may impact distributions to, and relative compensation for, creditors of the Refco debtors' bankruptcy estate." *See* Bank Defendants' Notice of Removal, at 11; BAWAG Notice of Removal, at 11. However, nowhere do the Removing Defendants explain how that may happen.  The Refco Plan has been confirmed.  Plaintiffs have not filed suit against any Refco debtor or litigation trust; nor do Plaintiffs seek to recover damages suffered by Refco.  The most that can be said is that Plaintiffs are rival claimants seeking to recover damages from common defendants, but this cannot be said to affect the Refco bankruptcy estates, otherwise every other conceivable litigation to which those Defendants are a party would be considered "related to" the Refco bankruptcy.

---

[4] Defendants' reliance on *Bondi v. Grant Thornton Int'l*, 322 B.R. 44 (S.D.N.Y. 2005) is also misplaced.  Plaintiffs submit that the Court's 2007 *Marconi* opinion is better reasoned in its conclusion that a Section 304 (now Chapter 15) proceeding does not create an estate on which to hook "related to" jurisdiction.

The Removing Defendants also posit that the Court will need to determine the party to whom Plaintiffs' claims rightfully belong. *See* Bank Defendants' Notice of Removal, at 11; BAWAG Notice of Removal, at 11. The Removing Defendants are simply wrong. Refco has its claims, and the Plaintiffs have alleged their own claims and damages arising from related facts. Similarly, there is no explanation as to how the litigation of Plaintiffs' claims could alter the Refco debtors' rights, liabilities, options, freedom or action. Plaintiffs' action is solely against non-debtors based on state law claims and seeks to recover losses suffered by SPhinX and PlusFunds – not any debtor entity.

The Removing Defendants speculate that Plaintiffs' claims may affect the Refco Chapter 11 cases because Grant Thornton and certain unspecified defendants may seek indemnity or contribution from the Refco estate.[5] In order for a potential contribution/indemnity claim to give rise to "related to" jurisdiction in a bankruptcy court, there must be a "reasonable" legal basis for the potential claim. *See WorldCom*, 293 B.R. at 318. Here, there is no reasonable legal basis because the Removing Defendants have not produced or identified documents giving rise to such a claim. Regardless, the Removing Defendants fail to appreciate one important point: Plaintiffs' claims against Grant Thornton are based entirely on <u>intentional</u> misconduct or reckless misconduct. If Grant Thornton is liable to Plaintiffs for intentional wrongdoing, as alleged in the Complaint, any indemnity/contribution claim against Refco will fail because there is no indemnity for intentional misconduct under New York law. *Austro v. Niagara Mohawk Power Corp.*, 66 N.Y.2d 674, 676, 496 N.Y.S.2d 410, 410 (N.Y. 1985) (indemnification agreements unenforceable for public policy reasons "to the extent that they purport to indemnify a party from damages flowing from the intentional causation of injury"); *see also Gibbs-Alfano v. Burton*, 281

---

[5] Plaintiffs' BAWAG Claims cannot conceivably have any impact on the Refco estate since BAWAG has released all claims, including indemnification and contribution claims, against the Refco debtors. *See* Plaintiffs' Opposition Memorandum to the BAWAG Motion to Refer, at 19-21.

F.3d 12, 21 (2d Cir. 2002) (same). Moreover, the engagement letter between Grant Thornton and Refco will likely exclude intentional misconduct under its indemnity/contribution provision.[6] The potential Grant Thornton indemnity claim is thus insufficient to create jurisdiction here. *See Retirement Sys. v. JP Morgan Chase & Co.*, 285 B.R. 519, 529-31 (M.D. Ala. 2002) (holding that because potential indemnitee had to establish that it made no untrue statements or omissions to debtor, potential effect of third-party litigation on bankruptcy was too "speculative" and jurisdiction was denied).

The Removing Defendants' other argument for removal is that "certain individual defendants may also pursue claims for contribution from the Refco debtors bankruptcy estate or their insureds for any judgment against them." *See* Bank Defendants' Notice of Removal, at 12 (emphasis added); BAWAG Notice of Removal, at 13, n. 4 (adopting and incorporating bases for removal asserted by other removing defendants).. However, this argument is equally insufficient. Any contract-based indemnity or right to contribution would likely contain exclusions for willful or reckless misconduct. Further, whether certain directors and officers have liability insurance is irrelevant. The Refco estate has not been shown to have a protectable interest in directors and officers insurance policies. Accordingly, any claims against the policies will have no effect on the debtors' estate.

In any event, the remote possibility that unnamed defendants might pursue claims for contribution is an insufficient basis on which to base jurisdiction. As the Supreme Court has noted, a district court's "related to" jurisdiction cannot be limitless, *Celotex Corp. v. Edwards*, 514 U.S. 300, 398 (1995), and, as noted above, the court's jurisdiction "shrinks" after confirmation. *See General Media*, 335 B.R. at 73. The mere possibility of some effect from an

---

[6] Plaintiffs' counsel has not reviewed Grant Thornton's Engagement Agreements with Refco and has therefore not had an opportunity to analyze exclusions that might apply to indemnity/contribution claims. However, Plaintiffs submit that it is the Removing Defendants' burden to establish a valid indemnity/contribution claim and they have not done so.

indemnification claim is not enough to impose "related to" jurisdiction. *In re Enron Corp.*, 353 B.R. 51, 60-61 (Bankr. S.D.N.Y 2006) (in order to be related to bankruptcy, litigation must have a "significant connection" with bankruptcy; debtor-in-possession's third-party claim against debtor's accountants for contribution insufficient); *In re Ha-Lo Indus., Inc.*, 330 B.R. 663, 672 (Bankr. N.D. Ill. 2005) ("while validity of the filed proofs of claim may be litigated some day, that provides no source for jurisdiction here"); *Gen. Elec. Capital Corp. v. Pro-Fac Coop*, 2002 WL 1300054 at *2 (S.D.N.Y. June 11, 2002) (contribution and indemnity claims could conceivably affect the estate administration; nonetheless, that provides an insufficient basis for "related to" jurisdiction); *176-60 Union Turnpike, Inc. v. Howard Beach Fitness Ctr.*, 209 B.R. 307, 313 (S.D.N.Y. 1997) (any controversy having only speculative, indirect, or incidental effect on debtor's estate is not "related to" bankruptcy action for jurisdiction purposes).

Indeed, in *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 134-35 (1995), the oft-quoted case that helped establish the legal underpinnings of "related to" jurisdiction in the Second Circuit and elsewhere, the bankruptcy court remanded the case despite arguments that a third-party complaint for indemnity would "affect" the bankruptcy. Defendant Pacor Inc. had sought indemnity from bankruptcy debtor Johns-Manville Corp. *See id.* at 986. The court held that the outcome of the action between the plaintiff Higgins and the defendant Pacor would not bind the bankrupt in that it did not determine any rights, liabilities or course of action of the debtor. *See id.* at 995. And, since the debtor was not a party to the action it could not be bound by *res judicata* or collateral estoppel. *See id.* Moreover, even if the complaint were resolved in favor of the plaintiff, the bankruptcy estate would not be affected in any way until another separate action was brought and tried by the unsuccessful party. See i*d.*; *see also In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002).

- 14 -

The Removing Defendants also argue that jurisdiction is warranted because there may be overlapping issues of fact with Plaintiffs' Complaint and the Refco disputes. *See* Bank Defendants' Notice of Removal, at 6, 13; BAWAG Notice of Removal, at 13, n. 4 (adopting and incorporating bases for removal asserted by other removing defendants). Such an argument also must fail. The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not give rise to any form of federal jurisdiction, including "related to" jurisdiction. *See New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000), *cert. denied*, 532 U.S. 1052; *see also Pacor*, 743 F.2d at 994; *In re Enron*, 353 B.R. at 60.

In sum, none of the grounds raised by the Removing Defendants establishes an independent basis for, or overcomes the absence of, federal "related to" jurisdiction over Plaintiffs' action.

## III.   EVEN IF THIS COURT CONCLUDES THAT IT HAS "RELATED TO" JURISDICTION, THE CASE SHOULD BE REMANDED TO THE STATE COURT ON THE BASES OF ABSTENTION OR EQUITABLE REMAND.

The Removing Defendants cannot base subject matter jurisdiction on the slender reed of "related to" jurisdiction. Nevertheless, should the Court conclude that it does have "related to" jurisdiction over this case, principles of both permissive and mandatory abstention principles require remand. (Permissive abstention principles and equitable remand apply to the BAWAG Claims even if the Court does not agree with Plaintiffs and determines that the BAWAG Claims "arise under" or "arise in" the Refco Chapter 11 case.)

### A.    The Case Should Be Remanded Under Mandatory Abstention Principles.

The doctrine of mandatory abstention is based on 28 U.S.C. § 1334(c)(2):

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title XI but not arising under title XI or arising in a case under title XI, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an

action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

Mandatory abstention under 28 U.S.C. § 1334(c)(2) has been considered many times by courts in this District. Six factors inform the Court's determination whether mandatory abstention is appropriate:

(1)    the motion to abstain was timely made;

(2)    the action is based on a state law claim;

(3)    the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code;

(4)    § 1334 provides the sole basis for federal jurisdiction;

(5)    an action was commenced in state court; and

(6)    that action can be "timely adjudicated" in state court.

*See In re Amanat*, 338 B.R. 574, 581 (Bankr. S.D.N.Y. 2005) (quoting *WorldCom*, 293 B.R. 308, 331 (S.D.N.Y. 2003)); *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002).

This six-part test is met here. First, there is no question that Plaintiffs' abstention motion is timely made; the Notice of Removal was filed on March 26, 2008, and this Motion was filed within thirty days of that date pursuant to the Court approved and ordered briefing schedule. Second, all of Plaintiffs' claims are state law causes of action. Third, this alternative Motion presupposes that the Court has already concluded it has "related to" jurisdiction. All of the Removing Defendants other than BAWAG have conceded that the claims made against them in this case are "non-core" (*see* Bank Defendants' Notice of Removal, at 13), which by definition precludes "arising in" and "arising under" jurisdiction. *In re Kassover*, 336 B.R. 74, 80 (Bankr. S.D.N.Y. 2006). As set forth in detail in Plaintiffs' Opposition Memorandum to the BAWAG Motion to Refer, the BAWAG Claims are also non-core. Simply put, none of Plaintiffs' claims

"arise under" or "arise in" the confirmed bankruptcy plans of either Refco or PlusFunds, nor do they require this Court to interpret those plans.

Fourth, 28 U.S.C. § 1334 is the sole basis for jurisdiction alleged in the Notices of Removal. Defendants do not assert diversity jurisdiction or that any of the causes of action asserted by Plaintiffs involve federal questions. Fifth, this case was, of course, commenced in state court.

Finally, this action can be "timely adjudicated" in the New York State Supreme Court. The phrase "timely adjudication" is not defined in the Bankruptcy Code. *See In re Ames Department Stores, Inc.*, 2006 W.L. 1288586 at *12 (Bankr. S.D.N.Y. April 19, 2006). Instead, district courts have focused "on whether allowing an action to proceed in state court would have any unfavorable effect on the administration of a bankruptcy case." *Id.* (emphasis added). As the *Ames* Bankruptcy Court noted, "the requirement of timely adjudication necessarily entails a comparison of the time required for litigation in the State Court Action as compared with the litigation schedule in this Court…" *Id.*

As a general matter, this commercial tort litigation "will likely be assigned to the Commercial Division of the Supreme Court, where cases move on a fast-track basis." *Amanat*, 338 B.R. at 582. Indeed, the *Amanat* court concluded that there had been "no sufficient showing that the state court action cannot move as quickly as necessary in the context of the bankruptcy proceedings." *Id.* Again, in *Kassover*, the "Defendants failed to demonstrate that the claims cannot be timely asserted in state court." 336 B.R. at 79. Similarly, in *Certain Underwriters at Lloyd's London v. ABB Lummus Global, Inc.*, 337 B.R. 22, 27 (S.D.N.Y. 2005), the court concluded that there was "no basis to find that this action cannot be timely adjudicated in New York state courts."

But Plaintiffs do not rely solely on case law, which acknowledges that cases in the Commercial Division can be moved along with expedition. The Commercial Division was established in 1995 to "encourage resort to the New York State courts as a forum for resolving business disputes."[7] Since its establishment, the Commercial Division has been regarded as a "virtually unqualified success."[8] The National Law Journal has touted the Commercial Division justices for their rigorous management of cases through "rapid disposition of motion practice, realistic and practical scheduling and [the early setting of] trial dates ... to promote efficiency."[9] The Commercial and Federal Litigation Section of the New York State Bar has referred to the Commercial Division as "a case study in successful judicial administration," and the American Bar Association's Business Law Section describes the Division as a "model of a specialized court devoted to the resolution of business disputes."[10]

The statistics bear this out. The National Center for State Courts notes that for 2002 and 2003, 100% of Commercial Division business cases are concluded within 23 to 30 months (filing to disposition).[11] Statistics compiled by the Office of Court Administration's Office of Court Research in the New York Supreme Court, New York County, Commercial Division, confirm that the average time from filing the complaint to note of issue (*i.e.*, certificate of trial readiness and jury demand) is approximately 500 days, and the average time from filing the complaint to notice of disposition (settlement or judgment) is 760 days (25 to 26 months).[12] Plaintiffs submit

---

[7] *See* Declaration of Stephen G Crane ("Crane Decl.") ¶ 4; *see also* Ex. C to Molton Decl., Report of the Office of Court Administration on Commercial Division Focus Groups (July 2006) at 4. *See also* Ex. D to Molton Decl., Tamara Loomis, *High-Profile Case Casts Spotlight on Well-Regarded Court* (6/20/02), N.Y.L.J. 5, (col. 2); Ex. E to Molton Decl., David Klingsberg and Jeffrey Fuisz, 4 N.Y. Prac., Comm. Litig. in New York State Courts, § 56:2 (2d ed., 2007 update).

[8] *See* Ex. D to Molton Decl., Loomis, *High-Profile Case.*

[9] *See* Ex. C to Molton Decl., Report of the Office of Court Administration at 4.

[10] *See* Ex. F to Molton Decl., materials obtained from New York Supreme Court Commercial Division website, www.newyorkcourts.gov/courts/comdiv/history.html.

[11] *See* Ex. G to Molton Decl., National Center for State Courts, Case Processing Time Standards, 2002-2003, at 62.

[12] *See* Exs. C and D to Crane Decl.

the Declaration of Stephen G. Crane, a retired Commercial Division and New York State Appellate Division Judge, which reflects that, on average, disposition of matters in the Commercial Division is "statistically likely to be obtained within 9 to 13 months of the RJI." *See* Crane Decl. ¶¶ 10-11.

In contrast, the Refco securities litigation has been pending since November 2005. Under the Court's most recent Scheduling Order and Discovery Plan, dated June 5, 2007, documentary production was to be completed on or before September 13, 2007. Depositions are to be completed by November 30, 2008. *See* December 11, 2007 Deposition Protocol Order. In addition, the Court required by its June 5, 2007 Order that all briefing on the class certification issues be completed by September 12, 2008 and that any motions for summary judgment be completely briefed by December 5, 2008. It appears that no trial date has been set.

Of course, the schedule in the Refco securities litigation (now the MDL) says nothing about whether Plaintiffs' claims "can be timely adjudicated" in the New York state court, as required under 28 U.S.C. § 1334(c)(2) for mandatory abstention. Regardless, if Plaintiffs are required to prosecute their claims in the Refco MDL, they would have already missed certain discovery proceedings and would be prejudiced by joining the action at a late date. The Refco securities action and certain related cases commenced in November 2005. Here, the liquidators were not even appointed by the Cayman Islands court until June 2006, and the Cayman court did not approve the appointment of U.S. counsel until July 2007. The PlusFunds claims were not transferred to the SPhinX Trust until September 2007, and the Cayman court did not authorize the JOLs to bring this litigation until February 2008. Moreover, all of the claims advanced by Plaintiffs are timely; there can be no assertion that Plaintiffs delayed filing their action in the New York Supreme Court. It would be grossly inequitable to punish Plaintiffs in prosecuting

their recently-filed action by joining them to a litigation which has been pending for nearly two and a half years.

In sum, Plaintiffs meet all the elements for mandatory abstention in this case. Plaintiffs case *can* be adjudicated in a timely manner in the New York Supreme Court, and they should not be punished by being joined to a litigation that has been ongoing for more than two years.

**B.    This Case Is Equally Appropriate for Remand on the Basis of Permissive Abstention.**

28 U.S.C. § 1334 (c)(1) provides in pertinent part that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." The above-quoted section provides the basis for the doctrine of permissive abstention. In this District, the courts have identified twelve factors for consideration in the context of a permissive abstention motion. *See Norkin v. DLA Piper Rudnick Gray and Cary LLP*, 2006 WL 839079 at *5 (S.D.N.Y. March 31, 2006); *In re WorldCom Inc. Sec. Litig., supra*, 293 B.R. at 332. The application of these factors supports remand in this case:

1.    "The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention." As noted above, Plaintiffs are suing only non-debtors and any recoveries will enhance only the estate of the SPhinX Funds in the Cayman Islands. If this Court abstains, there will be no effect on the administration of the Refco or PlusFunds estates.

2.    "The extent to which state law issues predominate over bankruptcy issues." Only state law claims, and no bankruptcy issues whatsoever, are alleged in this action.

3.    "The difficulty or unsettled nature of the applicable state law." This is not a factor, as the state law principles raised by this action are not novel. While either the state or

federal court can apply this law with equal facility, the state court would have greater familiarity with the controlling state law principles.

4.    "The presence of a related proceeding commenced in state court or other non-bankruptcy court."  Plaintiffs filed suit in New Jersey state court against a number of parties affiliated with SPhinX's administrator, Derivatives Portfolio Management LLC.  The New Jersey defendants recently filed a notice of removal and JPML "tag-along" notice, both of which Plaintiffs intend to oppose.  Apart from the Refco MDL, into which it would be to the Removing Defendants' great advantage to draw this case, Plaintiffs are unaware of any other purportedly "related proceedings" in state court or non-bankruptcy court.

5.    "The jurisdictional basis, if any, other than 28 U.S.C. § 1334."  As noted above, there is no other jurisdictional basis asserted by the Removing Defendants.

6.    "The degree of relatedness or remoteness of the proceeding to the main bankruptcy case."  This action is not related to the Refco or PlusFunds bankruptcy cases. Further, the Refco and PlusFunds plans have been confirmed by the Bankruptcy Court and any recovery in the case brought by the SPhinX Trustee will redound only to the benefit of the SPhinX estates in the Cayman Islands.

7.    "The substance rather than form of an asserted 'core' proceeding."  As noted above, except for BAWAG, the Removing Defendants have conceded (and Plaintiffs agree) that this action does not pose a core proceeding.  As explained in Plaintiffs' Opposition Memorandum to the BAWAG Motion to Refer, the BAWAG Claims are "non-core."

8.    "The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court." Again, this factor is not relevant or, at least, militates in favor of abstention, because there is no

need to sever state law claims from bankruptcy matters; Plaintiffs' claims are all state law, non-bankruptcy claims.

9.    "The burden [on] the court's docket." This factor, too, militates in favor of abstention. The Court already has before it an MDL proceeding and cases therein that have been proceeding since November, 2005. If Plaintiffs are not to be prejudiced in the event of consolidation of their case with the Refco MDL, then this Court must, in all fairness, allow Plaintiffs a reasonable time to conduct its own discovery relevant to Plaintiffs' case. That discovery cannot be completed by November 2008, by which time it would be unlikely for the Court even to have disposed of dismissal motions sure to be brought by these Defendants. In short, while the consolidation of this action with the pre-existing cases in the Refco MDL would be severely prejudicial to Plaintiffs, it could also prejudice the progress of the Refco related cases before this Court.

10.    "The likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties." This case does not represent forum shopping by Plaintiffs inasmuch as the New York state court has both subject matter jurisdiction over the case and *in personam* jurisdiction over all of the Defendants.

11.    "The existence of a right to a jury trial." Plaintiffs have asserted their right to a jury trial but do not believe that this factor bears on an abstention decision.

12.    "The presence in the proceeding of non-debtor parties." This, again, is a factor which operates in favor of abstention, as *none* of the parties is a Debtor.

In these circumstances, the Court should exercise its discretion "in the interest of justice, or in the interest of comity with the [New York] state courts," and abstain from hearing this case.

**C.    This Case Is Also Suitable for Equitable Remand.**

The doctrine of equitable remand, statutorily embodied at 28 U.S.C. § 1452(b), provides that "[t]he court to which such claim or cause of action is removed may remand such claim or

cause of action on any equitable ground." Courts have identified six factors, which are duplicative, in large part, of the twelve factors enumerated above in the context of permissive abstention. These six factors, sometimes referred to as the "Drexel factors" (based on *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991)), are as follows:

1.    "Whether issues of state law predominate." As noted above, they do here, as only state law claims are asserted.

2.    "Whether judicial economy would be served by abstention or equitable remand." This factor also favors abstention because the issues posed by the claims brought by the JOLs and the SPhinX Trust are not duplicative of the claims in the Refco MDL. The SPhinX Funds are concerned with the misappropriation of SPhinX money. The other Refco MDL plaintiffs have no interest in the SPhinX Funds.

3.    "Whether 1334(b) is the sole basis for exercising federal jurisdiction." As noted above, it is; the Removing Defendants have posited only § 1334(b) as a basis for federal jurisdiction.

4.    "Whether the proceeding involves non-debtors." It involves *only* non-debtors.

5.    "The degree of relatedness or remoteness of the proceeding to the main bankruptcy case." As discussed in the preceding sub-section, the claims of the SPhinX Trust and the JOLs are not related in any way to the Refco bankruptcy.

6.    "The likelihood that the proceeding was commenced in a particular forum because of forum-shopping on the part of one of the parties." As noted above, Plaintiffs have not engaged in forum shopping. The New York state court has subject matter jurisdiction over this action, and all of the named Defendants in this case are subject to personal jurisdiction in the New York courts. Therefore, by definition, and as a matter of law, Plaintiffs have not forum

shopped. On the other hand, it might be said that the decision by these Defendants to remove the case to federal court represents an effort to gain a more favorable forum or procedural advantage. The attempt to move this case into a larger complex of cases, some of which have been pending for nearly two and one-half years, will benefit Defendants and prejudice Plaintiffs, whose opportunity to conduct discovery relevant to their claims will be compromised. *See Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004); *Abbatiello v. Monsanto Co.*, 2007 WL 747804 at * 3 (S.D.N.Y. March 8, 2007).

Here, the Removing Defendants have in substance posited the most attenuated, hypothetical and contingent bases possible for potential related to jurisdiction: the alleged existence of a potential contractual indemnity right against one or more of the Debtors in the Refco bankruptcy. They have provided no documents evidencing this indemnification right. If they had, the Court would doubtless see that, as with virtually all indemnification clauses, there is an exclusion for intentional torts; that is, these Removing Defendants will not have any right of indemnification with respect to any intentional torts for which they might be found liable with respect to Plaintiffs. *See also* Plaintiffs' Opposition Memorandum to the BAWAG Motion to Refer, at 19-21 (in addition to the BAWAG Claims being "non-core," they are also not "related to" the Refco bankruptcy since BAWAG has released any claims it might have against the Refco estate).

No less important, Plaintiffs would be prejudiced by a consolidation of their action into the Refco MDL. Plaintiffs do not allege securities claims; they do not allege federal claims at all. To the contrary, Plaintiffs seek to recover SPhinX money that was diverted to unprotected accounts and misappropriated by certain Defendants with assistance from other Defendants. But even if consolidation of this case into the Refco MDL might be more convenient for the Removing Defendants – and, perhaps, even more convenient for the federal court – this Court

- 24 -

should not ignore the prejudice which will be suffered by these Plaintiffs should the case be consolidated. Plaintiffs have brought their case timely, and their choice of forum should be respected. They should not be prejudiced by being joined to a proceeding that includes cases that have been pending for over two years. The alternative motion for abstention should be granted.

## IV.    CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Remand and/or Abstention.


Dated: New York, New York
       April 25, 2008                        BROWN RUDNICK BERLACK ISRAELS LLP

                                             By:    /s/ David Molton
                                                  David Molton (DM 1106)
                                                  Andrew Dash (AD 7913)
                                                  Seven Times Square
                                                  New York, New York  10036
                                                  Telephone: (212) 209-4800
                                                  dmolton@brownrudnick.com
                                                  adash@brownrudnick.com

                                                         and

                                             BEUS GILBERT PLLC

                                             Leo R. Beus
                                             Dennis K. Blackhurst
                                             4800 North Scottsdale Road, Suite 6000
                                             Scottsdale, Arizona 85251
                                             Telephone: (480) 429-3000
                                             lbeus@beusgilbert.com
                                             dblackhurst@beusgilbert.com

                                             *Co-Counsel for Plaintiffs*