UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                     :

In re REFCO, INC. SECURITIES LITIGATION      :     07 MDL No. 1902 (GEL)

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

- - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                     :

KENNETH M. KRYS and CHRISTOPHER      :
STRIDE, as JOINT OFFICIAL LIQUIDATORS   :     08 Civ. 3086 (GEL)
of SPHINX LTD.,                                 :

                    Plaintiffs,       :     ECF Filed

   -against-                          :     ORAL ARGUMENT
                                      :     REQUESTED
CHRISTOPHER SUGRUE, *et al.*,         :

                    Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REMOVING DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR REMAND AND/OR ABSTENTION**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY...................................................................................................5

ARGUMENT .........................................................................................................................5

I.     THIS COURT HAS JURISDICTION OVER THE CLAIMS ASSERTED BY THE SPHINX PLAINTIFFS BECAUSE THEY ARE "RELATED TO" A BANKRUPTCY CASE .......................................................................................5

     A.    This Action Is Related to the PlusFunds Chapter 11 Case ......................................6

          1.    This Action Has a Close Nexus to the PlusFunds Bankruptcy Case ...........8

               (a)    This Action Has a Close Nexus to the PlusFunds Plan and/or PlusFunds Chapter 11 Case ............................................................9

               (b)    The PlusFunds Plan Retains Bankruptcy Jurisdiction Over this Action................................................................................................12

          2.    Certain Defendants' Pending Proofs of Claim and Other Defendants' Claims to the PlusFunds Debtor's Liability Insurance Independently Provide Additional Bases for "Related to" Jurisdiction ............................13

     B.    The Action Is Related to the SPhinX Bankruptcy ................................................14

     C.    The Action Is Related to the Refco Chapter 11 Cases...........................................15

          1.    The Outcome of this Lawsuit Will Impact Distributions to the Refco Debtors' Creditors.......................................................................................16

          2.    The Pending Proofs of Claim Asserted by Various Defendants Provide Another Basis for "Related to" Jurisdiction...............................................18

          3.    The Individual Defendants' Claims to the Refco Debtors' Liability Insurance Independently Confer "Related to" Jurisdiction ......................19

II.    ABSTENTION IS NEITHER MANDATORY NOR APPROPRIATE ...........................20

     A.    Mandatory Abstention Is Inapplicable Because This Action Cannot Be Timely Adjudicated in State Court.................................................................................20

     B.    Permissive Abstention and Equitable Abstention Are Not Warranted.................24

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Agway Liquidating Trust v. Burkholder (In re Agway, Inc.),*
No. 6:06-MC-48 (N.D.N.Y. Apr. 13, 2006) ...........................................................7

*Axis Reinsurance Co. v. Bennett et al.,*
Adv. Proc. 07-01712 (RDD) (Bankr. S.D.N.Y. 2007) ...........................................19

*Beightol v. UBS Painewebber (In re Global Crossing Ltd. Sec. Litig.),*
311 B.R. 345 (S.D.N.Y. 2003) .................................................................13, 20, 21

*Board of Education v. Sargent, Webster, Crenshaw & Folley,*
71 N.Y. 2d 21, 523 N.Y.S.2d 475 (N.Y. 1987) ....................................................19

*Bondi v. Grant Thornton, International,*
322 B.R. 44 (S.D.N.Y. 2005).................................................................14, 15, 17, 21

*Boston Regional Medical Ctr., Inc. v. Reynolds,*
410 F.3d 100 (1st Cir. 2005).....................................................................................6

*Celotex Corp. v. Edwards,*
514 U.S. 300 (1995).................................................................................................6

*In re 610 W. 142 Owners Corp.,*
219 B.R. 363 (Bankr. S.D.N.Y. 1998).............................................................14, 20

*In re Adelphia Communications Corp. Securities & Derivative Litigation,*
No. 04 Civ. 4967, 2005 WL 1026559 (S.D.N.Y. May 2, 2005) ...........................19

*In re Adelphia Communications Corp. Securities & Derivative Litigation,*
No. 03 MDL 1529, 2003 WL 23018802 (S.D.N.Y. Dec. 23, 2003) .....................25

*In re Air Cargo, Inc.,*
No. 04-37512, 2008 WL 352619 (Bankr. D. Md. Feb. 7, 2008) .............................7

*In re AstroPower Liquidating Trust,*
335 B.R. 309 (Bankr. D. Del. 2005) ........................................................................7

*In re Cross Media Marketing Corp.,*
367 B.R. 435 (Bankr. S.D.N.Y. 2007).....................................................................7

*In re Cuyahoga Equipment Corp.,*
980 F.2d 110 (2d Cir. 1992) ....................................................................................6

*In re General Media, Inc.,*
  335 B.R. 66 (S.D.N.Y. 2005) ................................................................................7

*In re Kassover,*
  336 B.R. 74 (S.D.N.Y. 2006) ..............................................................................10

*In re Railworks Corp.,*
  325 B.R. 709 (Bankr. D. Md. 2005) ....................................................................7

*In re Southern Industries Banking Corp.,*
  67 B.R. 399 (Bankr. E.D. Tenn. 1986) ...............................................................7

*In re WorldCom, Inc. Securities Litigation,*
  293 B.R. 308 (S.D.N.Y. 2003)...................................................................*passim*

*Jackson Nat'l Life Ins. Co. v. Ligator,*
  949 F. Supp. 200 (S.D.N.Y. 1996) .....................................................................16

*J.P. Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.,*
  412 F.3d 418 (2d Cir. 2005) ...............................................................................17

*Hesselman v. Arthur Anderson, LLP (In re Global Crossing Sec. Litig.),*
  No. 02 Civ. 910, 2003 WL 21659360 (S.D.N.Y. July 15, 2003) ........................18

*Kirschner v. Bennett (In re Refco, Inc. Securities Litigation),*
  No. 07 Civ. 8165, 2008 WL 1990669 (S.D.N.Y. May 7, 2008) ....................*passim*

*Kirschner v. Grant Thornton LLP (In re Refco, Inc. Securities Litigation),*
  No. 08 Civ. 11604, 2008 WL 1827644 (S.D.N.Y. 2008) .............................*passim*

*Osanitsch v. Marconi PLC (In re Marconi PLC),*
  363 B.R. 361 (S.D.N.Y. 2007). ................................................................14, 15

*Things Remembered, Inc. v. Petrarca,*
  516 U.S. 124 (1995).............................................................................................6

*Tringali v. Hathaway Machinery Co.,*
  796 F.2d 553 (1st Cir. 1986)...............................................................................20

*Winstar Holdings, LLC v. Blackstone Group, L.P.,*
  No. 07 Civ. 4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) .........................24

- iii -

## STATUTES & RULES

11 U.S.C. § 101(42) ....................................................................................................15

11 U.S.C. § 541 ..........................................................................................................15

11 U.S.C. §1123(b)(3) ...............................................................................................11

28 U.S.C. §1334(b) ......................................................................................................5

28 U.S.C. §1334(c)(2) ...............................................................................................20

28 U.S.C. § 1452(a) .....................................................................................................6

Defendants JP Morgan Chase & Co.; Credit Suisse Securities (USA) LLC; Banc of America Securities LLC; Grant Thornton LLP; Mark Ramler; Mayer Brown LLP; Mayer Brown International LLP; Thomas H. Lee Partners, L.P., Thomas H. Lee Advisors, LLC; THL Managers V, LLC; THL Equity Advisors V, L.P.; Thomas H. Lee Equity Fund V, L.P.; Thomas H. Lee Parallel Fund V, L.P.; Thomas H. Lee (Cayman) Fund V, L.P.; Thomas H. Lee Investors Limited Partnership; 1997 Thomas H. Lee Nominee Trust; Thomas H. Lee; David V. Harkins; Scott L. Jaeckel; Scott A. Schoen; PricewaterhouseCoopers LLP; and Mari Ferris (collectively, the "Removing Defendants") respectfully submit this opposition to the SPhinX Plaintiffs' motion for remand and/or abstention ("Remand Motion").

## PRELIMINARY STATEMENT

This Court recently denied the motions of the Refco Litigation Trust and Refco Private Actions Trust to remand their two actions against most of the same Removing Defendants. For the same reasons this Court cited in those Opinions and Orders, this Court plainly has federal "related to" bankruptcy jurisdiction over this case and there is no basis for this Court to abstain from exercising that jurisdiction.

This action, brought by three groups of SPhinX Plaintiffs, is but one of some 30 cases pending before this Court related to Refco, Inc. and its subsidiaries and affiliates ("Refco"). The SPhinX Plaintiffs' claims can be divided into two categories, both of which are intimately related to the claims asserted in the other Refco cases. First, the SPhinX Plaintiffs allege that various Defendants aided and abetted Refco's – and their own – management in improperly co-mingling SPhinX Funds'[1] assets in unprotected, non-regulated accounts at Refco Capital Markets Ltd.

---

[1] The Complaint alleges that the SPhinX Funds are a family of Cayman Island hedge funds created by PlusFunds Group, Inc. Compl. at ¶ 2.

("RCM").[2]

Second, the SPhinX Plaintiffs allege that, once the co-mingling of assets had occurred, various events transpired at Refco (principally, the round-trip loans, the leveraged buy-out of Refco ("LBO"), and Refco's initial public offering ("IPO")), which, in turn, led to Refco's demise and supposedly caused harm to the SPhinX Plaintiffs in their capacities as alleged creditors of one or more of the Refco entities.[3]  Many of the allegations underlying these claims were literally cut and pasted from the Refco Litigation Trustee's complaint in *Kirschner v. Grant Thornton LLP, et al*, 07 Civ. 11604 (GEL) ("Refco Litigation Trustee Action"), another action pending before the Court as part of the Refco MDL.  *Compare* SPhinX Plaintiffs' Compl. ¶¶ 244, 249, 266, 735-744, 1152-1159 *with* Refco Litigation Trustee Action Compl. (attached to the Declaration of Ross E. Firsenbaum, dated May 27, 2008 ("Firsenbaum Decl."), as Exhibit ("Ex.") A), at ¶¶ 45-46, 106, 111, 125, 132, 135, 441-44, 581-584, 625.

Notwithstanding the commonalities between this action and the Refco Litigation Trustee Action, the SPhinX Plaintiffs urge this Court to remand this action to the New York State Court. That request should be denied.  This Court has bankruptcy "related to" jurisdiction under 28

---

[2] These appear to be substantially the same claims that were brought by the predecessor to one of the current SPhinX Plaintiffs, PlusFunds Group, Inc. ("PlusFunds"), in the Chapter 11 bankruptcy cases ("Refco Chapter 11 Cases") of Refco Inc. and several of its subsidiaries and affiliates ("Refco Debtors").  *See* note 13, *infra*.

[3] Some 21 pages of the Complaint detail the three alleged stages of the Refco fraud (Compl. at 52-73) and another 11 pages detail the Refco insiders who allegedly caused the SPhinX Plaintiffs' harm. Compl. at 92-103; *see also* Pl. Mem. of Law in support of Remand Motion ("Remand Mem.") at 3 ("Culpable Refco-related parties and agents then used RCM customer assets . . to facilitate Refco's fraudulent business operations.").  Indeed, *all* of Plaintiffs' factual allegations against several of the Removing Defendants *entirely* concern such Defendants' supposed involvement in the Refco fraud (Compl. at ¶¶ 465-504 (Mayer Brown LLP), ¶¶ 637-699 (Grant Thornton LLP), ¶¶ 735-768 (Credit Suisse Securities (USA) LLC and Banc of America Securities LLC), and ¶¶ 887-923 (TH Lee Defendants)), and many of the allegations against several of the remaining Removing Defendants rest on their alleged connection to Refco (Compl. at ¶¶ 511-42 (PricewaterhouseCoopers LLP), 781-790, 793 (JP Morgan Chase & Co.)).  The same can be said for various other Defendants. Compl. at ¶¶ 700-734 (Ernst & Young), ¶¶ 794-846 (BAWAG), ¶¶ 847-885 (RTL Defendants), ¶ 886 (Refco Associates, Inc.).

U.S.C. § 1334 over this case. Indeed, this case is "related to" *three* different bankruptcy proceedings:

*First*, this case is "related to" the ongoing PlusFunds bankruptcy proceedings ("PlusFunds Chapter 11 Case"). The Court's recent decisions in the Refco Litigation Trustee Action and in *Kirschner v. Bennett*, No. 07 Civ. 8165, 2008 WL 1990669, at *3, *5-7 (S.D.N.Y. May. 7, 2008) (Lynch, J.) ("Refco PAT Action") (together, "Refco Trustee Actions") are controlling on this point. In the Refco Litigation Trust Action, this Court held that a state-law action brought by a litigation trustee after confirmation of a liquidating Chapter 11 plan, asserting claims that were the property of the debtor's estate and that were purportedly transferred to a litigation trust under the plan for the benefit of the debtor's creditors, was "related to" the debtor's bankruptcy case.[4] The same facts are present here. One of the SPhinX Plaintiffs is a trustee ("Trustee") for a litigation trust ("SPhinX Trust") created pursuant to the liquidating bankruptcy plan ("PlusFunds Plan") for PlusFunds, whose bankruptcy proceedings were filed and remain pending in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). The Trustee's claims were property of the PlusFunds debtor's bankruptcy estate and were purportedly transferred to the Trustee under the PlusFunds Plan. The Trustee now brings his claims seeking to recover more than $263 million to distribute to the most significant creditors of PlusFunds (the SPhinX Funds). For this and the other reasons outlined below, there is "related to" jurisdiction over these claims.

---

[4] In the Refco PAT Action, this Court similarly held that a state-law action brought by a litigation trustee after confirmation of a liquidating Chapter 11 plan was "related to" the debtor's bankruptcy case, where the trustee's claims were owned by certain of the Refco Debtors' creditors or shareholders, were supposedly independent of those held by the debtors, and were purportedly transferred under the plan to a litigation trust for the benefit of the debtor's same creditors. *Bennett*, 2008 WL 1990669, at *3, *5-7.

*Second*, two of the SPhinX Plaintiffs, the Joint Official Liquidators ("JOLs") of each of the SPhinX Funds, are representatives of foreign debtors ("SPhinX Debtors") currently involved in ongoing insolvency proceedings in the Cayman Islands and in Chapter 15 proceedings in the Bankruptcy Court ("SPhinX Chapter 15 Case"). As the representative of the SPhinX Debtors, these plaintiffs seek to recover assets located in the United States or otherwise subject to the jurisdiction of the United States courts. Any recovery would increase the size of the SPhinX Debtors' bankruptcy estate.

*Third*, this case is related to the ongoing Refco Chapter 11 Cases. The claims brought here may be – indeed, appear largely, if not entirely, to be – duplicative of those brought in the Refco Litigation Trustee Action. Because double recovery is impermissible, any recovery here would reduce the amount available for recovery in that action. For this and the other reasons discussed below, the claims asserted by the SPhinX Plaintiffs could have a "conceivable effect" on the Refco bankruptcy estate.

The SPhinX Plaintiffs have also failed to meet their burden to establish that the narrow doctrines of mandatory, permissive, and equitable abstention apply here. Again, the Court's decisions in the Refco Trustee Actions are controlling. In both cases, the Court denied the argument for abstention, noting in part that "[t]he efficiency gains that result from asserting jurisdiction in th[e] case [we]re particularly striking in light of the multitude of other Refco-related actions currently pending before this Court, many of which involve many of the same parties and arise out of the same set of facts as those described in the [Refco] Trustee's complaint." *Refco Litigation Trustee Action*, 2008 WL 1827644, at *10 (S.D.N.Y. Apr. 21, 2008); *see Bennett*, 2008 WL 1990669, at *7-9. The same considerations apply here. Indeed, the SPhinX Plaintiffs acknowledge that asserting jurisdiction in this action would be "more

- 4 -

convenient for the . . . [C]ourt." Pl. Mem. of Law in support of Remand Motion ("Remand Mem.") at 24.

For these reasons, the Court should deny the Remand Motion.

## PROCEDURAL HISTORY

On March 5, 2008, the SPhinX Plaintiffs commenced this action by filing a Summons and Complaint in New York State Court. On March 26, 2008, two sets of defendants filed two different removal petitions. In particular, BAWAG P.S.K. Bank für Arbeit und Wirtschaft Und Osterreichische Postparkasse Aktiengesellsehaft ("BAWAG") removed solely the claims asserted against it to the Southern District of New York, and thus initiated an action captioned *Krys, et al., v. Sugrue, et al.*, 08 Civ. 3065 (GEL). Separately, the Removing Defendants removed this entire action, *Krys, et al., v. Sugrue, et al.*, 08 Civ. 3086 (GEL), pursuant to 28 U.S.C. § 1452. On April 16, 2008, the Court accepted this action as related to *In re Refco, Inc. Securities Litigation*, 07 MDL No. 1902 ("Refco MDL"), thereby coordinating or consolidating this action with the Refco MDL. The Court has since issued scheduling orders governing the briefing of the Remand Motion and the filing of responses to the Complaint.

## ARGUMENT

**I.    THIS COURT HAS JURISDICTION OVER THE CLAIMS ASSERTED BY THE SPHINX PLAINTIFFS BECAUSE THEY ARE "RELATED TO" A BANKRUPTCY CASE**

The operative jurisdictional statute, applicable caselaw, and the SPhinX Plaintiffs' own admissions establish that this action is "related to" a bankruptcy case. Indeed, these authorities establish that this action is "related to" *three* bankruptcy cases.

Title 28 of the United States Code confers federal subject matter jurisdiction not only on proceedings that "arise under" the Bankruptcy Code or that "arise in" a bankruptcy case, but also on those that merely "relate to" such a case. 28 U.S.C. §1334(b). As the Supreme Court has

- 5 -

held, "[t]he 'related to' language of § 1334(b) must be read to give district courts (and

bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the

property of the debtor or the estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

"Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they

might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."

*Id.* (citation omitted). Indeed, Congress intended 28 U.S.C. § 1452(a), the statute authorizing

removal of an action to the federal courts on the basis of bankruptcy "related to" jurisdiction, to

"enlarge, not to rein in, federal trial court removal/remand authority for claims related to

bankruptcy cases." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 131-32 (1995)

(Ginsburg, J., concurring).

### A.    This Action Is Related to the PlusFunds Chapter 11 Case

As the Court recently stated in its decisions denying the remand motions in the Refco

Trustee Actions, the general test for "related to" jurisdiction under § 1334(b) is whether the

outcome of an action might have "any conceivable effect" on the bankruptcy estate. *Refco

Litigation Trustee Action*, 2008 WL 1827644, at *7 (*citing In re Cuyahoga Equip. Corp.*, 980

F.2d 110, 114 (2d Cir. 1992)); *Bennett*, 2008 WL 1990669, at *4. And, as this Court also

recognized, while the boundaries of "related to" jurisdiction may sometimes be somewhat more

limited following confirmation of a chapter 11 plan, there is much less reason to depart from the

general "related to" test where, as here, the plan at issue is one of liquidation rather than

reorganization. *Refco Litigation Trustee Action*, 2008 WL 1827644, at *8 (in the case of a

liquidating plan, "the specter of endless bankruptcy jurisdiction and a kindred concern about

unfairly advantaging reorganized debtors" does not exist") (citation omitted); *Bennett*, 2008 WL

1990669, at *4-5; *see Boston Reg'l Med. Ctr., Inc. v. Reynolds*, 410 F.3d 100, 107 (1st Cir. 2005)

("the compass of related to jurisdiction persists undiminished after plan confirmation" with

respect to plans of liquidation where the action concerns events that pre-dated the bankruptcy (rather than events that arose after the debtor emerged from bankruptcy), and any recovery would be distributed to the debtor's pre-bankruptcy creditors in accordance with the terms of the plan).

Numerous cases are in accord, many involving litigation trusts such as the one administered by the Trustee. *See, e.g., In re Cross Media Mktg. Corp.*, 367 B.R. 435, 444 (Bankr. S.D.N.Y. 2007) ("related to" jurisdiction over state-law damages action filed by debtor after confirmation of liquidating plan); *Agway Liquidating Trust v. Burkeholder (In re Agway, Inc.)*, 6:06-MC-48 (N.D.N.Y. Apr. 13, 2006) (accepting bankruptcy court's determination of "related to" jurisdiction over post-confirmation action brought by liquidating trust) (Firsenbaum Decl. Ex. B); *In re General Media, Inc.*, 335 B.R. 66, 73, n.7 (S.D.N.Y. 2005) (suggesting application of broader "related to" test where plan is one of liquidation rather than reorganization).[5]

In some circumstances, however, courts in this Circuit have applied a more limited "close nexus" test to determine whether there is "related to" jurisdiction over an action brought post-confirmation. *Refco Litigation Trustee Action*, 2008 WL 1827644, at *8-9; *Bennett*, 2008 WL 1990669, at *5. This test is satisfied when the action has a close nexus to the bankruptcy plan or proceeding, and the plan retains jurisdiction over the dispute. *Id.*

---

[5] *See also In re Air Cargo, Inc.*, No. 04-37512, 2008 WL 352619, at *5-6 (Bankr. D. Md. Feb. 7, 2008) (finding "convincing" the rationale for asserting greater post-confirmation subject matter jurisdiction over a litigation trust when it is created by a liquidating plan than when it is created by a plan of reorganization); *accord In re AstroPower Liquidating Trust*, 335 B.R. 309, 323-35 (Bankr. D. Del. 2005) (finding "related to" jurisdiction over post-confirmation, state-law action brought by a litigation trust); *In re Railworks Corp.*, 325 B.R. 709, 723 (Bankr. D. Md. 2005) (finding "related to" jurisdiction in post-confirmation action brought by litigation trust); *In re Southern Indus. Banking Corp.*, 67 B.R. 399, 402-03 (Bankr. E.D. Tenn. 1986) (finding "related to" jurisdiction over action brought by liquidating trust to recover on state-law causes of action because the case could "significantly impact the value of claims of the [debtor's] creditors").

Here, because the PlusFunds Plan is a liquidating plan, the concerns of endless bankruptcy jurisdiction are not present. *See Refco Litigation Trustee Action*, 2008 WL 1827644, at *8-9; *Bennett*, 2008 WL 1990669, at *4-5. The Trustee "is not a reorganized corporation that has put its debts behind it, but a Trustee whose function is virtually indistinguishable from that of the bankruptcy estate itself: to gather assets of a defunct debtor for distribution to its creditors." *Refco Litigation Trustee Action*, 2008 WL 1827644, at *8; *see Bennett*, 2008 WL 1990669, at *4-5. Thus, like the Refco Trustee Actions, "the ["close nexus"] test of federal jurisdiction would further none of the purposes underlying a more restrictive jurisdictional test in post-confirmation cases. Rather, it would permit creditors, through the vehicle of a post-confirmation litigation trust, to pursue potential assets in fragmented litigation, undermining the goals of a unified administration of bankruptcy cases." *Refco Litigation Trustee Action*, 2008 WL 1827644, at *8; *see Bennett*, 2008 WL 1990669, at *4-5. Therefore, it would be entirely appropriate for the Court to apply the "any conceivable effect" test in this case, a standard that is easily met. However, as in the Refco Trustee Actions, the Court need not reach this conclusion because this action amply satisfies even the "close nexus" test.[6]

### 1.    This Action Has a Close Nexus to the PlusFunds Bankruptcy Case

This action satisfies the "close nexus" test because (1) it has a close nexus to the PlusFunds Plan or PlusFunds Chapter 11 Case, and (2) the PlusFunds Plan retains jurisdiction over the dispute. *Refco Litigation Trustee Action*, 2008 WL 1827644, at *8-9; *Bennett*, 2008 WL 1990669, at *5-7.

---

[6] The same analysis applies to the Removing Defendants' assertion that this action is "related to" the Refco Chapter 11 Cases. *See, supra*, Section I(C). The Bankruptcy Court has confirmed a plan of liquidation in those cases as well, as this Court noted in the Refco Litigation Trustee Action and Refco PAT Action.

      (a)     <u>This Action Has a Close Nexus to the PlusFunds Plan and/or
PlusFunds Chapter 11 Case</u>

This action easily meets the first prong of the "close nexus" test. The Court's recent
decisions in the Refco Trustee Actions are controlling. In the Refco Litigation Trust Action, as
here, the plaintiff was a litigation trustee ("Refco Litigation Trustee"), created by the confirmed
liquidating Chapter 11 plan ("Refco Plan") of the Refco Debtors. The Refco Plan purported to
transfer claims from the Refco Debtors' bankruptcy estates to the Refco Litigation Trustee.

Following confirmation of the Refco Plan, the Refco Litigation Trustee brought an action
asserting such claims for the benefit of the Refco Debtors' creditors. This Court held that the
action shared a "close nexus" with the Refco Chapter 11 Cases because the claims asserted did
not belong to the Refco Litigation Trustee personally, but rather were precisely those causes of
action that were purportedly transferred by the Refco Debtors to the Refco Litigation Trust
pursuant to the Refco Plan. *See Refco Litigation Trustee Action*, 2008 WL 1827644, at \*9
(internal citation omitted). Accordingly, the Court reasoned, the "implementation" and
"execution" of the confirmed Refco Plan were directly at issue. *Id.* These facts were "sufficient
to establish the 'close nexus' required for post-confirmation jurisdiction." *Id.*; *see also Bennett*,
2008 WL 1990669, at \*5-7 (state-law action brought by a litigation trustee after confirmation of
a liquidating Chapter 11 plan, asserting claims allegedly owned by certain of the debtors'
creditors and purportedly transferred, under the plan, to litigation trust for benefit of debtors'
creditors, was "related to" debtor's bankruptcy cases because trustee was a "creation of the Plan"
and the claims did not belong to trust personally, but rather were "precisely those causes of
action that were transferred by Refco's creditors and shareholders to the PAT pursuant to the
Plan").

Here, the facts are precisely the same and warrant the same result. One of the SPhinX Plaintiffs is a litigation trustee created by the PlusFunds Plan, a liquidating Chapter 11 plan.[7] The PlusFunds Plan purported to transfer claims from the PlusFunds Debtors' bankruptcy estate to the Trustee. *See* Remand Mem. at 2 ("Plaintiffs are comprised of three distinct groups . . . (3) James Sinclair, the Trustee of the SPhinX Trust, which was assigned claims formerly belonging to the estate of . . . PlusFunds"); Firsenbaum Decl. Ex. C (SPhinX Plaintiffs' brief in other Refco-related proceedings), at 15 ("That is precisely what PlusFunds did here; it assigned claims to the SPhinX Trust"). And, following confirmation of the PlusFunds Plan, the Trustee has brought this action asserting the claims purportedly transferred to it under the PlusFunds Plan for the benefit of PlusFunds' principal creditors.[8]

Given the purported transfer of the debtor's claims to the Trustee under the PlusFunds Plan, this action involves the "implementation" and "execution" of the confirmed PlusFunds Plan. *See Refco Litigation Trustee Action*, 2008 WL 1827644, at *9 (internal citation omitted); *see also* Firsenbaum Decl. Ex. D, Art. VI, §F-1 ("The SPhinX Trust shall be established for the

---

[7] In this regard, the SPhinX Plaintiffs' reliance on *In re General Media, Inc.*, 335 B.R. 66, 74-75 (S.D.N.Y. 2005), is misplaced. That case concerned a reorganized debtor continuing in business, and any recovery would have gone to the reorganized debtor rather than to the creditors. In stark contrast, the PlusFunds Plan is a liquidating plan, the debtor has not continued its business, and Plaintiffs have conceded that they bring this action "for the sole and exclusive benefit of . . . the creditors and interest holders of the [debtor]." Compl. at ¶ 92. Plaintiffs' reliance on *In re Kassover*, 336 B.R. 74, 80 (S.D.N.Y. 2006), is similarly misplaced. *See* 336 B.R. at 80 (finding no "related to" jurisdiction where defendant was sued in her role as Disbursing Agent, not as a Liquidating Trustee, and outcome of claims could have no effect on the Liquidating Trust).

[8] The beneficiaries of the SPhinX Trust are various SPhinX investment funds (the "SPhinX Funds") which deposited monies with RCM. *See* Firsenbaum Decl. Ex. D, Art. I, §§ B-104, 106 ("'SPhinX Trust' means the liquidating trust established under the Plan for the exclusive benefit of the SPhinX Funds"). The SPhinX Funds were, by far, PlusFunds' largest creditors. *Compare* Firsenbaum Decl. Ex. D, Art. I, § B-102 ("SPhinX Claim means the proof of claim filed by the JOLs on behalf of the Cayman Islands-based SPhinX Funds . . in the amount of $250 million") *with* Firsenbaum Decl. Ex. D, Art. III, § 4 (the "Allowed General Unsecured Claims, other than the SPhinX Claim, . . . rang[e] from approximately $5 million to approximately $19 million . . ").

primary purpose of liquidating the Causes of Action[9] for or on behalf of the JOLs in their

capacity as JOLs for the SPhinX Funds . . ."); Firsenbaum Decl. Ex. E, at Preamble, §§ 1.1.2, 2.2

("The [Debtor] . . . pursuant to the Plan . . . hereby creates the SPhinX Trust for the purpose of

collecting, distributing, and liquidating the [Causes of Action held by the Estate] for the benefit

of the Beneficiaries."). Accordingly, just as in the Refco Litigation Trustee Action, this action

has a "close nexus" to the PlusFunds Chapter 11 Case. *See Refco Litigation Trustee Action*,

2008 WL 1827644, at *11 *see also Bennett*, 2008 WL 1990669, at *5-7 (purported transfer of the

alleged claims of debtors' creditors to trust created under a confirmed liquidation plan involves

the "implementation" and "execution" of that plan).[10]

Additional terms of the PlusFunds Plan reinforce that this action has a "close nexus" to

the PlusFunds Chapter 11 Case. The PlusFunds Plan provides that the Trust is the post-

confirmation embodiment of the PlusFunds estate. In particular, in accordance with Section

1123(b)(3) of the Bankruptcy Code,[11] the PlusFunds Plan specifies that "the Trustee shall be

deemed to have been appointed by the Bankruptcy Court as a representative of the Estate

pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code." Firsenbaum Decl. Ex. D, Art. VI, §

F-1 (emphasis supplied); *see also* Compl. at ¶ 92 (stating that Plaintiffs bring this action for the

benefit of the debtor's creditors and interest holders).[12]

---

[9] The PlusFunds Plan defines "Causes of Action" as "except for the Retained Assets, all of the Debtor's legal and equitable interests in any claim . . . against any Entity . . ." Firsenbaum Decl. Ex. D, Art. I, § B-18.

[10] The SPhinX Plaintiffs concede as much in their Remand Motion. *See* Remand Mem. at 8, n.2 (arguing that same analysis of post-confirmation "related to" jurisdiction should apply with respect to both the PlusFunds Plan and the Refco Plan).

[11] Section 1123(b)(3) provides that a chapter 11 plan may provide for either "the settlement or adjustment of any claim . . . belonging to the debtor or to the estate" or "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim." 11 U.S.C. §1123(b)(3).

[12] *Accord Refco Litigation Trustee Action*, 2008 WL 1827644, at *8-11 (noting, as a practical matter, that the Refco Litigation Trustee's position (which is the same taken by Plaintiffs here) "would effectively extinguish federal jurisdiction in all cases where a litigation trustee prosecutes claims specifically assigned to it by a confirmed

(b)    The PlusFunds Plan Retains Bankruptcy Jurisdiction Over this
Action

This action also meets the second prong of the "close nexus" test because the PlusFunds

Plan provides for the retention of jurisdiction over this action (and others) by the Bankruptcy

Court. Specifically, the PlusFunds Plan provides:

> [T]he Bankruptcy Court shall have jurisdiction of matters arising
> out of, and related to, the Chapter 11 Case and the Plan . . . for,
> among other things, to . . . (V) hear and act on any other matter not
> inconsistent with the Bankruptcy Code.

Firsenbaum Decl. Ex. D, Art. XI, § V. This broad provision – wholly ignored by the SPhinX

Plaintiffs in their Remand Motion – covers this action by conferring jurisdiction on the

bankruptcy court to hear and act on any matter not inconsistent with the Bankruptcy Code. *See*

*also* Firsenbaum Decl. Ex. F, at ¶ 28 ("the Bankruptcy Court shall in accordance with the Plan

continue to have jurisdiction over matters arising out of, and related to, the Chapter 11 Case, and

the Plan . . . for, among other things, the purposes set forth in Article XI of the Plan").

Indeed, before he decided that it was in his interests to argue to the contrary, the Trustee

admitted that the bankruptcy court retained jurisdiction over his claims. Prior to bringing this

action, the Trustee invoked federal bankruptcy jurisdiction in seeking pre-litigation discovery

under Bankruptcy Rule 2004 against many of the same parties he has sued in this action. *See*

Firsenbaum Decl. Ex. G, at ¶ 2. The SPhinX Plaintiffs' argument that "the issue is moot"

because the Trustee no longer seeks Rule 2004 examinations misses the point. Remand Mem. at

9. There could not have been post-confirmation jurisdiction to investigate the claims asserted

here if, as the Trustee asserts, there is no federal jurisdiction to adjudicate those same claims. In

---

bankruptcy plan," and that the proper function of a litigation trust "is not to serve as a vehicle for escaping federal
jurisdiction, but rather, to allow a Chapter 11 debtor to focus preconfirmation on the more pressing needs of its
reorganization or liquidation while deferring issues regarding .    causes of action . . . until after confirmation of its
plan.") (citation omitted).

fact, in seeking the pre-litigation discovery, the Trustee acknowledged that federal bankruptcy

jurisdiction would continue to exist with respect to claims such as the ones asserted here,

notwithstanding confirmation of the PlusFunds Plan. *See* Firsenbaum Decl. Ex. G, at ¶ 2

("[T]his Court retained jurisdiction over matters arising out of or relating to the Debtor's Chapter

11 Case and the Plan, including avoidance actions, preference claims and other cases or suits

arising out of the SPhinX Trust.").

> **2.    Certain Defendants' Pending Proofs of Claim and Other Defendants'
> Claims to the PlusFunds Debtor's Liability Insurance Independently
> Provide Additional Bases for "Related to" Jurisdiction**

Certain of the Defendants in this action who are former directors of PlusFunds are

scheduled in the PlusFunds Chapter 11 Case as the holders of undisputed, non-contingent and

liquidated claims against the PlusFunds bankruptcy estate. *See* Firsenbaum Decl. Ex. H, at 18.

These claims provide a further "close nexus" to the PlusFunds Chapter 11 Case and an

independent basis for "related to" jurisdiction. Some or all of these claims – including claims for

contribution and unpaid fees – may be asserted as counterclaims here, as the Trustee stands in

the shoes of the PlusFunds debtor. Thus, the outcome of this action could impact how much

these Defendants will receive from the PlusFunds estate and, in turn, how much is available for

distribution to other creditors. *See Beightol v. UBS Painewebber (In re Global Crossing Ltd.

Sec. Litig.)*, 311 B.R. 345, 347 (S.D.N.Y. 2003) (Lynch, J.) (finding "related to" jurisdiction over

state-law claims where "possibility that litigation against an officer of a bankrupt corporation

could lead to a claim against the corporation for contribution based on the wrongdoing of other

corporate employees would certainly have a 'conceivable effect' on the bankrupt estate").

The same Defendants also may seek, in defending this case, to access directors and

officers' liability insurance policies or other insurance that may be property of the PlusFunds

bankruptcy estate. *See* Firsenbaum Decl. Ex. D, Art. I § B-34 (granting PlusFunds' officers and

directors access to D&O insurance policies). This, too, provides an independent basis for "related to" jurisdiction. *See In re 610 W. 142 Owners Corp.*, 219 B.R. 363, 371 (Bankr. S.D.N.Y. 1998) (finding "related to" jurisdiction over state-law claims that would "affect property available for distribution to creditors of the bankruptcy estate through the proceeds of either the Directors and Officers' liability insurance coverage or if the [directors] are personally liable").

### B.    The Action Is Related to the SPhinX Bankruptcy

In addition, the SPhinX Plaintiffs' claims could have a "conceivable effect" on – and plainly have a substantial connection to – the SPhinX Chapter 15 Case. Where, as here, a foreign representative brings causes of action in the United States on behalf of a foreign debtor that has been afforded recognition in a Chapter 15 bankruptcy case (or formerly, in a Section 304 proceeding – the predecessor to Chapter 15), "related to" bankruptcy jurisdiction exists over such causes of action. *See Bondi v. Grant Thornton Int'l*, 322 B.R. 44, 48 (S.D.N.Y. 2005) ("[A] state law action designed to recover . .. assets [located in the United States or otherwise subject to the jurisdiction of United States courts] – an action that could have been brought in the Section 304 Proceeding – and thus increase the size of the estate involved in the Section 304 case is [] "related to" the Section 304 Proceeding within the meaning of Section 1334."); *see also Osanitsch v. Marconi PLC (In re Marconi PLC)*, 363 B.R. 361, 365 (S.D.N.Y. 2007) (Lynch, J.) (recognizing that Section 304 confers federal subject matter jurisdiction over actions brought by "authorized representatives of the foreign bankrupt to marshal and protect the estate's assets in the United States for distribution in the bankruptcy proceeding abroad").

Here, the Joint Liquidators of the SPhinX Funds bring claims in the instant state law action as representatives of those funds – debtor entities that are concurrently involved in ongoing insolvency proceedings in the Cayman Islands and in Chapter 15 proceedings in the

Bankruptcy Court. Compl. at ¶¶ 29–31. Any recovery on those claims would increase the funds available for the SPhinX Funds' liquidators to distribute to those debtors' creditors.

The SPhinX Plaintiffs' nevertheless argue that there is no "related to" jurisdiction over the SPhinX Funds' claims because of the happenstance that the SPhinX Funds' bankruptcy case in the United States is proceeding under Chapter 15, rather than Chapter 11, and there is technically no bankruptcy estate in a Chapter 15 case. *See* Remand Mem. at 10-11; 11 U.S.C. §§ 101(42), 541. But Judge Kaplan rejected that very argument in *Bondi*, noting that "there is no reason why a state law action designed to recover some of those assets [assets located in the United States] – an action that could have been brought in [a] Section 304 Proceeding [now Chapter 15] – and thus increase the size of the estate involved in [a] Section 304 case is not 'related to' [a] Section 304 Proceeding within the meaning of [28 U.S.C. § 1334]." *Bondi*, 322 B.R. at 48. The SPhinX Plaintiffs' only response is to contend that *Bondi* is wrong – they make no pretense that the case can be distinguished on its facts – and that this Court's decision in *Marconi* is "better reasoned." Remand Mem. at 11 n.4. There is nothing, in fact, inconsistent between *Bondi* and *Marconi*. The latter case involved a claim *against*, not by, the representative of a Chapter 15 debtor, a fact this Court stressed. *See Marconi*, 363 B.R. at 365. Indeed, this Court noted that an action brought by the representative of a Chapter 15 debtor comes within the bankruptcy jurisdiction that underlies Chapter 15 because it seeks to "marshal and protect the estate's assets in the United States." *Id.* Here, as in *Bondi*, the claims at issue have been brought by the representatives of the Chapter 15 debtor, the SPhinX Funds. Accordingly, there is "related to" jurisdiction over this action.

**C.    The Action Is Related to the Refco Chapter 11 Cases**

This action is also inextricably intertwined with the Refco Chapter 11 Cases and with dozens of other actions arising from, arising in, or related to the Refco Chapter 11 Cases – a fact

that is sufficient by itself to support jurisdiction. As noted earlier, many of the claims brought

here appear to be duplicative of those brought by the Refco Litigation Trustee, and are based

solely on the Removing Defendants' alleged involvement in the events leading to Refco's

demise. "The existence of strong interconnections between the third party action and the

bankruptcy has been cited frequently by courts in concluding that the third party litigation is

related to the bankruptcy proceeding." *In re Worldcom Sec. Litig.*, 293 B.R. 308, 321 (S.D.N.Y.

2003). Indeed, this Court presumably recognized these interconnections when it accepted this

action as related to the Refco MDL, and the SPhinX Plaintiffs have also conceded the existence

of such interconnections in their Remand Motion. *See* Remand Mem. at 11 ("Plaintiffs are rival

claimants seeking to recover damages from common defendants.").

### 1. The Outcome of this Lawsuit Will Impact Distributions to the Refco Debtors' Creditors

The outcome of this lawsuit could impact distributions to, and relative compensation for,

creditors of the Refco Debtors' bankruptcy estates. PlusFunds and the SPhinX Funds claim to be

creditors of the Refco Debtors (though the former had its claims disallowed in the Refco Chapter

11 Cases).[13] With respect to the LBO, IPO and other matters, the only injury they allege is as a

creditor of one or more of the Refco Debtors; they assert that these and other events at Refco

made the Refco Debtors less solvent and, hence, less able to repay whatever amounts they might

have owed to the SPhinX Funds. *See* Compl. ¶¶ 244, 249, 266, 465-504, 637-699, 735-768, 887-

923, 1152-1159. Alleged creditors of the Refco Debtors, like the SPhinX Funds and PlusFunds,

and the Refco Debtors' bankruptcy estates, cannot assert the same claims, because otherwise the

Removing Defendants would face the prospect of double liability. *See, e.g., Jackson Nat'l Life*

---

[13] In those proceedings, Judge Drain held that PlusFunds could not make even "a prima facie showing of the formation of a contract to segregate the other assets of RCM [from] cash or other consideration paid by SPhinX or the SPhinX Funds to Refco, LLC and held there or otherwise transferred to RCM . . ." *See* Firsenbaum Decl. Ex. I, at 2.

*Ins. Co. v. Ligator*, 949 F. Supp. 200, 203-07 (S.D.N.Y. 1996) (dismissing derivative claim

seeking damages as direct claim, citing danger of double recovery). Yet, that is exactly what is

happening in this and the Refco Litigation Trustee actions. *Compare* Compl. ¶¶ 244, 249, 266,

735-744, 1152-1159 *with* Refco Litigation Trustee Action Compl. (Firsenbaum Decl. Ex. A) ¶¶

45-46, 106, 111, 125, 132, 135, 441-444, 581-584, 625.

Thus, a threshold determination that the Court will have to make is to whom each of the

claims asserted in this action rightfully belongs – the SPhinX Plaintiffs, the Refco Litigation

Trustee, or some other party. Whatever the outcome, the decision itself will either have a

positive or negative impact on the Refco Debtors' bankruptcy estates, and, therefore, serves as a

basis for "related to" jurisdiction.[14] *See J.P. Morgan Chase Bank v. Altos Hornos de Mex., S.A.*

*de C.V.*, 412 F.3d 418, 426 (2d Cir. 2005) ("Bona fide questions of property ownership . . . are

antecedent to the distributive rules of bankruptcy administration because they seek to determine

whether an asset is actually part of the debtor's estate."); *see also Bennett*, 2008 WL 1990669, at

*5-7 (action related to bankruptcy case where resolution of plaintiff's claims would affect

plaintiff's ability to repay its loan obligations to estate trust, which, in turn, would affect amount

of creditors' recoveries from the estate trust); *Bondi*, 322 B.R. at 47 n.9 (citations omitted in

original) ("[T]he proceeding need not necessarily be against the debtor or against the debtor's

property. An action is related to a bankruptcy if the outcome could alter the debtor's rights,

liabilities, options, freedom or action (either positively or negatively) and which in any way

impacts upon the handling and administration of the bankrupt estate.").

---

[14] In addition, the Refco Plan expressly retained bankruptcy court jurisdiction over all "disputes" or other "matters" affecting or relating to the "implement[ation]" or "enforcement" of the Refco Plan. *See* Firsenbaum Decl. Ex. J §§ 11.1(f), (g) and (n). This action so affects the implementation and enforcement of the Refco Plan because, as discussed, it constitutes an effort by a third party to assert for its own benefit claims that the Refco Litigation Trust, pursuant to the Refco Plan, has itself asserted.

### 2.  The Pending Proofs of Claim Asserted by Various Defendants Provide Another Basis for "Related to" Jurisdiction

In addition, one of the Removing Defendants, Grant Thornton, has filed a series of proofs of claim ("GT Claims") against the Refco Debtors in the Refco Chapter 11 Cases.[15] These proofs of claim remain pending, having been adjourned without date so that aspects of those claims may be litigated or liquidated in connection with other lawsuits. At least one of the individual defendants has filed his own proof of claim as well.[16]

The GT Claims, and those of at least one other Defendant, provide an independent basis for "related to" jurisdiction with respect to this action. If the SPhinX Plaintiffs were to succeed on their claims here, Grant Thornton could seek contribution from the Refco Litigation Trustee (who stands in the shoes of the Refco Debtors) for any resulting liability through its pending proofs of claim. On the other hand, if Grant Thornton were to defeat the SPhinX Plaintiffs' claims, that too would impact distributions from the Refco Debtors' estates by leaving a greater portion for other creditors. Thus, no matter its outcome, this action could impact how much Grant Thornton and at least one other Defendant will receive from the Refco Debtors' estates and, in turn, how much is available for distribution to the Refco Debtors' other creditors. This connection is more than enough to establish "related to" jurisdiction. *See Hesselman v. Arthur Anderson, LLP (In re Global Crossing Sec. Litig.)*, No. 02 Civ. 910, 2003 WL 21659360, at *1 n.2 (S.D.N.Y. July 15, 2003) (Lynch, J.) (noting that courts in this District, and elsewhere, have rejected this aspect of *Pacor*, and have concluded that a potential claim for contribution may serve as a basis for "related to" jurisdiction); *In re WorldCom*, 293 B.R. at 318–20 (expanding

---

[15] *See* Firsenbaum Decl. Ex. K.

[16] *See* Firsenbaum Decl. Ex. L.

scope of *Pacor* test, and providing that unadjudicated claims for contribution or indemnification with a "reasonable legal basis" may confer "related to jurisdiction).[17]

### 3. The Individual Defendants' Claims to the Refco Debtors' Liability Insurance Independently Confer "Related to" Jurisdiction

Certain of the individual defendants in this action are former directors and officers of the Refco Debtors who have commenced adversary proceedings against several of Refco's D&O insurance carriers seeking, among other things, the advancement of defense costs in this and other actions. The Bankruptcy Court has already held that two of those insurance carriers must cover such defense costs. *E.g., Axis Reinsurance Co. v. Bennett et al.*, Adv. Proc. 07-01712 (RDD) (Bankr. S.D.N.Y. 2007) (appeal pending) (Firsenbaum Decl. Ex. M). The liability insurance policies at issue are property of the Refco Debtors' bankruptcy estates. *See* Firsenbaum Decl. Ex. J, at ¶ 5.9 ("the Debtors' or RCM's insurance policies shall remain property of their respective Estates in accordance with this section of the Plan, and shall not be subject to the rejection provisions of section 7.1 of the Plan").[18] Thus, the instant action could impact property of the Refco Debtors' bankruptcy estates – the applicable insurance policies – providing another reason why this action is "related to" the Refco Chapter 11 Cases. *See In re*

---

[17] The SPhinX Plaintiffs suggest that there is no reasonable legal basis for the Grant Thornton proofs of claim because their own claims against Grant Thornton "are based entirely on intentional misconduct or reckless misconduct." Remand Mem. at 12. Such claims, they speculate, would likely be beyond the scope of any contractual provision allowing indemnification or contribution. *Id.* But Grant Thornton's claims are largely non-contractual; instead, they are based on common law or statutory rights of contribution, which have no carve-out for intentional or reckless conduct. *See Board. of Educ. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 27, 523 N.Y.S.2d 475, 478 (1987); *see also* Firsenbaum Decl. Ex. K. Thus Plaintiffs' speculation about limitations on contractual rights is misplaced. Moreover, the fact that further litigation may be required for Grant Thornton to establish or collect on its contribution claim does not change the "related to" analysis here. *See In re Worldcom,* 293 B.R. at 322 (rejecting argument that any claim for contribution or indemnification must be reduced to judgment to provide a basis for jurisdiction); *In re Adelphia Commc'ns Corp.*, No. 04 Civ. 4967, 2005 WL 1026559, at *5 (S.D.N.Y. May 2, 2005) ("[I]ndemnification claims against Adelphia are to be litigated ultimately in, presumably the bankruptcy court, but not now on a remand motion.").

[18] *See also* Tr. Sept. 11, 2007 Hr'g 06-50005 (RDD), Adv. Proc. 07-01712, at 39-40 (Firsenbaum Decl. Ex. N) ("[W]ith respect to the recoveries, for example, that may be achieved by Mr. Bennett, the only thing that's doing is really reducing availability of insurance proceeds for other people who do have claims and whose claims would be reduced if they were able to receive insurance proceeds.").

*610 W. 142 Owners Corp.*, 219 B.R. at 371 (finding "related to" jurisdiction over state-law claims that would "affect property available for distribution to creditors of the bankruptcy estate through the proceeds of either the Directors and Officers' liability insurance coverage or if the [directors] are personally liable"); *see also Beightol v. UBS Painewebber (In re Global Crossing Ltd. Sec. Litig.)*, 311 B.R. 345, 349 (S.D.N.Y. 2003) ("'related to' jurisdiction exists in action for which corporate insiders may seek contribution); *In re WorldCom,* 293 B.R. at 331 (same).[19]

## II.    ABSTENTION IS NEITHER MANDATORY NOR APPROPRIATE

The SPhinX Plaintiffs also argue that, even if "related to" jurisdiction exists, this Court should abstain from deciding this case and remand it to state court. The SPhinX Plaintiffs' argument is misplaced. As this Court recently articulated in both of the Refco Trustee Actions, abstention, whether mandatory, permissive, or equitable, "simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court." *Beightol*, 311 B.R. at 347; *see Refco Litigation Trustee Action*, 2008 WL 1827644, at *12; *Bennett*, 2008 WL 1990669, at *7-8.

### A.    Mandatory Abstention Is Inapplicable Because This Action Cannot Be Timely Adjudicated in State Court

By the express terms of the applicable jurisdictional statute, abstention over claims that are "related to" a bankruptcy case is mandatory only if the moving party demonstrates that the action can be "timely adjudicated" in state court. 28 U.S.C. §1334(c)(2). The SPhinX Plaintiffs have not met, and cannot meet, their burden of demonstrating that this action can be timely adjudicated in New York State Court. *See Refco Litigation Trustee Action*, 2008 WL 1827644,

---

[19] *See also Tringali v. Hathaway Mach. Co.,* 796 F.2d 553, 560-61 (1st Cir. 1986) (debtor's liability insurance policy and proceeds are part of bankruptcy estate).

at *12; *Bennett*, 2008 WL 1990669, at *7-8;  *Beightol*, 311 B.R. at 349; *see also Bondi v. Grant Thornton Int'l*, 322 B.R. 44, 50 (S.D.N.Y. 2005); *In re WorldCom*, 293 B.R. at 331.

The SPhinX Plaintiffs fail to cite even one of these cases.  Instead, they rely solely on a declaration of a retired judge reciting the average length of time from an action's commencement to its disposition in the Commercial Division of the New York State Court in 2006, and various charts and articles that say nothing more.[20]  As the Court recognized in the Refco Trustee Actions, and previously in the Global Crossing MDL, such evidence does not tell the whole story. *Refco Litigation Trustee Action*, 2008 WL 1827644, at *12; *Bennett*, 2008 WL 1990669, at *7-8; *Beightol*, 311 B.R. at 349.[21]  "Whatever might be true in the general run of cases filed in . . . state court, this action is clearly distinguishable, constituting 'but one piece of a much larger, extremely complex litigation puzzle.'" *Refco Litigation Trustee Action*, 2008 WL 1827644, at *12, (*quoting Bondi*, 322 B.R. at 50); *see Bennett*, 2008 WL 1990669, at *7-8.  "Indeed, far from promoting 'timely adjudicate[ion] of [Plaintiffs'] claims, to remand this action to the [New York] [S]tate [C]ourt would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court.'" *Id.*, (*quoting Beightol*, 311 B.R. at 349); *see Bennett*, 2008 WL 1990669, at *7-8.

This case relies on the same factual allegations, and many of the same or similar claims, as those present in more than 30 actions pending before this Court as part of the Refco MDL, and "is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending" in this Court. *See Refco Litigation Trustee Action*, 2008 WL 1827644, at *12 (internal citation omitted); *see Bennett*, 2008 WL 1990669, at *7-8. "[F]ar from promoting

---

[20] *See* Decl. of Stephen G. Crane, dated Apr. 23, 2008, at ¶¶ 8-11.

[21] *See also Bondi*, 322 B.R. at 50; *In re WorldCom*, 293 B.R. at 331

timely adjudication," remand would simply delay the ultimate resolution of all Refco-related litigation. *See id.* Indeed, it is nearly inevitable that difficulties would arise in seeking to coordinate pre-trial proceedings in cases pending in two different courts in two different systems (federal and state). *See id.*

The SPhinX Plaintiffs' argument that inclusion of this action in the Refco MDL would impede the timely adjudication of the action is riddled with internal contradictions. On the one hand, the SPhinX Plaintiffs contend that inclusion of this action in the Refco MDL would *slow* down this action (Remand Mem. at 18), but, on the other hand, they argue that participation in the Refco MDL would improperly *hasten* this action, not giving them adequate time to prepare for discovery (Remand Mem. at 18, 24).

The inclusion of this suit in the Refco MDL will not impede the timely adjudication of the action. The time in which the Refco securities litigation, or other actions in the Refco MDL, have been pending is irrelevant to the progression of the Refco MDL going forward. Indeed, this Court's familiarity and experience with the complex factual issues concerning Refco's demise will allow for more timely adjudication of this action than would remand, which would require a second judge to get up to speed. The Court's ruling on legal issues in closely-related Refco MDL actions should allow for more timely adjudication of the same, or similar, legal issues in this action. Moreover, the SPhinX Plaintiffs and the Removing Defendants have reached agreement providing that all documents produced to date in the Refco MDL will be made available to the SPhinX Plaintiffs, and that the SPhinX Plaintiffs will participate in depositions in the Refco MDL subject to the terms of the discovery protocol in effect.[22] Under these

---

[22] The Removing Defendants have executed a Stipulation and Order proposed by the SPhinX Plaintiffs regarding these topics. It is the Removing Defendants' understanding that the SPhinX Plaintiffs will be filing the proposed Stipulation and Order with the Court shortly.

circumstances, any suggestion by the SPhinX Plaintiffs that they will suffer prejudice because this case will proceed too slowly as part of the Refco MDL rings hollow.

The SPhinX Plaintiffs' argument that this action will proceed too quickly as part of the Refco MDL is equally meritless. The potential prejudice the SPhinX Plaintiffs allege – that they have "miss[ed] certain discovery proceedings" (*see* Remand Mem. at 19) – is both overstated and self-inflicted. Depositions in the Refco MDL, while begun, are only in their initial stages. Only one representative of a named party in this action had been deposed as of the date the SPhinX Plaintiffs had filed their Remand Motion, and only one additional witness has been deposed since. Counsel for the SPhinX Plaintiffs were informed of the deposition schedule and invited to attend and question the witnesses. *See* Firsenbaum Decl. Ex. O. The SPhinX Plaintiffs chose not to do so. Since then, the SPhinX Plaintiffs have agreed to receive the same document productions as all other parties in the Refco MDL and have acknowledged that they can and will participate in the ongoing depositions subject to the terms of the Stipulation and Order they have proposed.[23] The SPhinX Plaintiffs cannot legitimately argue that they will suffer any prejudice because the case will proceed too quickly.[24]

It is the Removing Defendants who would suffer prejudice if this action were litigated in a separate forum from the rest of the Refco MDL. As noted, the claims here substantially overlap with those in the Refco Litigation Trustee Action; thus, this action presents significant

---

[23] *See* note 22, *supra*.

[24] Indeed, had the SPhinX Plaintiffs (or their predecessors in interest) not elected to wait seven months longer than the Refco Litigation Trustee and Refco Private Actions Trustee ("Refco Trustees") to bring suit, they, like the Refco Trustees, would have had even more time to receive documents and prepare for depositions in the Refco MDL. While the SPhinX Plaintiffs assert that prejudice will result because "discovery [may] be completed by November 2008, by which time it would be unlikely for the Court even to have been disposed of dismissal motions" (Remand Mem. at 22), it is telling that the Refco Trustees, whose actions will also be subject to dismissal motions that may not be fully briefed until September, 2008, are participating in the same discovery without objection and have not suggested that they are experiencing any prejudice.

questions concerning which plaintiff, if any, has standing to bring the claims brought here.  To permit a second judge to rule would present a risk of inconsistent results on this and other procedural and substantive issues.  Moreover, allowing this action to proceed separately in a different court could lead to multiple depositions of the same witnesses.  Furthermore, allowing this case to proceed separately from the other Refco-related actions in the Refco MDL would almost surely reduce the chances that the parties could reach a comprehensive resolution of whichever claims survive legal challenge (if any).  *See Refco Litigation Trustee Action*, 2008 WL 1827644, at *6 (recognizing that settlement of all Refco-related litigation will be more easily effected if all actions proceed in the same court).

**B.     Permissive Abstention and Equitable Abstention Are Not Warranted.**

As with mandatory abstention, permissive and equitable abstention are not warranted.  This Court recently noted in the Refco Trustee Actions that federal courts must be sparing in their exercise of discretionary abstention because they possess a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Refco Litigation Trustee Action*, 2008 WL 1827644, at *12-13 (citation omitted); *Bennett*, 2008 WL 1990669, at *8-9.  An examination of the factors that courts in this Circuit have identified as bearing on the decision whether to abstain from exercising jurisdiction demonstrates that the SPhinX Plaintiffs have not met their burden, and that neither permissive nor equitable abstention would be appropriate in this case:

- Here, "there is little basis to invoke comity to the state courts, and every reason to invoke federal jurisdiction."  *Refco Litigation Trustee Action*, 2008 WL 1827644, at *12, (*quoting Winstar Holdings, LLC v. Blackstone Group, L.P.*, No. 07 Civ. 4634, 2007 WL 4323003, at *5 (S.D.N.Y. Dec. 10, 2007)).  The SPhinX Plaintiffs' state-law causes of action "are straightforward common-law claims that do not involve arcane or idiosyncratic provisions of state law that would 'warrant abstention based on comity concerns."  *Refco Litigation Trustee Action*, 2008 WL 1827644, at *12 (*quoting In re Worldcom*, 293 B.R. at 332); *see Bennett*, 2008 WL 1990669, at *8-9.

- The Removing Defendants removed this action promptly after it was commenced.  The New York State Court has invested no time in the case; there was not a single hearing

held or order entered prior to removal. *See Refco Litigation Trustee Action*, 2008 WL 1827644, at *12; *Bennett*, 2008 WL 1990669, at *8-9.

- This case arises out of the same corporate collapse and series of alleged transactions underlying some 30 Refco-related cases pending before this Court. Given the "scores" of other Refco-related actions pending before this Court, this action should remain in this Court as well. *See Refco Litigation Trustee Action*, 2008 WL 1827644, at *12-13; *Bennett*, 2008 WL 1990669, at *8-9; *In re Worldcom*, 293 B.R. at 333. Judicial economy would not be served by abstention or equitable remand. Indeed, "[t]he efficiency gains that result from asserting jurisdiction in this case are particularly striking in light of the multitude of other Refco-related actions currently pending before this Court, many of which involve many of the same parties and arise out of the same set of facts as those described in the [Refco] Trustee's complaint." *Refco Litigation Trustee Action*, 2008 WL 1827644, at *10; *Bennett*, 2008 WL 1990669, at *8-9.

- As discussed earlier, this action shares a close relationship with the PlusFunds Chapter 11 Case, the SPhinX Chapter 15 Case, and the Refco Chapter 11 Cases. *See Bennett*, 2008 WL 1990669, at *8-9; *Refco Litigation Trustee Action*, 2008 WL 1827644, at *9.

- The Removing Defendants are not engaged in forum shopping. They merely seek to conserve the resources of the parties, and avoid the risks of inconsistent results and duplicative discovery, by having this action proceed in tandem with the other Refco-related litigation pending in this Court.

- The SPhinX Plaintiffs' alleged right to trial by jury will not be compromised in federal court. *See In re Adelphia Commc'ns Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2003 WL 23018802, at *2 (S.D.N.Y. Dec. 23, 2003).

- There is no evidence of a significant backlog on this Court's docket. Indeed, as noted, the SPhinX Plaintiffs are now participating in coordinated discovery with the other actions pending in the Refco MDL, thus promoting efficiency and eliminating any possible prejudice to the SPhinX Plaintiffs. *See In re Adelphia*, 2003 WL 23018802, at *2.

## CONCLUSION

For these reasons, the Removing Defendants respectfully request that the Court deny the

SPhinX Plaintiffs' Remand Motion.

Respectfully Submitted,

- 25 -

Dated: May 27, 2008

WILMER CUTLER PICKERING
HALE AND DORR LLP

By:  /s/ Philip D. Anker
    Robert B. McCaw (RM-7427)
    (*Robert.Mccaw@wilmerhale.com*)
    Philip D. Anker (PA-7833)
    (*Philip.Anker@wilmerhale.com*)
    Lori A. Martin (LM-7125)
    (*Lori.Martin@wilmerhale.com*)
    John V.H. Pierce (JP-2870)
    (*John.Pierce@wilmerhale.com*)
    James Millar (JM-6091)
    (*James.Millar@wilmerhale.com*)
    Jeremy S. Winer (JW-8823)
    (*Jeremy.Winer@wilmerhale.com*)
    Ross E. Firsenbaum (RF-6306)
    (*Ross.Firsenbaum@wilmerhale.com*)

    399 Park Avenue
    New York, New York 10022
    Tel.: (212)-230-8800
    Fax: (212)-230-8888
    *Attorneys for Defendants JP Morgan Chase*
    *& Co., Credit Suisse Securities (USA) LLC*
    *(formerly Credit Suisse First Boston LLC),*
    *and Banc of America Securities LLC*

Dated: May 27, 2008

WINSTON & STRAWN LLP

By:  /s/ David E. Mollón

David E. Mollón (*dmollon@winston.com*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Ph:   (212) 294-6700
Fax:  (212)294-4700

Of Counsel:

Bradley E. Lerman (*blerman@winston.com*)
Catherine W. Joyce (*cjoyce@winston.com*)
Linda T. Coberly (*lcoberly@winston.com*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph:   (312) 558-5600
Fax:  (312) 558-5700

*Attorneys for Grant Thornton LLP*
*and Mark Ramler*

Dated:  May 27, 2008

By: /s/ Thomas G. Ward
Thomas G. Ward (TW-6255) (*tward@wc.com*)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005

Of Counsel:

John K. Villa
Michael S. Sundermeyer
Craig D. Singer
William T. Burke
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005

*Attorneys for Mayer Brown LLP*

Dated:  May 27, 2008

/s/ Joel M. Cohen
Joel M. Cohen (JC-9162)
(*Joel.Cohen@cliffordchance.com*)
Anthony M. Candido (AC-9458)
(*Anthony.Candido@cliffordchance.com*)
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Tel:  (212) 878-8000
Fax:  (212) 878-8375

*Attorneys for the*
*UK Limited Liability Partnership*
*Mayer Brown International LLP*

Dated:  May 27, 2008

Respectfully Submitted,

WEIL, GOTSHAL & MANGES LLP

By:  /s/ Greg A. Danilow
      Greg A. Danilow, Esq. (GD 1621)
      (*greg.danilow@weil.com*)
      Michael F. Walsh, Esq. (MW 8000)
      (*michael.walsh@weil.com*)
      767 Fifth Avenue
      New York, NY 10153-0119
      Telephone:  (212) 310-8000
      Facsimile:  (212) 310-8007

      *and*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  /s/ Richard A. Rosen
      Richard A. Rosen, Esq.
      (*rrosen@paulweiss.com*)
      1285 Avenue of the Americas
      New York, New York  10019-6064
      Tel.    (212) 373-3000
      Fax    (212) 492-0305
      rrosen@paulweiss.com

      *Attorneys for Defendants Thomas H. Lee*
      *Partners L.P., Leo R. Breitman, Nathan*
      *Gantcher, David V. Harkins,*
      *Scott L. Jaeckel, Thomas H. Lee,*
      *Ronald L. O'Kelley, and Scott A. Schoen*

Dated:  May 27, 2008

By:  /s/ James J. Capra, Jr.
      James J. Capra, Jr.
      (*jcapra@orrick.com*)
      James P. Cusick
      (*jcusick@orrick.com*)
      Matthew L. Craner
      (*mcraner@orrick.com*)
      ORRICK, HERRINGTON & SUTCLIFFE LLP
      666 Fifth Avenue
      New York, New York 10103-0001
      Tel:  (212) 506-5000

      *Attorneys for Defendants*
      *PricewaterhouseCoopers LLP and Mari*
      *Ferris*