UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KENNETH KRYS and CHRISTOPHER STRIDE as
Joint Official Liquidators of SPHINX LTD., *et al.*,

                        Plaintiffs,           :     Case No. 08 Civ. 3065 (GEL)

            -against-

CHRISTOPHER SUGRUE, *et al.*,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT BAWAG'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND AND/OR ABSTENTION

DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500

*Attorneys for Bank für Arbeit und
Wirtschaft und Österreichische
Postsparkasse Aktiengesellschaft*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ....................................................................................3

      A.    The Refco Bankruptcy Cases ................................................................3

      B.    The BAWAG Settlement ......................................................................4

      C.    The Refco Plan And The Confirmation Order ......................................5

      D.    The SPhinX Action ...............................................................................6

ARGUMENT ........................................................................................................7

I.     REMAND SHOULD BE DENIED BECAUSE THE CORE NATURE OF
      PLAINTIFFS' CLAIMS PROVIDES SUBJECT MATTER JURISDICTION
      UNDER 28 U.S.C. § 1334.................................................................................7

      A.    BAWAG's "Claim Over" Protection Is A Core Matter ........................8

      B.    Plaintiffs' Claims Are Property Of The Refco Estates.........................10

            1.    Plaintiffs' Claims Seek To Remedy Only Generalized Harm.........11

            2.    Plaintiffs' Claims Are Substantially Similar To The
                   Committee's Claims Against BAWAG.............................................12

            3.    The Alter Ego Nature Of Plaintiffs' Claims Against BAWAG
                   Makes Them Property Of The Refco Estates ...................................13

II.    REMAND SHOULD BE DENIED BECAUSE PLAINTIFFS' CLAIMS
      AT A MINIMUM ARE "RELATED TO" THE REFCO BANKRUPTCY
      CASES ............................................................................................................15

III.   MANDATORY ABSTENTION DOES NOT APPLY TO PLAINTIFFS'
      CLAIMS AGAINST BAWAG .......................................................................17

IV.   PERMISSIVE ABSTENTION IS UNWARRANTED.......................................19

V.    THERE ARE NO GROUNDS FOR EQUITABLE REMAND OF
      THIS ACTION ...............................................................................................22

CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beightol v. UBS PaineWebber (In re Global Crossing, Ltd. Secs. Litig.)*,
    311 B.R. 345 (S.D.N.Y. 2003) ........................................................................18

*Bondi v. Grant Thornton Int'l*,
    322 B.R. 44 (S.D.N.Y. 2005) ..........................................................................18

*Campo v. 1st Nationwide Bank*,
    857 F. Supp. 264 (E.D.N.Y. 1994) .................................................................13

*Central Vt. P.S.C. v. Herbert*,
    341 F.3d 186 (2d Cir. 2003) ...........................................................................13

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*,
    337 B.R. 22 (S.D.N.Y. 2005) ....................................................................17, 19

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville*
    *Forest Prods. Corp.)*,
    896 F.2d 1384 (2d Cir. 1990) .........................................................................10

*IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*,
    No. 05-01399 (ALG), 338 B.R. 574 (Bankr. S.D.N.Y. 2005) ....................17, 19

*Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium*
    *Seacarriers, Inc.)*,
    Nos. 04 Civ. 6482 (GEL) and 05 Civ. 2711 (DLC),
    2005 U.S. Dist. LEXIS 21553 (S.D.N.Y. Sept. 28, 2005) ..................................9

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
    8 F.3d 130 (2d Cir. 1993) ..........................................................................11, 14

*Kassover v. Prism Venture Partners, LLC (In re Kassover)*,
    336 B.R. 74 (Bankr. S.D.N.Y. 2006) ..............................................................17

*Kirschner v. Bennett*,
    No. 07 Civ. 8165 (GEL), 2008 U.S. Dist. LEXIS 37214
    (S.D.N.Y. May 6, 2008) ..........................................................................Passim

*Kirschner v. Grant Thornton LLP*,
    No. 07 Civ. 11604 (GEL), 2008 U.S. Dist. LEXIS 32798
    (S.D.N.Y. Apr. 21, 2008) .........................................................................Passim

*LFD Operating, Inc. v. Gen. Elec. Capital Corp. (In re Ames Dep't Stores, Inc.),*
    No. 01-8153 (AJG), 2006 WL 1288586 (Bankr. S.D.N.Y. Apr. 19, 2006) ............9, 10, 17

*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),*
    304 F.3d 223 (2d Cir. 2002) .......................................................................................7, 9

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
    341 F. Supp. 2d 386 (S.D.N.Y. 2004) ................................................................................7

*Mt. McKinley Ins. Co. v. Corning Inc.,*
    399 F.3d 436 (2d Cir. 2005) ...............................................................................................9

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.,*
    187 F.3d 439 (4th Cir. 1999) .......................................................................................9, 12

*New York City Employees' Ret. Sys. v. Ebbers (In re WorldCom Inc. Sec. Litig.),*
    293 B.R. 308 (S.D.N.Y. 2003) ..............................................................19, 20, 21, 23

*Norkin v. DLA Piper Rudnick Gray Cary, LLP,*
    No. 05 Civ. 9137 (DLC), 2006 WL 839079 (S.D.N.Y. Mar. 31, 2006) ...........................21

*Rahl v. Bande,*
    316 B.R. 127 (S.D.N.Y. 2004) ...............................................................................16, 19, 21

*Renaissance Cosmetics, Inc. v. Devel. Specialists Inc.,*
    277 B.R. 5 (S.D.N.Y. 2002) ..............................................................................................21

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,*
    884 F.2d 688 (2d Cir. 1989) .............................................................................................11

*Singer Co. B.V. v. Groz Beckert KG (In re Singer Co. N.V.),*
    262 B.R. 257 (Bankr. S.D.N.Y. 2001).............................................................................14

*Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.),*
    17 F.3d 600 (2d Cir. 1994) ...............................................................................................11

*Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.),*
    302 B.R. 792 (Bankr. S.D.N.Y. 2003)................................................................................9

*Steyr-Daimler-Puch of Am. Corp. v. Pappas,*
    852 F.2d 132 (4th Cir. 1988) ...........................................................................................14

*Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.),*
    419 F.3d 83 (2d Cir. 2005) .................................................................................................7

*Winstar Holdings, LLC v. Blackstone Group L.P.,*
No. 07 Civ. 4634 (GEL), 2007 U.S. Dist. LEXIS 90482
(S.D.N.Y. Dec. 10, 2007) ........................................................................ Passim

## STATUTES

11 U.S.C. § 362(a)(3) ................................................................................. 10

28 U.S.C. § 157(b)(3) ................................................................................. 9

28 U.S.C. § 1334 ........................................................................................ 7

28 U.S.C. § 1334(b) .................................................................................. 15

28 U.S.C. § 1334(c)(1) .............................................................................. 20

28 U.S.C. § 1334(c)(2) .............................................................................. 17

28 U.S.C. § 1334(e)(1) ................................................................................ 7

28 U.S.C. § 1452(a) .................................................................................... 7

28 U.S.C. § 1452(b) .................................................................................. 22

Defendant Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft ("BAWAG"), by and through its attorneys, Dechert LLP, respectfully submits this memorandum of law in opposition to plaintiffs' motion for remand of this action to the Supreme Court of the State of New York, County of New York (the "New York Supreme Court") and/or abstention.

## PRELIMINARY STATEMENT

This Court recently denied remand and abstention motions made by Refco[1] trustee Marc Kirschner in two separate Refco-related actions. Here, there is even greater reason to deny plaintiffs' motion to remand because plaintiffs' claims against BAWAG are core matters arising under title 11 or arising in a case under title 11 (in particular, Refco's chapter 11 bankruptcy proceedings (the "Refco Bankruptcy Cases")) and, at the very least, are related to the Refco Bankruptcy Cases. Indeed, on April 2, 2008, BAWAG filed with this Court a motion to refer the claims against it to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under this District's standing order of reference because of the Bankruptcy Court's core jurisdiction over these claims, and that motion is pending.[2] Despite their burden, plaintiffs have failed to make any credible showing that either remand or abstention is warranted in these circumstances.

Plaintiffs' claims against BAWAG fall within the Bankruptcy Court's core jurisdiction for several reasons. First, plaintiffs' claims require the interpretation and enforcement of several

---

[1]    "Refco" refers collectively to Refco Inc. and its affiliates.

[2]    "Referral Br." refers to BAWAG's April 2, 2008 moving brief in support of its motion to refer (Docket #6). "Referral Opp." refers to plaintiffs' April 25, 2008 brief in opposition to BAWAG's motion to refer (Docket #28). "Referral Reply" refers to BAWAG's May 9, 2008 reply brief in further support of its motion to refer (Docket #40).

orders of the Bankruptcy Court and Refco's confirmed chapter 11 plan of reorganization (the

"Refco Plan"). Among these provisions are critical protections against "Claims Over" that

BAWAG received as a part of its settlement and release of claims brought against it by the

Official Committee of Unsecured Creditors of Refco Inc. (the "Committee") on behalf of

Refco's chapter 11 bankruptcy estates (the "Refco Estates") in an adversary proceeding. Among

other things, BAWAG's "Claim Over" protection was designed specifically to bar plaintiffs from

recovering the $263 million paid by SPhinX[3] to the Refco Estates (the "SPhinX Preference

Settlement") in settlement of a separate preference action brought by the Committee against

SphinX (the "Preference Action"). Second, plaintiffs' claims are property of the Refco Estates

because, *inter alia*, they are alter ego claims and claims that assert only generalized injuries (not

particularized or individual harm suffered only by SPhinX). In either case, plaintiffs' claims

against BAWAG have already been prosecuted by the Committee and have been settled and

released.

Alternatively, plaintiffs' claims against BAWAG are – at a minimum – related to the

Refco Bankruptcy Cases for the reasons set forth above. Given the existence of federal

bankruptcy subject matter jurisdiction, remand is entirely inappropriate. In addition, the close

connections plaintiffs' claims against BAWAG have to the Refco Bankruptcy Cases and the

other Refco-related litigation pending before this Court counsel against abstention.

It is abundantly clear that this action is motivated by plaintiffs' desire to recover the

SPhinX Preference Settlement. It is also apparent that plaintiffs strive to have this action

proceed in the New York Supreme Court as a way to circumvent their previous failures both in

the Bankruptcy Court and in this Court to reverse the effects of the SPhinX Preference

---

[3]    "SPhinX" refers collectively to SPhinX Ltd. and its affiliates.

Settlement. In seeking remand and abstention, plaintiffs fail to acknowledge that the Bankruptcy Court (or, in the alternative, this Court) is the proper forum for this action given the myriad of Refco-related litigation pending in this Court and in the Bankruptcy Court and the unmatched fluency those courts share regarding the Refco fraud. The Court should not allow plaintiffs to avoid this Court's and the Bankruptcy Court's jurisdiction and to thwart common sense and judicial economy by proceeding on their own in state court.

## STATEMENT OF FACTS

### A. The Refco Bankruptcy Cases

Shortly after Refco's August 2005 initial public offering, certain Refco employees discovered a $430 million receivable owed by an unconsolidated but affiliated entity controlled by Phillip Bennett ("Bennett"), Refco Group Holdings, Inc. ("RGHI"). When the receivable was discovered, Bennett asked for and received a €350 million loan from BAWAG to repay it, but Refco still plunged into bankruptcy and filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Refco Bankruptcy Cases. One month later, BAWAG commenced an adversary proceeding in the Refco Bankruptcy Cases (the "Adversary Proceeding") against Refco and other parties alleging that Refco and Bennett had fraudulently procured the €350 million loan. On April 17, 2006, the Committee intervened in the Adversary Proceeding and asserted counterclaims against BAWAG on behalf of the Refco Estates for, *inter alia*, damages arising out of BAWAG's alleged aiding and abetting of breaches of fiduciary duty by Bennett. Brick Decl. Exh. A.[4]

---

[4]    "Brick Decl." refers to the May 27, 2008 Declaration of Brian H. Brick in Opposition to Plaintiffs' Motion for Remand and/or Abstention, submitted herewith on behalf of BAWAG.

## B.  The BAWAG Settlement

On or about June 2, 2006, the Committee and BAWAG resolved all of their respective

claims and potential claims (the "BAWAG Settlement"), which was "so ordered" by Judge Drain

of the Bankruptcy Court in a July 6, 2006 order.  Brick Decl. Exhs. B, C.  BAWAG agreed to

pay approximately $437.5 million for the benefit of the Refco Estates and waived its claims for

hundreds of millions of dollars against Refco in exchange for broad releases from all debtor and

non-debtor affiliates.  Paragraph 4(a) of the BAWAG Settlement released BAWAG:

> from and against any and all claims or actions belonging to Refco . . . including
> but not limited to (i) all claims relating or related to the allegations contained in
> the Complaint and the Counterclaims [in the Adversary Proceeding], (ii) all
> claims that could have been asserted in the Adversary Proceeding or any other
> claims that could have been brought by or on behalf of Refco or the Committee,
> (iii) all claims that would be barred by principles of *res judicata* or other similar
> preclusive principles . . . .

Brick Decl. Exh. B ¶ 4(a).  As a part of the BAWAG Settlement, BAWAG also bargained for

and obtained "Claim Over" protection against claims for:

> contribution, indemnification or reimbursement by any third party not party to
> this Stipulation and Order (an "Unnamed Party" and, collectively, the "Unnamed
> Parties") against the BAWAG Parties that (i) directly or indirectly arises out of
> or is based upon, related to, or connected with the relationship between the
> BAWAG Parties and Refco . . . and (ii) is for recovery of amounts that such
> Unnamed Party paid or owes to Refco or the Debtors' estates pursuant to a
> judgment or award . . . or settlement.

*Id.* ¶ 6(a) (emphasis in original).  The BAWAG Settlement further provides that all Unnamed

Parties (such as plaintiffs) are "permanently barred and enjoined from commencing or

prosecuting any action against the BAWAG Parties based on a Claim Over."  *Id.* ¶ 6(c).  The

BAWAG Settlement also specifies that the Bankruptcy Court retains "exclusive jurisdiction"

during the pendency of the Refco Bankruptcy Cases "for any action seeking to enforce or

interpret the terms of this Stipulation and Order, *including any issues relating to Claims Over*."
*Id.* ¶ 17 (emphasis added).

## C.  The Refco Plan And The Confirmation Order

In addition to the Bankruptcy Court's approval of the BAWAG Settlement, that
settlement was expressly referenced and implemented in the Refco Plan.  Brick Decl. Exh. D
§§ 1.29, 5.18, 10.2(e); Exh. E at 18-19 ¶ DD and at 30-31 ¶ 22.  The Refco Plan also contains
broad releases by the Refco Estates that include all claims "in any way relating to [Refco], the
Chapter 11 Cases [or] the Plan . . . and that could have been asserted by or on behalf of [Refco],
*including pursuant to principles of . . . alter ego [or] domination . . . .*  Brick Decl. Exh. D
§ 10.2(a) (emphasis added).  Judge Drain made specific findings of fact in the December 15,
2006 order confirming the Refco Plan (the "Confirmation Order") that each of these releases
falls within federal bankruptcy jurisdiction, is essential to the Refco Plan's implementation, "is
an integral element of the Settlements embodied in the Plan" (which expressly includes the
BAWAG Settlement), and "is important to the overall objectives of the Plan . . . ."  Brick Decl.
Exh. E at 19 ¶ DD.

Both the Refco Plan and the Confirmation Order give the Bankruptcy Court jurisdiction
over "all matters arising out of and related to" the Refco Bankruptcy Cases and the Refco Plan,
and set forth a number of categories containing a wide variety of matters and issues subject to the
Bankruptcy Court's continuing jurisdiction (including the interpretation and enforcement of the
Refco Plan and the BAWAG Settlement).  Brick Decl. Exh. D §§ 11.1(g), (j), (k), (o), (p), and
(r); *id.* Exh. E at 18 ¶ CC and at 39-40 ¶ 37.  The Refco Bankruptcy Cases remain pending before
the Bankruptcy Court.

### D.  The SPhinX Action

On or about March 5, 2008, plaintiffs commenced this action in the New York Supreme

Court against BAWAG (and more than fifty other defendants) (the "SPhinX Action").  Plaintiffs

allege in their complaint (the "Complaint") that SPhinX and its investment manager, PlusFunds

Group, Inc. ("PlusFunds"), suffered damages arising from the "diversion" of SPhinX's cash from

"protected, customer-segregated accounts" at Refco LLC to "unprotected offshore accounts" at

Refco Capital Markets, Ltd. ("RCM"), where those assets were ultimately lost in the wake of the

disclosure of the Refco fraud and the commencement of the Refco Bankruptcy Cases.  Brick

Decl. Exh. F ¶ 1.

Although disguised as state tort claims in the Complaint, the substance of those claims is

SPhinX's attempted recovery of the SPhinX Preference Settlement.  *Id.* ¶ 16.[5]  Prior to filing this

action, SPhinX failed in both this Court and the Bankruptcy Court to set aside the SPhinX

Preference Settlement.  SphinX now seeks to attack collaterally the Bankruptcy Court's orders in

a state court proceeding against BAWAG and others.

Of the three counts the Complaint alleges against BAWAG – Count XXIV (Conspiracy),

Count XXV (Aiding and Abetting Fraud), and Count XXVII (Interference with

Contract/Prospective Contract) – each is premised on allegations that BAWAG participated in

round-trip loan transactions at Refco's fiscal year end in order to assist Refco's chief executive

officer, Bennett, in hiding RGHI's receivable and in fraudulently misrepresenting Refco's

financial condition.  The Complaint further alleges that BAWAG, directly or indirectly, exerted

---

[5]    Just days before Refco filed its bankruptcy petitions, defendant Christopher Sugrue, then-Chairman of
the Board and director of PlusFunds, demanded the return of $312 million of SPhinX's cash held at
RCM to SPhinX's segregated accounts at Refco LLC.  Brick Decl. Exh. F ¶ 12.  Thereafter, the
Committee commenced the Preference Action against SPhinX for the return of the $312 million,
which was ultimately settled for a $263 million payment by SPhinX to RCM and a release of all
claims against the Refco Estates.  *Id.* ¶¶ 12, 14-16.

control over Refco, *i.e.*, that BAWAG was an alter ego of Refco.  Brick Decl. Exh. F ¶¶ 26, 149, 209, 254, 798, 801-03.

On March 26, 2008, pursuant to 28 U.S.C. § 1452(a), BAWAG removed to this Court those claims in the Complaint plaintiffs alleged against BAWAG on the basis that the claims are core matters subject to "arising under" or "arising in" jurisdiction.  BAWAG alternatively asserted that plaintiffs' claims, at a minimum, were "related to" the Refco Bankruptcy Cases.  On April 2, 2008, BAWAG moved this Court to refer this case to the Bankruptcy Court for adjudication.  That motion is fully briefed and awaiting disposition.  *See supra* n.2.

## ARGUMENT

### I.

### REMAND SHOULD BE DENIED BECAUSE THE CORE NATURE OF PLAINTIFFS' CLAIMS PROVIDES SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1334

District courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334.  In addition, a district court presiding over a case under title 11 has "*exclusive* jurisdiction [] of *all* the property, wherever located, of the debtor . . . and of property of the estate."  *Id.* § 1334(e)(1) (emphasis added); *see also Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 96 (2d Cir. 2005).  Matters that arise under title 11 or that arise in a case under title 11 are collectively referred to as "core" bankruptcy proceedings.  *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 341 F. Supp. 2d 386, 411 (S.D.N.Y. 2004).  Core jurisdiction is construed as broadly as possible to promote efficient administration of bankruptcy proceedings.  *See Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229 (2d Cir. 2002).

7

As detailed more specifically below, plaintiffs' claims against BAWAG are core matters that fall squarely within both "arising under" and "arising in" jurisdiction because they: (a) directly implicate the "Claim Over" provisions of the "so ordered" BAWAG Settlement, which were incorporated into the Refco Plan; (b) otherwise contravene the Refco Plan and the Confirmation Order; and (c) are claims belonging to the Refco Estates both as generalized claims affecting all Refco creditors and as alter ego claims. Because plaintiffs' claims against BAWAG are subject to the Bankruptcy Court's core jurisdiction, they should not be remanded to state court.

## A.    BAWAG's "Claim Over" Protection Is A Core Matter

The "so ordered" BAWAG Settlement provides BAWAG with important "Claim Over" protection from precisely the types of claims plaintiffs now assert against BAWAG. *See* Brick Decl. Exh. B ¶¶ 6(a)-(c) (providing BAWAG is not liable for claims for "reimbursement" or "contribution" by any third party arising from BAWAG's relationship with Refco and for recovery of amounts paid or owed by such third party to Refco "*pursuant to a settlement*") (emphasis added). The Complaint clearly shows that plaintiffs seek the recovery of the $263 million SPhinX Preference Settlement. *See* Brick Decl. Exh. F ¶ 16. That payment falls squarely within the "Claim Over" provisions because it is (a) an amount paid by a third party (SPhinX) to the Refco Estates, (b) pursuant to a settlement, and (c) plaintiffs' own allegations repeatedly assert the close connection between Refco and BAWAG as the basis for their claims. *Id.* ¶¶ 26, 149, 209, 254, 798, 801-03.

Under the "so ordered" BAWAG Settlement, plaintiffs are "permanently barred and enjoined" from trying to recover from BAWAG the SPhinX Preference Settlement. Brick Decl. Exh. B ¶ 6(c). Because plaintiffs' claims require the interpretation and enforcement of the

BAWAG Settlement and corresponding Bankruptcy Court orders, they fall within the Bankruptcy Court's core jurisdiction. *Id.* ¶ 17; *see also Winstar Holdings, LLC v. Blackstone Group L.P.*, No. 07 Civ. 4634 (GEL), 2007 U.S. Dist. LEXIS 90482, at *11 (S.D.N.Y. Dec. 10, 2007) (Lynch, J.) ("[a] claim 'arises in' bankruptcy [and therefore is core] if, by its very nature, the claim can only be brought in a bankruptcy action . . . *Matters involving the enforcement or construction of a bankruptcy court order are in this category*") (quoting *In re Sterling Optical Corp.*, 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003); *Luan Inv. S.E.*, 304 F.3d at 230 ("A bankruptcy court retains post-confirmation jurisdiction to interpret its own orders"); *Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.)*, Nos. 04 Civ. 6482 (GEL) and 05 Civ. 2711 (DLC), 2005 U.S. Dist. LEXIS 21553, at *20-22 (S.D.N.Y. Sept. 28, 2005) (determining proceeding to be core where based on rights established in bankruptcy court order).[6]

Plaintiffs' assertion of state law claims does not prevent this matter from being deemed core. *See* 28 U.S.C. § 157(b)(3) ("determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law"). The substance of the matter – not the form chosen by plaintiffs or how they are pleaded – is what governs its core status. *LFD Operating, Inc. v. Gen. Elec. Capital Corp. (In re Ames Dep't Stores, Inc.)*, No. 01-8153 (AJG), 2006 WL 1288586, at *9 (Bankr. S.D.N.Y. Apr.19, 2006) (slip op.) (citing *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005)); *see also Nat'l Am. Ins. Co.*

---

[6]  The Bankruptcy Court's orders approving BAWAG's release and barring "Claims Over" against it are final orders binding on all of Refco's creditors, including plaintiffs. The "Claim Over" provisions of the BAWAG Settlement are expressly directed to "any third party not a party to this stipulation and order," which clearly includes plaintiffs. *See* Brick Decl. Exh. B ¶ 6(a). SPhinX was a creditor in the Refco Bankruptcy Cases and had notice and an opportunity to object to the BAWAG Settlement, which included the release and "Claim Over" provisions that bar plaintiffs' thinly disguised reimbursement or contribution claims against BAWAG. *See* Referral Reply at 7-8 and authorities cited therein.

*v. Ruppert Landscaping Co.*, 187 F.3d 439, 441-42 (4th Cir. 1999); *Gulf States Exploration Co.*

*v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389 (2d

Cir. 1990) (citations omitted) (noting core determination rests on "whether the nature of [the]

proceeding, rather than the state or federal basis for the claim, falls within the core of federal

bankruptcy power"); *Winstar*, 2007 U.S. Dist. LEXIS 90482, at *3 (claims that "sound solely in

New York common law" held to be subject to core bankruptcy jurisdiction).  Despite the titles

plaintiffs have given to their claims, they require the interpretation of the "Claim Over" and other

provisions of several Bankruptcy Court orders and the Refco Plan.  Thus, plaintiffs' claims are

not ordinary state law claims that exist independently from the Refco Bankruptcy Cases but are

entirely derivative of, and governed by, bankruptcy-created settlements, orders, and the Refco

Plan, which are integral to the administration of the Refco Bankruptcy Cases.  Accordingly,

remand must be denied.

**B.      Plaintiffs' Claims Are Property Of The Refco Estates**

        Plaintiffs' claims against BAWAG are also subject to core jurisdiction because they are

property of the Refco Estates, the prosecution of which would violate not only the BAWAG

Settlement but also the Refco Plan, the Confirmation Order, and the Bankruptcy Code's

automatic stay of "any act to obtain possession of property of the estate . . . or to exercise control

over property of the estate."  11 U.S.C. § 362(a)(3); *see also LFD Operating, Inc.*, 2006 WL

1288586, at *11 ("any attempt to litigate the property of the estate issue outside of the

bankruptcy court would have implicated the automatic stay pursuant to 11 U.S.C. § 362,"

thereby making the action a core matter).  The nature of plaintiffs' claims shows them to be

property of the Refco Estates because, *inter alia*, they seek to remedy the type of harm suffered

by all creditors of the Refco Estates, not just plaintiffs, and are substantially similar to those

claims asserted and settled by the Committee against BAWAG in the Adversary Proceeding. Notably, all of plaintiffs' claims are based upon, and derive directly from, BAWAG's dealings with Refco. The Complaint also alleges BAWAG to have been an alter ego of Refco, which undoubtedly makes plaintiffs' claims property of the Refco Estates and not that of any individual creditor such as SPhinX. As property of the Refco Estates, plaintiffs' claims – along with all other claims that belong to the Refco Estates – were released against BAWAG when the Committee and BAWAG settled the Adversary Proceeding and exchanged broad general releases. *See* Brick Decl. Exh. B ¶ 4(a).

      **1.**   **Plaintiffs' Claims Seek To Remedy Only Generalized Harm**

"If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (citation omitted). The harm must differ "in kind from the harm suffered by any other creditor" for a claim to belong to a creditor rather than the estate. *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701, 704 (2d Cir. 1989); *see also Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600, 604 (2d Cir. 1994).

All of plaintiffs' claims against BAWAG are premised on BAWAG's alleged assistance to Refco and its insiders with respect to the purported fraud that led to Refco's demise; conduct that, if true, clearly harmed all of Refco's creditors equally. *See, e.g.*, Brick Decl. Exh. F ¶¶ 801, 804-09, 1170-74, 1178-81. Because plaintiffs' claims are general in nature and the kind of injuries plaintiffs allege are no different than those suffered by Refco's numerous other creditors, plaintiffs' claims are property of the Refco Estates.

**2.   Plaintiffs' Claims Are Substantially Similar
      To The Committee's Claims Against BAWAG**

Plaintiffs' claims are also property of the Refco Estates because they share an identical

nucleus of operative facts with the claims the Committee brought against BAWAG in the

Adversary Proceeding, which were then settled and released.  In their brief opposing BAWAG's

motion to refer, plaintiffs describe the gravamen of the Committee's claims against BAWAG to

be that certain officers of Refco, "with the assistance of BAWAG, committed improper acts,

including fraud, that hid Refco's insolvency."  Referral Opp. at 15.  This is substantially the

same as plaintiffs' claims in this action that BAWAG provided "material assistance and

participation in fraudulently disguising Refco's insolvency."  *Id.*

Plaintiffs' claims for conspiracy and aiding and abetting fraud are based on the same

allegations that underpin the Committee's settled claims against BAWAG for aiding and abetting

breach of fiduciary duty – namely, that Bennett and others misstated Refco's true financial

condition and committed fraud, which BAWAG allegedly aided and abetted.  Compare Brick

Decl. Exh. A ¶¶ 1-6, 8, 13-14, 28-29, 33-45, 87, 119-20, 135-40 with Brick Decl. Exh. F ¶¶ 795,

798, 801-06, 1170-84.  In addition, plaintiffs have indicated they will add a claim against

BAWAG for aiding and abetting breaches of fiduciary duty – a claim the Committee asserted

against, and settled with, BAWAG.  *See* Referral Opp. at 5 n.3.

It is immaterial that the Committee titled its claim "aiding and abetting breach of

fiduciary duty," and plaintiffs title their claims "conspiracy" and "aiding and abetting fraud."  A

creditor's claims that are "so similar in object and purpose to claims that the trustee could bring

in bankruptcy court" are property of the estate, and the creditor lacks the right to pursue such

claims unless and until the trustee has "abandoned" them.  *Nat'l Am. Ins. Co.*, 187 F.3d at 441.

12

This is true even if a creditor's claims "do not contain identical elements" as the claims the estate's representative asserts, as long as the claims "all share th[e] same underlying focus." *Id.*

Plaintiffs' claims against BAWAG are undeniably similar "in object and purpose" to those asserted and settled by the Committee. Moreover, far from abandoning these claims, the Committee pursued and settled them for approximately $437.5 million and a waiver of hundreds of millions of dollars of BAWAG's claims against Refco. Brick Decl. Exh. B at 4-8; *id.* Exh. E ¶ 808. In exchange, BAWAG obtained a release from the Refco Estates that was incorporated into the Refco Plan. *Id.* Exh. B ¶ 4(a). Thus, SPhinX's claims against BAWAG are property of the Refco Estates and are core matters that cannot be remanded to state court.

### 3. The Alter Ego Nature Of Plaintiffs' Claims Against BAWAG Makes Them Property Of The Refco Estates

The Complaint shows that all of plaintiffs' claims against BAWAG are premised on allegations that BAWAG "controlled," "dominated[d]," and "influence[d]" Refco. Brick Decl. Exh. F ¶¶ 209, 798, 801-03. Plaintiffs' failure to designate these claims as alter ego claims is irrelevant because the nature of these allegations contain the hallmarks of a claim for alter ego liability. *Campo v. 1st Nationwide Bank*, 857 F. Supp. 264, 270-71 (E.D.N.Y. 1994) (a claim for alter ego liability under New York law requires pleading that defendant exercised complete domination over another and that this domination was used to commit a wrong against plaintiff). Even if plaintiffs' allegations were true (and they are not), it is well settled that any claim premised on BAWAG as an alter ego of Refco can only be asserted by an official representative of the Refco Estates. *See Central Vt. P.S.C. v. Herbert*, 341 F.3d 186, 192 (2d Cir. 2003) ("[T]he trustee is the proper person to assert claims . . . against the debtor's alter-ego or others who have misused the debtors' property in some fashion . . . As long as state law permits alter ego tort claims or similar action, *such actions are core proceedings because they relate[] to the property*

13

*of the estate, and bring[] property into the estate of the debtor"*) (internal quotations and

citations omitted) (emphasis added); *Singer Co. B.V. v. Groz Beckert KG (In re Singer Co. N.V.),*

262 B.R. 257, 264 (Bankr. S.D.N.Y. 2001) ("Causes of action for . . . alter ego liability pass to

the bankruptcy trustee or the debtor in possession and constitute property of the estate"), *see also*

*Kalb*, 8 F.3d at 133 (giving the "bankruptcy trustee exclusive standing to assert alter ego claims

furthers the bankruptcy policy of ensuring that all similarly situated creditors are treated fairly;

the alter ego action is based upon allegations that if proven would benefit all [the debtor's]

creditors, *i.e.,* making more assets available to satisfy [the debtor's] debts") (internal quotations

and citation omitted).

The decision in *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132 (4th Cir.

1988), is instructive. In that case, a bankruptcy trustee brought, and settled, claims for breach of

duty and corporate mismanagement against one of the debtor's principals and an affiliate. After

the trustee provided them with general releases, a creditor of the debtor filed a lawsuit against the

principal and the affiliate alleging they were the alter ego of the debtor – exactly as plaintiffs

have alleged here against BAWAG. The Court affirmed that "the general release executed by

the trustee in bankruptcy barred any claims against [the principal and the affiliate] which the

trustee brought or could have brought." *Id.* at 133-34. Any alter ego claims against BAWAG,

like those plaintiffs now try to assert here, are property of the Refco Estates and were within the

Committee's power to prosecute when it brought counterclaims against BAWAG in the

Adversary Proceeding. Such alter ego claims therefore fall under the broad general release the

Committee provided to BAWAG in connection with the BAWAG Settlement. Accordingly,

plaintiffs' claims against BAWAG, which usurp property of the Refco Estates, are core matters

that give this Court subject matter jurisdiction and cannot be remanded.

14

## II.

## REMAND SHOULD BE DENIED BECAUSE PLAINTIFFS' CLAIMS AT A MINIMUM ARE "RELATED TO" THE REFCO BANKRUPTCY CASES

Even if plaintiffs' claims did not fall under the Bankruptcy Court's core jurisdiction, which they plainly do, they are nonetheless related to the Refco Bankruptcy Cases and still within federal bankruptcy jurisdiction. *See* 28 U.S.C. 1334(b). As this Court explained:

> Whether an action is "related to" a bankruptcy depends on whether there is a significant connection between the action and the underlying bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property . . . Related to jurisdiction exists where the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . Certainty, or even likelihood [of a conceivable effect] is not required . . . so long as it is possible that the proceeding may affect the debtor's rights or the administration of the estate.

*Winstar*, 2007 U.S. Dist. LEXIS 90482, at *4-6 n.1 (denying plaintiffs' motion to remand and granting transfer of action in anticipation of referral to bankruptcy court) (internal quotations and citations omitted); *accord Kirschner v. Bennett*, No. 07 Civ. 8165 (GEL), 2008 U.S. Dist. LEXIS 37214, at *11-12 (S.D.N.Y. May 6, 2008) (Lynch, J.).

"Related to" jurisdiction certainly exists here for the same reasons set forth in the Court's recent remand denials in *Kirschner v. Grant Thornton LLP*, No. 07 Civ. 11604 (GEL), 2008 U.S. Dist. LEXIS 32798 (S.D.N.Y. Apr. 21, 2008), and *Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214. Plaintiffs' claims against BAWAG have a significant connection with the Refco Estates because they contravene various provisions of the "so ordered" BAWAG Settlement, the Refco Plan, and the Confirmation Order, and constitute claims belonging to the Refco Estates. Adjudicating plaintiffs' claims will require interpreting the Refco Plan and several Bankruptcy Court orders, and thus, the "prosecution of this action directly implicates the implementation and execution of the confirmed plan." *Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214, at *17;

*see also Rahl v. Bande*, 316 B.R. 127, 133 (S.D.N.Y. 2004) (a proceeding is related to a bankruptcy case "when resolution of the dispute requires the interpretation of the plan of reorganization and the implementation of that plan"). Plaintiffs' claims have a further connection to the Refco Bankruptcy Cases because plaintiffs' claims seek to recover from BAWAG the $263 million SPhinX Preference Settlement, which SPhinX paid to the Refco Estates to settle the Preference Action.

Plaintiffs' claims could "conceivably" impact the Refco Estates because those claims belong to the Refco Estates, and any such prosecution by plaintiffs – a usurpation of the Refco Estates' property and of the estates' authorized representative's exclusive authority under the Bankruptcy Code – would affect the debtors' rights and the administration of the Refco Estates. *Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214, at *16-17; *Rahl*, 316 B.R. at 132-33.[7]

This Court repeatedly has rejected a more restrictive view some courts adopt for "related to" jurisdiction after confirmation of a plan, recognizing that post-confirmation jurisdiction is not generally narrowed where, as here, a liquidating plan is at issue instead of a reorganization plan. *See Kirschner v. Grant Thornton*, 2008 U.S. Dist. LEXIS 32798, at *22-26. This Court has also opined that, even under the more restrictive view, "related to" jurisdiction is present when there is a "nexus to the bankruptcy plan or proceeding," and the confirmed plan "provide[s] for the retention of jurisdiction over the dispute." *Id.* at *27 (citations omitted); *Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214, at *14-15 (citations omitted). Both of these factors are present here as they were in *Kirschner v. Bennett* and *Kirschner v. Grant Thornton*. This Court unquestionably has "related to" jurisdiction over plaintiffs' claims.

---

[7]    The impact on the estate required for "related to" jurisdiction need not be a direct financial impact. The requirement is much broader and includes any other effect on a right of the debtor or the estate's representative. *See Kirschner v. Grant Thornton*, 2008 U.S. Dist. LEXIS 32798, at *29-30.

## III.

## MANDATORY ABSTENTION DOES NOT
## APPLY TO PLAINTIFFS' CLAIMS AGAINST BAWAG

Plaintiffs incorrectly assert that even if the Court has subject matter jurisdiction over their claims against BAWAG, mandatory abstention is required by 28 U.S.C. § 1334(c)(2). As the Court has recently recognized, "[a] party is not entitled to mandatory abstention if it fails to prove any one of the [six] statutory requirements." *Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214, at *21 (citations omitted). Here, plaintiffs cannot prove at least *two* of the six requirements: *first*, that this action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; and *second*, that this action can be timely adjudicated in state court. *See* 28 U.S.C. § 1334(c)(2).[8]

As demonstrated above – and as further shown in BAWAG's memoranda of law in support of its motion to refer this action to the Bankruptcy Court – mandatory abstention cannot apply here because plaintiffs' claims against BAWAG are subject to core jurisdiction. *See supra* at 7-14; Referral Br. at 11-19, Referral Reply at 3-7 (n.2 *supra*); *see also Winstar*, 2007 U.S. Dist. LEXIS 90482, at *16. Moreover, even if the Court finds plaintiffs' claims do not give rise to core jurisdiction, plaintiffs fail to demonstrate that this action can be timely adjudicated in state court. Plaintiffs submission of the Declaration of Hon. Stephen G. Crane ("Crane

---

[8]     The burden of proof rests squarely on plaintiffs as the parties seeking abstention. *See Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 337 B.R. 22, 26 (S.D.N.Y. 2005) (noting movant's burden of proof is "well-settled"); *LFD Operating, Inc.*, 2006 WL 1288586, at *12 ("The burden is on the moving party to prove that a matter should not be before the court"). Two of plaintiffs' cited authorities appear to suggest that the burden of proving timely adjudication in state court is on the non-movant. *See IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574, 582 (Bankr. S.D.N.Y. 2005) (no sufficient showing state case *cannot* move as quickly as necessary); *In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006) (*defendants* failed to show claims *cannot* be timely asserted in state court). This dicta is erroneous. Plaintiffs' burden to prove timely adjudication cannot fall to BAWAG to prove the contrary, especially when plaintiffs have yet to establish entitlement to mandatory abstention.

Declaration" or "Crane Decl.") and the several exhibits thereto – which contain a mixture of standards, goals, and statistics for the disposition of certain cases in New York State courts – neither give a complete picture nor satisfy the statutory standard. Justice Crane's conclusion that "a disposition is statistically likely to be obtained within 9 to 13 months of the RJI" (Crane Decl. ¶ 11) is not evidence that *this* case will be timely adjudicated in state court.[9]

This Court has already rejected evidence such as that set forth in the Crane Declaration and the accompanying exhibits, particularly in complex cases intertwined with other actions already pending and consolidated in federal court. *See Kirschner v. Grant Thornton LLP*, 2008 U.S. Dist. LEXIS 32798, at *35-37 (denying abstention despite movant's reliance on declaration of former state court judge and statistics of average disposition times); *see also Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214, at *21-23; *Bondi v. Grant Thornton Int'l*, 322 B.R. 44, 50 (S.D.N.Y. 2005) (noting "[t]hese statistics, however, do not tell the whole story"); *Beightol v. UBS PaineWebber (In re Global Crossing, Ltd.)*, 311 B.R. 345, 348-49 (S.D.N.Y. 2003) (noting cases involving complex issues and extensive discovery "cannot reasonably be expected to be dealt with in the time periods set for ordinary tort and contract cases"). Indeed, "[w]hatever might be true in the general run of cases filed in the Commercial Division," where a particular case such as this one is "but one piece of a much larger, extremely complex litigation puzzle," generalized statistics of state court adjudication are wholly inadequate to establish the statutory requirement. *Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214, at *22 (citing *Bondi*, 322 B.R.

---

[9]    Plaintiffs also offer documents that purport to show (i) average disposition times for "[s]elected" cases (Crane Decl. Exh. C), which provide no way to determine the nature or complexity of the selected cases or whether *this* complex case would have a similar disposition time, and (ii) data for *contract* cases (*id.* Exh. D), which is entirely irrelevant to this tort litigation involving witnesses in multiple countries.

at 50).[10]  Moreover, plaintiffs' observation (Pl. Br.[11] at 19) that no trial date has been set in this

Court for the Refco-related actions is meaningless because this case is not a part of the MDL,

and even were this action remanded to state court, no trial date would be set there until after the

note of issue is filed at the conclusion of discovery (which, itself, might not occur for a period of

years given the nascency of this extremely complex action).  Accordingly, mandatory abstention

cannot apply in this case.

**IV.**

**PERMISSIVE ABSTENTION IS UNWARRANTED**

Permissive abstention is likewise inappropriate.  This Court recently noted that federal

courts "must be 'sparing' in their exercise of discretionary abstention" because district courts

have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" and should

abstain only for "a few extraordinary and narrow exceptions."  *Kirschner v. Grant Thornton*,

2008 U.S. Dist. LEXIS 32798, at *37-38 (citing *Winstar*, 2007 U.S. Dist. LEXIS 90482, at *16-

17); *New York City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Secs. Litig.)*, 293 B.R.

308, 332 (S.D.N.Y. 2003).  Thus, there is a presumption against abstention, and this case does

not present any such extraordinary and narrow exception.  *See Rahl*, 316 B.R. at 135.  Moreover,

in a core jurisdiction matter such as this, to which mandatory abstention does not apply,

---

[10]  Plaintiffs cite *In re Amanat*, which specifically noted that "this case is *not* like *In re WorldCom, Inc. Sec. Litig.*, where the court held that mandatory abstention was not appropriate due to the size of the bankruptcy, the complexity of the litigation and the close connections between the defendants in the action and the debtor." *Id.*, 338 B.R. 574, 582 (Bankr. S.D.N.Y. 2005) (emphasis added) (also noting pendency of other similar *state* court cases supported abstention).  Similarly, in *Certain Underwriters at Lloyd's, London*, the Court justified abstention by deeming that case a "routine" declaratory judgment action concerning insurance coverage wholly different from more complex fraud matters. *Id.*, 337 B.R. at 27.

[11]  "Pl. Br." refers to the April 25, 2008 Memorandum of Law in Support of Plaintiffs' Motion for Remand and/or Abstention.

"permissive abstention is less likely." *Winstar*, 2007 U.S. Dist. LEXIS 90482, at *3-4. The

relevant principles in determining whether to abstain under 28 U.S.C. § 1334(c)(1) are comity

and federalism, judicial economy, and efficiency. *See, e.g., Kirschner v. Grant Thornton*, 2008

U.S. Dist. LEXIS 32798, at *38 (citation omitted). The abstention analysis should rest on what

makes the most logical sense in light of the circumstances of a particular case relative to any

related actions that are also pending. *See, e.g., Winstar*, 2007 U.S. Dist. LEXIS 90482, at *18.

Plaintiffs incorrectly conclude (Pl. Br. at 20-22) that the twelve commonly considered

factors support permissive abstention here. In fact, at least eight of the factors strongly counsel

against abstention in this case.[12] Two additional factors are either neutral or largely irrelevant

(the burden on the Court's docket and the existence of a jury trial right).[13] The remaining two

factors, the lack of a jurisdictional basis other than 28 U.S.C. § 1334 and the absence in this

action of non-debtor parties, are of lesser significance and do not outweigh the other factors

against abstention. In fact, if this case were allowed to proceed despite the BAWAG release and

"Claim Over" provisions, the merits will involve the conduct and documents of the debtors.

Moreover, as set forth above, this case has a close relationship to the Refco Bankruptcy

Cases because "[a]lthough the plaintiffs' claims are asserted as tort claims . . . the evaluation of

those claims will necessarily involve the interpretation of the Bankruptcy Court-approved

[BAWAG Settlement and the Refco Plan] . . . that are arguably inconsistent with plaintiffs'

---

[12]    Those factors are: (1) this action's effect on the Refco Bankruptcy Cases; (2) the lack of
predominance of state law issues; (3) the lack of any novel or unsettled state law issues; (4) the
presence of related proceedings in this Court and in the Bankruptcy Court; (5) the degree of
relatedness this action has to the Refco Bankruptcy Cases; (6) the substance rather than form of an
asserted core proceeding; (7) the lack of feasibility of severing any state law issues from core matters;
and (8) plaintiffs' unmistakable forum shopping. *See WorldCom*, 293 B.R. at 332.

[13]    Plaintiffs note that although they have asserted their right to a jury trial (which BAWAG maintains
was waived), plaintiffs "do not believe that this factor bears on an abstention decision." Pl. Br. at 22.

claims, and of the Bankruptcy Court's own orders and findings." *Winstar*, 2007 U.S. Dist.

LEXIS 90482, at *17-18; *see also Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214, at *24-

25. As one of plaintiffs' own authorities concludes, "[s]tate law issues do *not* predominate here.

Although [plaintiffs'] causes of action are styled as New York State law claims, they turn largely

on issues that are intertwined with the [bankruptcy case]." *Norkin v. DLA Piper Rudnick Gray*

*Cary, LLP*, No. 05 Civ. 9137 (DLC), 2006 WL 839079, at *5 (S.D.N.Y. Mar. 31, 2006).[14] The

absence of complex, novel or unsettled state law issues, which plaintiffs concede is the case here

(Pl. Br. at 20), reduces comity concerns even further. *See, e.g., Kirschner v. Bennett*, 2008 U.S.

Dist. LEXIS 37214, at *24.[15] Moreover, comity is even less important here because the subject

matter of this action (the Refco fraud and its alleged impact) is not uniquely local; New York has

little (if any) interest in the claims against BAWAG (an Austrian bank) brought by foreign

liquidators acting on behalf of non-New York entities. *See Renaissance Cosmetics, Inc. v.*

*Devel. Specialists Inc.*, 277 B.R. 5, 16 (S.D.N.Y. 2002).

Efficiency and judicial economy concerns are equally persuasive against abstention

because this case was promptly removed with no time invested by any New York State court. In

comparison, this Court and the Bankruptcy Court are presiding over essentially the entirety of

the Refco-related litigation and are already "intimately familiar with the parties and the factual

history." *Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214, at *17, 24; *see also Rahl*, 316

B.R. at 136 (noting judicial economy and efficiency best served "if only one court were required

to familiarize itself with the voluminous factual record"); *WorldCom*, 293 B.R. at 333 n.38

---

[14]    *See also supra* at 9-10; *and see* Referral Reply at 4-6.

[15]    Curiously, although it is well-settled that an absence of novel or unsettled state law issues cuts
*against* abstention, and plaintiffs admit there are no novel or unsettled state law issues in this action,
plaintiffs declare this factor to be irrelevant. *See* Pl. Br. at 20; *see also Kirschner v. Grant Thornton*
*LLP*, 2008 U.S. Dist. LEXIS 32798, at *38.

21

(holding it more efficient to deny remand and abstention where multiple pending suits all based on same events and conduct of same parties). This action, like much of the Refco-related litigation, alleges the same underlying fraud in connection with Refco's demise, and in light of this commonality, remand or abstention in this case would lead to the inefficient use of judicial resources resulting from adjudication by a state court judge entirely unfamiliar with the Refco fraud.

This case is integrally involved in the Refco Bankruptcy Cases. Indeed, that close connection, as well as SphinX's record of unsuccessful attempts to attack collaterally the SPhinX Preference Settlement, belies plaintiffs' hollow claim that they are not forum shopping. (Pl. Br. at 22.)[16]

In sum, allowing this action to proceed alone in state court despite the Bankruptcy Court's and this Court's involvement in every other Refco-related case defies common sense and judicial economy. And, especially given the two recent denials of the Refco trustee's similar abstention motions, plaintiffs have advanced no persuasive reason why the Court should abstain here.

## V.

### THERE ARE NO GROUNDS FOR EQUITABLE REMAND OF THIS ACTION

Plaintiffs' assertion of equitable remand under 28 U.S.C. § 1452(b) fares no better than its request for permissive abstention. In fact, courts in this district treat the analysis of equitable

---

[16]   Despite plaintiffs' own efforts to avoid this Court and the Bankruptcy Court – including their three pages of allegations in the Complaint as to why there is no bankruptcy jurisdiction (Brick Decl. Exh. F ¶¶ 87-98) – plaintiffs ironically suggest that BAWAG's invocation of its statutory removal right somehow constitutes forum shopping. *See* Pl. Br. at 23-24. Removal is designed to protect a defendant from forum shopping by a plaintiff.

remand and permissive abstention as essentially identical. *See, e.g., WorldCom*, 293 B.R. at 334. Thus, equitable remand is unwarranted for the same reasons detailed above.

Beyond reiterating many of the same factors considered for permissive abstention, plaintiffs' primary justification for equitable remand is the purported prejudice they would suffer if forced to litigate this case as a part of the consolidated Refco proceedings before this Court, despite observing that the conveniences of the defendants and the Court would be better served by retaining this action in federal court.[17]  Plaintiffs also speculate that their "opportunity to conduct discovery relevant to their claims will be compromised" (Pl. Br. at 24), but they fail to explain why proceeding in state court in a case involving multiple jurisdictions and the Refco Estates will somehow facilitate discovery.  Indeed, should this Court grant BAWAG's pending motion to refer the claims against it to the Bankruptcy Court, any claim of prejudice from consolidation with the other Refco-related cases – however speculative – would be mooted.

Moreover, plaintiffs' assertion that they would be prejudiced if this action were consolidated with the pending Refco cases (because those cases have raised securities fraud claims while this action has not) (Pl. Br. at 24-25) is baseless because plaintiffs have alleged claims for common law fraud and aiding and abetting fraud based on the same events and conduct by most of the same participants.  By contrast, BAWAG will suffer prejudice if this action is remanded to the New York Supreme Court because a court unfamiliar with the Refco fraud and related matters will have to interpret and to enforce the provisions of Bankruptcy Court

---

[17]   As evidenced by its motion to refer this case to the Bankruptcy Court, BAWAG does not believe this case should be consolidated with the Refco MDL but, rather, should be adjudicated in the Bankruptcy Court under this District's standing order of reference.

orders and the Refco Plan. In light of these facts, and for all the reasons detailed above, plaintiffs' request for equitable remand should be denied.[18]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for remand and/or abstention should be denied in its entirety.

Dated:   New York, New York
         May 27, 2008

                                        DECHERT LLP


                                        By:   /s/    Nicolle L. Jacoby
                                                Andrew J. Levander
                                                Nicolle L. Jacoby
                                                Brian E. Greer
                                                Brian H. Brick
                                                Juliet Sarkessian
                                             1095 Avenue of the Americas
                                             New York, New York  10036
                                             (212) 698-3500
                                             nicolle.jacoby@dechert.com

                                        *Attorneys for Bank für Arbeit und
                                        Wirtschaft und Österreichische
                                        Postsparkasse Aktiengesellschaft*

13195299.1.LITIGATION

---

[18]   BAWAG joins in the arguments submitted by the other defendants in opposition to plaintiffs' motion for remand and/or abstention to the extent not inconsistent with the arguments made herein.

24