David Molton (DM 1106)
Andrew Dash (AD 7913)
**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800

Leo R. Beus *pro hac vice*
Dennis K. Blackhurst *pro hac vice*
**BEUS GILBERT PLLC**
4800 North Scottsdale Road, Suite 6000
Scottsdale, Arizona 85251
Telephone: (480) 429-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                              :
In re REFCO INC. SECURITIES LITIGATION        :        Case No. 07-md-1902 (GEL)
                                                              :
-----------------------------------------------------------------X

This Document Relates to:

-----------------------------------------------------------------X
KENNETH M. KRYS and CHRISTOPHER        :
STRIDE, as JOINT OFFICIAL LIQUIDATORS    :
of SPHINX LTD., SPHINX STRATEGY FUND    :        Case No. 08-cv-3065 (GEL)
LTD.;                                                        :        Case No. 08-cv-3086 (GEL)
SPHINX PLUS SPC LTD., SPHINX              :
DISTRESSED LTD., SPHINX MERGER           :
ARBITRAGE LTD.; SPHINX SPECIAL            :
SITUATIONS LTD., SPHINX MACRO LTD.;       :        **DECLARATION OF**
SPHINX LONG/SHORT EQUITY LTD.;            :        **JESSICA C. CALAGIONE**
SPHINX MANAGED FUTURES LTD.; SPHINX      :        **IN SUPPORT OF**
EQUITY MARKET NEUTRAL LTD.; SPHINX       :        **PLAINTIFFS' MOTION**
CONVERTIBLE ARBITRAGE LTD.; SPHINX       :        **FOR LEAVE TO MAKE**
FIXED INCOME ARBITRAGE LTD.; SPHINX      :        **SUBSTITUTED SERVICE**
DISTRESSED FUND SPC; SPHINX MERGER       :        **ON DEFENDANT**
ARBITRAGE FUND SPC; SPHINX SPECIAL       :        **CHRISTOPHER SUGRUE**
SITUATIONS FUND SPC; SPHINX MACRO        :        **PURSUANT TO**
FUND SPC; SPHINX LONG/SHORT EQUITY       :        **FED. R. CIV. P. 4(f)(3)**
FUND SPC; SPHINX MANAGED FUTURES         :
FUND SPC; SPHINX EQUITY MARKET           :
NEUTRAL FUND SPC; SPHINX                  :
CONVERTIBLE ARBITRAGE FUND SPC;          :

SPHINX FIXED INCOME ARBITRAGE FUND          :
SPC; PLUSFUNDS MANAGED ACCESS FUND          :
SPC LTD.; KENNETH M. KRYS and                       :
CHRISTOPHER STRIDE as assignees of claims        :
assigned by MIAMI CHILDREN'S HOSPITAL           :
FOUNDATION, OFI, GREEN & SMITH                   :
INVESTMENT MANAGEMENT LLC, THALES           :
FUND MANAGEMENT LLC, KELLNER                     :
DILEO & CO., LLC, MARTINGALE ASSET              :
MANAGEMENT LP, LONGACRE FUND                     :
MANAGEMENT LLC, ARNHOLD & S.                      :
BLEICHROEDER ADVISERS LLC, PICTET &            :
CIE, RGA AMERICA REINSURANCE                      :
COMPANY, DEUTSCHE BANK (SUISSE) SA,            :
ARAB MONETARY FUND, HANSARD                      :
INTERNATIONAL LTD., CONCORDIA                    :
ADVISORS LLC, GABELLI SECURITIES, INC.,        :
CITCO GLOBAL CUSTODY; and JAMES                  :
P. SINCLAIR as Trustee of the SPHINX TRUST,     :
                                                                         :
                        Plaintiffs,                              :
                                                                         :
                        -against-                               :
                                                                         :
CHRISTOPHER SUGRUE; MARK                          :
KAVANAGH; BRIAN OWENS;                              :
PRICEWATERHOUSECOOPERS L.L.P.; MARI         :
FERRIS; PRICEWATERHOUSECOOPERS               :
CAYMAN ISLANDS; GIBSON, DUNN &               :
CRUTCHER LLP; REFCO ALTERNATIVE              :
INVESTMENTS LLC; GRANT THORNTON              :
LLP; MARK RAMLER; ERNST & YOUNG U.S.       :
LLP; MAYER BROWN LLP f/k/a MAYER              :
BROWN ROWE & MAW LLP; JOSEPH                    :
COLLINS; EDWARD S. BEST; PAUL KOURY;       :
PHILLIP R. BENNETT; ROBERT C. TROSTEN;     :
TONE GRANT; SANTO MAGGIO; THOMAS           :
HACKL; DENNIS KLEJNA; BAWAG P.S.K.          :
BANK FUR ARBEIT UND WIRTSCHAFT UND       :
OSTERREICHISCHE POSTPARKASSE                  :
AKTIENGESELLSCHAFT; JP MORGAN               :
CHASE & CO.; CREDIT SUISSE SECURITIES       :
(USA) LLC f/k/a CREDIT SUISSE FIRST            :
BOSTON LLC; BANC OF AMERICA                     :
SECURITIES LLC; THOMAS H. LEE                   :

PARTNERS, L.P.; THOMAS H. LEE                    :
ADVISORS, LLC; THL MANAGERS V, LLC;              :
THL EQUITY ADVISORS V, L.P.; THOMAS H.           :
LEE EQUITY FUND V, L.P.; THOMAS H. LEE           :
PARALLEL FUND V, L.P.; THOMAS H. LEE             :
EQUITY (CAYMAN) FUND V, L.P.; THOMAS             :
H. LEE INVESTORS LIMITED PARTNERSHIP;            :
1997 THOMAS H. LEE NOMINEE TRUST;                :
THOMAS H. LEE; DAVID V. HARKINS;                 :
SCOTT L. JAECKEL; SCOTT A. SCHOEN;               :
WILLIAM T. PIGOTT; LIBERTY CORNER                :
CAPITAL STRATEGIES, LLC; EMF                     :
FINANCIAL PRODUCTS LLC; EMF CORE                 :
FUND LTD.; DELTA FLYER FUND LLC; ERIC            :
M. FLANAGAN; INGRAM MICRO, INC.; CIM             :
VENTURES, INC.; BECKENHAM TRADING                :
CO., INC.; ANDREW KRIEGER; COAST                 :
ASSET MANAGEMENT, LLC, f/k/a COAST               :
ASSET MANAGEMENT LP; CS LAND                     :
MANAGEMENT LLC; CHRISTOPHER                      :
PETTIT; and REFCO GROUP HOLDINGS,                :
INC.; and REFCO ASSOCIATES, INC.,                :
                                                 :
                              Defendants         :
-----------------------------------------------------------------X

JESSICA C. CALAGIONE declares as follows:

     1.     I am an associate at Brown Rudnick LLP, co-counsel, with Beus Gilbert PLLC, to Plaintiffs in this action. My admission to the Bar of the State of New York is pending, and I expect to be sworn in as a member of the New York Bar on July 30, 2008 and promptly thereafter to move for admission to the Bar of this Court.

     2.     In connection with the above-captioned action, I have worked with an international process service firm, Legal Language Services ("Legal Language"), to assist Brown Rudnick LLP in effecting service of process on those defendants named in this action who or that are located outside the United States. Legal Language has offices throughout the country, with international headquarters are located in New York City.

3.     On February 23, 2008, as part of Plaintiffs' investigation leading up to the filing of the complaint herein, Plaintiffs' counsel conducted an interview of Susan Staisil, Mr. Sugrue's former sister-in-law and former general counsel of PlusFunds.  Ms. Staisil informed Plaintiffs' counsel that Mr. Sugrue had left the United States and was currently living in Angola, at Av. Amilar Cabral No 110-2, Ed. Sonangol Distribuidora, Luanda, Angola.  Based on this information, I consulted our contact at Legal Language regarding service of process in Angola.

4.     Angola is not a party to the Hague Convention or any other treaty or agreement with the United States governing service of judicial documents. *See* "Bilateral Treaties in Effect as of November 1, 2007," a true and accurate copy of the relevant portion of which is annexed hereto as Exhibit A, and "U.S. Department of State: Multilateral Treaties in Force for the United States as of January 1, 2007," a true and accurate copy of the relevant portion of which is annexed hereto as Exhibit B.  As a consequence, with respect to a defendant located in Angola, personal service of process requires a letter rogatory or the use of a private process server.  Use of a letter rogatory would involve a formal request from a U.S. court, passed through diplomatic channels to the judicial authorities in Angola to effect service.[1]

5.     In considering the use of a letter rogatory for service of the summons and complaint on Mr. Sugrue in Angola, we were informed by Cara LaForge, part of the International Litigation Support Service division at Legal Language, that, based on her

---

[1]     Service by means of a letter rogatory would also require translation of the letter rogatory and all papers to be served into Portuguese, the official language of Angola.  *See* "Preparation of Letters Rogatory," made available online by the United States Department of State at http://travel.state.gov/law/info/judicial/judicial_683.html, a true and accurate copy of which is annexed hereto as Exhibit C.

firm's expertise in foreign process serving issues, there is currently no functional court system in Angola to which a letter rogatory can be directed.

6.      The United States Department of State confirms the futility of effecting service of process in Angola by means of a letter rogatory.  On July 15, 2008, I spoke with Steven Donlon, Deputy Chief in the African section of the Office of American Citizens Services.  Donlon has been in his current position for approximately three years. In that time, he informed me that he has seen pass through his office "one or two" letters rogatory for service in Angola, but is not aware of any response on those letters from the Angolan judicial authorities.

7.      We also considered enlisting the help of an Angolan attorney to serve process.  However, options in this regard are limited, and such an approach, in any event, would not be certain of leading to successful service.  In addition, the cost could be relatively substantial.  I was advised by Legal Language, based on the firm's experience in other parts of Africa, that fees could run into the tens of thousands of dollars and that corruption is a possible concern.

8.      Another option is to hire a private process server to attempt to serve Mr. Sugrue in Angola.  Legal Language was reluctant to recommend this option, explaining to us that there are concerns regarding the possible physical danger to the process server. Indeed, according to Ms. LaForge, servers based in South Africa refuse to take jobs in Angola because of incidents of kidnappings of South African citizens.

9.      Plaintiffs have sent courtesy copies of the summons and complaint, as well as courtesy copies of other papers filed in this action, to Mr. Sugrue at the address provided by Ms. Staisil.  A true and accurate copy of Federal Express Tracking Results

for a package shipped to Mr. Sugrue in Angola on March 27, 2008 is annexed hereto as Exhibit D.  The tracking results show successful delivery to the Angola address. Moreover, none of the other courtesy copies of filings sent by Plaintiffs via international mail to Mr. Sugrue at this address has been returned to Plaintiffs as "undeliverable" or otherwise.

10.    Ms. Staisil also provided Plaintiffs' counsel with an electronic mail address for Mr. Sugrue, chris.sugrue@yahoo.com.sg.    Ms. Staisil informed Plaintiffs' counsel that, on October 27, 2007, Mr. Sugrue sent a message from this account to inform Ms. Staisil and his other contacts of his impending move to Angola, a true and accurate copy of which is annexed hereto as Exihibit E.  I note that while Mr. Sugrue states in this communication that he will be in Angola for the "short to medium term future," we are aware of no information suggesting that he no longer resides in Angola or that the yahoo.com.sg address is no longer valid.

11.    In exploring the possibility of service by publication, I spoke with Philip Mello, Press Assistant at the United States Embassy in Luanda, Angola.  He informed me that there are no English-language newspapers available in Luanda on a daily basis, although English-language publications are occasionally made available at hotels.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 24, 2008

/s/Jessica C. Calagione
JESSICA C. CALAGIONE

# 8188329 v2

- 4 -

**United States Department of State**

# Treaties in Force

A List of Treaties and
Other International
Agreements of the
United States in Force
on November 1, 2007

# Section 1: *Bilateral Treaties*



# Bilateral Treaties in Force as of November 1, 2007



# AFGHANISTAN

## AGRICULTURAL COMMODITIES

Agricultural commodities agreement, with exchanges of notes.
*Signed at Kabul May 22, 1965.*
*Entered into force May 22, 1965.*
16 UST 1078; TIAS 5849; 579 UNTS 29.

Agricultural commodities agreement with exchange of notes.
*Signed at Kabul December 22, 1966.*
*Entered into force December 22, 1966.*
17 UST 2229; TIAS 6161; 681 UNTS 123.

Agricultural commodities agreement with annex.
*Signed at Kabul July 19, 1967.*
*Entered into force July 19, 1967.*
18 UST 1766; TIAS 6322; 692 UNTS 345.
Related agreements
July 2, 1968 (19 UST 5413; TIAS 6523;
707 UNTS 111).
February 1 and March 15, 1969 (20 UST 520;
TIAS 6660; 707 UNTS 120).
March 27, 1971 (22 UST 538; TIAS 7096;
792 UNTS 229).
August 23, 1971 (22 UST 2181; TIAS 7262).
February 21, 1973 (25 UST 245; TIAS 7793;
944 UNTS 73).

Agricultural commodities agreement, with minutes of understanding.
*Signed at Kabul August 8, 1976.*
*Entered into force August 8, 1976.*
27 UST 3740; TIAS 8590.

Agricultural commodities agreement, with minutes of understanding.
*Signed at Kabul December 28, 1977.*
*Entered into force December 28, 1977.*
29 UST 5321; TIAS 9014; 1124 UNTS 129.

## CULTURAL RELATIONS

Agreement concerning cultural relations.
*Exchange of notes at Washington June 26, 1958.*
*Entered into force June 26, 1958.*
9 UST 997; TIAS 4069; 321 UNTS 67.

## DEFENSE

Agreement relating to the deposit by Afghanistan of ten percent of the value of grant military assistance furnished by the United States.
*Exchange of notes at Kabul May 24 and June 29, 1972.*
*Entered into force June 29, 1972;*
*effective May 24, 1972.*
23 UST 1219; TIAS 7389.

Agreement regarding grants under the Foreign Assistance Act of 1961, as amended, or successor legislation, and the furnishing of defense articles, defense services and related training, including pursuant to the United States International Military and Education Training Program (IMET), from the United States of America to the Afghanistan Interim Administration.
*Exchange of notes at Kabul April 6 and 13, 2002.*
*Entered into force April 13, 2002.*
NP

Agreement regarding the status of United States military and civilian personnel of the U.S. Department of Defense present in Afghanistan in connection with cooperative efforts in response to terrorism, humanitarian and civic assistance, military training and exercises, and other activities.
*Exchange of notes September 26 and December 12, 2002, and May 28, 2003.*
*Entered into force May 28, 2003.*
TIAS

Acquisition and cross-servicing agreement, with annexes.
*Signed at Doha and Kabul January 22 and February 16, 2004.*
*Entered into force February 16, 2004.*
TIAS

## ECONOMIC AND TECHNICAL COOPERATION

General agreement for technical cooperation.
*Signed at Kabul February 7, 1951.*
*Entered into force February 7, 1951.*
2 UST 592; TIAS 2210; 132 UNTS 265.
Amendment
January 2 and 24, 1952 (3 UST 4683; TIAS 2624;
177 UNTS 341).

Agreement relating to a loan for the purchase of wheat and flour for famine relief in Afghanistan.
*Exchange of notes at Washington January 8, 1953.*
*Entered into force January 8, 1953.*
4 UST 2941; TIAS 2896.

Agreement providing development assistance to Afghanistan.
*Exchange of notes at Kabul June 23, 1956.*
*Entered into force June 23, 1956.*
7 UST 2047; TIAS 3606; 271 UNTS 295.

Agency for International Development
September 19, 2005 (NP).
September 19, 2005 (NP).
September 19, 2005 (NP).
September 30, 2005 (NP).
September 30, 2005 (NP).
September 30, 2005 (NP).
April 6, 2006 (NP).
April 6, 2006 (NP).
April 6, 2006 (NP).
May 11, 2006 (NP).
May 11, 2006 (NP).
June 28, 2006 (NP).
June 28, 2006 (NP).
June 28, 2006 (NP).
September 18, 2006 (NP).
September 18, 2006 (NP).
September 30, 2006 (NP).

## EDUCATION

Agreement for financing certain educational exchange programs.
*Signed at Kabul August 20, 1963.*
*Entered into force August 20, 1963.*
14 UST 1218; TIAS 5421; 488 UNTS 41.

## FINANCE

Agreement relating to investment guaranties under section 413(b)(4) of the Mutual Security Act of 1954; as amended.
*Exchange of notes at Kabul June 5 and 9, 1957.*
*Entered into force June 9, 1957.*
8 UST 2507; TIAS 3992; 307 UNTS 97.

Investment incentive agreement.
*Signed at Kabul April 17, 2004.*
*Entered into force April 17, 2004.*
TIAS

Agreement regarding the consolidation and rescheduling of debts owed to, guaranteed by, or insured by the United States government or its agencies, with annexes.
*Signed at Washington September 26, 2006.*
*Entered into force March 16. 2007.*
NP

## GENERAL RELATIONS

Provisional agreement in regard to friendship and diplomatic and consular representation.
*Signed at Paris March 26, 1936.*
*Entered into force March 26, 1936.*
49 Stat. 3873; EAS 88; 5 Bevans 1; 168 LNTS 143.

## INFORMATIONAL MEDIA GUARANTIES

Agreement providing for an informational media guaranty program.
*Exchange of notes at Kabul January 26 and February 15, 1961.*
*Entered into force February 15, 1961.*
12 UST 378; TIAS 4726; 406 UNTS 235.

## INTERNATIONAL CRIMINAL COURT

Agreement regarding the surrender of persons to the International Criminal Court.
*Signed at Washington September 20, 2002.*
*Entered into force August 23, 2003.*
TIAS

## NARCOTIC DRUGS

Agreement concerning the prohibition of opium poppy cultivation in the project area of the Central Helmand drainage project (phase II).
*Signed at Kabul August 29, 1977.*
*Entered into force August 29, 1977.*
29 UST 2481; TIAS 8951.

Agreement concerning the prohibition of opium poppy cultivation in the project area of the integrated wheat development project.
*Signed at Kabul September 29, 1977.*
*Entered into force September 29, 1977.*
29 UST 2479; TIAS 8950.

Letter of agreement on police, justice and counternarcotics programs.
*Signed at Kabul February 19, 2003.*
*Entered into force February 19, 2003.*
TIAS

## PEACE CORPS

Agreement relating to the establishment of a Peace Corps program in Afghanistan.
*Exchange of notes at Kabul September 6 and 11, 1962.*
*Entered into force September 11, 1962.*
13 UST 2100; TIAS 5169; 461 UNTS 169.

## PUBLICATIONS

Agreement relating to the exchange of official publications.
*Exchange of notes at Kabul February 29, 1944.*
*Entered into force February 29, 1944.*
58 Stat. 1393; EAS 418; 5 Bevans 3; 106 UNTS 247.

## Bilateral Treaties in Force as of November 1, 2007

### RELIEF SUPPLIES AND PACKAGES

Agreement relating to duty-free entry and defrayment of inland transportation charges on relief supplies and packages to Afghanistan.
*Exchange of notes at Kabul*
*April 29 and May 29, 1954.*
*Entered into force May 29, 1954.*
5 UST 1533; TIAS 3030; 234 UNTS 3.

*Amendment*
*December 27, 1960 and January 12, 1961 (12 UST 52; TIAS 4673; 402 UNTS 319).*

### TELECOMMUNICATIONS

Agreement for the establishment and operation of United States radio transmitting facilities in Afghanistan, with annexes.
*Signed at Washington October 3, 2002.*
*Entered into force October 3, 2002.*
TIAS

*Amendment*
*May 4, 2006.*

## AFRICAN DEVELOPMENT BANK

### ECONOMIC AND TECHNICAL COOPERATION

Agency for International Development
June 30, 1976 (28 UST 6963; TIAS 8698).

### FINANCE

Cooperation agreement.
*Signed at New York May 29, 1986.*
*Entered into force May 29, 1986.*
TIAS 11363.

## AFRICAN UNION

### DEFENSE

Agreement regarding grants under the Foreign Assistance Act of 1961, as amended, or successor legislation, and the furnishing of defense articles, related training and other defense services from the United States of America to the African Union.
*Exchange of notes at Addis Ababa*
*August 27 and September 6, 2004.*
*Entered into force September 6, 2004.*
TIAS

## ALBANIA

### AVIATION

Air transport agreement, with annexes.
*Signed at Washington September 24, 2003.*
*Entered into force April 5, 2004.*
TIAS

### CLAIMS

Agreement on the settlement of certain outstanding claims, with agreed minute.
*Signed at Tirana March 10, 1995.*
*Entered into force April 18, 1995.*
TIAS 12611.

*Amendment*
*November 18, 2005 and April 27, 2006.*

### DEFENSE

Agreement regarding grants under the Foreign Assistance Act of 1961, as amended, and the furnishing of defense articles, related training and other defense services from the United States to Albania.
*Exchange of notes at Tirana*
*April 27 and May 6, 1994.*
*Entered into force May 6, 1994.*
TIAS 12272.

Agreement concerning the status of U.S. military personnel and civilian employees of the Department of Defense who may be present in Albania in connection with the Search and Rescue (SAREX) joint military exercise.
*Exchange of notes at Tirana January 17 and 24, 1995.*
*Entered into force January 24, 1995.*
NP

Security agreement.
*Signed at Washington October 16, 1995.*
*Entered into force October 16, 1995.*
TIAS 12344.

Acquisition and cross-servicing agreement, with annexes.
*Signed at Tirana November 8, 2000.*
*Entered into force November 8, 2000.*
TIAS

Agreement regarding grants under the Foreign Assistance Act of 1961, as amended, and the furnishing of defense articles, related training and other defense services from the United States to Albania.
*Exchange of notes at Tirana*
*October 15 and December 4, 2002.*
*Entered into force December 4, 2002.*
TIAS

Supplementary agreement to the "Agreement among member countries of the North Atlantic Treaty and other participating states in the Partnership for Peace regarding the status of their forces" on the status of the forces of the United States of America in the Republic of Albania.
*Signed at Tirana March 31, 2004.*
*Entered into force August 19, 2004.*
TIAS

### DIPLOMATIC RELATIONS

Memorandum of understanding concerning the re-establishment of diplomatic relations.
*Signed at Washington March 15, 1991.*
*Entered into force March 15, 1991.*
TIAS 12428.

### ECONOMIC AND TECHNICAL COOPERATION

Agreement concerning economic, technical and related assistance.
*Signed at Tirana June 10, 1992.*
*Entered into force June 10, 1992.*
TIAS 12496.

### EMPLOYMENT

Agreement relating to the employment of dependents of official government employees.
*Exchange of notes at Washington*
*August 30 and September 30, 1993.*
*Entered into force September 30, 1993.*
TIAS

### EXTRADITION

Treaty of extradition.
*Signed at Tirana March 1, 1933.*
*Entered into force November 14, 1935.*
49 Stat. 3313; TS 902; 5 Bevans 22; 166 LNTS 195.

### FINANCE

Investment incentive agreement.
*Signed at Washington November 19, 1991.*
*Entered into force March 18, 1993.*
TIAS 12441.

### INTERNATIONAL CRIMINAL COURT

Agreement regarding the surrender of persons to the International Criminal Court.
*Signed at Tirana May 2, 2003.*
*Entered into force July 7, 2003.*
TIAS

### INVESTMENT

Treaty concerning the reciprocal protection of investment, with annex and protocol.
*Signed at Washington January 11, 1995.*
*Entered into force January 4, 1998.*
TIAS

### MAPPING

Basic exchange and cooperative agreement for topographic mapping, nautical and aeronautical charting and information, geodesy and geophysics, digital data and related mapping, charting and geodesy materials.
*Signed at Tirana March 25, 1994.*
*Entered into force March 25, 1994.*
NP

### PACIFIC SETTLEMENT OF DISPUTES

Arbitration treaty.
*Signed at Washington October 22, 1928.*
*Entered into force February 12, 1929.*
45 Stat. 2728; TS 770; 5 Bevans 14; 92 LNTS 217.

Treaty of conciliation.
*Signed at Washington October 22, 1928.*
*Entered into force February 12, 1929.*
45 Stat. 2732; TS 771; 5 Bevans 17; 92 LNTS 223.

### PEACE CORPS

Agreement concerning the program of the Peace Corps in the Republic of Albania.
*Signed at Tirana July 22, 2003.*
*Entered into force October 9, 2003.*
TIAS

### POSTAL MATTERS

Convention for the exchange of money orders.
*Signed at Washington June 18, 1932.*
*Entered into force October 1, 1932.*
NP

Express mail agreement, with detailed regulations.
*Signed at Tirana and Washington*
*June 26 and July 15, 1996.*
*Entered into force September 15, 1996.*
NP

**Bilateral Treaties in Force as of November 1, 2007**

## TRADE AND COMMERCE

Agreement concerning most-favored-nation treatment and passports.
*Exchange of notes at Tirana June 23 and 25, 1922.
Operative July 28, 1922.
Foreign Relations, 1925, Vol. I, p. 511; 5 Bevans 9.*

Agreement on trade relations, with exchange of letters.
*Signed at Washington May 14, 1992.
Entered into force November 2, 1992.
TIAS 12454.*

## VISAS

Agreement relating to waiver of passport visa fees for nonimmigrants.*
*Exchange of notes at Tirana May 7, 1926
Operative June 1, 1926.
5 Bevans 12.*

NOTE
　*　The status of this agreement is under review.

## WEAPONS

Agreement concerning cooperation in the area of the prevention of proliferation of weapons of mass destruction, and the promotion of defense and military relations.
*Signed at Washington May 12, 2003.
Entered into force May 12, 2003.
TIAS*

Agreement concerning the safe, secure and ecologically sound destruction of chemical weapons.
*Signed at Tirana and Washington
November 9 and December 30, 2004.
Entered into force December 30, 2004.
TIAS*

Amendments
*September 21 and 27, 2005.
March 8 and April 4, 2006.
August 22 and September 5, 2006.
May 24 and June 7, 2007.*

## ALGERIA [1]

NOTE
　1　For the "Declaration of the Government of the Democratic and Popular Republic of Algeria ..." initialed at Algiers January 19, 1981, see IRAN — CLAIMS.

## AGRICULTURAL COMMODITIES

Agricultural commodities agreement with exchange of notes and related agreement.
*Signed at Algiers February 23, 1966.
Entered into force February 23, 1966.
17 UST 551; TIAS 6002; 592 UNTS 117.*

## CONSULS

Consular convention.
*Signed at Washington January 12, 1989.
Entered into force July 30, 1997.
TIAS*

## CULTURAL RELATIONS

Agreement on cultural cooperation.
*Signed at Algiers June 2, 1987.
Entered into force October 3, 1988.
TIAS 12016; 2244 UNTS 33.*

## DEFENSE

Agreement with respect to articles and services provided from the Government of the United States of America to the Government of Algeria pursuant to the Trans Sahara Counterterrorism Initiative.
*Exchange of notes at Algiers
March 20, May 31 and June 20, 2006.
Entered into force May 31, 2006.
TIAS*

## ECONOMIC AND TECHNICAL COOPERATION

Agreement establishing the United States-Algerian Joint Commission for economic, technical and technological cooperation.
*Signed at Washington April 17, 1985.
Entered into force April 17, 1985.
TIAS 11998.*

## FINANCE

Investment incentive agreement.
*Signed at Washington June 22, 1990.
Entered into force December 4, 1990.
TIAS 12275.*

Agreement regarding the consolidation and rescheduling or refinancing of certain debts owed to, guaranteed by or insured by the United States Government and its agencies, with annexes.
*Signed at Algiers December 15, 1994.
Entered into force February 8, 1995.
NP*

Agreement regarding the consolidation and rescheduling of certain debts owed to, guaranteed by, or insured by the United States Government and its agencies, with annexes.
*Signed at Algiers March 27, 1996.
Entered into force June 24, 1996.
NP*

## INTERNATIONAL CRIMINAL COURT

Agreement regarding the surrender of persons to international tribunals.
*Exchange of notes at Algiers April 6 and 13, 2004.
Entered into force April 13, 2004.
TIAS*

## JUDICIAL ASSISTANCE

Agreement for mutual assistance in connection with the investigation of activities of International Systems and Controls Corporation and International Telephone and Telegraph Company, their affiliates and subsidiaries.
*Exchange of letters at Washington May 22, 1980.
Entered into force May 22, 1980.
32 UST 1411; TIAS 9780; 1234 UNTS 339.*

Related agreement
*December 18, 1980 (32 UST 4491; TIAS 9960; 1266 UNTS 378).*

## POSTAL MATTERS

International express mail agreement, with detailed regulations.
*Signed at Algiers and Washington
June 25 and July 26, 1994.
Entered into force September 1, 1994.
NP*

## SCIENTIFIC COOPERATION

Memorandum of understanding concerning scientific and technical cooperation in the earth sciences, with annexes.
*Signed at Algiers February 21, 2000.
Entered into force February 21, 2000.
TIAS*

# ANDORRA

## EDUCATION

Memorandum of understanding on the Fulbright Exchange Program.
*Signed at Andorra November 29, 2000.
Entered into force January 8, 2002.
TIAS*

# ANGOLA

## DEFENSE

Agreement concerning the provision of training to military and related civilian personnel of foreign countries under the United States International Military Education and Training (IMET) Program.
*Exchange of notes at Luanda
September 21, 1995 and January 24, 1996.
Entered into force January 24, 1996.
NP*

## ECONOMIC AND TECHNICAL COOPERATION

Economic, technical and related assistance agreement.
*Signed at Luanda April 9, 1996.
Entered into force April 9, 1996.
TIAS 12741.*

## FINANCE

Investment incentive agreement.
*Signed at Luanda July 27, 1994.
Entered into force August 18, 1994.
TIAS 12189.*

## INTERNATIONAL CRIMINAL COURT

Agreement regarding the surrender of persons to international tribunals.
*Signed at Washington May 2, 2005.
Entered into force October 6, 2005.
TIAS*

## POSTAL MATTERS

International express mail agreement, with detailed regulations.
*Signed at Luanda and Washington
December 29, 1993, and October 17, 1994.
Entered into force December 1, 1994.
NP*

# ANTIGUA AND BARBUDA

On November 1, 1981 Antigua and Barbuda became an independent state. In a note dated November 4, 1981 to the Secretary-General of the United Nations, the Deputy Prime Minister and Minister of Foreign Affairs made a statement reading in part as follows:

United States Department of State

# Treaties in Force

A List of Treaties and
Other International
Agreements of the
United States in Force
on January 1, 2007

## *Section 2:  Multilateral Agreements*



U.S. Department of State: Multilateral Treaties in Force for the United States as of January 1, 2007

JUDICIAL PROCEDURE -- INTER-AMERICAN AGREEMENTS  JUDICIAL PROCEDURE — INTER-AMERICAN AGREEMENTS

Turkey
Turkmenistan
Uganda
Ukraine
United Arab Emirates
United Kingdom [7]
United States
Uruguay
Uzbekistan
Venezuela
Western Samoa
Yemen
Yugoslavia [8]
Zambia
Zimbabwe

**NOTES**

1 The convention is applicable to all territories for whose international relations a Contracting State is responsible, except those which are excluded by such State by written notice to the depositary ..." (Article 70).

2 On October 2, 1980, the Administrative Council decided that "the Republic of China be removed from the list of Contracting States and noted that, pending study by the Government of the People's Republic of the possibility of becoming a party to the Convention, China is not a Contracting State."

3 Applicable to Hong Kong and Macao. See note under CHINA in Section 1.

4 Extended to Faroe Islands.

5 See note under GERMANY, FEDERAL REPUBLIC OF in Section 1.

6 Applicable to Netherlands Antilles and Aruba.

7 Extended to all territories for whose international relations it is responsible except British Indian Ocean Territory, Pitcairn Islands, and Sovereign Base Areas of Cyprus.

8 See note under YUGOSLAVIA in Section 1.

# JUDICIAL PROCEDURE

## *INTER-AMERICAN AGREEMENTS*

Convention for the establishment of an International Commission of Jurists.

*Signed at Rio de Janeiro August 23, 1906.*
*Entered into force August 26, 1907;*
*for the United States March 9, 1908.*
37 Stat. 1554; TS 565; 1 Bevans 547.

**Parties**
Argentina
Brazil
Chile
Colombia
Costa Rica
Dominican Republic
Ecuador
El Salvador
Guatemala
Honduras
Mexico
Nicaragua
Panama
Peru
United States
Uruguay

Protocol embodying a declaration on the juridical personality of foreign companies.

*Done at the Pan American Union,*
*Washington, June 25, 1936.*
*Entered into force for the United States*
*July 10, 1941.*
55 Stat. 1201; TS 973; 3 Bevans 274;
161 UNTS 217.

Depositary: *Organization of American States*
Status:
*http://www.oas.org/DIL/treaties_signatories_ratifications_subject.htm*

**Parties**
Chile [1]
Dominican Republic [1]
Ecuador
El Salvador
Nicaragua
Peru
United States [2]
Venezuela

**NOTES**

1 With a statement.

2 With understandings.

Protocol on uniformity of powers of attorney which are to be utilized abroad.

*Done at the Pan American Union,*
*Washington, February 17, 1940.*
*Entered into force for the United States*
*April 16, 1942.*
56 Stat. 1376; TS 982; 3 Bevans 612;
161 UNTS 229.

Depositary: *Organization of American States*
Status:
*http://www.oas.org/DIL/treaties_signatories_ratifications_subject.htm*

**Parties**
Brazil
Colombia [1]
El Salvador [1]
Mexico [1]
United States
Venezuela [1]

**NOTE**

1 With reservation.

Inter-American convention on letters rogatory.

*Done at Panama January 30, 1975.*
*Entered into force January 16, 1976;*
*for the United States August 27, 1988.*
TIAS

Depositary: *Organization of American States*
Status:
*http://www.oas.org/DIL/treaties_signatories_ratifications_subject.htm*

Additional protocol to the Inter-American convention on letters rogatory, with annex.

*Done at Montevideo May 8, 1979.*
*Entered into force June 14, 1980;*
*for the United States August 27, 1988.*
TIAS

Depositary: *Organization of American States*
Status:
*http://www.oas.org/DIL/treaties_signatories_ratifications_subject.htm*

**Parties**
Argentina *
Brazil *
Chile [1] *
Colombia *
Costa Rica
Ecuador *
El Salvador [1] [2] *
Guatemala *
Honduras
Mexico [1] *
Panama *
Paraguay *
Peru *
Spain [3]
United States [3] *
Uruguay [1] *
Venezuela [3] *

**NOTES**

* The United States has a treaty relationship only with those countries which are a party to the Convention and the Additional Protocol.

1 With declaration(s).

2 With reservation(s).

3 Designation of Central Authority in accordance with Article 4.

Inter-American convention on mutual assistance in criminal matters.

*Done at Nassau May 23, 1992.*
*Entered into force April 14, 1996;*
*for the United States June 24, 2001.*
TIAS

Depositary: *Organization of American States*
Status:
*http://www.oas.org/DIL/treaties_signatories_ratifications_subject.htm*

**Parties**
Antigua and Barbuda
Canada
Chile
Colombia
Dominica
Ecuador
El Salvador
Grenada
Guatemala
Jamaica [1]
Mexico
Nicaragua
Panama [1]
Paraguay
Peru
Trinidad and Tobago
United States
Venezuela

**Amendment**
June 11, 1993.

**NOTE**

1 With reservation(s).

## *HAGUE CONVENTIONS* [1]

**NOTE**

1 Adopted under the auspices of The Hague Conference on International Law. (See under LAW, PRIVATE INTERNATIONAL.)

U.S. Department of State:  Multilateral Treaties in Force for the United States as of January 1, 2007



JUDICIAL PROCEDURE — HAGUE CONVENTIONS | JUDICIAL PROCEDURE — HAGUE CONVENTIONS

**Convention abolishing the requirement of legalisation for foreign public documents, with annex.**

*Done at The Hague October 5, 1961.*
*Entered into force January 24, 1965;*
*   for the United States October 15, 1981.*
33 UST 883; TIAS 10072; 527 UNTS 189.

Depositary: *Netherlands*
Status:
http://www.minbuza.nl/verdragen/en/depositaire_n.
otification

**Parties:[1]**
Albania
Andorra
Antigua and Barbuda
Argentina
Armenia
Australia
Austria
Azerbaijan
Bahamas, The
Barbados
Belarus
Belgium
Belize
Bosnia-Herzegovina
Botswana
Brunei
Bulgaria
Colombia
Cook Islands
Croatia
Cyprus
Czech Republic
Denmark
Dominica
Ecuador
El Salvador
Estonia
Fiji
Finland
France[3]
Germany, Federal Republic of[3]
Greece
Grenada
Honduras
Hong Kong[4]
Hungary
Iceland
India
Ireland
Israel
Italy
Japan
Kazakhstan
Latvia
Lesotho
Liechtenstein
Lithuania
Luxembourg
Macao[4]
Macedonia
Malawi
Malta
Marshall Islands
Mauritius
Mexico
Monaco
Namibia
Netherlands[5]
New Zealand

Niue
Norway
Panama[2]
Poland
Portugal[2]
Romania
Russian Federation
St. Kitts and Nevis
St. Lucia
St. Vincent and the Grenadines
Samoa
San Marino
Serbia
Seychelles
Slovak Republic
Slovenia
South Africa
Spain
Suriname
Swaziland
Sweden
Switzerland
Tonga
Trinidad and Tobago
Turkey
Ukraine
Union of Soviet Socialist Republics[6]
United Kingdom[7]
United States[8 9]
Venezuela
Yugoslavia[10]

**NOTES**
1   With designation(s).
2   Applicable to all overseas departments and territories.
3   See note under GERMANY, FEDERAL REPUBLIC OF in Section I.
4   CHINA is not a party to this treaty but has made it applicable to Hong Kong and Macao. With declaration.
5   Applicable to the Kingdom in Europe, the Netherlands Antilles, and Aruba.
6   See note under UNION OF SOVIET SOCIALIST REPUBLICS in Section I.
7   Applicable to Anguilla, Jersey, the Bailiwick of Guernsey, Isle of Man, Bermuda, Cayman Islands, Falkland Islands, Gibraltar, Montserrat, St. Helena, Turks and Caicos Islands and the British Virgin Islands.
8   Extended to those territories for the foreign relations of which the United States is responsible.
9   With statement(s).
10  See note under YUGOSLAVIA in Section I.

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters.**

*Done at The Hague November 15, 1965.*
*Entered into force February 10, 1969.*
20 UST 361; TIAS 6638; 658 UNTS 163.

Depositary: *Netherlands*
Status:
http://www.minbuza.nl/verdragen/en/depositaire_n
otification.2007/0/14-Betekening.html

**Parties:[1]**
Antigua and Barbuda
Argentina[2]
Bahamas
Barbados
Belarus
Belgium[2]

Botswana[2]
Bulgaria[2]
Canada[2]
China[1 2 3]
Croatia[2]
Cyprus[2]
Czech Republic[2]
Denmark[2]
Egypt
Estonia[2]
Finland[2]
France[2 4]
Germany, Federal Republic of[2 4]
Greece[2]
Hungary
Ireland[2]
Israel[2]
Italy[2]
Japan[2]
Korea[2]
Kuwait[2]
Latvia
Lithuania[2]
Luxembourg[2]
Malawi
Mexico[2]
Netherlands[2 5]
Norway[2]
Pakistan[2]
Poland[2]
Portugal[2]
Romania
Russian Federation[2]
St. Vincent and the Grenadines
San Marino[2]
Seychelles[2]
Slovak Republic[2]
Slovenia
Spain[2]
Sri Lanka[2]
Sweden[2]
Switzerland[2]
Turkey[2]
Ukraine[2]
United Kingdom[3 6]
United States[2 7]
Venezuela[7]

**NOTES**
1   With designation(s).
2   With declaration(s).
3   Applicable to Hong Kong and Macao. With declarations. See note under CHINA in Section 1.
4   See note under GERMANY, FEDERAL REPUBLIC OF in Section 1.
5   Extended to Aruba.
6   Extended to Anguilla, Bermuda, British Virgin Islands, Cayman Islands, Central and Southern Line Islands, Falkland Islands and dependencies, Gibraltar, Guernsey, Isle of Man, Jersey, Montserrat, Pitcairn, St. Helena and dependencies, Turks and Caicos Islands.
7   Extended to the Commonwealth of the Northern Mariana Islands, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands.

**Convention on the taking of evidence abroad in civil or commercial matters.**

*Done at The Hague March 18, 1970.*
*Entered into force October 7, 1972.*
23 UST 2555; TIAS 7444; 847 UNTS 231.

U.S. Department of State:  Multilateral Treaties in Force for the United States as of January 1, 2007

JUDICIAL PROCEDURE  -- HAGUE CONVENTIONS                                                                    KOREA

**Depositary:** *Netherlands*
**Status:**
*http://www.minbuza.nl/verdragen/en/depositaire_n
otificaties.2007/HR-30-Rewiis.html*

**Parties[1]**
Argentina [2 3]
Australia [2 3]
Barbados
Belarus
Bulgaria
China [3 3 4]
Cyprus
Czech Republic
Denmark [2 3]
Estonia [2]
Finland [2 3]
France [2 3]
Germany, Federal Republic of [2 3 6]
Greece
Israel [2]
Italy [3]
Latvia
Lithuania
Luxembourg [2 3]
Mexico [2 3]
Monaco [2 3]
Netherlands [7]
Norway [2 3]
Poland
Portugal [2 3]
Romania
Seychelles
Singapore [3 3]
Slovak Republic
Slovenia
South Africa [2 3]
Spain [3]
Sri Lanka
Sweden [2]
Switzerland [2 3]
Turkey
Ukraine
United Kingdom [2 3 8]
United States [2 9]
Venezuela

**NOTES**
1   With designation(s).
2   With declaration(s).
3   With reservation(s).
        4 Applicable to Hong Kong and Macao. With
        declarations. See note under CHINA in
        Section 1.
5   Applicable to all territories of the French
    Republic.
6   See note under GERMANY, FEDERAL
    REPUBLIC OF in Section 1.
7   Extended to Aruba.
8   Extended to Anguilla, Cayman Islands,
    Falkland Islands and dependencies, Gibraltar,
    Guernsey, Isle of Man, Jersey, and the
    Sovereign Base Areas of Akrotiri and
    Dhekelia on the Island of Cyprus.
9   Extended to Guam, Puerto Rico, and the
    Virgin Islands.

Convention on the civil aspects of
international child abduction.
*Done at The Hague October 25, 1980.*
*Entered into force December 1, 1983;*
*for the United States July 1, 1988.*
TIAS 11670.

**Depositary:** *Netherlands*
**Status:**
*http://www.minbuza.nl/verdragen/en/depositaire_n
otificaties.2007/HR-28-Kindscentworden.html*

**Parties[1]**
Argentina [1]
Australia [1]
Austria [1]
Bahamas
Belgium
Belize [1]
Bosnia-Herzegovina
Brazil
Bulgaria
Burkina Faso
Canada [2 4 5]
Chile [4]
Colombia
Croatia
Cyprus
Czech Republic
Denmark [1 4]
Ecuador
Finland [1]
France [3 4]
Germany, Federal Republic of [1 3 6]
Greece [3 4]
Honduras
Hong Kong [7]
Hungary [1]
Iceland
Ireland [1]
Israel [1]
Italy
Luxembourg [4]
Macao [7]
Macedonia
Malta
Mauritius [3]
Mexico
Monaco [3]
Netherlands [3 8]
New Zealand [3]
Norway [3]
Panama
Poland [3]
Portugal [1]
Romania
St. Kitts and Nevis [3]
Serbia
Slovak Republic
Slovenia
South Africa
Spain [1]
Sweden [1]
Switzerland [1]
Turkey
United Kingdom [3 4 9]
United States [1 3]
Uruguay
Venezuela [3]
Yugoslavia [10]
Zimbabwe

**NOTES**
1   With designation(s).
2   Extended to legal system applicable only in
    Australian states and mainland territories.
3   With reservation(s).
4   With declaration(s).
5   Extended to Alberta, Newfoundland,
    Northwest Territories, Nova Scotia, Prince

Edward Islands, Quebec, Saskatchewan and
Yukon Territory.
6   See note under GERMANY, FEDERAL
    REPUBLIC OF in Section 1.
7   CHINA is not a party to this treaty but has
    made it applicable to Hong Kong and Macao.
    With declarations.
8   Applicable to Kingdom in Europe.
9   Extended to Isle of Man.
10  See note under YUGOSLAVIA in Section 1.

# KOREA

Joint declaration of policy on Korea.
*Signed at Washington July 27, 1953.*
4 UST 230; TIAS 2781.

**Parties**
Australia
Belgium
Canada
Colombia
Ethiopia [1]
France
Greece
Luxembourg
Netherlands
New Zealand
Philippines
South Africa
Thailand
Turkey
United Kingdom
United States

**NOTE**
1   See note under ETHIOPIA in Section 1.

Agreement concerning a military
armistice in Korea, with annex.
*Signed at Panmunjom July 27, 1953, by the*
*Commander-in-Chief, United Nations*
*Command; the Supreme Commander of the*
*Korean People's Army; and the Commander*
*of the Chinese People's Volunteers.*
*Entered into force July 27, 1953.*
4 UST 234; TIAS 2782.

Temporary agreement supplementary to
the armistice agreement in Korea.
*Signed at Panmunjom July 27, 1953, by the*
*Commander-in-Chief, United Nations*
*Command; the Supreme Commander of the*
*Korean People's Army; and the Commander*
*of the Chinese People's Volunteers.*
*Entered into force July 27, 1953.*
4 UST 346; TIAS 2782.

Agreement regarding the status of the
United Nations forces in Japan, with
agreed official minutes.
*Signed at Tokyo February 19, 1954.*
*Entered into force June 11, 1954.*
5 UST 1123; TIAS 2995; 214 UNTS 51.

**Parties**
Australia
Canada
France
Italy

# PREPARATION OF LETTERS ROGATORY

**DISCLAIMER:** THE INFORMATION IN THIS CIRCULAR RELATING TO THE LEGAL REQUIREMENTS OF SPECIFIC FOREIGN COUNTRIES IS OBTAINED FROM PAST EXPERIENCE AND IS NOT NECESSARILY AUTHORITATIVE. QUESTIONS INVOLVING INTERPRETATION OF SPECIFIC FOREIGN LAWS SHOULD BE ADDRESSED TO FOREIGN COUNSEL

**LEGAL AUTHORITY:** 28 U.S.C. 1781(a)(2); 28 U.S.C. 1696; Rule 28(b), Fed. R. Civ. P.; Rule 4(f)(2)(B), Fed. R. Civ. P.; Rule 15d, Fed. R. Crim. P.22 C.F.R. 92.66(b)&(c); Article 5(j), Vienna Convention on Consular Relations, 21 U.S.T. 77, 596 UNTS 261; TIAS 6820 (where applicable); Bilateral Consular Conventions (where applicable). Letters rogatory have also been issued under the "All Writs Act", 28 U.S.C. 1651.

**SELECTED CITATIONS:** For general information about letters rogatory see:

Wright and Miller, Federal Practice and Procedure, (1970), Section 2083 and Section 1134 and 1992 Supp. pp. 206-207);

8 Wigmore, Evidence (rev. McNaughton 1961), Sec. 2195a (ii);

Restatement (Second) Foreign Relations Law of the United States, Sec. 40 (1965);

Restatement (Third) Foreign Relations Law of the United States, Sec. 403 (1988).

**WHAT IS A LETTER ROGATORY:** A letter rogatory is a formal request from a court in one country to "the appropriate judicial authorities" in another country requesting compulsion of testimony or documentary or other evidence or effect service of process. Although statutory authority generally refers to the instrument as a "letter rogatory", the terms "letter rogatory" and "letter of request" (which is used specifically in the Hague Evidence Convention) have come to be virtually synonymous in actual practice. (See Epstein & Snyder, International Litigation: A Guide to Jurisdiction, Practice & Strategy, 2nd. Sec. 10.09, p. 10.13 -10.14.; Black's Law Dictionary (6th ed. 1994), Fed. R. Civ. P. 4(f)(2)(B) Advisory Committee's Note (West Supp. 1993).) In some countries which do not permit the taking of depositions of willing witnesses, letters rogatory are the only method of obtaining evidence or serve process. Letters rogatory can be used in civil and criminal matters, and have been used in administrative matters. The execution of a request for judicial assistance by the foreign court is based on comity between nations, absent a specific treaty obligation such as the Hague Evidence Convention or Mutual Legal Assistance in Criminal Matters (MLAT) treaties. See our general flyer on "Obtaining Evidence Abroad" or the "Hague Evidence Convention" for a further discussion of these subjects. Consular Conventions generally include language which authorizes transmission of letters rogatory through diplomatic channels. This does not obligate the foreign country to execute the request, but simply provides a formal avenue by which the requests may be made. If there is no Consular Convention in force between the United States and the foreign country, letters rogatory are received by foreign authorities on the basis of comity. **Letters rogatory are a time consuming, cumbersome process and should not be utilized unless there are no other options available.**

**HOW IS A LETTER ROGATORY EXECUTED:** The foreign court will execute a letter rogatory in accordance with the laws and regulations of the foreign country. In obtaining evidence, for example, in most cases an American attorney will not be permitted to participate in such a proceeding. Occasionally a local, foreign attorney may be permitted to attend such a proceeding and even to put forth additional questions to the witness. Not all foreign countries utilize the services of court reporters or routinely provide verbatim transcripts. Sometimes the presiding judge will dictate his recollection of the witness's responses. See Born & Westin, 305, 308; Ristau, International Judicial Assistance, Sec. 3-2-1 (4), p. 79 (1995 supp.); Epstein & Snyder, Sec. 10.09, p. 10-13 - 10-16 (1994 supp.) See discussion below on drafting a letter rogatory which takes these peculiarities into account.

**AUTHORITY FOR ISSUANCE OF A LETTER ROGATORY:** The power of federal courts to issue letters rogatory derives from 28 U.S.C. 1781 and from the court's "inherent" authority. See De Villeneuve v. Morning Journal Ass'n., 206 F. 70 (S.D.N.Y. 1913), Zassenhaus v. Evening Star Newspaper Co., 404 F. 2d 1361 (D.C. Cir. 1968). See also 28 U.S.C. 1651 ("All Writs Act"). But see, DBMS Consultants, Ltd. v. Computer Assocs. Int'l, Inc., 131 F.R.D. 367, 369 (D. Mass. 1990); United States v. Reagan, 453 F.2d 165, 171-173 (6th Cir. 1971), cert. denied, 406 U.S. 946 (1972); United States v. Strong, 608 F. Supp. 188, 192-194 (E.D. Pa. 1985); United States v. Staples, 256 F.2d 290 (9th Cir. 1958); B & L Drilling Electric v. Totco, 87 F.R.D. 543, 545 (W.D. Okla. 1978).

**Compulsion of Evidence:** When a witness is not willing to testify or produce documents or other evidence voluntarily, the assistance of foreign authorities generally must be sought. The customary method of compelling evidence is by letter rogatory. See Rule 28(b), Fed. R. Civ. P.; Born & Westin, 305-308; Cumulative Digest of United States Practice in International Law, 1981-1988, Department of State, Office of the Legal Adviser, 1450, 1509-1510 (1994); and Digest of United States Practice in International Law, 1977, 498-499, Department of State, Office of the Legal Adviser. See Ristau, Sec. 3-3-2, Application for the Issuance of a Letter of Request (Letter Rogatory). Consult our flyer "Obtaining Evidence Abroad" regarding other methods of extraterritorial discovery of documents in control of persons over whom the court has in personam jurisdiction.

**CRIMINAL CASES:** The Federal Rules of Criminal Procedure do not provide for the issuance of requests for judicial assistance. Consequently, Rule 57, Fed. R. Crim. P., applies. Rule 57 provides in pertinent part: "In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act". Evidence, including documents and the testimony of witnesses, may properly be sought by means of a request for judicial assistance before or after formal charges have been made. United States v. Reagan, supra, 453 F2d at 173 n.4; In Re Grand Jury 81-2, 550 F. Supp. 24, 29 (W.D. Mich, 1982); United States v. Strong, supra, 608 F. Supp. at 194.

**ADMINISTRATIVE CASES:** Except as provided by statute, U.S. Administrative agencies do not have the power to compel persons outside the U.S. who have no contact with the U.S. (and therefore are not under a federal court's personal jurisdiction) to produce evidence for an investigation. Administrative agencies have succeeded in obtaining commissions to take depositions and letters rogatory using the "All Writs Act" (28 U.S.C. 1651). See: CFTC v. Nahas, 738 F.2d 487 (D.C. Cir. 1984); FTC v. Compagnie de Saint Gobain-Pont-a-Mousson, 636 F.2d 1300 (D.C. Cir. 1980). Congress has decided, since Saint Gobain, that the investigative demands of the FTC and the IRS are more in the nature of complaints than subpoenae. Thus, those two agencies have been expressly authorized to serve investigative demands in foreign states in a manner parallel to the service of process provisions of Rule 4 of the Rules of Federal Procedure. See 15 U.S.C. 57b-1 (F.T.C.) and 26 U.S.C. 982 (I.R.S.). All the federal securities statutes authorize the SEC to subpoena witnesses "from any place in the United States." This statutory language, commonly employed in the statutes governing most American regulatory agencies, has been construed by U.S. courts to be a broad and flexible authorization to require production of evidence from anywhere in the world, so long as service has been properly effected in the U.S. See, SEC v. Minas de Artemisa, S.A., 150 F. 2d 215 (9th Cir. 1945); Federal Maritime Commission v. DeSmedt, 366 F.2d 464 (2d Cir.), cert. denied, 385 U.S. 974 (1966); CAB v. Deutche Lufthansa A.G., 591 F.2d 951 (D.C. Cir. 1979); SEC v. Zanganeh, 470 F. Supp 1307 (D.D.C. 1978).

**SERVICE OF PROCESS:** 28 U.S.C. 1696 and Rule 4(f)(2)(B) Fed. R. Civ. P. provide for the use of letters rogatory for service of process. Service of a judicial summons, as set forth in Fed. R. Crim. P. 9(c) may also be effected pursuant to a letter rogatory. See Ristau, Sec. 3-1-12, p. 71 (1995 supp.) for a form for application for the issuance of a Letter of Request (Letter Rogatory) to Serve a Judicial Document. See also, In Re Letters Rogatory Out of First Civil Court of City of Mexico, 261 Fed. 652 (S.D.N.Y. 1919); 44 Colum. L. Rev. 72 (1944); Note, 58 Yale L.J. 1193 (1949); Republic Int'l Corp. v. Amco Eng'rs, 516 F.2d 161, 164 (9th Cir. 1975). In some countries service by letters rogatory is the only recognized method of service. **If the laws of the foreign country permit other methods of service, the use of letters rogatory is not recommended given the habitual time delays of up to a year or more in execution of the requests.** The letters rogatory procedure is "complex, costly and time consuming" and should be avoided where possible. (See Casad, Jurisdiction in Civil Actions, 4.06(2) (1983 & Supp. 1986); Horlick, A Practical Guide to Service of United States Process Abroad, 14 Int'l Law. 637, 642 (1980).) If the laws of the foreign country only recognize service by letter rogatory and eventual enforcement of a U.S. judgment in the foreign country is envisioned, requesting counsel may determine that service pursuant to a letter rogatory is necessary. See Born & Westin, 123-125, 133-136; In re Letters Rogatory out of First Civil Court, 261 Fed. 652 (S.D.N.Y. 1919); Service of Process on Foreign Parties by Letters Rogatory, 52 Inter Alia F1 (May/June 1987); Longley, Serving Process, Subpoenas and Other Documents in a Foreign Country, Proc. A.B.A., Sec. of Int'l & Comp. L. 34, 35 (1959); Cumulative Digest of United States Practice in International Law, 1981-1988, Department of State, Office of the Legal Adviser, 1442, 1448 (1994).

**SAMPLE LETTERS ROGATORY:** There is annexed a basic sample letter rogatory, but see, 4 J. Moore, Moore's Federal Practice 28.05-08 (2d ed. 1991) (Caveat: Do not draft the letter rogatory as a request from the President of the United States, but rather as a request from the requesting court.); 3 J. Moore & L. Frumer, Moore's Manual, Federal Practice Forms, Nos. 15:21; 15:22 (2d ed. 1988); 2A Bender's Federal Practice Forms, Fed. R. Civ. P. 28(b) (1991); 8 Wigmore, Evidence, rev. (McNaughton I96I) Sec. 2I95a (ii); B. Ristau, International Judicial Assistance, Vol. 1, Part III, Ch. 3, Section 3-3-1/3-3-2, pp. 94-101 (1995 supp.); Epstein & Snyder, International Litigation, Section 10.09, 10-13 - 10-16 (2d ed. 1994); Born & Westin, International Civil Litigation in United States Courts, 308-309, (1989).

**GUIDELINES ON DRAFTING LETTERS ROGATORY:** Letters rogatory should be written in simple, non-technical English and should not include unnecessary information which may confuse court in the receiving foreign state. Avoid use of the term "discovery". Similarly, to avoid the appearance of a "fishing expedition" which may result in refusal of the foreign country to execute the request, try not to use phrases such as "any and all documents". Requests for documents should be as specific as possible. If particular procedures to be followed by the foreign court are preferable, include the specifics in the letter rogatory (for example, verbatim transcript, place witness under oath, permission for American or foreign counsel to attend or participate in proceedings if possible, etc.) For general guidance on drafting letters rogatory see Ristau, Sec. 3-3-2, 95-96; 3-3-5, p. 103 (1995 supp.); Born & Westin 308.

The letter rogatory should be addressed "To Appropriate Judicial Authority of **(Insert name of Country).** " (See The Mandu, II F. Supp. 845, EDNY I935). The essential elements of a letter rogatory are:

(a) a request for international judicial assistance is being made in the interests of justice;

(b) a brief synopsis of the case, including identification of the parties and the nature of the claim and relief sought to enable the foreign court to understand the issues involved;

(c) type of case [civil, criminal, administrative];

(d) the nature of the assistance required [compel testimony or production of evidence; service of process];

(e) name, address and other identifiers, such as corporate title, of the person abroad to be served or from whom evidence is to be compelled, documents to be served;

(f) list of questions to be asked, where applicable, generally in the form of written interrogatories;

(g) list of documents or other evidence to be produced;

(h) the requesting court should include a statement expressing a willingness to provide similar assistance to judicial authorities of the receiving state [28 U.S.C. 1782];

(i) the requesting court should include a statement expressing a willingness to reimburse the judicial authorities of the receiving state for costs incurred in executing the requesting court's letter rogatory.

**AUTHENTICATION REQUIREMENTS:** Letters rogatory must be issued under the seal of the court and the signature of the judge. The clerk should not sign on behalf of the judge. (See Ristau, Sec. 3-1-13, p. 73 at note 14, (1995 supp.); Born & Westin 307.) For most countries, the seal of the court and signature of the judge is sufficient. Consult our country-specific information via our autofax service or via our home page on the Internet for guidance about procedures for particular countries. Some countries require further authentication of letters rogatory. **Do not waste time and money on these additional steps unless your local foreign counsel, this office, or some other authoritative source advises that it is necessary.** If there is no specific flyer for the country in question, consult the geographic division of the Office of American Citizens Services and Crisis Management. See "Questions" below.

**TRIPLE CERTIFICATION, CHAIN AUTHENTICATION AND AUTHENTICATION BY THE FOREIGN EMBASSY IN THE UNITED STATES: As noted above, these additional authentication steps are not required by most countries.** Some countries require **Triple Certification** of the letter rogatory which means that the judge signs the documents; the clerk certifies that the judge is the judge; the judge certifies that the clerk is the clerk). This is also known as an exemplification certificate (A.O. form 132). In addition to the triple certification or exemplification process, some foreign countries require that the letter rogatory be authenticated by the embassy or consulate of the foreign country in the United States. This is accomplished by "chain authentication" summarized below. (See Ristau Sec. 3-1-13, 1994 Rev., p. 73 at note 14.)

**State Court Documents:**

1. Seal and Signature of the Judge;

2. State Secretary of State or other authority authenticates the seal of the State Court; *(For a list of state authentication offices, see our information flyers on the "Hague Legalization Convention" (AUTOFAX document 1053) and "General Authentication Flyer" (AUTOFAX document 1046) available via our autofax service and our Consular Home Page on the Internet explained under "Additional Information" below. See also our Authentications Office Home Page at ../family/abduction_hague_012.html .*

3. U.S. Department of State Authentications Office authenticates the seal of the State Secretary of State or comparable authority as explained below;

4. Embassy or Consulate or the foreign country in the U.S. authenticates the seal of the U.S. Department of State. *(For the address and telephone number of foreign embassies see our country-specific Country Specific Information on our Home Page on the Internet under "entry requirement" or our brochure "visa requirements of foreign governments" which also lists the phone numbers of the foreign consulates in the U.S.)*

**Federal Court Documents:**

1. Seal and Signature of the Judge;

2. Seal of the U.S. Court is authenticated by the U.S. Department of Justice, Management Division, Security Program Staff, Physical Security Office, 9th and Pennsylvania Avenue, Room 6531, Washington, D.C. 20530, tel: (202) 514-2314 or 514-4667 or the Administrative Office of the U.S. Courts.

3. U.S. Department of State Authentications Office authenticates the seal of the Department of Justice or the Administrative Office of the U.S. Courts as explained below;

4. Embassy or Consulate or the foreign country in the U.S. authenticates the seal of the U.S. Department of State.

**Expediting the Authentication Process:** It may be possible to authenticate the documents at the foreign consulate nearest you and avoid the interim steps if the foreign consulate has the court's seal or the state Secretary of State's seal on file. **This office will NOT undertake the task of obtaining the authentications of the State, the Departments of Justice and State**

and the foreign embassies.

**U.S. State Department Authentication Office, 518 23rd St., N.W., Washington, D.C. 20520, (202) 647-5002 Fee: $5.00.** For additional information, call the Federal Information Center: 1-800-688-9889, and choose option 6 after you press 1 for touch tone phones. Walk-in service is available from the Authentications Office from 8 a.m. to 12 noon Monday-Friday, except holidays. Walk-in service is limited to 15 documents per person per day (documents can be multiple pages). Processing time for authentication requests sent by mail is 5 working days or less. An information flyer explaining the authentication process is available. See also the U.S. State Department's Authentications Office home page .

**Further Authenticating the U.S. State Department Seal:** *Occasionally, foreign countries may request that after the embassy of the foreign country in the United States authenticates the seal of the U.S. Department of State, the documents be further authenticated in the foreign country by the U.S. embassy and/or the foreign country's Foreign Ministry. U.S. embassies abroad are authorized to authenticate the seal of the U.S. Department of State for a $10.00 fee. (See 22 C.F.R. 92.41(c); Schedule of Fees, 22 C.F.R. 22.1 item 45(f).)*

**Hague Legalization Convention Countries:** If the country where the documents are to be used is a party to the Hague Legalization Convention, and that country requires further authentication of the documents beyond the seal and signature of the judge, consult our information flyer on the Hague Legalization Convention for guidance on how to obtain the Convention "apostille" certificate. See also the U.S. State Department's Authentications Office home page .

**TRANSLATION REQUIREMENTS:** The letters rogatory and any accompanying documents must be translated into the official language of the foreign country. The translator should execute an affidavit as to the validity of the translation before a notary. See Ristau, Sec. 2-2-2(2), p. 96-97 (1995 supp.)

**NUMBER OF COPIES REQUIRED:** Forward to the Department of State for transmittal to the foreign authorities: the original English version bearing the seal of the court and signature of the judge [or a certified copy]; a photocopy of the English; the original translation and a photocopy of the translation. The original documents will be served upon the designated recipient or deposited with the foreign court in connection with a request for evidence, and the copies returned to the court in the U.S. as proof of execution. See Ristau, Sec. 2-2-2(2), p. 96-97 (1995 supp.) For requests involving multiple witnesses in diverse locations, either prepare a separate letter rogatory for each witness, or provide a certified copy of the single letter rogatory (plus translation and duplicate copy noted above) for each witness. The foreign country may assign the matter to different courts. The U.S. embassy will endeavor to ensure that evidence obtained will be transmitted to the court in the U.S. as it is received from the Foreign Ministry rather than held by the Foreign Ministry until all the evidence has been obtained. The same procedures apply to requests involving service of process upon multiple persons.

**SERVICE VIA LETTERS ROGATORY UNDER SECTION 1608(B) OF THE FOREIGN SOVEREIGN IMMUNITIES ACT:** Letters rogatory requesting service of process on an agency or instrumentality of a foreign government pursuant to 28 U.S.C. 1608(b)(3)(A) must be transmitted to the Department of State, Office of Overseas Citizens Services, 2100 Pennsylvania Avenue, NW, Washington, D.C. 20037.

**TRANSMITTAL OF THE REQUEST:** Letters rogatory generally may be transmitted to foreign judicial authorities through the "diplomatic channel". The "diplomatic channel" is a circuitous route by which the documents are sent to the foreign court. Unless the foreign country accepts transmittal directly from court-to-court or through local foreign counsel, you will be confronted with the difficulties of at least some portion of the diplomatic channel described below. See Ristau, Sec. 3-3-3, p. 102 (1995 supp.) described below. If your local counsel in the foreign country advise that letters rogatory may be transmitted directly by your foreign counsel to the foreign court you may elect to avoid the time consuming diplomatic channel. If the Department of State information about a particular country reflects that use of the diplomatic channel is required, you may wish to seek clarification of contrary guidance from other sources.

**Cover Letter:** The letters rogatory and accompanying documents may be submitted to the Department of State, Office of Overseas Citizens Services, 2100 Pennsylvania Avenue, NW, 4th Floor, Washington, D.C. 20037. The documents should be accompanied by a letter along the following lines:

Foreign Country:

Name of Case:

Docket Number:

Nature of Request: (Service of Process; Compulsion of Testimony; Production of Documents, etc.)

Person to be Served or from Whom Evidence is to be Obtained: (name and address mandatory, phone number if possible.)

Mailing Address of American Court to Which executed Request should be Returned:

Special Instructions: (Example, Federal Express Account Number; U.S. hearing/trial date, etc.)

Deposit Enclosed:

Statement of Responsibility for Additional Costs incurred in excess of the required deposit which accompanies the letter.

Local Foreign Counsel (if any): (name and address, phone number)

Name, Address, telephone and fax number of requesting attorney in U.S.:

**What is the Diplomatic Channel?:** The documents proceed along the following lines:

1. Drafted by American attorney ...

2. Issued Under Seal of American court and Signature of Judge ...

3. Returned by Issuing Court to American Attorney ...

4. Sent by Attorney to U.S. State Department or U.S. Embassy Abroad ...

5. Received by U.S. Embassy ...

6. Sent to Ministry of Foreign Affairs under cover of a diplomatic note ...

7. **Sent to foreign Ministry of Justice ...**

8. Sent to by Ministry of Justice Foreign Court of Competent Jurisdiction ...

9. Executed by Foreign Court subject to Court's Calender ...

10. Returned to Ministry of Foreign Affairs ...

11. Returned to U.S. Embassy ...

12. Returned to U.S. Department of State ...

13. Returned to Requesting Court.

14. Requesting Attorney Receives Evidence from Requesting American Court.

**COSTS:** Effective March 8, 2005, there is a $735.00 consular fee for processing letters rogatory (See Federal Register, February 2, 2005, Volume 70, Number 21, Rules and Regulations, Pages 5372-5377; 22 CFR 22.1, item 51). Counsel are requested to submit a certified bank check in the amount of $735.00 payable to the U.S. Embassy (insert name of capital of the foreign country, for example, "U.S. Embassy Tokyo"). Corporate or personal checks are not acceptable. Foreign authorities may also charge a fee. Counsel will be notified by the U.S. embassy and/or the Office of American Citizens Services and Crisis Management in the Department of State if the Embassy is advised by foreign authorities of any applicable local fees. There is no consular fee for letters rogatory on behalf of federal, state or local government officials. (See 22 CFR 22.1, item 53). If the letter rogatory requests compulsion of evidence from more than one witness or service of process on more than one person, multiple fees may be charged if more than one foreign court is required to execute the request due to multiple jurisdictions. For letters rogatory for use in Taiwan, see our Taiwan specific flyer.

**RETAINING LOCAL FOREIGN COUNSEL:** 28 U.S.C. 1781(b)(2) permits American courts to transmit letters rogatory directly to the executing authority in the foreign country. Although many countries require that letters rogatory be transmitted to the foreign government through the "diplomatic channel" by the U.S. embassy, local counsel can be helpful in subsequent inquiries. Where the foreign government does not object to direct transmission, for example through a local foreign attorney, this can save time. While retention of the services of a foreign attorney to aid in the progress of a letter rogatory is not generally required (although some countries, such as the Bahamas mandate such assistance), requesting counsel in the U.S. may find it useful to retain local counsel to provide guidance on preparation of the request and to expedite the process. See Ristau, Sec. 3-3-3, at note 24, 102 and Sec. 3-3-5, p. 103 (1995 supp.); and Born & Westin 308.

**REFUSAL TO HONOR AMERICAN LETTERS ROGATORY:** Foreign countries have declined to honor American letters rogatory where a foreign domestic blocking statute prohibits release of the evidence requested. See Ristau, Sec. 3-3-4, p. 103 (1995 supp.)

**REQUESTS FROM STATE OR FEDERAL GOVERNMENT OFFICIALS:**

If the letter rogatory is being transmitted at the request of a state or federal official, please contact the Department of State,

Office of American Citizens Services for special guidance. With respect to fees, no consular fee will be charged. However, local authorities in the foreign country may impose fees of their own which must be paid by the state or federal authority in the United States requesting the judicial assistance. You will be contacted if a federal appropriation number and fund code or remittance of monies to the Department of State are necessary.

**TIME REQUIRED TO EXECUTE A LETTER ROGATORY:** Generally letters rogatory worldwide, including those sent to the United States, take from six months to a year to execute. See Ristau, Sec. 3-3-3, p. 102-103 (1995 supp.) ; Born & Westin 307.

**RETURN OF EXECUTED LETTER ROGATORY:** When a letter rogatory is executed by the foreign authorities, it is returned to the requesting court in the United States by this office via certified mail. Requesting counsel is also notified. At the request of the court, the executed letter rogatory and proof of service/evidence can be returned directly to requesting counsel. If transmittal by commercial express delivery service is preferred, please include your account number in the covering letter.

**Treaty Databases on the Internet:** Information about treaties in force is available on the Internet at the following web sites:

United States Department of State, Office of the Legal Adviser, Treaty Affairs, List of Treaties and Other International Agreements of the United States In Force:

United Nations (UN): Databases/Treaties

Council of Europe (COE): under Texts/Treaties

Organization of American States (OAS): under Public Information/Documents/Treaties.

**SELECTED REFERENCES:**

**Books:**

Born & Westin, International Civil Litigation in United States Courts, (1989).

Epstein & Snyder, International Litigation: A Guide to Jurisdiction, Practice and Strategy, 2d, Prentice Hall Law & Business (1994).

Grossman, Letters Rogatory: A Symposium Before the Consular Law Society, Federal Legal Publications, Inc., New York (1956).

Hackworth, Digest of International Law, Office of the Legal Adviser, Department of State, Vol. II, (1941).

Kos-Rabcewicz-Zubkowski, International Cooperation in Civil and Commercial Procedure: American Continent, Canadian Inter-American Research Institute; U. of Ottawa Press, (1975).

Lookofsky, Transnational Litigation and Commercial Arbitration, A Comparative Analysis of American, European, and International Law, 445-89 (1992).

Moore, A Digest of International Law 104 et seq., Sec. 189 - letters rogatory 1889-1890, (1906).

Nash, ed., Cumulative Digest of United States Practice in International Law, Department of State, Vol. II, 1409, 1424 (1994).

Ristau, International Judicial Assistance, Civil and Commercial, International Law Institute, (1995 supp.).

Smit, International Cooperation in Litigation: Europe, The Hague, Martinus Nijhoff, (1965).

Whiteman, Digest of International Law, Office of the Legal Adviser, Department of State, Vol 7, 573, 605 (1970).

**Articles:**

Doyle, Taking Evidence by Deposition and Letters Rogatory and Obtaining Documents in Foreign Territory, Proc. A.B.A., Sec. Int'l & Comp. L. 37 (1959).

Edwards, Taking of Evidence Abroad in Civil or Commercial Matters, 18 Int'l & Comp. L. Q. 646 (1969).

Heilpern, Procuring Evidence Abroad, 14 Rul. L. Rev. 29 (1939).

Houck, Restatement of the Foreign Relations Law of the United States (Revised): Issues and Resolutions, 20 Int'l Law. 1361 (1986).

Jones, International Judicial Assistance: Procedural Chaos and a Program for Reform, 62 Yale L.J. 515, 529-32 (1953).

McCawley, Compelled Production of Documents Located Abroad - Marc Rich and Co. v. U.S., 11 Tax Plan. Int'l Rev. 7 (No. 11, Nov. 1984).

McKay, Compelling Discovery and Disclosure in Transnational Litigation: A Selected Bibliography, 16 N.Y.U.J. Int'l L. and Pol. 1217 (No. 5, Summer 1984).

Maier, Extraterritorial Jurisdiction at a Crossroads: An Intersection Between public and Private International Law, 76 Am. J. Int'l L. 280 (1982).

Note, Letters Rogatory: Current Problems Facing International Judicial Assistance, 4 N.C. J. Int'l L. & Comm. Reg. 297 (1979).

Note, Reciprocity for Letters Rogatory Under the Judicial Code, 58 Yale L.J. 1193, 1193-94 (1949).

Note, Taking Evidence Outside of the United States, 55 B.U. L. Rev. 368, 374 (1975).

Plaster, The Hague Evidence Convention: The Need for Guidance on Procedures and Resolution of Conflicts in International Discovery, Vanderbilt Journal of Transnational Law, Vol. 27, No. 1, pp. 185-217 (1994).

Rafalko, Depositions, Commissions and Letters Rogatory in a Conflict of Laws Case (1965), 4 Dusquesne University Law Review 115.

Robinson, Symposia: Transnational Litigation, Part I, Compelling Discovery and Evidence in International Litigation, The Int'l Law., Vol. 18, No. 3, 533 (1984).

Rosenthal & Yale-Loehr, Two Cheers for the ALI Restatement's Provisions on Foreign Discovery, 16 N.Y.U.J. Int'l L. & Pol. 1075 (1984).;

Sklaver, Obtaining Evidence in International Litigation, 7 Cumberland L. Rev. 233 (1976).

Stern, International Judicial Assistance (Part II: Depositions under Letters Rogatory) (1969), 15 Practical Lawyer 55.

Sunderland, The Use of the Letter of Request (or Letter Rogatory) for the Purpose of Obtaining Evidence for Proceedings in England and Abroad, 31 Intl and Comp L. Q. 784 (1982).

Symposium, Compelling Discovery in Transnational Litigation, 16 N.Y.U.J. Int'l L. and Pol. 957-1156; 1217-1248 (No. 5, Summer 1984).

Symposium, Obtaining Foreign Discovery and Evidence for Use in Litigation in the United States, 13 Int'l L. 3, 46 (1979).

Van Brauman, Foreign Evidence Gathering and Discovery for U.S. Civil Tax Determination Purposes, 30 Int'l Law. 589, 619 (1996).

Von Mehren, Discovery of Documentary and Other Evidence in a Foreign Country, 77 Am. J. Int'l Law 896 (1983).

Von Mehren, Discovery Abroad: The Perspective of the U.S. Private Practitioner, 16 N.Y.U. J. Int'l L. & Pol. 985, 993 (1984).

**Selected Cases:**

DBMS Consultants, Ltd. v. Computer Assocs. Int'l, Inc., 131 F.R.D. 367, 369 (D. Mass. 1990); See, United States v. Zabady, 546 F. Supp. 35, 39 n. 9 (M.D. Pa. 1982); Rio Tinto Zinc Corp.V. Westinghouse Elec. Corp., (1978) 2 W.L.R. 81, 1All E.R. 434 (H.L. 1977); Reagan v. United States, 453 F.2d 165 (C.A. 6 1971); Re Raychem Corp. v. Canusa Coating Sys., Inc., (1970) 14 D.L.R. 3d 684; Zassenhaus v. Evening Star Newspaper Co., 404 F.2d 1361 (C.A.D.C. 1968); United States v. Paraffin Wax, 2255 Bags, 23 F.R.D. 298 (E.D.N.Y. 1959); Danisch, et al v. The Guardian Life Insurance Co., 19 F.R.D. 235 (1956); Re Radio Corp of America v. Rauland Corp., (1956) 5 D.L.R. 2d 424; Uebersee Finanz-Korporation, A.G. v. Brownell, 121 F. Supp. 420 (D.D.C. 1954); Wheeler v. West India S.S. Co., 22 Fed. Rules Decisions 396 (1951); The Edmund Fanning petition of Isbrandtsen Co., Inc., 89 Fed. Supp. 282 (1950); Ali Akber Kiachif et al. v. Philco International Corporation, 10 F.R.D. 277 (1950); The Signe, 37 F. Supp. 819, 820 (E.D. La. 1941); The Mandu, 11 F. Supp. 845 (E.D.N.Y. 1935); De Villeneuve v. Morning Journal Ass'n., 206 F.70 (S.D.N.Y. 1913)., Gross v. Palmer t al, C.C.N.D. Ill. 1900, 105 F. 833; Nelson v. United States, 17 Fed. Cas. 1340 (No. 10.116) (C.C.D.Pa. 1816); Winthrop v. Union Ins. Co., 30 Fed. Cas. 376 (No. 17901) (C.C.D.Pa. 1807.)

**ADDITIONAL INFORMATION:** The Office of American Citizens Services has available general information flyers on international judicial assistance.

**Using the Internet:** These are available on the Internet via the Department of State, Bureau of Consular Affairs home page under Judicial Assistance . See also, the Department of State, Office of the Legal Adviser for Private International Law home page for information regarding private international law unification. See also the home pages for many of our embassies.

**QUESTIONS:** Additional questions regarding letters rogatory should be addressed to the appropriate geographic division of the Office of American Citizens Services, Tel: (202) 647-5225 or (202) 647-5226.

**EXAMPLE - LETTER ROGATORY:**

SAMPLE REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE

NAME OF COURT IN SENDING STATE REQUESTING JUDICIAL ASSISTANCE

NAME OF PLAINTIFF

DOCKET NUMBER

V.

NAME OF DEFENDANT

REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)

(NAME OF THE REQUESTING COURT) PRESENTS ITS COMPLIMENTS TO THE APPROPRIATE JUDICIAL AUTHORITY OF (NAME OF RECEIVING STATE), AND REQUESTS INTERNATIONAL JUDICIAL ASSISTANCE TO (OBTAIN EVIDENCE/EFFECT SERVICE OF PROCESS) TO BE USED IN A (CIVIL, CRIMINAL, ADMINISTRATIVE) PROCEEDING BEFORE THIS COURT IN THE ABOVE CAPTIONED MATTER. A (TRIAL/HEARING) ON THIS MATTER IS SCHEDULED AT PRESENT FOR (DATE) IN (CITY, STATE, COUNTRY).

THIS COURT REQUESTS THE ASSISTANCE DESCRIBED HEREIN AS NECESSARY IN THE INTERESTS OF JUSTICE. THE ASSISTANCE REQUESTED IS THAT THE APPROPRIATE JUDICIAL AUTHORITY OF (NAME OF RECEIVING STATE) (COMPEL THE APPEAR OF THE BELOW NAMED INDIVIDUALS TO GIVE EVIDENCE/PRODUCE DOCUMENTS) (EFFECT SERVICE OF PROCESS UPON THE BELOW NAMED INDIVIDUALS).

(NAMES OF WITNESSES/PERSONS TO BE SERVED)

(NATIONALITY OF WITNESSES/PERSONS TO BE SERVED)

(ADDRESSED OF WITNESSES/PERSONS TO BE SERVED)

(DESCRIPTION OF DOCUMENTS OR OTHER EVIDENCE TO BE PRODUCED)

FACTS

(THE FACTS OF THE CASE PENDING BEFORE THE REQUESTING COURT SHOULD BE STATED BRIEFLY HERE, INCLUDING A LIST OF THOSE LAWS OF THE SENDING STATE WHICH GOVERN THE MATTER PENDING BEFORE THE COURT IN THE RECEIVING STATE.)

(QUESTIONS)

(IF THE REQUEST IS FOR EVIDENCE, THE QUESTIONS FOR THE WITNESSES SHOULD BE LISTED HERE).

(LIST ANY SPECIAL RIGHTS OF WITNESSES PURSUANT TO THE LAWS OF THE REQUESTING STATE HERE).

(LIST ANY SPECIAL METHODS OR PROCEDURES TO BE FOLLOWED).

(INCLUDE REQUEST FOR NOTIFICATION OF TIME AND PLACE FOR EXAMINATION OF WITNESSES/DOCUMENTS BEFORE THE COURT IN THE RECEIVING STATE HERE).

RECIPROCITY

THE REQUESTING COURT SHOULD INCLUDE A STATEMENT EXPRESSING A WILLINGNESS TO PROVIDE SIMILAR ASSISTANCE TO JUDICIAL AUTHORITIES OF THE RECEIVING STATE.

REIMBURSEMENT FOR COSTS

THE REQUESTING COURT SHOULD INCLUDE A STATEMENT EXPRESSING A WILLINGNESS TO REIMBURSE THE

Case 1:08-cv-03086-GEL    Document 108-4    Filed 07/24/2008    Page 9 of 9

JUDICIAL AUTHORITIES OF THE RECEIVING STATE FOR COSTS INCURRED IN EXECUTING THE REQUESTING COURT'S LETTER ROGATORY.

SIGNATURE OF REQUESTING JUDGE

TYPED NAME OF REQUESTING JUDGE

NAME OF REQUESTING COURT

CITY, STATE, COUNTRY

DATE

(SEAL OF COURT)

Return to Judicial Assistance Page

Track Shipments/FedEx Kinko's Orders
## Detailed Results

⑦ Quick Help

| | |
|---|---|
| Tracking number | 798906475478 |
| Signed for by | X. QUIMEIA |
| Ship date | Mar 27, 2008 |
| Delivery date | Apr 2, 2008 3:01 PM |

| | |
|---|---|
| Reference | 8265/000005.025 4 |
| Destination | LUANDA AO |
| Delivered to | Receptionist/Front Desk |
| Service type | Priority Pak |
| Weight | 3.1 lbs. |

| | |
|---|---|
| **Status** | Delivered |
| **Signature image available** | No |

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| **Apr 2, 2008** | 3:01 PM | **Delivered** | LUANDA AO | |
| | 1:01 PM | On FedEx vehicle for delivery | LUANDA AO | |
| | 11:44 AM | In transit | LUANDA AO | Package available for clearance |
| **Mar 31, 2008** | 12:11 PM | In transit | PARIS FR | |
| **Mar 29, 2008** | 5:08 AM | At local FedEx facility | PARIS FR | |
| **Mar 28, 2008** | 11:24 PM | Departed FedEx location | PARIS FR | |
| | 10:40 AM | Arrived at FedEx location | MEMPHIS, TN | |
| | 9:32 AM | Departed FedEx location | NEWARK, NJ | |
| | 6:13 AM | Departed FedEx location | NEWARK, NJ | |
| | 1:47 AM | Left FedEx origin facility | NEW YORK, NY | |
| | 12:53 AM | Arrived at FedEx location | NEWARK, NJ | |
| **Mar 27, 2008** | 11:59 PM | Left FedEx origin facility | NEW YORK, NY | |
| | 9:26 AM | Picked up | NEW YORK, NY | |
| | 3:39 PM | Package data transmitted to FedEx | | |

[ Signature proof ]   [ E-mail results ]   [ Track more shipments/orders ]

Subscribe to tracking updates (optional)

Your name: [          ]          Your e-mail address: [          ]

| E-mail address | Language | | Exception updates | Delivery updates |
|---|---|---|---|---|
| [          ] | English | | ☐ | ☐ |
| [          ] | English | | ☐ | ☐ |
| [          ] | English | | ☐ | ☐ |
| [          ] | English | | ☐ | ☐ |

Select format: ⦿ HTML  ○ Text  ○ Wireless
Add personal message:

Not available for Wireless or
non-English characters.

☐ By selecting this check box and the Submit button, I agree to these Terms and Conditions

[ Submit ]

Windows Live™

## My Address and Contact Details

**From: Christopher Sugrue** (chris.sugrue@yahoo.com.sg)
Sent: Sat 10/27/07 9:24 AM
To: chris.sugrue@yahoo.com.sg

Hello All:

I wanted to give you all me new contact details.  I will be based in Luanda, Angola for the short to medium term future as I have just become a resident.  All other details, email, phone etc will no longer be working for me.

My details are:

Chris Sugrue
Av. Amilar Cabral No 110-2
Ed. Sonangol Distribuidora
Luanda
ANGOLA

Email:

My phone number is +244 925 825 735.

Best regards and I hope to see you all soon,

Chris

- Search movie info and celeb profiles and photos.