UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE REFCO INC. SECURITIES LITIGATION | CASE NO. 07-MD-1902 (JSR) |

This document relates to:

| | |
|---|---|
| KENNETH M. KRYS, *ET AL.*, <br><br> Plaintiffs, <br><br> -against- <br><br> CHRISTOPHER SUGRUE, *ET AL.* <br><br> Defendants. | CASE NO. 08-CV-3086 (JSR) |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' LIMITED OBJECTION
WITH RESPECT TO THE OMNIBUS ISSUE OF
*IN PARI DELICTO* AND REFCO FRAUD CLAIMS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

ARGUMENT........................................................................................................................................ 2

I.      This Court has repeatedly held that Plaintiffs' Refco Fraud claims are indirect. ................. 2

II.     The Second Circuit's decision does not "establish[]" that the Refco Fraud did not cause RCM any direct harm............................................................................................... 5

III.    This Court's conclusion that Plaintiffs have successfully pleaded various primary violations did not transform their claims from indirect to direct. ........................................ 6

CONCLUSION.................................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Goldman Sachs Mut. Funds Fee Litig.*,
   No. 04 Civ. 2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) .................................................. 8

*Jackson Nat. Life Ins. Co. v. Ligator*,
   949 F. Supp. 200 (S.D.N.Y. 1996) ........................................................................................... 7

*Kirschner v. Bennett*,
   No. 07 Civ. 8165, 2010 WL 5129073 (S.D.N.Y. Dec. 13, 2010) ......................................... 4, 8

*Kirschner v. Grant Thornton LLP*,
   Civ. No. 07-11604, 2009 WL 1286326 (S.D.N.Y. May 6, 2009) ........................................... 6

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446 (2010) ........................................................................................................ 5, 6

*Kirschner v. KPMG LLP,*
   626 F.3d 673 (2d Cir. 2010) ........................................................................................ 1, 2, 5, 6

*Manson v. Stacescu,*
   11 F.3d 1127 (2d Cir. 1993) .................................................................................................... 7

The undersigned defendants[1] respectfully submit this memorandum in response to Plaintiffs' Limited Objection to the Report and Recommendation of the Special Master on the Omnibus Issue of *In Pari Delicto* and Refco Fraud Claims (the "Report").

## PRELIMINARY STATEMENT

Plaintiffs' Limited Objection is an attempt to reopen an issue that has been firmly settled—and correctly so—for more than a year. This Court has already held that Plaintiffs' "Refco Fraud" claims are indirect—and, thus, that they are derivative of claims belonging to Refco subsidiary RCM. As the Court recognized, these claims are based on alleged wrongs that caused direct injury to RCM, which in turn injured SPhinX indirectly, as one of RCM's many unsecured creditors. Mar. 31, 2010 Order at 2 [Dkt. No. 622] (adopting Report & Recommendation dated Feb. 3, 2010 ("Standing R&R")). Indeed, that conclusion led the Court to dismiss these claims without prejudice for lack of standing (*id*.), and later to revive them (as far as standing is concerned) once it became clear that the claims would not be litigated by Refco's Litigation Trustee (May 4, 2011 Mem. Order [Dkt. No. 1133]). The same conclusion also led the Court to dismiss Plaintiffs' Refco Fraud claims against other defendants (BAWAG and the EMF defendants) *with* prejudice, on the ground that those defendants had reached settlements directly with the Refco Trustee. May 4, 2011 Order [Dkt. No. 1135].

Plaintiffs seek to reopen this long-settled determination because it is fatal to their claims. Parties who are injured only indirectly usually cannot sue at all—and in the rare case where they can, they have no greater ability to recover than the directly injured party. In light of the result in the Refco Trustee's case, *Kirschner v. KPMG LLP,* 626 F.3d 673 (2d Cir. 2010), it is now perfectly

---

[1] Credit Suisse Securities (USA) LLC, Banc of America Securities LLC and JPMorgan Chase & Co.; Grant Thornton LLP and Mark Ramler; PricewaterhouseCoopers LLP ("PwC") and PwC partner Mari Ferris; Mayer Brown LLP, Edward Best, Joseph Collins, and Paul Koury; Ingram Micro Inc.; CIM Ventures Inc.; Liberty Corner Capital Strategies, LLC; and William T. Pigott.

clear that RCM's claims are barred by *in pari delicto*. And as Defendants' Objection explains, if the directly injured party is barred, so too are Plaintiffs. They attempt to avoid this dilemma by arguing (again) that their Refco Fraud claims are not "indirect" or "derivative" in the first place. That argument, however, ignores the law of this case as it has existed since March 2010.

Plaintiffs' argument not only flouts this Court's prior rulings but also is simply wrong. Their basic position is that RCM itself was never injured (Pl. Obj. at 1, 8-9)—a point they supposedly derive from the Second Circuit's decision in *Kirschner*. But the Second Circuit held no such thing. *Kirschner* established that the Refco Fraud is imputed to the Refco entities because it benefited them at the time, even though they were allegedly harmed later, when the fraud was disclosed. *Kirschner* did *not* hold that RCM was never injured—and, indeed, Plaintiffs' own complaint repeatedly alleges that it was. Similarly, this Court's conclusion that Plaintiffs have successfully pleaded various primary violations of tort law has nothing to do with whether the Refco Fraud claims are direct or indirect. For all these reasons, and those discussed further below, the Limited Objection should be rejected.

## ARGUMENT

**I.     This Court has repeatedly held that Plaintiffs' Refco Fraud claims are indirect.**

Once again, Plaintiffs attempt to blur the two sets of allegations that underlie their lawsuit. The "SPhinX Fraud" refers to the allegedly wrongful transfer of SPhinX assets from segregated accounts at Refco LLC to unprotected, unsegregated accounts at another Refco subsidiary, RCM. Standing R&R at 3. The SPhinX Fraud claims allege an injury that is unquestionably direct—that is, the alleged diversion of cash held by Plaintiff SPhinX Managed Futures Fund ("SMFF") from a segregated account. Accordingly, SMFF can pursue these direct claims free and clear of defenses that could be asserted against RCM.

2

But Plaintiffs' Refco Fraud claims are different. They involve allegations of wrongdoing relating to Refco's finances, Refco's end-of-period loans, the Refco LBO and IPO, and other conduct through which RCM was supposedly rendered insolvent (or more deeply insolvent). *Id*. at 3, 19. These claims are also asserted against a largely different set of defendants—Refco's own service providers and business partners—most of whom are not alleged to have had any role in the supposedly unauthorized transfer of SMFF's funds and thus have not been sued at all in connection with the SPhinX Fraud.

The Refco Fraud claims are unquestionably *indirect*. As the Special Master's Standing R&R explained: "It is only because RCM couldn't pay [Plaintiffs] off that Plaintiffs would have a cause of action under the Refco fraud theory." *Id*. at 19 (adopted by Mar. 31, 2010 Order). And RCM was "unable to pay [them off only] because it was stripped and made insolvent by the Refco fraud." *Id*. Thus, with respect to the Refco Fraud claims, "Plaintiffs' claims are derivative—and no different from the damages suffered by any other creditor of Refco." *Id*.

Over the last fifteen months, Plaintiffs' Refco Fraud claims have been correctly characterized as "indirect" or "derivative" by this Court and the Special Master on at least *six* different occasions, including in the Report currently under review.[2] Further, this Court has made several significant rulings in this case based on the conclusion that Plaintiffs' Refco Fraud claims are indirect. It was on this basis that the Court dismissed the Refco Fraud claims without prejudice

---

[2] S*ee, e.g.,* Standing R&R at 20, 28, 29 (adopted by Mar. 31, 2010 Order); Report & Recommendation dated March 1, 2010, at 37 n.57 ("Primary Violations R&R") (adopted by May 4, 2011 Order [Dkt. No. 1134]); Report & Recommendation dated Dec. 6, 2010, at 12-13 ("SPhinX IPD R&R") (adopted in relevant part by April 25, 2001 Order at 9); Report & Recommendation dated Feb. 14, 2011, at 4 ("PAT Standing R&R"); May 4, 2011 Mem. Order at 4 [Dkt. No. 1133] (quoting SphinX IPD R&R at 12-13); Report at 2 ("As the Special Master and Judge Rakoff have held, the Plaintiffs' Refco fraud damages are indirect because they were suffered only because RCM was directly damaged by the Refco fraud."); *cf*. Report & Recommendation dated April 19, 2010, at 2 ("BAWAG R&R") (Plaintiffs' Refco Fraud claims "are property of the Refco estate") (adopted by May 4, 2010 Order [Dkt. No. 1135]).

3

for lack of standing. Mar. 31, 2010 Order at 2-3. Then, one year later, the Court granted Plaintiffs standing to pursue those claims—based on the conclusion that the claims were derivative of claims that could no longer be pursued by RCM itself. May 4, 2011 Mem. Order at 3-4 [Dkt. No. 1133] (agreeing with the Special Master's concern that barring Plaintiffs' claims "'because their claims were derivative'" might leave "'a wrong without a remedy'") (quoting SPhinX IPD R&R at 12). This Court again relied on the derivative nature of these claims in dismissing them *with* prejudice as against BAWAG and the EMF defendants, after those defendants settled with the Refco Trustee. May 4, 2011 Order [Dkt. No. 1135]. If the Refco Fraud claims in this case were *not* derivative of RCM's direct claims, then the settlement of the direct claims, as a matter of law, could not have had any effect on the claims against BAWAG and the EMF defendants here.

Plaintiffs' principal response is to engage in a shell game. They state repeatedly that Refco stole their $263 million by transferring those funds from segregated accounts into unsegregated, commingled accounts held by RCM. *E.g.*, Pl. Obj. at 1 ("RCM *retained* the $263 million"); *id*. at 4, 8-9. This, they argue, makes their claims direct. But these theft allegations relate to the SPhinX Fraud, not the Refco Fraud. In the Standing R&R, the Special Master observed that "Plaintiffs' conception of their causes of action has been malleable" and that "it is important to ensure that the Plaintiffs do not jump back and forth" from one set of claims to another. Standing R&R at 8. Those words are equally apt here. Whether the SPhinX Fraud claims are direct does not change the nature of the Refco Fraud claims. And as this Court and the Special Master have held time and time again, the Refco Fraud claims are *not* direct. They are derivative.

Plaintiffs' current argument flies in the face of these well-established conclusions, which are the law of the case. *See, e.g., Kirschner v. Bennett*, No. 07 Civ. 8165, 2010 WL 5129073, at *1 (S.D.N.Y. Dec. 13, 2010) ("The law of the case doctrine posits that when a court decides upon a

rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (citations omitted)).  This Court can and should deny Plaintiffs' attempt to reopen this settled issue.

**II.    The Second Circuit's decision does not "establish[]" that the Refco Fraud did not cause RCM any direct harm.**

Even if this Court were—yet again—to address the substance of Plaintiffs' argument, the argument continues to be devoid of merit.  Plaintiffs' position is that the Refco Fraud caused RCM no injury—and thus that SPhinX's loss cannot be "derivative" of an injury RCM suffered in the first instance.  Pl. Obj. at 1-4.  That position is flatly inconsistent with Plaintiffs' own complaint, which repeatedly alleges direct harm to RCM.  *See*, *e.g.*, Am. Compl. ¶ 886 (alleging that underwriter defendants "damaged RCM" through the LBO); *id*. ¶ 786 (alleging misconduct in connection with loans from RCM to Refco affiliates who "lacked the financial intent and wherewithal to repay RCM"); *id*. ¶ 11 (alleging that when the fraud was disclosed, "Refco was irreparably damaged").

Further, the primary authority Plaintiffs cite—the Second Circuit's decision in *Kirschner*—does nothing to support their position.  In *Kirschner*, the Refco Trustee's complaint failed because the fraud perpetrated by Refco's officers was imputed to the Refco entities through the law of agency.  *See* 626 F.3d at 677-78.  But the legal conclusion that the fraud is *imputed* to the Refco entities does not mean, as a factual matter, that they were not *injured* by it.  On the contrary, "[a]gency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010) (citations omitted).  "Like a natural person, a corporation must bear the consequences when it commits fraud." *Id*.  This is true even though, as the New York Court of Appeals observed, "[t]he disclosure of corporate fraud *nearly always injures the corporation*." *Id*. at 465, 469

5

(emphasis added); *see also Kirschner v. Grant Thornton LLP*, Civ. No. 07-11604, 2009 WL 1286326 (S.D.N.Y. May 6, 2009 ) ("'A fraud by top management to overstate earnings, and so facilitate stock sales or acquisitions, is not in the long-term interest of the company; but, like price-fixing, it profits the company in the first instance and the company is still civilly and criminally liable'") (quoting *Baena v. KPMG LLP*, 453 F.3d 1, 8 (1st Cir. 2006)).

The Refco Trustee's complaint fits this pattern. While it was "saturated" with allegations of short-term benefits to the Refco entities, it also alleged that the Refco entities were ultimately harmed—when the disclosure of the fraud allegedly forced them into bankruptcy. *See* 15 N.Y.3d at 468. As a matter of law, though, for purposes of the imputation question in *Kirschner*, the Refco Trustee's allegations of "harm from the discovery of the fraud" simply made no difference. 15 N.Y.3d at 469; *accord* 626 F.3d at 675 (agreeing with Judge Lynch that as a matter of New York law, the agency law analysis should not take into account the harm "from the unmasking of the fraud"). In short, *Kirschner* did not establish that RCM was never injured; in fact, the Refco Trustee's complaint—which the SPhinX Plaintiffs have essentially copied—alleged just the opposite. Thus, *Kirschner* undermines, rather that supports, Plaintiffs' contention that their claims cannot be derivative of RCM's.

**III.    This Court's conclusion that Plaintiffs have successfully pleaded various primary violations did not transform their claims from indirect to direct.**

Plaintiffs' argument based on the Primary Violations R&R is nothing short of disingenuous. *See* Pl. Obj. at 4-8 (citing Primary Violations R&R, adopted by May 4, 2011 Order [Dkt. No. 1134]). The Court's determination that Plaintiffs have successfully pleaded various primary violations has nothing to do with whether their Refco Fraud claims are direct or indirect.

The Special Master's reports make this clear. His practice has been to issue separate reports for each set of issues in this case. The Special Master's recommended denial of the motion

6

to dismiss for failure to plead a primary violation does not change his earlier conclusion, in a separate report, that the Refco Fraud claims were indirect and should be dismissed for lack of standing. Indeed, he said so expressly: his Primary Violations R&R merely "assume[s] that all Plaintiffs have standing to bring all the claims presented," on the theory that the Refco Fraud claims had been dismissed only "without prejudice" and might later be revived. Primary Violations R&R at 3 & n.4. And at the end of that R&R, he reaffirmed that the Refco Fraud claims are "derivative." *Id*. at 37 n.57.

Further, as the Special Master has admonished, Plaintiffs cannot simply "shift from one theory to the other" to avoid the determination that their Refco Fraud claims are indirect. Standing R&R at 21. In their argument based on primary violations, the very first example Plaintiffs give is their claim that "Refco owed SPhinX and PlusFunds a duty to segregate SMFF's assets at Refco LLC and RCM." Pl. Obj. at 4 (citing Primary Violations R&R at 8, 20). But as discussed above, that claim concerns the *SPhinX Fraud*—the "basic claim that SPhinX cash was siphoned off into an unprotected account." Primary Violations R&R at 6. SMFF's injury from that claim is clearly direct, and no one has ever argued otherwise.[3]

As for the Refco Fraud claims, pointing to some *duty* that is direct does not change the fact that the *injury* at issue is not. *See Jackson Nat. Life Ins. Co. v. Ligator*, 949 F. Supp. 200 (S.D.N.Y. 1996) (question is whether plaintiff's injuries are separate and distinct from injuries to corporation); *Manson v. Stacescu,* 11 F.3d 1127, 1130-33 (2d Cir. 1993) (finding no standing

---

[3] Plaintiffs quote this Court's previous Orders as concluding that PlusFunds "alleged direct injuries." Pl. Obj. at 4. But that refers to something else entirely. Defendants moved to dismiss all claims by PlusFunds on the ground that its injury was not "separate and distinct *from that of SPhinX*." Standing R&R at 16 (emphasis added). The Special Master and the Court rejected that argument and held that PlusFunds "is alleging direct injury and damages independent" of the other SPhinX plaintiffs. *Id*. at 34. At the same time, however, they concluded (and have reiterated several times since then) that *no* plaintiff in this case—not even PlusFunds—has alleged an injury distinct from RCM's in relation to the Refco Fraud. *See id*.

because creditor's "injuries . . . are derivative of those sustained by th[e] corporation"); *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567, 2006 WL 126772, at *7 (S.D.N.Y. Jan. 17, 2006) ("plaintiffs argue that they may bring a direct action here because they seek to vindicate duties owed to them directly," but "a direct action would not be appropriate because plaintiffs cannot allege any injury independent from that suffered by the Funds" in which they had invested).  True, the claims of fraud at Refco and improper "upstreaming" of customer assets were found sufficient to plead a primary violation.  Pl. Obj. at 5.  But with respect to those Refco Fraud claims, SPhinX was injured only because the fraud and upstreaming allegedly rendered RCM insolvent and unable to repay its creditors.  As the Special Master explained, "the upstreaming from RCM . . . was a harm to RCM and therefore SMFF suffered only derivative harm."  Primary Violations R&R at 37 n.57 (for purposes of the R&R, "standing [was] assumed").

  Plaintiffs fare no better when they argue that their complaint pleads "fraudulent inducement."  Pl. Obj. at 7.  To be sure, the FX Customers in the *Kirschner v. Bennett* Private Actions Trust case have been allowed to proceed with allegations that RCM's "false image of solvency" fraudulently induced them to place assets in unsegregated RCM accounts and, thus, to become unsecured creditors of RCM.  *See* Pl. Obj. at 7 (citing PAT Standing R&R).  But the SPhinX Plaintiffs cannot make the same claim.  In fact, the Special Master and this Court have already concluded as much.  Standing R&R at 19-20 (adopted by Mar. 31, 2010 Order).  The "'gravamen'" of Plaintiffs' complaint is the allegation that while SphinX insisted that its cash be held in a *segregated* account at Refco LLC (where it would have been protected from any risk of insolvency), that cash was later transferred without SPhinX's authorization to an unsegregated, unprotected account at RCM.  *Id*. at 20.  As the Special Master has noted, if SPhinX always

8

believed its cash would be segregated, then RCM's "'false image of solvency' would have been of no matter because the money would have remained protected." Standing R&R at 20; *accord* PAT R&R at 9 ("concerns about Refco's insolvency would not have been as critical to SPhinX because, according to the *Krys v. Sugrue* complaint, the innocent insiders thought that the funds were segregated and thus protected from any Refco insolvency").[4] Thus, in light of their own allegations, these Plaintiffs cannot take advantage of the FX Customers' "fraudulent inducement" theory.

## CONCLUSION

This Court has recognized for more than a year that Plaintiffs' Refco Fraud claims are indirect. That conclusion represents the law of this case, and it is correct. Plaintiffs have provided no sufficient basis—indeed, no basis at all—for revisiting it.

The Special Master's Report should be rejected—but not for the reasons set forth in Plaintiffs' Limited Objection. It should be rejected because, as Defendants' Objection explains, a party who is injured only indirectly has no greater ability to recover than the directly injured party would. RCM's direct claims are barred by the defense of *in pari delicto*, based on the wrongdoing of the Refco insiders. As a matter of law, the SPhinX Plaintiffs' derivative claims are subject to the same insurmountable defense.

---

[4] Plaintiffs also differ from the FX Customers in one other important way: they chose Refco as their broker in November 2002 (Am. Compl. ¶ 124), *before* the August 2004 LBO, and also *before* many of these Defendants had even entered the picture. The FX Customers' claims, on the other hand, have been limited to customers who made deposits *after* the LBO. PAT Standing R&R at 2. It would thus be temporally impossible for Plaintiffs to assert the same sort of fraudulent inducement claim that the FX Customers have asserted.

| | |
|---|---|
| Dated: New York, New York<br>       July 25, 2011 | WILMER CUTLER PICKERING<br>   HALE AND DORR LLP |

Dated: New York, New York
      July 25, 2011

WILMER CUTLER PICKERING
   HALE AND DORR LLP

By: /s/ Philip D. Anker
    Philip D. Anker
    (philip.anker@wilmerhale.com)
    Jeremy S. Winer
    Ross E. Firsenbaum

399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Defendants Banc of America Securities LLC, Credit Suisse Securities (USA) LLC, and JPMorgan Chase & Co.*


Dated: New York, New York
      July 25, 2011

DAVIS POLK & WARDWELL LLP

By: /s/ Robert F. Wise, Jr.
    Robert F. Wise, Jr.
    (robert.wise@davispolk.com)
    Paul Spagnoletti

450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000

*Attorneys for Defendants Ingram Micro Inc. and CIM Ventures Inc.*

| | |
|---|---|
| Dated: Chicago, Illinois<br>July 25, 2011 | WINSTON & STRAWN LLP<br><br>By:   /s/ Linda T. Coberly<br>      Linda T. Coberly<br>      (lcoberly@winston.com)<br>      Bruce R. Braun<br>      Catherine W. Joyce<br><br>      35 West Wacker Drive<br>      Chicago, Illinois 60601<br>      Tel.: (312) 558-5600<br><br>      *Attorneys for Defendants Grant Thornton LLP and Mark Ramler* |
| Dated: Chatham, New Jersey<br>July 25, 2011 | MARINO, TORTORELLA & BOYLE, P.C.<br><br>By:  /s/ Kevin H. Marino<br>      Kevin H. Marino<br>      (kmarino@khmarino.com)<br>      John D. Tortorella<br><br>      437 Southern Boulevard<br>      Chatham, New Jersey 07928-1488<br>      Tel.: (973) 824-9300<br><br>      *Attorneys for Defendants Liberty Corner Capital Strategies, LLC and William T. Pigott* |

| | |
|---|---|
| Dated: Washington, D.C.<br>July 25, 2011 | WILLIAMS & CONNOLLY LLP<br><br>By: /s/ Craig D. Singer<br>    John K. Villa<br>    George A. Borden<br>    Craig D. Singer<br>    (csinger@wc.com)<br><br>    725 Twelfth Street, NW<br>    Washington, DC 20005<br>    Tel.: (202) 434-5000<br><br>    *Attorneys for Defendants Mayer Brown LLP and Edward S. Best* |
| Dated: New York, New York<br>July 25, 2011 | COOLEY GODWARD KRONISH LLP<br><br>By: /s/ William J. Schwartz<br>    William J. Schwartz<br>    (wschwartz@cooley.com)<br>    Jonathan P. Bach<br>    Reed A. Smith<br>    Daniel M. Hibshoosh<br><br>    1114 Avenue of the Americas<br>    New York, NY 10036-7798<br>    Tel.: (212) 479-6000<br><br>    *Attorneys for Defendant Joseph P. Collins* |
| Dated: New York, New York<br>July 25, 2011 | CLAYMAN & ROSENBERG<br><br>By: /s/ Charles E. Clayman<br>    Charles E. Clayman<br>    (clayman@clayro.com)<br><br>    305 Madison Avenue, Suite 1301<br>    New York, NY 10165<br>    Tel.: (212) 922-1080<br><br>    *Attorneys for Defendant Paul Koury* |

| | |
|---|---|
| Dated:  New York, New York<br>        July 25, 2011 | KING & SPALDING LLP<br><br>By: /s/ James J. Capra, Jr.<br>    James J. Capra, Jr.<br>    (jcapra@kslaw.com)<br>    James P. Cusick<br><br>    1185 Avenue of the Americas<br>    New York, New York 10036-4003<br>    Tel.: (212) 556-2100<br><br>    *Attorneys for Defendants*<br>    *PricewaterhouseCoopers LLP and Mari*<br>    *Ferris* |