**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                        :

In re REFCO INC. SECURITIES LITIGATION    :       Case No. 07-md-1902 (JSR)
                                          :

------------------------------------------------------------X

           This Document Relates to:


------------------------------------------------------------X
KENNETH M. KRYS, et al.,                   :         Case No. 08-cv-3065 (JSR)
                                        :         Case No. 08-cv-3086 (JSR)
Plaintiffs,            :
                                          :        REPORT AND
         -against-                   :        RECOMMENDATION
                                          :        OF THE SPECIAL MASTER
CHRISTOPHER SUGRUE, et al.,             :        ON MOTIONS TO DISMISS
                                          :        BROUGHT BY THE
                   Defendants.     :        MAYER BROWN DEFENDANTS
                                          :
------------------------------------------------------------X

Daniel J. Capra, Special Master

       Defendants Mayer Brown LLP ("Mayer Brown") and three of its attorneys, Edward S. Best, Joseph P. Collins, and Paul Koury (collectively "the Mayer Brown Defendants") move to dismiss four counts of the Plaintiffs' First Amended Complaint ("FAC")— the only counts directed against them. The counts allege aiding and abetting fraud (Count XVII); aiding and abetting breach of fiduciary duty (Count XVIII); aiding and abetting conversion (Count XIX); and Interference with Contract/Prospective Contract (Count XXVI).

       The Special Master has previously issued many R and R's in the Refco matter. Some of these R and R's will be referred to herein. Abbreviations used in the prior R and R's will be used herein. Familiarity with all of the R and R's — and with Judge Rakoff's orders reviewing them — is presumed.

       The Plaintiffs' claims arise from losses allegedly suffered when assets were transferred from segregated accounts at Refco LLC to unprotected accounts at Refco Capital Markets, Ltd. ("RCM"), where they were then upstreamed to fund Refco operations and then ultimately lost when Refco's

1

true financial picture was made public.[1] According to the FAC, this action is brought to recover (i) $263 million plus interest in damages suffered by the SPhinX family of hedge funds ("SPhinX"); (ii) the lost business enterprise value and deepening insolvency damages suffered by SPhinX's investment manager, PlusFunds Group, Inc., ("PlusFunds") and (iii) damages suffered by the Assignors, a group comprised of SPhinX investors. FAC ¶1.[2]

For the reasons stated below, the Special Master recommends that a) the motion to dismiss Count XVII with prejudice should be granted in part and denied in part; b) the claims against the Mayer Brown Defendants in Counts XVIII, XIX, and XXVI should be dismissed with prejudice.

The above recommendations are essentially determined by the findings and recommendations made in the following R and R's:

- The Primary Wrongs R and R, dated March 1, 2010 and affirmed and adopted by Judge Rakoff on May 3, 2011.

- The Private Actions Trust R and R, dated June 3, 2010, affirmed and adopted by Judge Rakoff by order dated June 3, 2010.

- The PwC R and R, dated August 9, 2011 and affirmed and adopted by Judge Rakoff by order dated October 24, 2011.

- The Deutsche Bank R and R, dated November 1, 2011, and *sub judice* with Judge Rakoff.

- The Bank Defendants R and R, dated December 8, 2011, and *sub judice* with Judge Rakoff.

- The Grant Thornton R and R, dated December 16, 2011, and *sub judice* with Judge Rakoff.

***To summarize, these R and R's have established the following principles that are applicable to the disposition of the instant motion to dismiss:***

---

[1] The facts pertinent to these motions have been recounted in a number of opinions by Judge Lynch (*see, e.g.*, *Kirschner v. Grant Thornton,* 2009 WL 996417 (S.D.N.Y. 2009)) and in a number of R and R's by the Special Master. To the extent necessary for background on the instant motion, familiarity with the financial schemes of Refco is assumed.

[2] As recounted in a number of prior opinions, the named Plaintiffs have been appointed by the Cayman Court to bring claims on behalf of SPhinX and PlusFunds. Prior rulings by Judge Rakoff have narrowed the claims for damages to those incurred by SMFF and PlusFunds. *See generally* the Standing R and R dated dated February 3, 2010 and affirmed by Judge Rakoff in Orders dated March 31, 2010 and May 3, 2011.

1. The Plaintiffs have adequately pled the primary wrongs of fraud, breach of fiduciary duty (based on a relationship of trust and confidence), and conversion.

2. A financial adviser or accountant servicing Refco would not by that fact have known that Refco was breaching a fiduciary duty owed to SPhinX/PlusFunds, as it would have no reason to know of the relationship of trust and confidence.

3. A financial adviser or accountant servicing Refco would not by that fact have known that Refco was converting SMFF excess cash, as knowledge of conversion would be dependent on murky questions involving SMFF's right to segregation and the terms of the Margin Annex.

4. A question of fact exists as to whether a financial adviser or accountant servicing Refco would have known about some aspect of  the Refco Fraud.

5. A question of fact exists as to whether a financial adviser or accountant with responsibility for preparing public statements of Refco's financial condition would have substantially assisted the Refco Fraud.

6. The Plaintiffs have alleged sufficient facts to indicate that SPhinX/PlusFunds reasonably relied on the misleading public statements about Refco's financial condition.

7. The Plaintiffs cannot adequately allege that parties who aided and abetted the Refco Fraud proximately caused SPhinX/PlusFunds to *retain* assets at Refco, because if Refco's true financial picture had been known, the SMFF excess cash would still have been lost in a run on the bank and RCM's consequent inability to pay its customers back.

8. The Plaintiffs have adequately alleged proximate cause for any substantial assistance of the Refco Fraud as to assets *placed* with Refco after the date of the defendant's wrongful act. That is, the Plaintiffs have adequately alleged that if SPhinX/PlusFunds knew of Refco's true financial condition, they would not have *continued* to place excess cash with Refco.

## I.  Allegations Forming the Basis of the Complaint Against These Defendants

The Mayer Brown Defendants served as Refco's legal counsel at all pertinent times. FAC ¶ 522. Until October 2005 Mayer Brown was Refco's primary law firm and Collins was Refco's primary outside counsel. Id. at ¶ 525. Mayer Brown provided extensive legal services to Refco, including "representing Refco in SEC investigations, advising Refco on corporate governance issues and United States and foreign regulations regarding its operations and activities, drafting Refco's customer agreements, providing Refco with tax advice, leading financings for senior note and loan agreements and drafting and negotiating the [Round Trip Loans]. Id. "The vast majority of important transactions and deals at Refco, including the LBO and IPO, were cleared through Collins and Best or attorneys working under their direct supervision, including Koury . . ." Id. at ¶ 526.Mayer Brown was directly involved in "repatriating" RCM to the United States while allowing Refco to continue

to operate it as an unregulated broker-dealer. Id.at ¶ 546.  The Mayer Brown Defendants reviewed and prepared LBO and IPO public documents that misrepresented Refco's true financial condition. Id. at ¶¶ 549-558. Other allegations in the FAC will be addressed when pertinent to the individual Counts against these Defendants.

## II. Standards for Reviewing the Plaintiff's Allegations on a Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (quoting Fed.R.Civ.P. 8(a)(2)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 668 (2009) (quoting *Twombly,* 550 U.S. at 570). The requirement of "factual matter" means that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the  reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting *Twombly*, 550 U.S. at 557). If the factual allegations rise only to the level of  the "mere possibility of misconduct," the complaint should be dismissed. *Starr v. Sony BMG Music Entn't,* 592 F.3d 314, 321 (2d Cir.2010).

For all counts sounding in fraud — in this case, Counts  XVII and XVIII — the allegations must be evaluated more closely because Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead fraud with particularity. Fed.R.Civ.P. 9(b). The heightened pleading standard contained in Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) permits "[m]alice, intent, [and] knowledge," to be averred generally.  Fed.R.Civ.P. 9(b). However, because courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations [,] ... plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995) (internal quotation marks and citation omitted).  The requisite strong inference of fraud may be established by alleging either "(a) that defendants had the motive and opportunity to commit fraud, or (b) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,* 553 F.3d 187, 198 (2d Cir.2009). The Plaintiffs must specifically describe the acts or statements alleged to be fraudulent and provide some factual basis that creates a plausible inference of fraudulent intent.  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994).

The particularity requirement applies not only to fraud claims but also to all claims sounding in fraud, including the claims for aiding and abetting fraud and aiding and abetting breach of fiduciary duty in this case. *See, e.g., Henneberry v. Sumitomo Corp. of America,* 415 F.Supp.2d 423, 464 (S.D.N.Y. 2006) ("Rule 9(b)'s heightened pleading standards apply to breach of fiduciary

claims where the breach is premised on the [underlying wrongdoer's] fraudulent conduct."). Claims sounding in conversion — in this case, Count XIX — are evaluated under Rule 8, not Rule 9. *Kirchner v. Bennett*, 648 F. Supp.2d 525, 542, n.3 (S.D.N.Y. 2009).

## III. Review of Counts in the Complaint

### A. Count XVII: Aiding and Abetting Fraud (Against All Mayer Brown Defendants)

In this Count, the Plaintiffs claim that the Refco insiders "committed fraud in connection with the misrepresentation of Refco's financial condition." FAC ¶ 1256. This is a description of the Refco Fraud. There is no claim in this Count regarding the SPhinX Fraud, defined as unauthorized transfer of SMFF excess cash to RCM, and the Suffolk transactions, which were designed to maintain Refco control over SMFF cash. See Owens and Kavanagh R and R at 15.[3] The Plaintiffs claim that the Mayer Brown Defendants aided and abetted the Refco Fraud by "advising Refco in connection with its financial affairs; documenting transactions and transfers to RGHI in connection with the RGHI Receivable; concealing the RGHI Receivable; preparing, negotiating and documenting the RTLs; and advising and preparing fraudulent public filings in connection with the LBO and IPO, among other things." FAC ¶1263.[4]

In New York, to establish a claim of aiding and abetting fraud, a plaintiff must allege (i) the existence of a violation by the primary wrongdoer; (ii) knowledge of this violation by the aider and abettor; and (iii) proof that the aider and abettor substantially assisted in the primary wrong. *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983). Part of the substantial assistance/proximate cause requirement is that the plaintiff reasonably relied on the fraudulent statements. *Thomas H. Lee Equity Fund V, L.P. v. GT, LLP*, 586 F.Supp.2d 119, 133 (S.D.N.Y.2008). Each of these elements will be discussed below.

#### 1. Primary Wrong:

In the Primary Wrongs R and R at 42, the Special Master, in evaluating the Plaintiffs' allegations in the FAC, concluded that the Plaintiffs "have sufficiently alleged that Refco committed the primary wrong of fraud with regard to the Refco Fraud." So the Plaintiffs have satisfied the first element of their stated claim for aiding and abetting the Refco Fraud.

---

[3] The Plaintiffs do make allegations in the FAC about Mayer Brown's role in negotiating and documenting the Suffolk Transactions and the related Standby Credit Facility. FAC ¶566. But these allegations are unrelated to the misrepresentation of Refco's financial condition, which is the only underlying wrong that the Plaintiffs claim in Count XVII.

[4] Notably, the Plaintiffs do not allege that Mayer Brown's work on the Suffolk Transactions did anything to aid and abet the Refco Fraud that is the basis of Count XVII.

### 2. Knowledge:

To be liable on an aiding and abetting claim, the defendant must have had knowledge of the underlying wrongful conduct — a standard that is not satisfied by a mere allegation of constructive knowledge. *See Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) ("New York common law . . . has not adopted a constructive knowledge standard for imposing aiding and abetting liability").

As stated in previous Reports and Recommendations, there is dispute in the case law on whether "conscious avoidance" is sufficient for the knowledge prong of an aiding and abetting claim. *Compare Fraternity Fund Ltd.*, 479 F. Supp.2d at 368 (finding it sufficient to plead with particularity conscious avoidance — meaning that it can almost be said that, given the underlying circumstances, the defendant actually knew of the breach), *with Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC,* 446 F. Supp.2d 163, 202, n. 273 (S.D.N.Y.) (noting that the weight of authority under New York law requires actual knowledge, as distinct from "willful blindness"). The difference, however, between actual knowledge and "it can almost be said that the defendant actually knew" is, to say the least, a narrow one. And any difference is not material in this case.

The Special Master finds that the Plaintiffs have adequately alleged that the Mayer Brown Defendants had knowledge of the Refco Fraud — specifically, knowledge that Refco's financial condition was materially misstated to the public. Mayer Brown's scienter as to one part of the Refco Fraud — the siphoning of assets from RCM — has already been explored by the Special Master in an R and R affirmed and adopted by Judge Rakoff. In the Private Actions Trust R and R at 32-33, the Special Master evaluated whether the Refco Trustee had sufficiently alleged that Mayer Brown knew about the siphoning, which Judge Lynch had referred to as "the customer scheme."[5] The Special Master concluded that "[u]nder either test of knowledge, the Trustee has sufficiently pleaded that Mayer Brown knew about the customer scheme." The Special Master relied on, among other things, Mayer Brown's work on RCM's "repatriation"; the allegation that Mayer Brown oversaw virtually all aspects of Refco's business plan, and consequent awareness of the insiders' intent to cash out and that money was necessarily being upstreamed from RCM; and knowledge of Refco's propensity to siphon assets to fund Refco operations.

It is true that the Refco Trustee's allegations of Mayer Brown's scienter are somewhat more developed that the FAC regarding RCM's repatriation, and that the Refco Trustee's Amended

---

[5] As noted in the Private Actions Trust R and R, Judge Lynch had limited the recovery of the FX customers to damages from siphoning the assets from RCM; Judge Lynch rejected any claim for recovery from what he termed "the receivables scheme" — meaning hidden receivables, misrepresenting Refco's financial condition, and so forth. See Private Actions Trust R and R at 30.

Complaint contains allegations about Mayer Brown's work on the Cargill acquisition that are not included in the FAC.  But the Special Master finds that these extra allegations are not necessary to satisfy the Plaintiffs' obligation of showing Mayer Brown's scienter. The conclusion in the Private Actions Trust R and R at 32 holds here: "Given Mayer Brown's extensive involvement with all things Refco, and its specific work on the unregulated status of RCM, it is more than plausible to conclude that Mayer Brown knew that RCM was upstreaming customer funds and that at least after the LBO those funds could not be repaid."

But even if the Plaintiffs have not sufficiently alleged Mayer Brown's knowledge of siphoning of assets from RCM, they have alleged — clearly and with particularity — knowledge more generally of a number of important aspects of the Refco Fraud.  The Special Master's evaluation of Mayer Brown's scienter in the PAT R and R was limited to knowledge of siphoning, because Judge Lynch had held that the FX customers could not recover for damages from other aspects of the Refco Fraud, which he had termed "the receivables scheme." See Private Actions Trust R and R at 30.  In contrast, Judge Rakoff has held that these Plaintiffs have standing to sue for damages suffered from the Refco Fraud.[6] See Order affirming the Standing R and R dated May 3, 2011. Consequently, the Plaintiffs' copious allegations regarding Mayer Brown's knowledge of other aspects of the Refco Fraud may properly be considered on this motion. ***Those allegations include the following:***

*Knowledge of RGHI Receivable:*  The Court-appointed Examiner found that Mayer Brown was aware that RGHI owed a related party debt to RGL of at least $350 million. FAC ¶ 528. While an Examiner's finding is certainly not dispositive of a fact, it is certainly relevant to whether the Plaintiffs have alleged a question of fact.

*Knowledge of Impropriety of Round Trip Loans:* Mayer Brown drafted the RTL documents on at least 18 separate transactions, negotiated the terms of the RTLs with the RTL Participants and because of its knowledge of Refco would also know that the RTLs straddled Refco's financial reporting and audit periods and occurred only at those times (with one exception). Id.

Mayer Brown argues that there is nothing inherently suspicious about back-to-back loans, and that what made the RTL's fraudulent was the "third leg" of the transaction. See Transcript of May 5, 2010 Oral Argument at 234 ("[T]here is absolutely no suggestion and no evidence that Mayer Brown  knew about the so-called third leg of the loans.  They certainly documented or helped Refco to document the back-to-back aspect,  the first two legs of the loans. But not the third leg."). The first two legs of the Round Trip Loan transactions were the loan from RGL to the third party and the loan from the third party to

---

[6] Similar motions to dismiss allegations by the Plaintiffs of damages from aspects of the Refco Fraud other than the upstreaming have been denied. See the R and Rs for PwC, Deutsche Bank, the Bank Defendants, and Grant Thornton.

RGHI. The "third leg" of the Round Trip Loan transaction was the paydown from RGHI to RGL. All three legs then got unwound after the reporting period.

It is unnecessary in this motion to consider the Plaintiffs' argument that knowledge of the two legs — the back to back loan that was guaranteed by RGL so there was no risk to the third party — would itself be knowledge of a fraud. Case law cited by Mayer Brown and other defendants indicates that at least in some circumstances back to back loans are not invalid on their face. *See, e.g., In re Duke Energy Corp. Secs. Litig.,* 282 F.Supp.2d 158, 161 (S.D.N.Y. 2003) ("'wash sales'" and "'round-trip trading'" are not necessarily illegal *per se*"). But in this case the Plaintiffs allege not only that Mayer Brown knew about the back to back nature of the transactions, but also knew that they were suspiciously timed, and also knew that the amount owed by RGHI was a related-party receivable —  the existence of which created significant balance sheet problems. See FAC ¶¶ 530-35. Consequently, it is plausible to believe that Mayer Brown would know that a back-to-back loan involving RGHI on one end and RGL on the other would be motivated by the need to deal with that balance sheet problem. Moreover, given Mayer Brown's insider-involvement with all things Refco, it is plausible to believe that Mayer Brown would indeed have access to information about the third leg paydown and subsequent unwinding. Thus, in *In re Refco Securities Litig.,* 503 F.Supp.2d 611, 652 (S.D.N.Y. 2007), Judge Lynch found that the nature of the RTL transactions together with the roles and responsibilities of the Refco officers and in-house counsel were sufficient to support a charge of recklessness under the Securities Laws. It is true that recklessness is not the same as the knowledge required for aiding and abetting. But Judge Lynch's determination is certainly relevant to finding the higher standard — the point being that knowledge of back-to-back transactions *together with insider counsel status* significantly strengthens the case for scienter. And while  Mayer Brown was outside counsel, the Plaintiffs sufficiently allege that it was a virtual insider at Refco.

*Work on the LBO:* The Plaintiffs allege, and the Examiner found, that Mayer Brown was "deeply involved" in the LBO process, negotiating the agreement with THL and "handling the Refco side of THLP's due diligence." FAC ¶ 549. Mayer Brown reviewed the LBO Offering Circular, which contained material misrepresentations, including that the LBO debt was junior to the payables owed to RCM; Mayer Brown issued an opinion letter. Id. at ¶ 551.

*Registration Statements:* The Mayer Brown Defendants reviewed Refco's S-1 registration statements, which failed to disclose the RGHI receivable. Mayer Brown issued an opinion letter in connection with the S-1. Id. at ¶¶ 554-5.

All of these allegations are more than enough to raise a plausible inference that Mayer Brown was aware of many, if not every, aspect of the Refco Fraud. Indeed, the allegations against Mayer Brown provide a stronger case on scienter than those already found sufficient as to PwC, DBSI, and Credit Suisse and BAS. As to those defendants, sufficient allegations of scienter were found by the respective defendants' work as financial advisers on the LBO and IPO. In comparison, Mayer Brown's access to information about Refco, and involvement with Refco, was far more extensive.

Accordingly, the Special Master finds that the Plaintiffs have sufficiently alleged that the Mayer Brown Defendants knew about the Refco Fraud.[7]

### 3. Substantial Assistance:

"In the aiding and abetting context, a plaintiff must allege that the defendant's substantial assistance in the primary violation proximately caused the harm on which the primary liability is predicated. The Plaintiffs must allege more than but-for causation. They must allege also that their injury was a direct or reasonably foreseeable result of the conduct." *Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*, 479 F.Supp.2d 349, 370-71 (S.D.N.Y. 2007).[8]

The case for substantial assistance as to the Mayer Brown Defendants is stronger than that found sufficient as to PwC, DBSI, and Credit Suisse and BAS in previous R and R's. Like those Defendants, Mayer Brown reviewed public documents regarding the LBO and IPO; but Mayer Brown went a step further and issued opinions regarding both transactions. *See Nathel v. Siegel,* 592 F.Supp.2d 452, 470 (S.D.N.Y. 2008) (where primary wrong involves false documentation, "substantial assistance usually involves assistance in the preparation or dissemination of the documents."). *See also Oster v. Kirschner,* 77 A.D.3d 51, 905 N.Y.S.2d 69, 72 (1st Dept. 2010) (preparation of private placement memoranda constitutes substantial assistance: "The PPMs authored by defendant attorneys were the means by which the Cobalt Family entities were able to solicit funds for what is, by everyone's admission, a Ponzi scheme."). Other Defendants have argued against substantial assistance on the ground that they were involved in only one aspect of the Refco Fraud. *See, e.g.,* DB R and R at 40; Bank Defendants R and R at 22. These arguments have been rejected because of the Special Master's determination (affirmed by Judge Rakoff in the PwC R and

---

[7] Questions could be raised about whether the individual Defendants — particularly Best and Koury — had sufficient information about the Refco Fraud to justify a finding of scienter. But neither of those individual Defendants have broken out arguments that would set them apart from Mayer Brown. As to Collins, it is well known that he was indicted for his part in the Refco Fraud; he was subsequently convicted. That conviction was overturned by the Second Circuit, not for insufficient evidence but rather due to a deprivation of Collins's right to be present during a juror interchange; and the case was remanded for a new trial. *United States v. Collins,* 2012 WL 34044 (2d Cir.).  Finally, it should be noted that the Plaintiffs do make a number of detailed allegations against the individual Defendants that are pertinent to scienter. *See, e.g.,* FAC at ¶¶ 527, 531, 533, 545, 547, 549, 550, 551, 553, 554.  In any case, in the absence of any arguments on scienter specific to the individual defendants, the case against them stands or falls on the arguments made regarding Mayer Brown.

[8] As Judge Kaplan recognized in *Fraternity Fund,* "there is some debate about whether proximate cause and substantial assistance ought to be equated in the aiding and abetting context." Id. But most case law in the Second Circuit requires a showing of proximate cause for an aiding and abetting claim. *See, e.g., Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 446 F.Supp.2d 163, 201 (S.D.N.Y. 2006).

R) that substantial assistance with one part of the Refco Fraud is sufficient to withstand a motion to dismiss the aiding and abetting claim. With respect to Mayer Brown, the Plaintiffs have alleged with particularity that Mayer Brown substantially assisted in *multiple* parts of the Refco Fraud — not just the LBO and IPO, but also in hiding the RGHI Receivable, negotiating and drafting the Round Trip Loans, and retaining RCM's status as an unregulated entity.

It is true that Judge Rakoff, in affirming the Private Actions Trust R and R, dismissed the aiding and abetting claim against Mayer Brown for failure to adequately allege substantial assistance. But that determination is not controlling in this case. In *PAT,* Judge Lynch had held that the FX customers could only recover for the siphoning of their assets from RCM. See PAT R and R at 30. Thus, the Trustee was required to show that Mayer Brown substantially assisted in the upstreaming of those assets. This they could not do. As the Special Master found, allegations about the broader Refco Fraud, including Round Trip Loans and a fraudulent LBO, did not further the siphoning — rather it was the reverse, the siphoning furthered those other transactions because it allowed Refco to continue operating until the insiders could cash out. See PAT R and R at 35. Furthermore, the Trustee's allegations that Mayer Brown worked on "repatriation" issues were insufficient in part because repatriation would not have assisted the FX customers, because FX trading was not subject to regulation in any event. In contrast, Judge Rakoff has held that the SMFF cash was subject to regulation and protection. *See* Primary Wrongs R and R at 11.

In this case, it has already been determined that the Plaintiffs have standing to sue for the Refco Fraud writ large — i.e., all of Refco's actions undertaken to present a false picture of financial health, until the insiders could cash out. Accordingly, all of Mayer Brown's alleged extensive activity in assisting Refco in hiding its true financial picture and allowing the insiders to cash out may properly be considered. And that assistance, as specifically alleged, more than meets the standards of substantial assistance applied multiple times in this action.

As to reasonable reliance: as discussed in previous R and R's, the Plaintiffs have adequately alleged that SPhinX/PlusFunds reasonably relied on public statements regarding Refco's financial condition. For example, the Plaintiffs allege that PlusFunds' risk committee kept a "shadow rating" for Refco, reviewed public statements, and calculated guidelines to limit exposure on transactions with Refco. FAC ¶ 189. *See also* Id. at ¶723 ("SPhinX and PlusFunds' innocent decision-makers received and relied on [Refco's] financial statements and Grant Thornton's unqualified audit opinions thereupon in determining whether to allow and continue to allow SPhinX assets to be deposited at Refco and, specifically, RCM.").

Yet, as discussed in previous R and R's, all this does not mean that the Mayer Brown Defendants proximately caused all of the damages claimed by the Plaintiffs on behalf of SPhinX/PlusFunds. In five previous R and R's, the Special Master — affirmed by Judge Rakoff twice — analyzed the damages that can properly be claimed for various actions aiding and abetting

the Refco Fraud.[9] What follows is the analysis of those R and Rs as modified to apply to the aiding and abetting allegations against the Mayer Brown Defendants in this case:

> The Plaintiffs claim that the Mayer Brown Defendants substantially assisted the Refco Fraud by, among other things, hiding the RGHI receivable, conducting the RTLs, and making and reviewing false statements regarding Refco's finances, and if the true facts about Refco's financial condition had been disclosed, then SPhinX and PlusFunds would have taken the cash out of RCM and ceased doing business with Refco. But the problem with the argument that these Defendants caused SPhinX and PlusFunds to *keep* the cash at Refco is that the information that the Plaintiffs insist should have been disclosed (and that the Mayer Brown Defendants helped to conceal) was in the context of public statements, that would have come to SPhinX and PlusFunds together with the public at large. *See, e.g.,* FAC ¶1264 (SPhinX and PlusFunds' innocent decision-makers reasonably relied on the misstatements of Refco's financial condition").

> But assuming that Mayer Brown had not assisted in the Refco Fraud — meaning that Refco's true financial condition would have come to light — there is nothing that those customers could have done at the point of truthful disclosure to get their money back. The announcement of Refco's true financial picture would have triggered a run on RCM, in which all the company's customers would have sought to recover their funds prior to the inevitable bankruptcy filing. Because RCM, by the terms of the Plaintiffs' Complaint, had no ability to pay back the money that was upstreamed, SPhinX would have been unable to recover its funds deposited with RCM upon disclosure of the fraud. SPhinX/PlusFunds might well have tried to get the money back — as they did when the truth was in fact disclosed — but so would (and did) everyone else. And if they got the money out in front of everyone else after the fraud was revealed, they would have been (and of course were in fact) subject to clawback by a preference action.

> ⸻

Thus, the Special Master's analysis finding a lack of proximate cause regarding claims of fraudulent *retention* of assets at Refco after the wrongdoing of a third-party — in five separate R and R's (two affirmed and adopted by Judge Rakoff) — bars the Plaintiffs from suing the Mayer Brown Defendants for such damages here.

Accordingly, the claims against the Mayer Brown Defendants for aiding and abetting the Refco Fraud should be dismissed insofar as they encompass damages for SPhinX cash placed with Refco before the date of Mayer Brown's misconduct and held at Refco thereafter.

In contrast are the claims regarding assets placed with Refco *after* the wrongdoing attributed

---

[9]*See* Private Actions Trust R and R at 17; PWC R and R at 23; DB R and R at 40-41; Bank Defendants R and R at 23-24; Grant Thornton R and R at 16.

to the Mayer Brown Defendants allegedly occurred.  As to those assets, the Plaintiffs have plausibly alleged that if the true conditions at Refco had been known, PlusFunds would never have placed the assets with Refco, and then of course that money would never have been swept up in the Refco Fraud in the first place.[10] As stated above, the Plaintiffs provide specific allegations pertinent to SPhinX and PlusFunds reasonably relying on  the misinformation coming from public statements of Refco's financial condition in deciding to continue to place assets at Refco. FAC ¶¶ 189, 723.

The remaining question is, what is the date of the alleged wrongdoing that distinguishes between retention claims and deposit claims? The other professional defendants are alleged to have committed relatively discrete acts to assist the Refco Fraud, e.g., the Grant Thornton financial statements, the public financial statements reviewed by PwC concerning the LBO and the IPO, etc. Mayer Brown is in a different situation, because the Plaintiffs essentially allege that throughout a lengthy and intensive relationship, Mayer Brown assisted Refco, in a variety of ways, in hiding Refco's true financial picture. But for purposes of the motion to dismiss, it is unnecessary and in fact inappropriate to pinpoint exactly the trigger date for when Mayer Brown's assistance proximately caused SPhinX/PlusFunds to place money with Refco. That is a question of fact — as is ordinarily the case for questions of probable cause.  *See, e.g., In re Sept. 11 Prop. Damage & Bus. Loss Litig.* 468 F.Supp.2d. 508, 531 (S.D.N.Y. 2006 ) ("the issue of proximate cause is fact-laden and inappropriate for a motion to dismiss").

### *Recommendation on Count XVII:*

*The Plaintiffs' claims against the Mayer Brown Defendants in Count XVII should be dismissed with prejudice to the extent they seek recovery of assets placed with Refco before the date of Mayer Brown's alleged wrongdoing. In all other respects, the Mayer Brown Defendants' motion to dismiss should be denied.*

### B. Count XVIII: Aiding and Abetting Breach of Fiduciary Duty (Against All  Mayer Brown Defendants)

The Plaintiffs allege that Refco owed and breached fiduciary duties to SPhinX by "causing customer assets at RCM to be converted and used in the furtherance of Refco's fraudulent scheme." FAC ¶ 1273. They further allege that the Mayer Brown Defendants substantially assisted the breach by "advising Refco in connection with its financial affairs; documenting transactions and transfers to RGHI in connection with the RGHI Receivable; concealing the RCHI Receivable; preparing, negotiating and documenting the RTLs; and advising Refco and preparing fraudulent public filings in connection with the LBO and IPO transactions, among other things." FAC ¶ 1278. Like the claims against PwC in this Count (and the similar claims against DBSI, Credit Suisse and BAS, and Grant

---

[10]*See* Private Actions Trust R and R at 17; PWC R and R at 23; DB R and R at 40-41; Bank Defendants R and R at 23-24; Grant Thornton R and R at 16-17.

Thornton), the Plaintiffs' claims for aiding and abetting breach of fiduciary duty should be dismissed because the Plaintiffs have not sufficiently alleged scienter. *See* PwC R and R at 25; DB R and R at 38; Bank Defendants R and R at 9; Grant Thornton R and R at 17-18. To sum up from those R and R's:

 *1. **Primary Wrong***: The Primary Wrongs R and R establishes that the Plaintiffs have sufficiently alleged that Refco had a fiduciary duty, based on a relationship of trust and confidence, to refrain from "self-dealing — use of the SMFF excess cash at RCM to fund Refco's various operations." Primary Wrongs R and R at 37. Thus, the Plaintiffs have adequately alleged a breach of fiduciary duty based on a relationship of trust and confidence, by upstreaming SPhinX assets at RCM and using them to fund Refco operations. But that is the only fiduciary duty adequately pled in regard to the Refco Fraud. See Primary Wrongs R and R at 42 ("The Plaintiffs have failed to sufficiently allege that Refco owed a fiduciary duty on the basis of a joint venture or operation within the zone of insolvency.").
.

 *2. **Knowledge:*** The Plaintiffs must show not only knowledge of wrongdoing but also that the wrongdoing was a breach of fiduciary duty owed to SPhinX/PlusFunds. *See Chemtex, LLC v. St. Anthony Enterprises, Inc.,* 490 F.Supp.2d 536, 546 (S.D.N.Y. 2007) (plaintiff must allege "knowledge of the violation" of the breach of fiduciary duty by the alleged aider and abetter). The Plaintiffs have not and cannot allege that the Mayer Brown Defendants knew that Refco had a relationship of trust and confidence with SPhinX/PlusFunds that was being breached by upstreaming the assets from RCM.[11]

 The Plaintiffs have alleged that Mayer Brown, in its work for RAI in Refco's effort to develop an investment platform, "became fully aware of the details contained in the SPhinX offering memoranda, including the customer-segregation requirements." FAC ¶ 564. But this allegation goes nowhere, because the underlying claim for breach of fiduciary duty in Count XVIII is *not* about the transfer of SMFF cash into an unsegregated account. Rather it is about Refco's upstreaming assets; and knowing about segregation requirements says nothing about knowing that Refco had a relationship of trust and confidence that was violated by upstreaming the cash and using it to fund Refco.[12]

----

 [11] The Plaintiffs' conclusory assertion that Mayer Brown "understood the fiduciary relationship" between Refco and SPhinX/PlusFunds cannot be credited under the standards of Rule 9(b), or, for that matter, under Rule 8. *See, e.g., Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 292-93 (2d Cir. 2006) (rejecting conclusory allegations that defendant had knowledge of breach); *Krause v. Forex Exch. Market, Inc.,* 356 F.Supp.2d 332, 339 (S.D.N.Y. 2005) (plaintiff must allege factual basis for aider-abetter's knowledge).

 [12] For that matter, awareness of segregation requirements does not establish knowledge that a transfer to an unsegregated account is itself a violation of a breach of fiduciary duty, because such transfers could be authorized, and there is no allegation that Mayer Brown knew

The Plaintiffs do allege with some particularity that Mayer Brown was aware of the upstreaming of customer assets from RCM. *See, e.g.,* FAC ¶¶ 542-45. But knowing about the upstreaming is not the same as knowing that the upstreaming was a violation of a breach of fiduciary duty stemming from a relationship of trust and confidence. As stated in the PwC R and R at 26:

> It must be remembered that the Plaintiffs must allege not only that PwC was aware of the upstreaming but also that PwC knew the upstreaming was wrongful. *See In re Sharp Intern. Corp.,* 403 F.3d 43, 49 (2nd Cir. 2005) (for a claim of aiding and abetting breach of fiduciary duty there must be an allegation that the defendant had "actual knowledge of the breach of duty"). Thus it is not enough to allege facts indicating that PwC knew that assets were being upstreamed out of RCM, because the transfers out of RCM could well have been consistent with Refco's duties to its customers. Indeed Judge Lynch held that at least as to the FX accounts, the upstreaming of the funds out of RCM did not violate any fiduciary duty because the Margin Annex permitted the upstreaming. *See Kirchner v. Bennett*, 648 F. Supp. 2d 525, 535 (S.D.N.Y. 2009). Similarly, the Private Actions Trust R and R, at 22, found that the Plaintiffs' allegations about upstreaming the FX deposits out of RCM did not establish a breach of fiduciary duty. The question then boils down to whether PwC, during the course of its advisory work at Refco, came to know *both*: 1) that assets were being upstreamed from RCM, *and* 2) that Refco had a relationship of trust and confidence with SPhinX/PlusFunds that would bar that self-dealing. In the absence of that second finding, PwC would have no reason to know that the upstreaming was wrongful — indeed it would be completely unfair to hold PwC liable for knowing about the bare fact of the upstreaming when two courts in this district have held that the upstreaming was not a wrong in itself.

As with PwC, there is nothing in the FAC to indicate that Mayer Brown knew that the upstreaming was a breach of Refco's duty pursuant to a relationship of trust and confidence with SPhinX/PlusFunds. It is implausible to believe that Mayer Brown, even with its immersion in Refco,

---

that the transfers to RCM were unauthorized. See the See the Butt R and R, dated August 4, 2010 at 12 (affirmed by Judge Rakoff):

> Ultimately, the Plaintiffs have not made the case that Butt knew, or consciously avoided, the fact that the transfers were unauthorized. This case is similar to *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 303 (2d Cir. 2006), in which the plaintiff complained that defendants obtained business opportunities from a person who was, at the time, violating his duty of loyalty to the plaintiff-competitor. The court found that there could be no aiding and abetting where the defendants did not know that the person with whom they were dealing was acting without authorization and violating his duty of loyalty to his employer. The court noted that the defendants were "not under any independent affirmative duty to call Design to verify what Davis had represented." Similarly in this case there is nothing that required Butt to put everything together and determine that the transfers were unauthorized.

would learn about the relationship of trust and confidence with SPhinX and PlusFunds that triggered a fiduciary duty on Refco's part.[13] It must be remembered that in the Private Actions Trust R and R at 21-22, the Special Master (affirmed by Judge Rakoff) found that Refco's custody of and waste of the FX customer accounts was *not* a breach of fiduciary duty. The Special Master reasoned that "[a]ny finding of a fiduciary duty to disclose the misuse and non-return of funds must fall short if the Margin Annex says that RCM could use the funds for any purpose." Id. It is true that in the Primary Wrongs R and R at 26-27, the Special Master found that the Margin Annex did not foreclose the Plaintiffs' claim that the excess cash was entitled to a right of segregation. But the narrow distinctions in how the Margin Annex applied or did not apply to funds at a Refco subsidiary were surely not within Mayer Brown's information base or scope of concern, even though it had access to a good deal of information about Refco.

Accordingly the Plaintiffs have not and cannot show the Mayer Brown Defendants' knowledge of Refco's breach of fiduciary duty based on a relationship of trust and confidence.[14]

**3. Substantial Assistance:** The Plaintiffs adequately allege substantial assistance. The discussion of substantial assistance under Count XVII, for aiding and abetting fraud, would be fully applicable to a claim for aiding and abetting a breach of fiduciary duty. The allegation that Mayer Brown propped up Refco by helping it to paint a false financial picture and continue to upstream assets is not dependent on the underlying wrong. *See* PWC R and R at 27; DB R and R at 39; Bank Defendants R and R at 19; Grant Thornton R and R at 18. But as with the claim for aiding and abetting fraud, the Plaintiffs' damages would be limited to the loss of assets placed with RCM *after* the date of the Mayer Brown misconduct that proximately caused SPhinX to place funds at Refco.

**Recommendation on Count XVIII:**

**The claims against the Mayer Brown Defendants in Count XVIII should be dismissed with prejudice because the Plaintiffs have not adequately alleged scienter.**

---

[13] The only other particularized allegation of Mayer Brown's knowledge of SPhinX/Plus Funds are the allegations about Mayer Brown's work on the Suffolk Transactions. *See* FAC ¶ 566. But these allegations have no relation to the claim in Count XVIII, which is concerned with upstreaming assets from RCM. The Plaintiffs do not attempt to explain how knowing about the Suffolk Transactions would cause Mayer Brown to know that Refco had a relationship of trust and confidence with SPhinX/PlusFunds.

[14] It should be noted that none of the additional allegations in the Proposed Second Amended Complaint has any bearing on Mayer Brown's knowledge of any fiduciary duty that Refco owed to SPhinX/PlusFunds. Thus, as determined in prior R and R's, leave to amend the scienter allegations would be futile. *See Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir. 1995) (leave to amend should be denied where the exercise is futile).

### C. Count XIX: Aiding and Abetting Conversion (Against All Mayer Brown Defendants)

The Plaintiffs allege that Refco converted customer assets held at RCM, and that the Mayer Brown Defendants substantially assisted the conversion by "advising Refco in connection with its financial affairs; documenting transactions and transfers to RGHI in connection with the RGHI Receivable; concealing the RCHI Receivable; preparing, negotiating and documenting the RTLs; and advising Refco and preparing fraudulent public filings in connection with the LBO and IPO transactions, among other things." FAC ¶ 1289. Like the claims against PwC in this Count (and the similar claims against DBSI, the Bank Defendants, and Grant Thornton), the Plaintiffs' claims for aiding and abetting conversion should be dismissed because the Plaintiffs have not sufficiently alleged scienter. *See* PwC R and R at 28-29;  DB R and R at 46-48; Bank Defendants R and R at 16-18; Grant Thornton R and R at 19. To sum up from those R and R's:

*1. Primary Wrong:* The Primary Wrongs R and R, at 41, establishes that the Plaintiffs have adequately alleged the primary wrong of conversion.

*2. Knowledge:* The Plaintiffs have not, and cannot, allege that Mayer Brown knew that the upstreaming of assets from RCM was conversion. Simply knowing that customer assets were being upstreamed is not enough to establish knowledge that the upstreaming was a conversion, as a finding of conversion was dependent on the applicability of the language in the Margin Annex allowing RCM to freely use customer accounts.  It is true that Mayer Brown was in a different position from these other Defendants, because, according to the Plaintiffs' allegations, Mayer Brown drafted Refco's customer agreements. FAC ¶ 526. Drawing inferences in favor of the Plaintiffs, it is plausible to conclude that Mayer Brown drafted the Margin Annex that was critical to Judge Lynch's conclusion that the upstreaming of FX accounts out of RCM was *not* a conversion.  It does not at all follow that Mayer Brown would know that upstreaming other customer accounts that were initially protected by a right of segregation *was* a conversion. First, Mayer Brown would have to know that the initial transfer into an unsegregated account was *unauthorized.*  And for reasons stated in the Butt R and R, see note 11, supra, there is nothing in the FAC to indicate that  Mayer Brown would know the transfers to RCM were unauthorized — the loss of the segregation protection could well have been a proper business decision to obtain interest on the cash. Second, Mayer Brown would have to know that the terms of the Margin Annex would apply differently depending on whether a right of segregation was violated; and there is no indication in the FAC that Mayer Brown either knew or could know that arcane fact at the time of the upstreaming of assets.[15] As stated in the prior R and R's, simply knowing that customer assets were being upstreamed is not enough to establish knowledge that the upstreaming was a conversion, "as the question of authorization is a

---

[15] See Primary Wrongs R and R at 40-41 (distinguishing between FX customer's cash which had not been converted due to the provisions of the Margin Annex, and SPhinX cash which had been converted, due to the violation of the right of segregation that occurred because the transfers were unauthorized).

murky one based on the Margin Annex, segregation requirements, and other factors" beyond the knowledge of Mayer Brown. DB R and R at 48; Bank Defendants R and R at 17; PwC R and R at 28; Grant Thornton R and R at 19.

### 3. Substantial Assistance:

The analysis of the substantial assistance factor under prior Counts is fully applicable here. The Plaintiffs have adequately alleged that the Mayer Brown Defendants substantially assisted the Refco Fraud. And part of that fraud was converting customer assets to allow Refco to continue to operate until the fraudsters could cash out. And the Plaintiffs have adequately alleged that they reasonably relied on public statements misrepresenting Refco's financial condition, on which Mayer Brown substantially assisted. But as with the other claims, principles of proximate cause would limit damages to losses of those assets placed with Refco after the date of Mayer Brown's wrongful conduct.

**Recommendation on Count XIX:**

**The claims against the Mayer Brown Defendants in Count XIX should be dismissed with prejudice because the Plaintiffs have not adequately alleged scienter.**

## D. Count XXVI: Interference With Contract/Prospective Contract (Against all Defendants).

The Plaintiffs allege that the Mayer Brown Defendants, along with other defendants, tortiously interfered with (1) the IMA between PlusFunds and SPhinX; (2) the contract between SPhinX and DPM, as evidenced by the Service Agreement; (3) the contract between SPhinX and each of its investors; and (4) the contract between SPhinX/PlusFunds and each of its portfolio investors, as evidenced by the DIMAs. In addition the Plaintiffs allege that the Mayer Brown Defendants and other defendants aided and abetted others' interference with the IMA the DIMAs, investor contracts with SPhinX and a prospective contract with Lehman Brothers.

In the Owens and Kavanagh R and R, dated October 21, 2010 and affirmed by Order of Judge Rakoff dated December 6, 2011, the Special Master analyzed the Plaintiffs' allegations in Count XXVI in detail. That analysis is fully applicable to the claims against the Mayer Brown Defendants in the same Count, as the allegations on their face apply in equal measure to each of the defendants named in the Count.[16] That discussion is incorporated here by reference. To quickly summarize, the Plaintiffs' claims in this Count should be dismissed against all of the Defendants, for the following reasons, among others stated in the Owens and Kavanagh R and R:

---

[16] See also Bank Defendants' R and R at 24, recommending dismissal of this identical Count against Chase.

1. With respect to the tortious interference claims, the Plaintiffs' allegations lack any plausible assertion that any of the Defendants acted with the intent to interfere with any of the contracts or potential contracts enumerated in the Count. *See, e.g., Wolff v. Rare Medium, Inc.*, 171 F.Supp.2d 354, 359 (S.D.N.Y.,2001) (to be liable for tortious interference, the defendant must have used wrongful means "to induce" a contracting party to breach a contract with the plaintiff).

2. With respect to the aiding and abetting claims, the Plaintiffs have failed to allege an underlying wrong of tortious interference. And with respect to interference with prospective contracts, the Plaintiffs failed to allege that any Defendant acted with malice, as is required by New York law. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400-02 (2d Cir.2006).


For these reasons and incorporating the analysis in the Owens and Kavanagh R and R, the Plaintiffs' claim against the Mayer Brown Defendants for aiding and abetting tortious interference should be dismissed with prejudice.


### Recommendation on Count XXVI:

**Count XXVI should be dismissed as to the Mayer Brown Defendants in its entirety with prejudice.**


## IV. Recommendations

1. The claims against the Mayer Brown Defendants in Count XVII should be dismissed with prejudice to the extent they seek recovery of assets placed with Refco before the date of Mayer Brown's wrongful conduct. In all other respects, the Defendants' motion to dismiss should be denied.

2. The claims against the Mayer Brown Defendants in Count XVIII should be dismissed with prejudice because the Plaintiffs have not adequately alleged scienter.

3. The claims against the Mayer Brown Defendants in Count XIX should be dismissed with prejudice because the Plaintiffs have not adequately alleged scienter.

4. The claims against the Mayer Brown Defendants in Count XXVI should be dismissed with prejudice.

Daniel J. Capra
Special Master

Dated: January 17, 2012
New York, New York