```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
In re REFCO INC. SECURITIES         :   07 MDL 1902 (JSR)
LITIGATION                          :
------------------------------------x
------------------------------------x
KENNETH M. KRYS, et al.,            :
                                    :
          Plaintiffs,               :   08 Civ. 3065 (JSR)
                                    :   08 Civ. 3086 (JSR)
     -v-                            :
                                    :   MEMORANDUM ORDER
CHRISTOPHER SUGRUE, et al.,         :
                                    :
          Defendants.               :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

On February 10, 2012, Special Master Daniel J. Capra issued a Report and Recommendation (the "RTL R&R") recommending that the Court grant the motions to dismiss of defendants Ingram Micro, Inc., its subsidiary CIM Ventures, Inc., Liberty Corner Capital Strategies LLC, and William T. Pigott. After the plaintiffs timely submitted their objections and defendants responded thereto, the Court considered the entire matter de novo, and, by "bottom-line" order dated July 17, 2012, granted defendants' motions to dismiss. This Memorandum sets forth the Court's reasoning for that ruling, and directs the entry of final judgment.

Defendants are members of what plaintiffs refer to as the "Round-Trip Loan Participants" ("RTLP"), i.e., third-parties who engaged in what plaintiffs call "round-trip loans" with

Refco.[1] These loans served to hide the existence and role of the Refco Group Holding Inc. ("RGHI") Receivable that Refco used to avoid writing off its trading losses, to hide expenses, to increase its total revenues though accruing interest income never paid by RGHI, and to disguise its overall insolvency.[2] The Complaint alleges that the round-trip loans worked as follows:

> In each of these RTL transactions, a Refco entity extended a loan to an unaffiliated third party [including the Defendants here], which in turn extended a loan to RGHI. RGHI used the loan to pay down the RGHI Receivable just before the end of the [Refco] reporting period so that Refco's financials appeared to show the satisfaction of the RGHI Receivable. Days after the end of the reporting period, the RTL's were unwound, and the RGHI Receivable reappeared on Refco's books.

First Amended Complaint ("FAC") ¶ 8. For participating in these transactions, the third-parties received the "spread" between the interest rates of the two "loans." Id. ¶ 235.

The Special Master recommended that plaintiffs' aiding and abetting fraud claim be dismissed because the FAC fails to plausibly allege that defendants knew they were aiding and abetting the Refco fraud. RTL R&R at 13. A New York common law claim for aiding and abetting fraud requires: (1) a primary wrong, (2) defendant's knowledge that the wrong existed, and (3)

---

[1] Defendants disagree with the characterization of the transactions as "round-trip" loans and would prefer the term "back to back" loans. The Court, like the Special Master, will use "round-trip loans" as a matter of convenience and consistency, without in any way forbidding counsel for both sides from continuing to waste time and money battling over this immaterial difference in terminology.

[2] This Memorandum Order presumes full familiarity with the so-called "Refco fraud." See First Amended Complaint ¶ 218.

substantial assistance by the defendant in carrying out the wrong. Armstrong v. McAlpin, 669 F.2d 79, 91 (2d Cir. 1983); Filler v. Hanvit Bank, 339 F. Supp. 2d 553, 557 (S.D.N.Y. 2004). The Court adopts the Special Master's analysis with respect to elements (1) and (3), but explains its own reasoning with respect to element (2).

Under New York law, an aiding and abetting fraud claim requires showing that the defendant had knowledge of the underlying wrongful conduct. See Kobleck v. LIT Am., Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996). Although there is a dispute in the case law over whether "conscious avoidance" or "actual knowledge" is required, the Court agrees with the Special Master that the difference is a "narrow one" and not material here. See RTL R&R at 8-9. Compare In re Agape Litig., 773 F. Supp. 2d 298, 309 (E.D.N.Y. 2011) (requiring plaintiff to plausibly allege "that a defendant made certain decisions specifically to avoid attributable knowledge of the underlying fraudulent scheme"), and Fraternity Fund v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007) (stating there is "no reason to spare a putative aider and abettor who consciously avoids confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor"), with JP Morgan Chase Bank v. Winnick, 406 F. Supp. 2d 247, 253 n.4 (S.D.N.Y 2005) (stating that "it is clear that actual knowledge, and not recklessness, is the controlling legal standard"), and In re WorldCom, Inc. Sec. Litig., 382 F.

3

Supp. 2d 549, 560 (S.D.N.Y. 2005) (holding that "pleading knowledge in the alternative with an allegation of reckless disregard is insufficient to allege a claim"). More importantly, it is clear that this standard is not satisfied by a mere allegation of constructive knowledge. Filler, 339 F. Supp. 2d at 557. Consequently, plaintiffs must allege that defendants had knowledge of the fraud above and beyond alleging that defendants were "on notice" to exercise reasonable care. Oster v. Kirschner, 77 A.D.3d 51, 56 (1st Dep't 2010) (citing Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 560-61 (2009)).

Here, the Special Master concluded that plaintiffs did not adequately allege defendants' knowledge of the fraud by alleging that defendants were aware of the first two "legs" of the round-trip loans, i.e., the loan from the Refco entity to defendants and the loan from defendants to RGHI. See RTL R&R at 9. The Special Master concluded that plaintiffs failed to allege that defendants were "directly" aware of the third leg of the transaction, i.e., that RGHI used the loaned money to pay down its receivable to Refco before Refco prepared its financial statements for that period, and, conversely, that the receivable reappeared on Refco's books after the statements were reported, through the unwinding of the loans. See RTL R&R at 9.

Plaintiffs object to the Special Master's conclusion, arguing that defendants knew they were aiding and abetting fraud because the loans were fraudulent on their face. Sphinx

4

Plaintiffs' Objection to Report and Recommendation of the Special Master on Motions to Dismiss Brought by the Ingram Defendants and the Liberty Corner Defendants dated Feb. 21, 2012 ("Pl. Obj.") at 1. Plaintiffs argue that there was no legitimate business purpose for making and unwinding these back-to-back, risk-free loans that straddled Refco's reporting periods. Therefore, plaintiffs argue, "the round-trip loans reeked of fraud, and this is sufficient to establish actual knowledge." Id. at 5.

In rejecting plaintiffs' arguments, the Special Master concluded that "[t]here is significant case law . . . establishing that the kind of back-to-back loans at issue in this case are not per se fraudulent." RTL R&R at 10. Specifically, the Special Master cited In re Duke Energy Corp. Sec. Litig., 282 F. Supp. 2d 158, 161 (S.D.N.Y. 2003), which, according to the Special Master, "stated that 'wash sales' and 'round-trip trading' are not necessarily illegal per se." RTL R&R at 10; see also JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 403 (S.D.N.Y. 2004) ("[D]isclosing the existence of reciprocal transactions does not amount to disclosure of the underlying fraud."); In re Flag Telecom Holdings, Ltd. Sec. Litig., 308 F. Supp. 2d 249, 261 (S.D.N.Y. 2004) (holding end-of-the-period swap transactions did not sufficiently indicate fraud, as "there is nothing inherently wrong with reciprocal transaction"). The Special Master concluded that there was no justification in the

5

instant case to "stray[] from the principle that back-to-back loans are not fraudulent on their face." RTL R&R at 10.

The Court agrees with the Special Master that plaintiffs have not pled factual allegations that plausibly suggest defendants had actual knowledge of the fraud. But the Court disagrees with the Special Master's reasoning in reaching that conclusion. Specifically, the "round-trip," or "back-to-back" loans at issue in the instant case are markedly different from the transactions evaluated in Duke Energy, Winnick, and Flag Telecom. All three cases involved sales transactions, not loans, and were ultimately decided on legal grounds separate from the per se illegality issue.

In Duke Energy, for example, the question was whether Duke's energy traders had engaged in improper "wash sales" for the purpose of artificially inflating the company's revenues. Duke Energy, 282 F. Supp. 2d at 159. Wash sales are simultaneous transactions involving the purchase and sale of energy at similar prices, times, and quantities. Id. The Court never determined whether the trades were "illegal per se," but rather held that, even assuming arguendo that the trades were illegal, the actual amounts traded were immaterial as a matter of law with respect to plaintiffs' securities fraud claim. Id. at 161.

In Winnick, plaintiffs alleged that the company in issue "engage[d] in improper reciprocal trades," defined as sales of telecom capacity that were executed either simultaneously with

6

repurchase or with an agreement to purchase as needed in the future. Winnick, 350 F. Supp. 2d at 396. As the court noted, the plaintiffs did not claim that the transactions were "intrinsically improper," nor did the plaintiffs subsequently contest the defendants' argument that there may have been a "legitimate business purpose" for the trades, id. at 398, and thus no issue of per se illegality was before the Court.

It should also be noted that, while the Winnick court did note in dictum that reciprocal transactions of telecom capacity "could serve the legitimate business purpose of allowing telecommunications companies to avoid unnecessary capital construction costs by engaging in mutual trades of capacity," Winnick, 350 F. Supp. 2d at 398, no such comparable legitimate purpose has been offered for the round-trip loans here.

This distinction also applies to the Flag Telecom case, where a telecommunications company issued a press release stating that 14% of its revenues were earned from other telecommunications companies through reciprocal transactions. Flag Telecom, 308 F. Supp. 2d at 260-61. Moreover, while the Court in Flag Telecom stated that there was nothing inherently wrong with these types of reciprocal transactions, id. at 261, the Court dismissed the claim, not on this ground, but because plaintiffs failed to properly plead scienter related to the underlying fraud, id. at 259.

Ultimately, the significant factual distinctions and differing legal postures between these three cases and the instant case render the Special Master's reliance on these cases inapposite. Nonetheless, the Court agrees with the Special Master's ultimate recommendation to dismiss the claims premised on the round-trip loans because the plaintiffs here failed to allege facts that plausibly suggest that the defendants here had knowledge of the fraud they are accused of aiding and abetting. Filler, 339 F. Supp. 2d at 557. As the Special Master noted, "the most the Plaintiffs have alleged is that the Defendants were aware of some red flags that might have raised some vague suspicion that Refco might have been up to something in these RTL transactions." RTL R&R at 10. Vague suspicions are far removed from reckless disregard, let alone actual knowledge.

Plaintiffs here do not allege any facts that reasonably imply that defendants had knowledge of either RGHI's use of the loan proceeds to pay down the massive receivable it owed to Refco, nor that this receivable was being used by Refco to disguise its insolvency. Defendants received guarantees on these loans from Refco. Moreover, as important customers of Refco, they would have been interested in learning that the firm they had entrusted their assets to and were receiving guarantees from was insolvent. RTL R&R at 9-10. On the face of the complaint here, there is simply no basis for a plausible inference that

8

defendants knew their loans were being used to hide Refco's insolvency.

In all other respects but those noted above, the Court finds itself in agreement with Special Master Capra's Report and Recommendation. Accordingly, the Court, reaffirming its own "bottom line" Order of July 17, 2012, dismisses, with prejudice, plaintiffs' claims of aiding and abetting fraud against Ingram Micro, Inc., CIM Ventures, Inc., Liberty Corner Capital Strategies LLC, and William T. Pigott, and directs the Clerk to enter judgment to this effect.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
July 28, 2012