UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------
IN RE REFCO INC. SECURITIES LITIGATION  :  07-MD-1902 (JSR)
------------------------------------------------------------------

This document relates to:
------------------------------------------------------------------
KENNETH M. KRYS, *ET AL.*,               :
                                         :
                    Plaintiffs,          :  08-CV-3086 (JSR)
         -against-                       :
                                         :
CHRISTOPHER SUGRUE, *ET AL.*,            :
                                         :
                    Defendants.          :
                                         :
------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF GRANT THORNTON LLP
AND MARK RAMLER'S MOTION TO STRIKE OPINIONS OF
PROPOSED EXPERTS MICHAEL GREENBERGER AND DAVID WALLACE**

WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

200 Park Avenue
New York, New York 10166
Ph: 212-294-6700
Fax: 212-294-4700

*Attorneys for Defendants
Grant Thornton LLP and Mark Ramler*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL HISTORY AND OPINIONS ADDRESSED .......................................................1

ARGUMENT ...................................................................................................................................7

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cameron v. City of New York*,
   598 F.3d 50, 62 (2d Cir. 2010) ................................................................................................5

*Campbell, Jr. v. Consolidated Rail Corp.*,
   No. 05 Civ. 1501 (GTS/GJD), 2009 WL 36890, at *6 (N.D.N.Y. Jan 6, 2009) ........................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579, 591, 113 S.Ct. 2786, 2795 (1993) .....................................................................7

*Lichtenstein v. Triarc Companies, Inc.*,
   No. 02 Civ. 2626 (JCF), 2004 WL 1087263, at *13 (S.D.N.Y. May 14, 2004) ........................7

*Price v. Fox Entertainment Group, Inc.*,
   499 F. Supp. 2d 382, 388 (S.D.N.Y. 2007) ..............................................................................7

*In re Rezulin Prods. Liability Litig.*,
   309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) ..............................................................................7

*Taylor v. Evans*,
   No. 94 Civ. 8425(CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) ..............................5

*United States v. Bilzerian*,
   926 F.2d 1285, 1294 (2d Cir. 1991) .........................................................................................9

*United States v. Caputo*,
   517 F.3d 935, 942 (7th Cir. 2008) ............................................................................................9

**RULES**

Fed. R. Evid. 702 ............................................................................................................................7

**OTHER AUTHORITIES**

4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*
   (Joseph M. McLaughlin ed., 2d ed. 1997) ...............................................................................7

**PRELIMINARY STATEMENT**

Plaintiffs have served two expert reports that are explicitly directed toward claims against Grant Thornton LLP and Mark Ramler that have already been dismissed with prejudice. This is an entirely improper attempt to make an end run around Judge Rakoff's prior rulings. These cases have been pending for more than four years; they should be moving forward, not backward. To enforce Judge Rakoff's prior orders in this case—and to avoid wasting further time and resources on these already-dismissed claims in expert discovery—Grant Thornton LLP and Mark Ramler (the "Grant Thornton Defendants") hereby move to strike the expert report and proposed opinions of Michael Greenberger (to the extent they relate to these defendants) and a portion of the report and proposed opinions of David Wallace, as set forth below.[1]

**PROCEDURAL HISTORY
AND OPINIONS ADDRESSED IN THIS MOTION**

The complaint in this case asserted three claims against the Grant Thornton Defendants: (i) aiding and abetting Refco's fraud in misrepresenting its financial condition to the public (referred to in this case as the "Refco fraud"); (ii) aiding and abetting Refco's breach of a fiduciary duty owed to SPhinX; and (iii) aiding and abetting Refco's conversion of funds belonging to the SPhinX Managed Futures Fund SPC ("SMFF"). The latter two claims were based in part on the idea that Refco owed SMFF a duty to keep its funds segregated even after they were transferred from Refco LLC to Refco Capital Markets, Ltd. ("RCM"). Plaintiffs alleged that Refco breached that duty of segregation and converted the assets by "upstreaming

---

[1] Both of the expert reports addressed in this motion are attached to the Declaration of James J. Capra, Jr. in Support of PricewaterhouseCoopers LLP's Motion To Strike, also filed today. To avoid unnecessary duplication, the Grant Thornton Defendants have not submitted a separate declaration and instead refer the Special Master's attention to the Capra Declaration.

SPhinX assets at RCM and using them to fund Refco operations." R&R on Mot. to Dismiss at 18-19 (Dec. 16, 2011) ("GT R&R"), *adopted* Mar. 28, 2012 [MDL Dkt. Nos. 1343 & 1450].

Judge Rakoff dismissed the two segregation-related claims with prejudice.  Adopting the Special Master's report and recommendation, Judge Rakoff held that if Refco had a duty to segregate SPhinX's assets, there was no allegation that the Grant Thornton Defendants knew about it.  *Id*.  With respect to the conversion claim, for example, the question whether Refco was authorized to use SMFF's cash "is a murky one";  it depends not only on segregation requirements but also on the account opening documents "and other factors well beyond the knowledge" of these defendants.  *Id*. (quotations marks and citations omitted).

Only one claim remains against the Grant Thornton Defendants—the claim for aiding and abetting "the Refco Fraud—specifically that Refco's financial condition was materially misstated to the public."  *Id*. at 6.  This claim is distinct from—and does not encompass—any breach of a duty of segregation.  As the Special Master has observed,

> Even if Refco had a duty to keep the SMFF cash in a segregated account, no claim for breach of that duty can be brought in the context of the Refco fraud. That is because there is no causal relationship between the violation of the segregation right and the Plaintiffs' claims for damages under the Refco fraud. With respect to the Refco fraud, the Plaintiffs are arguing that if they had known about Refco's financial condition, SPhinX would not have placed and held its property in accounts at Refco. *See, e.g.*, SAC ¶ 1223.  That is, segregation or not, they would simply not have done business with Refco if they had known the truth. These allegations show that the claim for a right of segregation is the gravamen of the ***SPhinX*** fraud, not the Refco fraud.

R&R on the Omnibus Issue of Primary Violations at 37 (Mar. 2, 2010), *adopted* May 4, 2011 ("Primary Violations R&R") [MDL Dkt. Nos. 579 & 1134] (emphasis in original).  And as for the "SPhinX fraud"—the allegedly wrongful transfer of SMFF cash from Refco LLC to RCM— the Court has repeatedly held that there is no basis for linking Grant Thornton to those events at all.  *See, e.g.*, GT R&R at 3 ("The complaint against these Defendants is grounded solely in the

Refco Fraud.  The Plaintiffs do not claim that GT or Ramler had anything to do with the unauthorized transfers of SMFF cash from protected accounts at Refco LLC to RCM."); R&R on the Omnibus Issue of Standing at 32 (Feb. 3, 2010), *adopted* March 31, 2010 [MDL Dkt. Nos. 550 & 622] (Count XVII "implicate[s] only the Refco fraud")

In their objection papers before Judge Rakoff, Plaintiffs have repeatedly tried to argue that the Grant Thornton Defendants *did* play a role in a the alleged breach of segregation—and, thus, that Plaintiffs should be allowed to proceed with claims against them based on Refco's alleged misuse, mistreatment, or upstreaming of SMFF's cash.  Again and again, however, Judge Rakoff has rejected those arguments.

First, Plaintiffs argued that they should be allowed to proceed with such claims based on Grant Thornton's work relating to Refco LLC's regulatory compliance.  *See, e.g.*, Obj. to R&R on the Omnibus Issue of Standing at 28 (Feb. 16, 2010) [MDL Dkt. No. 566] (arguing that Grant Thornton was "[i]nvolved in the SPhinX Fraud" because it "certi[fied] that Refco LLC was in full compliance with CFTC segregation requirements" and "had read SPhinX offering memoranda").  Plaintiffs made this argument again just a few months ago, in their objection to the R&R recommending dismissal of the claims against Grant Thornton based on conversion and breach of fiduciary duty:

> Grant Thornton and Ramler knew that funds deposited at Refco LLC, a futures commission merchant regulated by the Commodity Futures Trading Commission ("CFTC"), must remain segregated from Refco's proprietary funds. Indeed, Refco hired Grant Thornton pursuant to 17 C.F.R. § 1.16(d)(1) specifically "to test and certify whether Refco's customer and proprietary funds were properly segregated and safeguarded" at Refco LLC.
>
> * * *
>
> It is thus beyond question that Grant Thornton and Ramler knew customers' cash at Refco LLC, and SMFF's cash in particular, must remain segregated.  And an obligation to segregate funds gives rise to fiduciary duties. . . .

3

>Grant Thornton and Ramler knew Refco LLC violated its fiduciary duties because it reviewed account statements showing large amounts of SMFF's cash being moved from segregated accounts into accounts at RCM that Grant Thornton and Ramler knew were commingled and used to fund Refco's internal treasury.

Pl. Lim. Obj. to MTD R&R at 17-18 (Jan. 10, 2012) ("MTD Obj.") [MDL Dkt. No. 1356]; *id*. at 18-19 (same argument relating to conversion claim).  **Each time, Judge Rakoff rejected those arguments.**  See Order, Mar. 28, 2012 [MDL Dkt. No. 1450] (adopting the Special Master's R&R on Grant Thornton's motion to dismiss "in full as if incorporated herein"); *see also* Order, Mar. 31, 2010 [MDL Dkt. No. 622] (rejecting Plaintiffs' objection to the Standing R&R and treating the claims against Grant Thornton LLP as relating entirely to the Refco fraud).

Second, Plaintiffs have pointed to a disagreement between Mark Ramler and Refco about the disclosure of the "Suffolk Loans."  Refco made these loans in 2005 to corporate entities associated with certain PlusFunds insiders, on profitable terms.  Ramler believed that under generally accepted accounting principles, these loans should be disclosed in Refco's quarterly financial statements because of certain rights Refco acquired under the loan documents.  Ultimately, Refco disagreed and refused to disclose the loans.  Plaintiffs have argued that by failing to insist on the disclosure, the Grant Thornton Defendants "substantially assisted PwC's and the corrupt Refco insiders' concealment of the Suffolk Loans" and, in turn, "contributed to the so-called 'SPhinX Fraud.'"  Pl. Resp. to Objs. to R&R on the Omnibus Issue of Standing at 30 n.12 (Feb. 26, 2010) [MDL Dkt. No. 575] (arguing that "[f]or this additional reason, the Special Master erred in recommending dismissal of Grant Thornton on the grounds of standing"); *see also* MTD Obj. at 10-11 (arguing that "Grant Thornton and Ramler concealed the Suffolk Loans," which were "a disguised attempt by Refco to . . . gain control over SMFF's cash").  **But again, Judge Rakoff rejected those arguments.**  *See, e.g.*, Order, Mar. 31, 2010 (rejecting Plaintiffs' position in connection with the Standing R&R); Order, Mar. 28, 2012

(adopting R&R on Grant Thornton's motion to dismiss after considering the Plaintiffs' objections and "consider[ing] the entire matter de novo").

Plaintiffs have now produced two expert reports that raise the same, already-rejected arguments yet again. Proposed accounting expert David Wallace devotes an entire section of his report to Grant Thornton's CFTC work, concluding that the Grant Thornton Defendants "Aided and Abetted Refco's Misuse and Misappropriation of SPhinX/SMFF's Excess Cash." *See* Corrected Expert Report of Findings & Opinions of R. David Wallace, at Part VI.D (pp. 93-105) (July 20, 2012) ("Wallace Report"). Wallace also opines that the Grant Thornton Defendants "substantially assisted Refco and PwC in concealment of disclosing the 'Suffolk Loans.'" *Id*. at Part VI.F (pp. 109-11). His summary of opinions (at 10-13) includes the following, each of which attempts to link Grant Thornton and Mark Ramler in some way to an asserted breach of a duty to segregate:

- "GT and Ramler knew[2] Refco was the subject of repeated CFTC regulatory actions, including actions for alleged violations of CFTC requirements for the care and protection of customer-segregated funds."

- "GT and Ramler knew that SMFF's cash was initially placed with Refco LLC, Refco's regulated Futures Commission Merchant subsidiary, and that SMFF's cash was required to always be held in customer-segregated accounts by Refco LLC."

---

[2] All these opinions suffer from other obvious flaws as well, not the least of which is that they purport to say what these defendants "knew"—an entirely improper subject for an expert witness. *See Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (expert cannot substitute his judgment for the jury's); *Taylor v. Evans*, No. 94 Civ. 8425(CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) ("musings as to defendants' motivations would not be admissible if given by any witness—lay or expert"). Indeed, Plaintiffs' expert reports in general are riddled with improper conclusions of law and fact that encroach on the domain of the judge and jury. On that basis, among others, the Grant Thornton Defendants reserve their right to file a separate motion at the appropriate time to preclude Mr. Wallace (along with Mr. Greenberger and Plaintiffs' other experts) from testifying at trial.

5

- "GT and Ramler knew that SMFF's 'excess' cash was transferred without proper authorization from customer-segregated accounts at Refco LLC to non-segregated customer accounts at RCM."

- "GT and Ramler knew that SMFF's excess cash at RCM in unprotected non-segregated accounts was periodically transferred to other Refco entities (principally RGF and RCC) and to fund Refco's operations and also used for other fraudulent purposes."

- "GT and Ramler assisted Refco in not requiring Related Party GAAP disclosures in Refco's May 31, 2005 10-Q financial statements of the $208 million of Suffolk loans made by RCC in 2005."

- "GT and Ramler's audits of . . . Refco LLC were not performed in accordance with GAAS and PCAOB standards . . . ."

Similarly, the report of Michael Greenberger—in its entirety—relates to segregation requirements under Commodity Exchange Act ("CEA") provisions and CFTC regulations. *See* Expert Report of I. Michael Greenberger (June 29, 2012) ("Greenberger Report"). He opines at length that Refco had a duty to segregate the SMFF assets, both before and after they were transferred to RCM, and that Grant Thornton should have known about it. *See*, *e.g.*, *id*. at 2, 12-27, 35-44, 48-58. He also opines that the Grant Thornton Defendants "violated, in their own right, CEA provisions and CFTC regulations relating to their auditing of the futures commission merchant, Refco LLC, in failing to perform audit procedures to detect and to properly report to the CFTC and [National Futures Association] or otherwise detect, inter alia, the lack of customer segregation acknowledgement letters or Rule 30.7 letters that [RCM] should have forwarded to Refco LLC upon the transfer of plaintiffs' Refco LLC funds to [RCM]." *Id*. at 2; *see also id.* at 27-31. Again, all these opinions relate to an alleged duty to segregate, which in turn relates to claims against Grant Thornton that either were never part of this case at all or have been dismissed with prejudice.

6

**ARGUMENT**

Rule 702 permits expert testimony only if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The helpfulness requirement of Rule 702 goes beyond "mere relevance . . . because it also requires expert testimony to have a valid connection to the pertinent inquiry." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03[1] (Joseph M. McLaughlin ed., 2d ed. 1997)). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 2795 (1993) (citation omitted).

For this reason, when a claim has been dismissed or is otherwise removed from consideration, courts do not hesitate to exclude expert testimony supporting that claim. *See Price v. Fox Entertainment Group, Inc.*, 499 F. Supp. 2d 382, 388 (S.D.N.Y. 2007) (holding that expert testimony on striking similarity was no longer necessary in case after granting summary judgment against the striking similarity claim); *Lichtenstein v. Triarc Companies, Inc.*, No. 02 Civ. 2626 (JCF), 2004 WL 1087263, at *13 (S.D.N.Y. May 14, 2004) (holding that expert analysis on pay disparity was no longer relevant because pay disparity claim was dismissed); *see also Campbell, Jr. v. Consolidated Rail Corp.*, No. 05 Civ. 1501 (GTS/GJD), 2009 WL 36890, at *6 (N.D.N.Y. Jan 6, 2009) (generally permissible expert testimony precluded in part to the extent that it concerned claims already withdrawn by plaintiff).

The Wallace and Greenberger opinions discussed above must be stricken for precisely that reason; in respect to Grant Thornton, these opinions all relate to claims that have been dismissed from this case with prejudice. Indeed, Greenberger recognizes this himself. He states that in his opinion, the "[v]iolations" of segregation discussed in his report "constitute primary violations of a knowing fraud, breach of fiduciary duty and trust, and conversion in aid of the

7

plaintiffs' aiding and abetting counts in this case." Greenberger Report at 2 (summarizing opinions). He also makes clear that the "knowing fraud" he is referring to here is the ***SPhinX*** fraud, not the Refco fraud. *Id*. at 59 (relevant fraud is "that Refco wrongfully engineered the transfer of SMFF excess cash from Refco LLC to RCM, and that it did so with fraudulent intent") (quoting Primary Violations R&R at 21, 24). From Grant Thornton's perspective, none of these claims is still in the case. *See* Greenberger Report at 62-63.

As the Special Master concluded, the Grant Thornton Defendants lacked "the requisite knowledge with regard to illegally transferring the SMFF segregated funds at Refco LLC to the unprotected accounts at RCM." *Id*. at 62-63 (citing GT R&R at 3). For precisely this reason, the claims for aiding and abetting breach of fiduciary duty and conversion against the Grant Thornton Defendants were dismissed outright, with prejudice. Order, Mar. 27, 2012 (GT R&R is "adopt[ed] . . . in full as if incorporated herein"). As for the other claim Greenberger describes—aiding and abetting the allegedly wrongful transfer of SMFF cash from Refco LLC to RCM—the Court has repeatedly recognized that the Grant Thornton Defendants were never sued on that basis in the first place. *See supra* at 2-3. And if the Grant Thornton Defendants ***had*** been sued for aiding and abetting the SPhinX fraud, the same lack of scienter that led to the dismissal of the other claims would have required dismissal of that claim as well.

The only claim remaining against the Grant Thornton Defendants is for aiding and abetting the Refco fraud. Under the Court's previous orders, that claim is based on the allegations that "Refco's financial condition was materially misstated to the public" (GT R&R at 6) and that the Grant Thornton Defendants substantially assisted that fraud by providing unqualified audit opinions on Refco's consolidated financial statements (*id*. at 15). The proposed expert opinions discussed above—that Refco had a duty to segregate SMFF's assets,

8

that the Grant Thornton Defendants knew or should have known it, that they provided substantial assistance, and that they "violated" CEA and CFTC regulations relating to separate work performed for Refco LLC (Greenberger Report at 2)—all do nothing to advance Plaintiffs' remaining claim against Grant Thornton. As the Court has already observed, "[e]ven if Refco had a duty to keep the SMFF cash in a segregated account, no claim for breach of that duty can be brought in the context of the Refco fraud. . . . [T]he claim for a right of segregation is the gravamen of the *SPhinX* fraud, not the Refco fraud." Primary Violations R&R at 37 (emphasis in original).

Not surprisingly, Plaintiffs and their experts apparently think Judge Rakoff was wrong to dismiss the segregation-related claims against the Grant Thornton Defendants. In fact, the report of Michael Greenberger—who is himself a lawyer—devotes two pages to explaining why, in his opinion, the Court's rationale was incorrect as a matter of law. Greenberger Report at 63-65. Setting aside for the moment whether this is a proper subject for expert testimony,[3] Greenberger's proposed opinions demonstrate how little regard Plaintiffs have for the Court's rulings in this case.

Whether Plaintiffs and their experts agree with them or not, the Court's prior rulings are clear. On recommendations from the Special Master, Judge Rakoff has already dismissed—with prejudice—any claim against the Grant Thornton Defendants based on the matters in the Greenberger Report and in Parts VI.D and VI.F of the Wallace Report. As discussed above, these very same arguments were the subject of Plaintiffs' objection papers at the pleading stage, and Judge Rakoff squarely rejected them. Plaintiffs cannot be permitted to evade the Court's

---

[3] Obviously, "[t]he only legal expert in a federal courtroom is the judge." *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). If this motion to strike is denied, the Grant Thornton Defendants will move to exclude Greenberger's opinions from trial on this basis, among others.

prior rulings through their expert reports. Moreover, to require the Grant Thornton Defendants to explore these proposed opinions further in discovery would be an extraordinary waste of time and resources.

## CONCLUSION

For all the foregoing reasons, the Grant Thornton Defendants respectfully request that this Court (i) strike the report and proposed opinions of Michael Greenberger to the extent they relate to the Grant Thornton Defendants,[4] and preclude Plaintiffs from offering Greenberger's testimony against the Grant Thornton Defendants in any fashion; (ii) strike Parts VI.D and VI. F of the report of David Wallace and the proposed opinions therein (and any other portions of the report and attachments that relate to those opinions) and preclude Plaintiffs from offering those opinions against the Grant Thornton Defendants in any fashion; (iii) grant such other and further relief as this Court deems just and proper.

---

[4] A few portions of the Greenberger Report relate specifically to defendant PwC. But like the opinions discussed herein, those opinions relate to claims against PwC that have been dismissed with prejudice. They are the subject of a separate motion by PwC, also filed today.

Dated: August 7, 2012
      Chicago, Illinois

*Of Counsel:*

Kenneth Cunningham
Tracy W. Berry
GRANT THORNTON LLP
175 West Jackson, 20th Floor
Chicago, Illinois 60604
Ph: 312-856-0001
Fax: 312-565-3473

Respectfully submitted,

WINSTON & STRAWN LLP

      /s/
By:  Linda T. Coberly

Bruce R. Braun (bbraun@winston.com)
Catherine W. Joyce (cjoyce@winston.com)
Linda T. Coberly (lcoberly@winston.com)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

Luke A. Connelly (lconnelly@winston.com)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Ph: 212-294-6700
Fax: 212-294-4700

*Attorneys for Grant Thornton LLP*
*and Mark Ramler*