UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In re REFCO INC. SECURITIES LITIGATION                    Case No. 07-MD-1902 (JSR)

------------------------------------------------------------------X

This Document Relates to:

------------------------------------------------------------------X

KENNETH M. KRYS, et al.,                          :    Case No. 08-CV-3065 (JSR)
                                   Plaintiffs,    :    Case No. 08-CV-3086 (JSR)
                                                  :
                -against-                          :
                                                  :
CHRISTOPHER SUGRUE, et al.,                       :
                                   Defendants.    :
                                                  :
------------------------------------------------------------------X

KENNETH M. KRYS, et al.,                          :
                                                  :    Case No. 10-CV-3594 (JSR)
                                   Plaintiffs,    :
                                                  :
                -against-                          :
                                                  :
DEUTSCHE BANK SECURITIES INC., et al.,            :
                                                  :
                                   Defendants.    :
                                                  :
------------------------------------------------------------------X

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## THE MOVING DEFENDANTS' RULE 56.1 STATEMENT

In accordance with Rule 56.1 of this Court's Civil Rules, Plaintiffs Kenneth Krys and

Margot MacInnis, the Joint Official Liquidators of the SPhinX Funds, and The Harbour Trust

Company, as SPhinX Trustee, respectfully submit this Response in Opposition to the Moving

Defendants' statement of material facts.   The facts admitted herein are admitted solely for

purposes of the Moving Defendants' Motion and not for any other purpose.   Plaintiffs reserve the

right to dispute any such facts at trial or otherwise.

1

1.  Plaintiffs dispute the facts stated in Paragraph 1 of the Moving Defendants' Rule 56.1 Statement.  Each of the RCM Accounts referred to in Paragraph 1 was denominated a "USD Margin Account."  *See* Simpson Decl. Ex. P (sample account statement). SMFF also held foreign currency exchange trading, or "FX," accounts at RCM.  *See* Simpson Decl. Ex. Q (sample FX account statement).

2.  For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 2 of the Moving Defendants' Rule 56.1 Statement.

3.  For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 3 of the Moving Defendants' Rule 56.1 Statement.

4.  For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 4 of the Moving Defendants' Rule 56.1 Statement.

5.  For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 5 of the Moving Defendants' Rule 56.1 Statement.

6.  For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 6 of the Moving Defendants' Rule 56.1 Statement.

7.  For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 7 of the Moving Defendants' Rule 56.1 Statement.

8.  For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 8 of the Moving Defendants' Rule 56.1 Statement.  However, the decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs Memorandum in Opposition to the Moving Defendants' Motion.

9.  For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 9 of the Moving Defendants' Rule 56.1 Statement.  However, the

60719137_1

decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs Memorandum in Opposition to the Moving Defendants' Motion.

10. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 10 of the Moving Defendants' Rule 56.1 Statement.

11. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 11 of the Moving Defendants' Rule 56.1 Statement. However, the decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs' Memorandum in Opposition to the Moving Defendants' Motion.

12. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 12 of the Moving Defendants' Rule 56.1 Statement.

13. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 13 of the Moving Defendants' Rule 56.1 Statement. However, the decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs' Memorandum in Opposition to the Moving Defendants' Motion.

14. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 14 of the Moving Defendants' Rule 56.1 Statement.

15. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 15 of the Moving Defendants' Rule 56.1 Statement. However, the decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs' Memorandum in Opposition to the Moving Defendants' Motion.

16. Plaintiffs dispute the facts stated in Paragraph 15 of the Moving Defendants' Rule 56.1 Statement. Refco LLC was required to, and did, publicly file Grant Thornton LLP's independent accountant's opinions with the Commodity Futures Trading

Commission ("CFTC") and the National Futures Association ("NFA") for the fiscal years 2003 and 2004. *See* 17 C.F.R. §§ 1.10(g)(5), 1.16 (Apr. 1, 2003); Simpson Decl. Exs. N, O.

17. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 17 of the Moving Defendants' Rule 56.1 Statement.  However, the decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs' Memorandum in Opposition to the Moving Defendants' Motion.

18. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 18 of the Moving Defendants' Rule 56.1 Statement.  However, the decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs' Memorandum in Opposition to the Moving Defendants' Motion.

19. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 19 of the Moving Defendants' Rule 56.1 Statement.

20. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 20 of the Moving Defendants' Rule 56.1 Statement.  However, the decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs' Memorandum in Opposition to the Moving Defendants' Motion.

21. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 21 of the Moving Defendants' Rule 56.1 Statement.  However, the decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs' Memorandum in Opposition to the Moving Defendants' Motion.

22. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 22 of the Moving Defendants' Rule 56.1 Statement.

23. For purposes of the Moving Defendants' Motion, Plaintiffs do not dispute the facts stated in Paragraph 23 of the Moving Defendants' Rule 56.1 Statement.  However, the decrease in balances at RCM is irrelevant for the reasons stated in Plaintiffs' Memorandum in Opposition to the Moving Defendants' Motion.

### ADDITIONAL MATERIAL FACTS

24. PlusFunds formed a risk committee that met every Wednesday to review detailed reports identifying various exposures and amounts at risk in SMFF's various accounts.  *See, e.g.*, Dep. of Gabriel Bousbib, November 28, 2007, at 76; March 22, 2012, at 379; June 11, 2012, at 854-55 (attached as Ex. C to Simpson Decl.); Dep. of Christopher Rose, February 10, 2006, at 60-61; May 31, 2012, at 71-73; June 1, 2012, at 457 (attached as Ex. D to Simpson Decl.); Dep. of Chris Aliprandi, February 28, 2012, at 80-82 (attached as Ex. E to Simpson Decl.).  The risk committee (and every other decision-maker at PlusFunds) at all times believed that SMFF's excess cash at Refco was held in customer-segregated accounts.  *See, e.g.*, Bousbib Dep., March 23, 2012, at 472-74 (attached as Ex. C to Simpson Decl.); Rose Dep., February 10, 2006, at 214-15; March 3, 2006, at 304-05 (attached as Ex. D to Simpson Decl.); Aliprandi Dep., February 28, 2012, at 106-107, 145-47, 211-12; February 29, 2012, 422-23 (attached as Ex. E to Simpson Decl.); Dep. of Tia Lowe, March 2, 2012, 256, 259 (attached as Ex. F to Simpson Decl.); Dep. of Michael Mikytuck, June 12, 2012, at 83 (attached as Ex. G to Simpson Decl.).  Accordingly, the weekly risk reports recorded exposure to Refco as a counterparty for those amounts at risk in over-the-counter ("OTC") transactions where Refco served as the counterparty—a *de minimus* amount in comparison with the hundreds of millions of dollars deposited with Refco.  *See*

60719137_1

Bousbib Dep., November 28, 2007, at 72-76; March 23, 2012, at 472-74 (attached as Ex. C to Simpson Decl.); Rose Dep., Jun 1, 2012, at 457 (attached as Ex. D to Simpson Decl.)

25. As PlusFunds' OTC exposure to Refco increased to a non-trivial level in 2003, the risk committee became concerned about SPhinX's exposure to Refco, a party without a credit rating.  *See* Ex. 4691 (attached as Ex. H to Simpson Decl.), Bousbib Dep., March 23, 2012, at 440-442 (attached as Ex. C to Simpson Decl.); Rose Dep., June 1, 2012, at 472-73 (attached as Ex. D to Simpson Decl.).  Although PlusFunds' credit policy provided for PlusFunds to conduct a shadow rating of counterparties without a credit rating, PlusFunds elected not to conduct a shadow rating and obtained a copy of Refco's Fitch credit rating for purposes of establishing credit exposure limits relating to Refco in August 2003.  *See* Ex. 4407 (attached as Ex. I to Simpson Decl.); Bousbib Dep., March 23, 2012, at 443 (attached as Ex. C to Simpson Decl.); Lowe Dep., March 2, 2012, at 231-32 (attached as Ex. F to Simpson Decl.).

26. Chris Rose, PlusFunds' COO, testified that PlusFunds was always uncomfortable relying solely on credit ratings in connection with its formulation of credit risk exposure to counterparties.  Rose testified that he searched online resources to estimate Refco's likelihood of default on its obligations.  He testified that there were numerous reports and financial data available online to project such risk, and that such analyses are within his expertise.  *See* Rose Dep., June 1, 2012, at 512-13 (attached as Ex. D to Simpson Decl.).

27. PlusFunds' director of operations, Tia Lowe, testified that she obtained and reviewed "Refco's audited financial statements."  *See* Lowe Dep., March 2, 2012, at 239-40,

245-46 (attached as Ex. F to Simpson Decl.).  She testified that she believed Refco mailed customers, including PlusFunds, copies of Refco's audited financial statements.  *See id.* at 240.  This testimony is supported by the testimony of Refco witnesses, who testified that Refco regularly sent its financial statements to customers.  *See, e.g.*, Dep. of Santo Maggio, Dec. 14, 2009, at 106-07 (attached as Ex. K to Simpson Decl.).

28. Lowe specifically recalled an instance where a potential SPhinX investor requested additional information regarding Refco.  She said the investor was unfamiliar with Refco and wanted information.  Lowe testified that she requested Refco's financial statements from Refco, and her interest was piqued when Refco did not readily provide the financial statement.  When she received it, she reviewed Refco's balance sheet and statement of income to see if anything appeared unusual.  *See* Lowe Dep., March 26, 2012, at 459-63 (attached as Ex. F to Simpson Decl.).  She specifically recalled that Grant Thornton was Refco's auditor, and she testified that she was aware of this fact because she saw Grant Thornton's audit opinion appended to the financial statement.  *See id*. at 457-59.  After reviewing the financial statements, Lowe concluded that everything appeared in order, and she forwarded the financial statement to the investor.  *See id.* at 463-65.

29. PlusFunds agents testified that they were aware of Refco's LBO transaction and took comfort in the fact that Thomas H. Lee, a prominent private equity firm, was acquiring a majority interest in Refco.  *See* Bousbib Dep., June 11, 2012, at 938-39 (attached as Ex. C to Simpson Decl.); Mikytuck Dep. at 91 (attached as Ex. G to

60719137_1

Simpson Decl.); Dep. of Diego Winegardner, Feb. 9, 2012, at 221-22 (attached as Ex. L to Simpson Decl.).

30. PlusFunds' CEO, Gabriel Bousbib, testified that in the summer of 2004, Chris Sugrue showed him a copy of Refco's July 22, 2004 Confidential Offering Circular issued in connection with the LBO.  *See* Bousbib Dep., June 11, 2012, at 935 (attached as Ex. C to Simpson Decl.).  He testified that he did not read the entire document but spent possibly 30 minutes "browsing" the Circular.  *See id.* at 945.  He specifically recalled language at page 10 of the Circular describing Thomas H. Lee's investment in Refco. *See id.* at 937-38.  Bousbib testified that Sugrue was close to Refco and showed him the Circular to reassure Bousbib regarding the Funds' relationship with Refco and demonstrate Refco's strength to Bousbib.  Bousbib recalled that Sugrue showed him the document in July or August 2004, close to the time Kavanagh invited Sugrue and Bousbib to his home on Cape Cod in an effort to reconcile Sugrue and Bousbib.  *See id*. at 935-36.  Emails establish that Bousbib went to visit Kavanagh on Cape Cod on August 16, 2004.  *See* Ex. 4985 (attached as Ex. M to Simpson Decl.).

31. Bousbib testified that he "definitely" discussed the LBO with PlusFunds CFO Chris Aliprandi and head of sales Mike Mikytuck, and that he might have discussed it with Rose.  *See* Bousbib Dep., June 11, 2012, at 939-40, 1001-02 (attached as Ex. C to Simpson Decl.).  Rose recalled a conversation with Aliprandi regarding the LBO and believed that Aliprandi had reviewed LBO documentation.  Rose recalled that Bousbib may have been part of his conversation with Aliprandi regarding Refco's LBO, and he testified that it could have been Bousbib who had reviewed the LBO

documentation. *See* Rose Dep., June 1, 2012, at 461-64 (attached as Ex. D to Simpson Decl.).

32. PlusFunds director Diego Winegardner testified that he became aware of Thomas H. Lee's investment in Refco and reviewed Refco's S-1 in connection with the IPO. *See* Winegardner Dep., February 10, 2012, at 607-08 (attached as Ex. L to Simpson Decl.). Winegardner testified that he accessed the S-1 online, possibly through EDGAR. *See id.* at 607. He stated that he was interested because Refco was a company he knew and dealt with, and he was interested to see Refco's valuation. *See id.*

33. SMFF maintained accounts for holding cash in the names of its segregated portfolios at RCM. *See* Krys Decl. ¶ 5.

34. Between August 5, 2004, and October 10, 2004, SMFF deposited a total of $399,993,000 into these accounts at RCM. *See* Capra Decl. Exhibit 1, Krys Report on Cash Balances, ¶¶ 2.3, 4.5.

35. Between August 11, 2005, and October 10, 2004, SMFF deposited $60,600,000 into these accounts at RCM. *See id.*

36. Permal was a large investor in the SPhinX Funds through an RAI-advised feeder fund, Refco Offshore. Permal invested approximately $190 million in Refco Offshore, and indirectly in SMFF, between March and May 2004. Permal redeemed its investment in the Refco Offshore in stages with approximately $65m redeemed in June 2005 and the remaining $133m redeemed in August 2005. *See* Krys Decl. ¶12 ; Expert Report of Joan Lipton at 12 (attached as Ex. A to Simpson Decl.); Dep. of Kenneth Krys, August 16, 2012, 19-20 (attached as Ex. B to Simpson Decl.).

37. The Joint Official Liquidators have traced withdrawals in the period June to August 2005 of approximately $190 million from SMFF's account at RCM to Permal's redemption of its investment in the Refco Offshore.  *See* Krys Decl. ¶¶ 11, 12; Expert Report of Joan Lipton at 12 (attached as Ex. A to Simpson Decl.); Dep. of Kenneth Krys, August 16, 2012, 19-20 (attached as Ex. B to Simpson Decl.).

Dated:   New York, New York
         August 23, 2012

                                        **BROWN RUDNICK LLP**

                                        By:   /s David J. Molton
                                                David J. Molton
                                                Andrew Dash
                                                Mason Simpson

                                        Seven Times Square
                                        New York, New York 10036
                                        Tel: (212) 209-4800
                                        Fax: (212) 209-4801
                                        dmolton@brownrudnick.com
                                        adash@brownrudnick.com
                                        msimpson@brownrudnick.com

                                                  - and -

                                        Leo R. Beus (admitted *pro hac hice*)
                                        Dennis K. Blackhurst (admitted *pro hac hice*)
                                        BEUS GILBERT PLLC
                                        4800 North Scottsdale Road, Suite 6000
                                        Scottsdale, Arizona 85251
                                        Telephone: (480) 429-3000
                                        Facsimile: (480) 429-3100
                                        lbeus@beusgilbert.com
                                        dblackhurst@beusgilbert.com

                                        *Attorneys for Plaintiffs*