UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE REFCO INC. SECURITIES LITIGATION | 07-MD-1902 (JSR) |
| This document relates to: | |
| KENNETH M. KRYS, *ET AL.*, | |
| Plaintiffs, | 08-CV-3086 (JSR) |
| -against- | |
| CHRISTOPHER SUGRUE, *ET AL.*, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF GRANT THORNTON LLP AND MARK RAMLER'S
MOTION TO STRIKE OPINIONS OF PROPOSED EXPERTS
MICHAEL GREENBERGER AND DAVID WALLACE**

WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

200 Park Avenue
New York, New York 10166
Ph: 212-294-6700
Fax: 212-294-4700

*Attorneys for Defendants
Grant Thornton LLP and Mark Ramler*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

I.   Plaintiffs cannot avoid this narrow motion by complaining that defense experts and fact discovery have touched on the issue of segregation. .................................2

II.  Plaintiffs cannot avoid the Court's previous orders by blurring settled distinctions or by dressing up their old allegations as a new legal theory. ..........................4

CONCLUSION ................................................................................................................................8

**PRELIMINARY STATEMENT**

Plaintiffs' response brief is a study in misdirection.  Their experts opine that the Grant Thornton Defendants "knew" SMFF's excess cash was swept to unsegregated accounts "without proper authorization," and that they "'violated, in their own right, CEA provisions and CFTC regulations relating to their auditing of the futures commission merchant, Refco LLC.'" *See* Mem. at 5-9.  We have moved to strike these opinions (among others) because they relate to claims that have already been dismissed with prejudice.  In response, Plaintiffs pretend that these opinions do not exist.  Not surprisingly, then, neither of the main arguments in their brief succeeds in linking these opinions with Plaintiffs' sole remaining claim against these defendants.

First, Plaintiffs argue that segregation is still part of this case because the ***defendants*** raised it—both in fact discovery and in their expert reports.  This misses the point.  The Grant Thornton Defendants' motion does not seek to strike every reference to segregation.  Instead, it seeks to strike the Wallace and Greenberger reports only "to the extent they relate to Grant Thornton LLP and Mark Ramler."  *See* Notice of Motion, filed August 7, 2012 [MDL Dkt. No. 1587].  The conduct of SPhinX and PlusFunds relating to segregation may well be relevant to various defenses in the case, but the conduct of Grant Thornton and Mark Ramler is not.

Second, Plaintiffs attempt to blur the distinction between Refco's fraud to inflate its financial condition, on the one hand, and Refco's alleged mishandling of SMFF's excess cash, on the other.  Grant Thornton has never been sued in this case for any role in the allegedly wrongful transfers of cash out of segregated accounts at Refco LLC (a.k.a. the "SPhinX fraud").  And while Grant Thornton *was* sued for aiding and abetting the alleged conversion of SMFF's cash at RCM, those claims have been dismissed with prejudice.  Plaintiffs' response ignores these distinctions, contending that Refco's alleged mishandling of the cash represents yet another

way that the financial statements were materially misstated.  But this is just a new frame for an old, already-rejected argument.  The motion to strike should be granted.

## ARGUMENT

### I. Plaintiffs cannot avoid this narrow motion by complaining that defense experts and fact discovery have touched on the issue of segregation.

Plaintiffs' sole remaining theory against the Grant Thornton Defendants is that Refco committed fraud in its publicly filed financial statements by falsely inflating its financial condition—and that the Grant Thornton Defendants aided and abetted that fraud by issuing unqualified audit opinions on those financial statements.  *See* R&R on Mot. to Dismiss at 19 (Dec. 16, 2011) ("GT R&R"), *adopted* Mar. 28, 2012 [MDL Dkt. Nos. 1343 & 1450].  As the Court has already held, this aspect of the "Refco fraud" is separate from any claim that SMFF was entitled to have its assets held in segregated accounts.  "That is because there is no causal relationship between the violation of the segregation right and the Plaintiffs' claims for damages under the Refco fraud."  *See* R&R on the Omnibus Issue of Primary Violations at 37 (Mar. 2, 2010) ("Primary Violations R&R"), *adopted* May 4, 2011 [MDL Dkt. Nos. 579 & 1134].  And even if SMFF had a right of segregation at RCM, the Court has already rejected the claim that the Grant Thornton Defendants knew that RCM's use of that cash was wrongful.  The Margin Annex to the RCM customer agreements expressly permitted RCM to use customer cash.  The question, then, was whether the Grant Thornton Defendants knew RCM had some kind of obligation to treat SMFF's cash differently.  But whether RCM was authorized to use SMFF's cash "is a murky one" that depends not only on segregation requirements but also on the account opening documents "and other factors well beyond the knowledge" of the Grant Thornton Defendants.  GT R&R at 18-19.  So, Plaintiffs have no claim against these Defendants based on

a breach of SMFF's alleged right of segregation.  For that reason, this Court should strike the expert opinions criticizing the Grant Thornton Defendants' work relating to segregation.

Plaintiffs insist that it was the ***defendants*** who first raised the issue of compliance with CFTC regulations, as a defense to the remaining claim.  Resp. at 1; *see id.* at 2-9.  That is simply not true—and it demonstrates how far Plaintiffs are willing to go to avoid the Court's prior rulings.  Plaintiffs cite the institutional defendants' objection to the Primary Violations R&R in 2010, where they argued that CFTC regulations would not have required segregation of SMFF's cash.  *Id*. at 1-2.  But the defendants made that argument specifically in response to Plaintiffs' claims for conversion and breach of fiduciary duty.  *See* Defs.'s Obj. to Primary Violations R&R at 2-3, 9-12 [MDL Dkt. No. 593].  **As to the Grant Thornton Defendants, those claims have since been dismissed with prejudice.**  *See* GT R&R at 17-19, *adopted* Mar. 28, 2012.  Plaintiffs' brief conveniently forgets to mention that fact.

To be sure, the issue of segregation may still be relevant to one or more defenses in this case.[1]  But Grant Thornton's work relating to segregation is not.  Plaintiffs recite more than a dozen quotes from depositions of SPhinX and PlusFunds insiders, showing that they were asked about segregation issues.  Resp. at 4-9.  As Plaintiffs admit, however, this testimony relates to what ***SMFF and PlusFunds*** understood, expected, and did (or failed to do) with respect to ensuring protection for SMFF's excess cash.  *See*, *e.g.*, *id*. at 9 (discussing "the understanding

---

[1] In a footnote, Plaintiffs misleadingly suggest that the Special Master and the Court "have already rejected Defendants' argument that SMFF's right to have its assets segregated was somehow lost when those assets were transferred to RCM."  Resp. at 3 n.2 (citing Primary Violations R&R (no pin cite)).  That is a non sequitur.  If the issue were already resolved, that would give Plaintiffs *less* reason to present expert testimony on that issue, not more.  And in any case, this is a misreading of the pleading-stage decisions.  Consistent with their procedural posture, these rulings held only that Plaintiffs had made a "plausible case" and that Defendants' arguments to the contrary should fail "at least at this preliminary stage."  Primary Violations R&R at 10.  They did not purport to resolve this issue on its merits.

and expectation of SPhinX/PlusFunds' agents"). None of this testimony even remotely touches on whether the *Grant Thornton Defendants* violated any obligations relating to segregation. It is the expert opinions on *those* topics that are the subject of this motion. *E.g., id*. at 14-18 (summarizing opinions).

**II.     Plaintiffs cannot avoid the Court's previous orders by blurring settled distinctions or by dressing up their old allegations as a new legal theory.**

Unable to link the suspect opinions with their remaining claim, Plaintiffs try to reframe the same old facts as a new legal theory, ignoring the distinctions set out in the Court's previous rulings. For the first time, Plaintiffs contend that "Refco's flaunting of federal law" relating to segregation *caused its financial statements to be materially misstated.* Resp. at 20-23. According to Plaintiffs, "[n]o 'rational actor' with knowledge of Refco's flaunting of federal law would deposit millions of dollars at Refco." *Id*. at 20.

Of course, this alleged "flaunting of federal law" is just a thinly veiled reference to the segregation-related theories that are now out of this case, as least as with respect to the Grant Thornton Defendants. That includes both the idea that SMFF excess cash was transferred to RCM without authorization (never the basis of any claim against the Grant Thornton Defendants) and the idea that SMFF excess cash at RCM should have been treated differently than all other RCM customer assets (asserted against the Grant Thornton Defendants and dismissed with prejudice).

Plaintiffs now try to suggest that this "flaunting of federal law" went beyond just SMFF and was a critical part of Refco's scheme to inflate its reported financial condition. Resp. at 20-22. But that is simply not true. Regardless of what happened with SMFF, Plaintiffs have never alleged that Refco had a widespread practice of stealing from segregated funds. They have never identified *any* customer other than SMFF that suffered the loss of assets "wrongfully" taken from

4

segregated accounts at Refco LLC.  Although they now cite the deposition of Santo Maggio on this point (*see* Resp. at 21), his testimony about the breach of customer segregation refers to an incident in the early 1990s—more than a decade before the financial statements on which Plaintiffs claim they relied.  And while Plaintiffs now suggest that Refco's publicly filed S-4 misrepresented the segregation requirements that might apply to the offshore broker RCM (*id*. at 15-16), this passage has nothing to do with federal law and CFTC segregation requirements; it merely suggests that Refco's various foreign subsidiaries might be regulated under foreign regulations.

Plaintiffs' new theory conflicts with the theory they have been advancing for years, both in their Amended Complaint and in their extensive briefing at the pleading stage in this case.  As the Special Master explained:

> With respect to the Refco fraud, the Plaintiffs are arguing that if they had known about Refco's financial condition, SPhinX would not have placed and held its property in accounts at Refco.  See, e.g., SAC ¶ 1223.  **That is, segregation or not**, they would simply not have done business with Refco had they known the truth.  These allegations show that the claim for a right of segregation is the gravamen of the ***SPhinX*** fraud, not the Refco fraud.

Primary Violations R&R at 37 (first emphasis added).   On that basis, the Court concluded: "Even if Refco had a duty to keep the SMFF cash in a segregated account, no claim for breach of that duty can be brought in the context of the Refco fraud.  That is because there is no causal relationship between the violation of the segregation right and the Plaintiffs' claim for damages under the Refco fraud." *Id*.  After years of motion practice and discovery, Plaintiffs may not now simply rewrite the basis for their Refco fraud claim and ignore the clear distinctions that underlie the Court's prior rulings.  Indeed, the theory that Refco's consolidated financial statements should have disclosed a CFTC violation at Refco LLC has never been the subject of fact or expert discovery.

Moreover, this argument still does not explain why Greenberger and Wallace have opined that Grant Thornton committed its *own* violations of CFTC regulations, including through allegedly "false[]" certifications of Refco LLC's compliance.  *See* Resp. at 17-18 (quoting Greenberger Rep.) & 21 n.6   As Plaintiffs admit, such violations—if they existed—would be "[s]eparate and apart from the misrepresentations and omissions in Refco's financial statements."  *Id*. at 21 n.6.

In defending these opinions as "key to Plaintiffs' aiding and abetting claims," Plaintiffs argue that the Grant Thornton Defendants' alleged violation of CFTC rules "concealed" Refco's violations and misuse of customer cash, and consequently enabled Refco's "looting of RCM customer assets."  Resp. at 18-19.  According to Plaintiffs, this alleged "looting" of SMFF's cash is properly understood as part of the Refco fraud, rather than the SPhinX fraud.  *Id*. at 9-11.  But again—and labels aside—any claim against the Grant Thornton Defendants for aiding and abetting the "misuse" of SMFF's cash has already been dismissed with prejudice.  GT R&R at 19 (dismissing with prejudice the claim that Refco converted SMFF's cash by upstreaming it from RCM "and that GT/Ramler substantially assisted the conversion by issuing clean audit opinions and helping to conceal the Refco Fraud.").  Undoubtedly, this is why Plaintiffs asked Professor Greenberger to spend so much time "opining" that the dismissal was incorrect.  *See* Greenberger Rep. at 63-65.

Nor are these opinions relevant to show the Grant Thornton Defendants' "scienter."  Resp. at 19-20.   The Court has already decided that "the question of authorization is a murky one" and that whether SMFF had a right to segregation at RCM turns on issues "well beyond the knowledge of" the Grant Thornton Defendants.  GT R&R at 19.  Even now, for example, Plaintiffs do not contend that the Grant Thornton Defendants ever saw the SMFF account

6

opening agreements at Refco LLC, which the Special Master has suggested may have created an expectation of segregation even after the assets were moved to RCM.  *See* Primary Violations R&R at 8-9.  And in any case, Plaintiffs' remaining claim against the Grant Thornton Defendants cannot turn on whether they knew about segregation violations with respect to SMFF.   Plaintiffs argue that a violation of CFTC requirements would have been a "red flag" that should have put the Grant Thornton Defendants on notice that something larger was amiss.  Resp. at 19.  But as a logical matter, knowledge of a CFTC violation at Refco LLC—even if these Defendants actually had such knowledge—would not show that they also knew about the RGHI receivable fraud being conducted by Refco insiders at a different Refco entity.

  Finally, Plaintiffs' discussion of the Suffolk loans is yet another attempt to reargue issues resolved against them (with prejudice) at the pleading stage.  *See* Resp. at 23-24.  The Court has already found that claims relating to the Suffolk Loans are part of the "Sphinx fraud and not the Refco Fraud."  *See* R&R on the Omnibus Issue of Standing at 27-28 (Feb. 3, 2010), *adopted* March 31, 2010 [MDL Dkt. Nos. 550 & 622].  To be sure, Grant Thornton and Ramler believed that the Suffolk loans may have required Refco to adopt a different accounting treatment and disclosure.  But that has nothing to do with misstating Refco's financial health—which is the gist of the remaining primary violation in this case.  Plaintiffs' theory with respect to the Suffolk loans has always been that their disclosure would have alerted the SPhinX and PlusFunds' innocent insiders to the SPhinX fraud—that is, to the wrongdoing of Christopher Sugrue, Mark Kavanagh, and Brian Owens, who allegedly accepted benefits in exchange for agreeing to the sweeps of SMFF cash.   Thus, as the Court has already recognized, "the 'Suffolk Transactions' are part of the SPhinX fraud, as they were allegedly sham transactions designed to allow Refco to gain control of PlusFunds and hide the fact that the SMFF cash was unprotected."  Primary

Violations R&R at 6 n.10, *adopted* May 4, 2011.  Plaintiffs' attempt to use the Suffolk loans as the basis for a claim against Grant Thornton is no more persuasive now than it was then.

## CONCLUSION

Plaintiffs are obviously frustrated with the rulings in this case.  But they cannot simply erase those rulings by presenting expert reports that ignore them—or, worse, that "opine" that the Court's rulings were wrong.  For the reasons discussed above and in their opening brief, the Grant Thornton Defendants respectfully request that this Court (i) strike the report and proposed opinions of Greenberger to the extent they relate to the Grant Thornton Defendants, and preclude Plaintiffs from offering Greenberger's testimony against the Grant Thornton Defendants in any fashion; (ii) strike Parts VI.D and VI.F of the Wallace report and the proposed opinions therein (and in any other portions of the report and attachments that relate to those opinions), and preclude Plaintiffs from offering those opinions against the Grant Thornton Defendants in any fashion; and (iii) grant such other and further relief as this Court deems just and proper.

Dated: September 7, 2012  
       Chicago, Illinois

*Of Counsel:*

Kenneth Cunningham  
Tracy W. Berry  
GRANT THORNTON LLP  
175 West Jackson, 20th Floor  
Chicago, Illinois 60604  
Ph: 312-856-0001  
Fax: 312-565-3473

Respectfully submitted,

WINSTON & STRAWN LLP

  /s/ Linda T. Coberly  
By:  Linda T. Coberly

Bruce R. Braun (bbraun@winston.com)  
Catherine W. Joyce (cjoyce@winston.com)  
Linda T. Coberly (lcoberly@winston.com)  
WINSTON & STRAWN LLP  
35 W. Wacker Drive  
Chicago, Illinois 60601  
Ph: 312-558-5600  
Fax: 312-558-5700

Luke A. Connelly (lconnelly@winston.com)  
WINSTON & STRAWN LLP  
200 Park Avenue  
New York, NY 10166  
Ph: 212-294-6700  
Fax: 212-294-4700

*Attorneys for Grant Thornton LLP*  
*and Mark Ramler*